KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
(212) 972-3000
Sean C. Southard, Esq.
Brendan M. Scott, Esq.
ssouthard@klestadt.com
bscott@klestadt.com

-and-

SCHWARTZ LAW PLLC
Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, New York 10038
347-460-5379
allen@allenschwartzlaw.com

*Counsel for Jared Chassen*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| JEFFREY SOLOMON SIMPSON, | : | Case No.  26-10359 (LGB) |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

Hearing Date: July 8, 2026
Time: 10:00 a.m.

Objections Due: July 1, 2026

**MOTION OF JARED CHASSEN FOR ENTRY OF AN ORDER MODIFYING THE
AUTOMATIC STAY AS NECESSARY TO PERMIT THE STATE COURT ACTION TO
<u>PROCEED BEFORE THE SUPREME COURT OF THE STATE OF NEW YORK</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................... 1

JURISDICTION AND VENUE ..................................................................................... 4

RELIEF REQUESTED.................................................................................................. 4

THE PARTIES............................................................................................................... 4

BACKGROUND ........................................................................................................... 6

    I.    The Bankruptcy Case ..................................................................................... 6

    II.    The State Court Action ................................................................................... 7

        A.    Simpson's Complaint and Emergency Order to Show Cause Seeking his Restoration as Managing Member ........................................................................................ 7

        B.    Chassen's Emergency Order to Show Cause after Simpson Purports to Terminate Him Again After Justice Cohen Restores Simpson to Interim Managerial Control ...................... 8

        C.    The Simpson and Chassen Preliminary Injunctions ........................................................ 8

        D.    Chassen's Amended Counterclaims ................................................................................. 9

        E.    Oak's Intervention in the State Court Proceeding ........................................................ 10

        F.    Chassen's First Emergency Order to Show Cause Seeking the Appointment of a Limited Temporary Receiver over JJ Arch, and for Injunctive Relief ................................. 11

        G.    Simpson's Motion for Permission to Resign Chassen and to Vacate or Modify the Injunction Removing JJ Arch as Managing Member of AREH ......................................... 12

        H.    To Avoid the Resolution of the State Court Action, Simpson Files a Unilateral Bankruptcy for JJ Arch, Which Judge Mastando Finds was Filed in Bad-Faith, with Simpson Grossly Mismanaging JJ Arch ........................................................................... 13

        I.    After the Bankruptcy is Dismissed as a Bad-Faith Filing, Chassen Moves Again for a Temporary Receiver over the JJ Arch Controlled Entities ..................................... 14

        J.    The State Court Appoints a Receiver over the JJ Arch Controlled Entities ................. 16

        K.    Simpson Purports to Remove the State Court Action to Federal District Court and Defies the Receiver Order ................................................................................................ 17

        L.    After the Second Remand, the State Court Enters an Order Enforcing the Receiver Order .................................................................................................................. 18

        M.    Simpson Removes the State Court Action a Third Time................................................ 19

        N.    The District Court Grants an Expedited Remand and Sanctions Simpson ................... 20

        O.    After the Third Remand, Chassen and the Receiver Seek to Hold Simpson in Civil and Criminal Contempt of the State Court's Receiver Order and Enforcement Order ............... 20

        P.    While the Contempt Motion is Pending, Simpson is Sanctioned Four Times for Repeated Defiance of the State Court's Orders Barring Ex Parte and Substantive Emails to the Court.................................................................................................................. 21

Q.    After the Third Remand, Simpson Tells the Commercial Division and the Parties that He Will Be Boycotting the State Court Proceedings ........................................................... 22

R.    The Commercial Division Schedules a Trial for July 27, 2026, and Chassen and Oak Move for Discovery Sanctions Against Simpson for His Contumacious Refusal to Participate in Discovery, and Chassen  Separately Moves for a Default Judgment Because Simpson Failed to Answer his Counterclaims ..................................................................... 23

S.    Simpson Sues the New York State Unified Court System, Justice Joel M. Cohen, the Receiver, and Counsel, and When that Fails to Stop the State Court Action and the Receiver, Threatens to File Personal Bankruptcy .................................................................... 23

T.    Simpson Files Bankruptcy and Seeks Permission to Remove the State Court Action to this Court ............................................................................................................................. 25

U.    The District Court Denies Simpson Permission to Remove the State Court Action to this Court ............................................................................................................................. 25

V.    Simpson Reaffirms his Bad-Faith Intent in Filing the Bankruptcy and Abuses Counsel at a Deposition in the Adversary Proceeding He Initiated Against the Receiver .................. 26

BASES FOR RELIEF ............................................................................................................. 27

I.    The Stay Applies Only With Respect to Direct Claims Against Simpson ....................... 27

II.    The Court Should Modify the Stay to Allow the State Court Action to Proceed in Its Entirety Before the Commercial Division .............................................................................. 30

III.    The Court Should Follow the Rulings of Judge Mastando, Judge Furman, and Judge Vargas… .......................................................................................................................... 36

WAIVER OF BANKRUPTCY RULE 4001(a)(3) STAY ....................................................... 37

NOTICE .................................................................................................................................. 38

CONCLUSION ....................................................................................................................... 38

## TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*, 11 CIV. 2232 NRB, 2011 WL 4965150 (S.D.N.Y. Oct. 19, 2011) .................................................................................................................................... 33

*Allstate Ins. Co. v. Ace Sec. Corp.,* 2011 WL 3628852, at *10 (S.D.N.Y. Aug. 7, 2011) ............... .................................................................................................................................... 33

*In re Anton*, 145 B.R. 767, 770 (E.D.N.Y. 1992). ..................................................................... .................................................................................................................................... 31, 34

*In re Containership Co. (TCC) A/S*, 466 B.R. 219, 225 (Bankr. S.D.N.Y. 2012) .......................... .................................................................................................................................... 31

*In re JJ Arch LLC*, 24-10381 (JPM), 2024 WL 2928033 (Bankr. S.D.N.Y. June 10, 2024). .......... .................................................................................................................................... 13, 36

*In re JJ Arch LLC*, 663 B.R. 258 (Bankr. S.D.N.Y. 2024), *aff'd* 24-CV-08649 (JAV), 2026 WL 1622865 (S.D.N.Y. June 5, 2026) .................................................................................................................................... 2, 14

*In re JJ Arch LLC.*, 24-10381 (JPM), 2024 WL 2933427 (Bankr S.D.N.Y. June 10, 2024) .................................................................................................................................... 2, 13

*In re Residential Capital LLC*, 488 B.R. 565 at 578 (Bankr. S.D.N.Y. 2013) .................................................................................................................................... 32

*In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) .................................................................................................................................... 30, 31

*In re U.S. Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994) .................................................................................................................................... 31

*Matter of Kossoff PLLC*, No. 21-10699 (DSJ), 2023 WL 3361053 (Bankr. S.D.N.Y. May 10, 2023). .................................................................................................................................... 31

*Nev. Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 408 (S.D.N.Y. 2007) .................................................................................................................................... 27

*Osuji v. Deutsche Bank, N.A.*, 589 B.R. 502, 508 (E.D.N.Y. 2018) .................................................................................................................................... 30

*Simpson v. Chassen*, 1:25-CV-2372 (LTS), 2025 WL 1279005 (S.D.N.Y. Apr. 25, 2025), *appeal dismissed* (June 23, 2025), *mot for relief from judgment denied,* 1:25-CV-2372 (LTS), 2025 WL 1916137 (S.D.N.Y. June 3, 2025) .................................................................................................................................... 18

*Simpson v. Chassen*, 25-CV-04004 (JAV), 2026 WL 1584643, (S.D.N.Y. June 3, 2026) .................................................................................................................................... 2, 37

*Simpson v. Chassen*, 25-CV-4004 (JMF), 2025 WL 1784931 (S.D.N.Y. June 27, 2025) .................................................................................................................................... 2, 20

*Teachers. Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) .................................................................................................................................... 27

*U.S. Bank Tr. Nat'l Assoc. v. Am. Airlines, Inc. (In re AMR Corp.)*, 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013) .................................................................................................................................... 30

*Windward Bora LLC v Lungen*, 2023 U.S. Dist. LEXIS 153609 (S.D.N.Y. Aug. 29, 2023) .................................................................................................................................... 2

iv

**Statutes**

Section 105 of title 11 of the United States Code
.......................................................................................................................... 4

Section 362 of title 11 of the United States Code
.......................................................................................................................... 4

11 U.S.C. § 362(a)
.......................................................................................................................... 27

11 U.S.C. § 362(d)(1)
.......................................................................................................................... 4

11 U.S.C. § 362(d)
.......................................................................................................................... 30

28 U.S.C. §1408
.......................................................................................................................... 4

28 U.S.C. § 1409
.......................................................................................................................... 4

28 U.S.C. § 157
.......................................................................................................................... 4

28 U.S.C. §1334
.......................................................................................................................... 4

**Other Authorities**

Fed. R. Bankr. P. 4001 Advisory Committee Notes
.......................................................................................................................... 37

**Rules**

Federal Rule of Bankruptcy Procedure 4001(a)(3)
.......................................................................................................................... 37

Rule 4001-1 of the Bankruptcy Local Rules for the Southern District of New York
.......................................................................................................................... 4

Rule 4001 of the Federal Rules of Bankruptcy Procedure
.......................................................................................................................... 4

Rule 9014 of the Federal Rules of Bankruptcy Procedure
.......................................................................................................................... 4

Jared Chassen ("Chassen" or "Movant"), by and through his respective undersigned counsel, submits this motion (the "Motion") for the entry of an order declaring the automatic stay inapplicable and/or modifying the automatic stay imposed in the above-captioned bankruptcy case (the "Chapter 11 Case") to allow a pending state court action, *Simpson v. Chassen*, Index No. 158055/2023 (N.Y. Co.) (the "State Court Action") relating to certain corporate governance disputes and membership issues (as further described herein) (the "Governance Disputes") involving Chassen, JJ Arch LLC ("JJ Arch"), Arch Real Estate Holdings LLC ("AREH"), 608941 NJ Inc. ("Oak") and Jeffrey Simpson ("Simpson" or "Debtor"), and relating to JJ Arch, to proceed before the New York County Supreme Court, Commercial Division (the "Commercial Division"). In support of the Motion, Chassen respectfully states as follows:

## PRELIMINARY STATEMENT

**The "*State court is full of s[\*\*]t . . . That's why I filed bankruptcy, you moron.*" Jeffrey Simpson, June 5, 2026 (Simpson Dep. Tr. 563:12-16)**

1. Chassen seeks to modify the automatic stay and allow the parties to conclude their litigation of the State Court Action in the forum of Simpson's choosing almost three years ago. The State Court Action, initiated by Simpson, has been pending before the Commercial Division since the summer of 2023 in the face of a multi-year campaign by Simpson of almost equal duration to use the federal courts as a tool to collaterally attack the proceedings he began. And while Simpson has repeatedly attacked the presiding judge in the State Court Action (the Honorable Justice Joel M. Cohen), Simpson almost uniformly elected not to appeal his orders, collaterally attacking them in federal court instead.[1]

---

[1] *See* NYSCEF Doc. No. 1434, Mar 5. 2025 Hr. Tr. at 29:15-18 (Justice Cohen stating, "I also have an Appellate Court above me that nobody has taken any of those rulings to throughout the entire course of this case as far as I can tell. Any of those decisions could have been appealed."); NYSCEF Doc. No. 1531, May 12, 2025 Hr. Tr. at 40:15-22 (Justice Cohen stating that the receivership "was not a job that Mr. Simpson wanted done. I get that. The pathway

2.      Just days ago, the United States District Court recognized that Simpson threatened this bankruptcy filing "to thwart state court jurisdiction," after a lengthy history of frivolous forum shopping and efforts to delay the State Court Action. *Simpson v. Chassen*, 25-CV-04004 (JAV), 2026 WL 1584643, at *2 (S.D.N.Y. June 3, 2026). In sharp language, the United States District Court found that if Simpson were allowed to succeed in moving the State Court Action to this Court, it "would make a mockery of the Court." *Id.* at *2. And at a deposition in this bankruptcy just two days later, Simpson affirmed his bad-faith purpose under oath, telling the Receiver's counsel, Marty Bunin, that the "State court is full of s[**]t . . . That's why I filed bankruptcy, you moron." Schwartz Decl., Exhibit 1, June 5, 2026 Simpson Dep. Tr. 563:12-16.[2]

3.      In 2024, another Judge of this Court (Mastando, J.) determined that a chapter 11 case Simpson filed in 2024 was a bad faith filing filed for the purpose of forum shopping the very same State Court Action to this Court. *In re JJ Arch LLC.*, 24-10381 (JPM), 2024 WL 2933427, at *15-20 (Bankr S.D.N.Y. June 10, 2024); *In re JJ Arch LLC*, 663 B.R. 258, 260 (Bankr. S.D.N.Y. 2024), *aff'd* 24-CV-08649 (JAV), 2026 WL 1622865 (S.D.N.Y. June 5, 2026). After two more frivolous forum shopping attempts in 2025, U.S. District Judge Furman enjoined Simpson from removing the State Court Action to federal court ever again unless expressly permitted by the United States District Court. *Simpson v Chassen*, 25-CV-4004 (JMF), 2025 WL

---

to that would be appealing my order and saying, 'You know, the trial judge got it wrong and you need to' -- you know, and -- you know, we get reversed when we're wrong. That's what happens. But you can't use self-help and you can't block a court officer, which is what Mr. Huebscher is, from complying with what I ordered him to do."); *id.* at 56:11-14 (Justice Cohen telling Simpson, "[t]he only thing I would suggest is that if you think . . . anything I've done is wrong, appeal it."). Due to the voluminous filings involved in the State Court Action, in lieu of being physically attached as exhibits, documents from the State Court Action are cited the New York State Court Electronic Filing system ("NYSCEF") by reference to the NYSCEF docket number in the State Court Action. "[T]he Court may take judicial notice of documents filed on this system as they are part of the public record." *Windward Bora LLC v Lungen*, 2023 U.S. Dist. LEXIS 153609, at *2, n 2 (S.D.N.Y. Aug. 29, 2023).

[2] "Schwartz Decl." refers to the Declaration of Allen Schwartz submitted in support of this motion.

1784931, at *2 (S.D.N.Y. June 27, 2025). Judge Furman recognized Simpson's "vexatious history of litigation," his "vexatious conduct in state court," his repeated "baseless attempts to remove this action to federal court," and his "repeated and frivolous efforts to delay state court proceedings," all of which Judge Furman found justified enjoining him from future removals of the State Court Action. *Id.*

4. Rather than seek the benefit of the automatic stay for a "breathing spell," Simpson instead sought to quickly remove the State Court Action. Further revealing his forum shopping intent, he also initiated an adversary proceeding against the Receiver that expressly sought to vacate the state court's receivership. Simpson's bankruptcy filing and prompt removal attempt came at a time when the parties had a trial scheduled for July 2026, and when Simpson was also facing fully submitted civil and criminal contempt motion, after four days of hearings, for his long-standing defiance of the Commercial Division's orders and fully submitted motions for default judgment and discovery sanctions for his boycott of the State Court Action.

5. This Court should reject Simpson's forum shopping and his efforts to use the federal courts to collaterally attack the state court. It should lift the automatic stay and allow the State Court Action to proceed, where it was set to conclude in just a few months. Moreover, lifting the stay now will not materially impact Simpson's creditors or any property of his estate. In fact, doing so will allow his estate to avoid further debt and creditor claims, where the Receiver is currently attempting to extricate both Simpson and Chassen from millions of dollars in guarantor liability, while at the same time maximizing the value of the remaining JJ Arch assets. Lifting the automatic stay will also avoid significant time delay and expenditure of resources for many parties in interest and this Court.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

7.      The statutory predicates for the relief sought herein are sections 105 and 362 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, and Rule 4001-1 of the Bankruptcy Local Rules for the Southern District of New York.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

9.      By this Motion, Chassen seeks entry of an order, substantially in the form submitted herewith and annexed hereto, modifying the automatic stay as necessary and pursuant to 11 U.S.C. § 362(d)(1) to allow the State Court Action to proceed before the Commercial Division.

10.     For the avoidance of doubt and as used in the Motion when referring to the scope of relief that Movant proposes to move forward with before the Commercial Division, "Governance Disputes" is intended to include all of Chassen's counterclaims and defenses asserted in the State Court Action, the receivership appointed by the Commercial Division in the State Court Action, as well as any claims by any party or by the Receiver seeking to hold Simpson in civil or criminal contempt of the Commercial Division's orders.

## THE PARTIES

11.     The Debtor is an individual.

12.     JJ Arch is a New York limited liability company.[3]  JJ Arch's members consist of Chassen and Simpson (collectively, the "JJ Arch Members").  Although each member purported to terminate the other in August 2023, they were both restored as members by the Commercial Division. [4]

13.     AREH is a New York limited liability company.[5] AREH and its subsidiaries manage real property, construction projects and investments.

14.     608941 NJ Inc. ("Oak") is a New Jersey corporation that is an active investor in many industries, including real estate.

15.     AREH formerly consisted of Oak as its investor member and JJ Arch as its managing member. However, on a finding of substantial likelihood that JJ Arch, via Simpson, committed various cause events under the AREH Operating Agreement, JJ Arch was removed as managing member of AREH by Oak and preliminarily enjoined from acting as managing member of AREH by order of the Commercial Division.[6]

16.     Eric Huebscher (the "Receiver") was appointed by the Commercial Division as the Receiver of the corporate entities owned or controlled by JJ Arch, namely 225 HPR LLC, 1640 Montauk LLC, 1640 Motors LLC, JJ NY 550 LLC, 146 E 89 Borrower 1 LLC, 146 E 89

---

[3] *See* NYSCEF Doc. No. 721, JJ Arch LLC Operating Agreement.

[4] NYSCEF Doc. No. 36, August 2023 Interim Order. NYSCEF Doc. No. 86, September 2023 TRO; NYSCEF Doc. No. 419, November 2023 Preliminary Injunction. NYSCEF Doc. No. 159, September Preliminary Injunction. *See also* NYSCEF Doc. No. 224, Sept. 29, 2023 Hr. Tr. at 54:5-55:4; *See also* NYSCEF Doc. No. 128, Sept. 15, 2023 Hr. Tr.; NYSCEF Doc. No. 83, Sept. 11, 2023, Hr. Tr.

[5] NYSCEF Doc. No. 720, AREH Operating Agreement.

[6] In November 2024, the state court granted Oak a preliminary injunction removing JJ Arch as the managing member of AREH during the pendency of the State Court Action. NYSCEF Doc. No. 418, Amended Preliminary Injunction.

Borrower 2 LLC, and 146 E 89 Borrower 3 LLC (collectively, the "JJ Arch Controlled Entities").[7]

## BACKGROUND

### I.      The Bankruptcy Case

17.      On February 19, 2026 (the "Filing Date") Simpson filed a voluntary petition for chapter 11 relief under the Bankruptcy Code.

18.      On February 20, 2026, the Debtor commenced an adversary proceeding against the Receiver (the "Montauk Property AP") by the filing of a complaint [Adv. Pro. DE 1][8] seeking to enjoin the sale by the Receiver of certain personal property in which the Debtor alleges he holds an ownership interest.

19.      On the same day, the Debtor filed his motion seeking injunctive relief and/or to enforce and expand the automatic stay in relation to the Receiver's efforts to move forward with a scheduled sale of receivership property (the "PI Motion") [Adv. Pro. DE 2].

20.      Chassen moved [Adv. Pro. DE 8] and was granted authority to intervene [Adv. Proc. DE 21] in the Montauk Property AP.

21.      The Receiver [Adv. Pro. DE 12] and Chassen [Adv. Proc. DE 13] each filed opposition to the PI Motion which this Court granted in part and denied in part by Order dated March 25, 2026 [Adv. Proc. DE 22].

22.      On April 28, 2026, the Debtor filed an amended complaint in the Montauk Property AP adding four new claims focused on terminating the Receiver's role over the JJ Arch Controlled Entities [Adv. Proc. DE 33] (the "Amended Complaint").

---

[7] NYSCEF Doc. No. 1360, Receiver Order.

[8] "ADV. Proc. DE" shall be used to refer to the docket in Adversary Proceeding No. 26-01013 (LGB) pending before this Court.

23.     On May 29, 2026, both the Receiver and Chassen separately moved this Court requesting that it either dismiss or abstain from consideration of the parallel proceeding that was created by the Amended Complaint [Adv. Proc. DE 42 and 43].

## II.    The State Court Action

### A.  Simpson's Complaint and Emergency Order to Show Cause Seeking his Restoration as Managing Member

24.     In early August 2023, both JJ Arch members purported to resign each other, with Chassen assuming managerial control of the Debtor following notification to the Debtor of his removal. NYSCEF Doc. No. 1, Simpson Complaint; NYSCEF Doc. No. 1070, Chassen Answer and Second Amended Counterclaims. On August 15, 2023, Simpson and JJ Arch commenced the State Court Action against Chassen in the Commercial Division. NYSCEF Doc. No. 1, Simpson Complaint.[9] At the same time, Simpson filed an emergency order to show cause seeking to be restored as managing member of JJ Arch. NYSCEF Doc. Nos. 9-21. On August 21, 2023, the Commercial Division signed Simpson's emergency order to show cause with a TRO providing that "pending the hearing on this Order to Show Cause, the Interim Order filed at NYSCEF 36 shall be in effect." NYSCEF Doc. No. 37, Aug. 21, 2023 Signed Order to Show Cause. The Interim Order, in turn, restored Simpson to managerial control subject to Chassen's consent rights to major decisions. NYSCEF Doc. No. 36, August 21, 2023 Order Regarding Interim Operating Procedures.

---

[9] Simpson and JJ Arch brought claims against Chassen alleging that he breached the JJ Arch Operating Agreement (count one), that Mr. Chassen breached his fiduciary duties to the JJ Arch, AREH, and the Debtor (count two), that by taking control of JJ Arch's and AREH's bank accounts he converted the company's assets (count three), that by taking control of the JJ Arch's and AREH's bank accounts, he tortiously interfered with contractual relations with the JJ Arch's banking relationship (count four), and also sought a declaratory judgment that the Debtor's termination was effective, while Mr. Chassen's was ineffective (count five), a declaratory judgment that the Debtor should have control of the bank accounts (count six), a permanent injunction against Mr. Chassen and First Republic Bank to restore him to full control of the bank accounts (count seven), and a permanent injunction restoring the Debtor to control of company systems (count eight). NYSCEF Doc. No. 1 at ¶¶ 75-178.

**B. Chassen's Emergency Order to Show Cause after Simpson Purports to Terminate Him Again After Justice Cohen Restores Simpson to Interim Managerial Control**

25.     On September 1, 2023, Simpson again purported to resign Chassen by sending him another termination notice. NYSCEF Doc. Nos. 52-55.  On September 14, 2023, Chassen filed an emergency order to show cause, (NYSCEF Doc. Nos. 61-85) and on September 15, 2023, the Commercial Division granted a TRO which provided that pending the hearing of the motion:

> (1) Simpson shall reinstate Chassen; (2) neither Simpson nor Chassen shall purport to terminate or 'resign' the other from membership in the company without prior court permission; (3) Simpson shall restore Chassen's full access to his company email accounts and to all company information systems; (4) Simpson shall ensure that Chassen has online viewing access of all company bank accounts; (5) neither Simpson nor Chassen shall review without permission (or authorize others to review without permission) each other's private emails unless they are provided during discovery; and (6) Simpson and Chassen shall cooperate in good faith to ensure that each of them have authorization from applicable banks to execute company bank transactions, which transactions remain subject to the terms of the applicable operating agreements. The Court's Order Regarding Interim Operating Procedures (NYSCEF 36) remains in full force and effect.

NYSCEF Doc. No. 86, Sept. 15, 2023 Signed Order to Show Cause.

**C. The Simpson and Chassen Preliminary Injunctions**

26.     On October 2, 2023, the Commercial Division granted the Debtor and JJ Arch's motion for a preliminary injunction in part "to the extent set forth in the Court's Interim Order (NYSCEF 36) and the Order to Show Cause entered in Mot. Seq. 003 (NYSCEF 86), which shall remain in effect until further order of the Court." NYSCEF Doc. No. 159, Oct. 2, 2023 Preliminary Injunction. While granting the injunction, the Commercial Division observed that Simpson had "acted in ways that trouble [the Court] in terms of complying with court orders." NYSCEF Doc. No. 224, Sept. 29, 2023, Hr. Tr. at 43:3-5.

27.     On November 22, 2023, the Commercial Division granted Chassen's motion for a preliminary injunction and affirmed that the August 21, 2023 Interim Order remained in effect. NYSCEF Doc. No. 419, Nov. 22, 2023 Preliminary Injunction.

### D. Chassen's Amended Counterclaims

28.     On January 28, 2025, Chassen filed his second amended answer and amended counterclaims. NYSCEF Doc. No. 1070. Chassen sued Simpson individually and derivatively on behalf of JJ Arch, AREH, and various entities controlled by JJ Arch. *Id.*[10] Simpson never filed an answer and was facing a default judgment motion before he filed bankruptcy. NYSCEF Doc. Nos. 2258-2264.

29.     The Second Amended Counterclaims contained the following causes of action:

- Chassen brought a breach of fiduciary duty claim against the Debtor on behalf of JJ Arch (count one), 225 HPR LLC (count two), 1640 Montauk LLC (count three), 1640 Motors LLC (count four), JJ NY 550 LLC (count five), 146 E 89 Borrower 1 LLC (count six), AREH (count seven), and a direct claim (count eight). *Id.* at ¶¶ 215-261.

- Chassen brought a contractual indemnification claim against the Debtor for any guarantor liability on JJ Arch Controlled Entity mortgage debts (count nine), and for declaratory relief that Simpson is liable to Chassen for contribution in connection with any guarantor liability (count ten); *Id.* at ¶¶ 262-273.

- Chassen brought a declaratory judgment that the Amended JJ Arch Operating Agreement is "void on the grounds of unconscionability, lack of consideration, duress, and undue influence." (count eleven). *Id.* at ¶¶ 274-285.

- Chassen brought a direct claim against the Debtor for a declaratory judgment that he was resigned (count twelve), a direct permanent injunction claim enjoining him "from acting as a member or managing member of JJ Arch . . ." (count thirteen), and the same claim derivatively on behalf of JJ Arch (count fourteen). *Id.* at ¶¶ 286-307.

- Chassen brought a direct breach of contract claim against the Debtor and YJ Simco LLC (count fifteen regarding a contract Mr. Chassen entered with them on August 1, 2023, a specific performance claim to enforce the terms of that contract, (count sixteen), and declaratory judgment claims relating to that contract (counts seventeen and eighteen). *Id.* at ¶¶ 308-334.

---

[10] Mr. Chassen's claims against YJ Simco LLC were voluntarily discontinued.

- Chassen brought a direct declaratory judgment claim that a certain capital call issued by the Debtor on August 31, 2023 was void (nineteen) and the same claim derivatively on behalf of JJ Arch (count twenty). *Id.* at ¶¶ 335-344.

- Chassen brought a direct breach of contract claim alleging that the Debtor breached the JJ Arch Operating Agreement (count twenty-one). *Id.* at ¶¶ 345-349.

- Chassen brought a direct declaratory judgment claim that Mr. Simpson had committed gross negligence and willful misconduct and was not entitled to indemnification of any legal expenses from the Debtor (count twenty-two), and the same claim derivatively on behalf of the Debtor (count twenty-three). *Id.* at ¶¶ 350-359.

- Chassen brought direct claims for an accounting (count twenty-four) and for books and records (count twenty-five). *Id.* at ¶¶ 360-371.

**E.  Oak's Intervention in the State Court Proceeding**

30.     On October 17, 2023, Oak filed a motion to appoint a temporary receiver over the JJ Arch, and by virtue of CPLR 6401 automatically became a party to the action. NYSCEF Doc. No. 225-266.[11]

31.     On November 3, 2023, Oak filed an intervenor complaint (the "Oak Intervenor Complaint"). NYSCEF Doc. No. 319, Oak's Intervenor-Complaint.[12] Simpson and JJ Arch in turn filed separate complaints against Oak. NYSCEF Doc. Nos. 471, 483.

32.     On November 3, 2023, Oak filed an emergency order to show cause for a preliminary injunction enforcing an October 31, 2023 notice of removal of JJ Arch as managing

---

[11] On October 27, 2023, the Commercial Division entered an interim order in connection with that motion and again affirmed that "[t]he Interim Order (NYSCEF Doc. No. 36), the TRO (NYSCEF Doc. No. 86), and the Preliminary Injunction (NYSCEF Doc. No. 159) . . . remains in full force and effect." NYSCEF Doc. No. 292, Oct. 27, 2023 Interim Order.

[12] The Oak Intervenor Complaint contained a direct breach of fiduciary duty claim against the Debtor and JJ Arch (count one), a direct breach of contract claim against JJ Arch (count two), a direct tortious interference with contract claim against the Debtor (count three), a direct tortious interference with prospective business advantage claim against the Debtor (count four), a breach of fiduciary claim against JJ Arch and the Debtor brought derivatively on behalf of AREH (count five), a direct defamation claim against the Debtor (count six), a direct fraud claim against the Debtor (count seven), a direct declaratory judgment claim against the Debtor and JJ Arch (count eight), and a direct equitable accounting claim against JJ Arch and the Debtor (count nine). *Id.* at ¶¶ 60-114.

member of AREH pursuant to the forced resignation provision in Section 7.1.4 of the AREH

Operating Agreement. NYSCEF Doc. Nos. 295-318. On November 3, 2023, the Commercial

Division granted a TRO providing that "pending the hearing of this Order to Show Cause,

Defendants [the Debtor and JJ Arch] be, and they hereby are, restrained and enjoined from acting

as the managing member of AREH." NYSCEF Doc. No. 321, Nov. 3, 2023 Signed Order to

Show Cause.

33.     On November 20, 2023, the Commercial Division issued an interim order

providing that Oak's "motion for a preliminary injunction is granted as stated on the record, with

counsel directed to meet and confer and promptly propose for the Court's review specific

language defining the terms and scope of the preliminary injunction, as well as proposals

(supported by evidence and law) with respect to an undertaking by Oak, if any, upon which the

preliminary injunction should be conditioned." NYSCEF Doc. No. 412, Nov. 20, 2023 Interim

Order.

34.     On November 28, 2023, the Commercial Division granted a preliminary

injunction (the "November 2023 PI") that removed JJ Arch as AREH's managing member.

NYSCEF Doc. No. 418, Nov. 28, 2023 Preliminary Injunction.

**F.   Chassen's First Emergency Order to Show Cause Seeking the Appointment of a
Limited Temporary Receiver over JJ Arch, and for Injunctive Relief**

35.     On January 28, 2024, Chassen brought an emergency order to show cause seeking

the appointment of a temporary receiver over JJ Arch, and a preliminary injunction barring

Simpson from asset transfers without Chassen's consent, requiring Simpson to provide books

and records and account viewing access over JJ Arch owned companies, and the disqualification

of the Debtor's personal counsel as counsel for JJ Arch (the "January 2024 Chassen Emergency

OSC"). NYSCEF Doc. Nos. 485-520. On February 7, 2024, the Commercial Division issued a

TRO that barred Simpson and those acting in concert with him "from selling, transferring or encumbering JJ Arch assets, or assets owned or controlled by the JJ Arch Controlled Entities, without Chassen's written consent under Section 3.2 of the JJ Arch Operating Agreement (as amended), which consent shall not be unreasonably withheld; (2) making distributions to themselves from JJ Arch or the JJ Arch Controlled Entities' accounts in a way that contravenes Article 5 of the JJ Arch Operating Agreement (as amended); and (3) using JJ Arch's or the JJ Arch Controlled Entities' funds, or other money drawn directly from JJ Arch or JJ Arch Controlled Entities' accounts to make payments to counsel representing Simpson in a personal capacity." NYSCEF Doc. No. 604, Feb. 7, 2024 Signed Order to Show Cause.

36.     Further, the Commercial Division ordered that Simpson "shall (1) ensure and continue to ensure that Chassen is provided with online viewing access for all bank accounts of JJ Arch and the JJ Arch Controlled Entities, and (2) provide and continue to provide Chassen with the JJ Arch and the JJ Arch Controlled Entities' books and records under the process detailed in Section 6 of the JJ Arch Operating Agreement." *Id.* The Commercial Division again affirmed its preliminary injunctions dated November 22, 2023. *Id.*

**G. Simpson's Motion for Permission to Resign Chassen and to Vacate or Modify the Injunction Removing JJ Arch as Managing Member of AREH**

37.     On January 29, 2024, Simpson filed an order to show cause seeking permission to vacate or modify the November 22, 2023 injunction which removed JJ Arch as managing member of AREH and to resign Mr. Chassen as a member of JJ Arch. NYSCEF Doc. Nos. 521-557. On February 7, 2024, the Commercial Division entered an order denying Simpson's motion to vacate or modify the injunction removing JJ Arch as managing member of AREH and declined Simpson's request to modify the November 2023 PI which allowed Chassen to consent to AREH's major decision on behalf of JJ Arch. NYSCEF Doc. No. 605. The Commercial

Division then set a June 6, 2024 evidentiary hearing on Simpson' motion for permission to resign

Chassen as a member of JJ Arch and Chassen's motion seeking the appointment of a temporary

receiver. *Id.*

### H. To Avoid the Resolution of the State Court Action, Simpson Files a Unilateral Bankruptcy for JJ Arch, Which Judge Mastando Finds was Filed in Bad-Faith, with Simpson Grossly Mismanaging JJ Arch

38.    Simpson filed a Chapter 11 bankruptcy petition on behalf of JJ Arch in March

2024 as its purported "sole member" and without Chassen's consent, and in April 2024, Simpson

removed the State Court Action to federal bankruptcy court. NYSCEF Doc. Nos. 629, 630, 631,

632, Notice of Bankruptcy and Correspondence; NYSCEF Doc. No. 635-636, Notice of

Removal.

39.    In recommending that the State Court Action be remanded, Judge Mastando

engaged in an extensive analysis of the record in the State Court Action and found that

Simpson's  removal of the State Court Action was an act of forum shopping. *In re JJ Arch LLC.*,

2024 WL 2933427, at *15-19; *id.* at *19, n 24 (citing to and noting that "[m]any of Mr.

Simpson's emails indicate a certain displeasure for Mr. Chassen . . . and—perhaps most

notably—Justice Cohen's Interim Orders."). And while recognizing that many of the claims in

the State Court Proceeding were not automatically stayed, Judge Mastando also entered an order

that lifted the automatic stay of the claims against JJ Arch that were subject to the stay. *In re JJ

Arch LLC*, 24-10381 (JPM), 2024 WL 2928033, at *8 (Bankr. S.D.N.Y. June 10, 2024). Judge

Mastando found, among other things, that "judicial economy would . . . be served by the lifting

of the stay," noting that Justice Cohen was familiar with the case, the non-stayed claim were

interrelated with the stayed claims, the litigation in the state court had resulted in a robust record,

and the "relationship between this bankruptcy and the issues raised in the State Court Proceedings is attenuated." *Id.* at \*10-11.

40.      On October 11, 2024, Judge Mastando dismissed the JJ Arch bankruptcy case entirely because he found that the Debtor had filed it in subjective and objective bad faith and then grossly mismanaged JJ Arch during the bankruptcy proceeding and failed to fulfill his fiduciary obligations. *In re JJ Arch LLC*, 663 B.R. 258 (Bankr. S.D.N.Y 2024).

### I.  After the Bankruptcy is Dismissed as a Bad-Faith Filing, Chassen Moves Again for a Temporary Receiver over the JJ Arch Controlled Entities

41.      After the dismissal, on December 19, 2024, the Commercial Division entered a scheduling order that ordered that fact discovery would close by June 27, 2025, and discovery would be completed by October 3, 2025. NYSCEF Doc. No. 1001.

42.      Also, after the dismissal, Chassen moved, among other things, to hold Simpson in contempt of the Commercial Division's prior orders and for a preliminary injunction enforcing Simpson's removal as member of JJ Arch, with Chassen, as the remaining member, taking managerial control in his stead. NYSCEF Doc. Nos. 711-757, 942-943.[13] In December 2024, Mr. Chassen moved in the alternative for a temporary receiver over the JJ Arch Controlled Entities and all the assets and properties owned by the JJ Arch Controlled Entities. NYSCEF Doc. Nos. 994-1010.

---

[13] The state court denied Mr. Chassen's request for a temporary restraining order. NYSCEF Doc. No. 934, Nov. 20, 2024 Decision and Order; NYSCEF Doc. No. 941, Nov. 20, 2024 Signed Order to Show Cause. The part of the motion seeking a preliminary injunction was later withdrawn on March 13, 2025, but the contempt motion was set to proceed. NYSCEF Doc. No. 1363, Mar. 14, 2025 So-Ordered Letter. Though subsequently further briefed by Mr. Chassen, (NYSCEF Doc. No. 1373-1379), including based upon Mr. Simpson's deposition and hearing testimony regarding his bankruptcy filing as purported "sole member," (NYSCEF Doc. Nos. 1373 and 1374), the contempt motion was later denied without prejudice on June 13, 2025 because of Mr. Simpson's subsequent removal of the action to federal court. NYSCEF Doc. No. 1561, June 13, 2025 Decision and Order.

43.     The JJ Arch Controlled Entities owned the following distressed properties: (a) 1640 Montauk LLC owned the real property located at 1640 Montauk Highway, Water Mill, New York ("Montauk Property"); (b) 1640 Motors LLC operated an auto-business known as Rever Motors on the Montauk Property, (c) JJ NY 550 LLC owned a real property at 550 Metropolitan Avenue, Brooklyn, New York ("550 Metropolitan Property"),(d) 225 HPR LLC owned a real property at 225 Head of Pond Road, Water Mill, New York ("Head of Pond Property"). 146 E 89 Borrower 1 LLC, 146 E 89 Borrower 2 LLC, and 146 E 89 Borrower 3 LLC owned a real property at 146 E. 89th Street, New York, New York ("89th Street Property"), with JJ Arch serving as the managing member, with outside investors also members. *See* NYSCEF Doc. No. 1347, Post-Hearing Letter; NYSCEF Doc. No. 1275, Chassen Direct Testimony Affirmation.[14]

44.     At the time Chassen sought to impose the receivership in the State Court Action, each of the aforesaid properties was in default or foreclosure, with Chassen named a guarantor defendant with full recourse liability in 3 out of 4 pending foreclosures. *See e.g.*, NYSCEF Doc. No. 1213, 89th Street Foreclosure Complaint; NYSCEF Doc. No. 1229, 550 Metropolitan Avenue Complaint; NYSCEF Doc. No. 1272, Montauk Property Complaint. Chassen presented evidence to the State Court in connection with his motion for a receiver showing that the properties were in a highly distressed condition because of Simpson's gross mismanagement.

---

[14] *See* NYSCEF Doc. No. 1172, 225 HPR LLC Operating Agreement; NYSCEF Doc. No. 1173, 1640 Montauk LLC Operating Agreement; NYSCEF Doc. No. 1175, 1640 Motors Articles of Organization; NYSCEF Doc. No. 1179, 146 E 89 Borrower 1 LLC Operating Agreement; NYSCEF Doc. No. 1180, 146 E 89 Borrower 2 LLC Operating Agreement; NYSCEF Doc. No. 1181, 146 E 89 Borrower 3 LLC Operating Agreement; NYSCEF Doc. No. 1179, 89th Street Property Deed; NYSCEF Doc. No. 1183, 89th Street Property Note; NYSCEF Doc. No. 1184, 89th Street Mortgage; NYSCEF Doc. No. 1185, 89th Street Guaranty; NYSCEF Doc. No. 1186, Montauk Property Note; NYSCEF Doc. No. 1187, Montauk Property Mortgage; NYSCEF Doc No. 1189, Montauk Property Guaranty; NYSCEF Doc. No. 1190, 550 Metropolitan Note; NYSCEF Doc. No. 1191, 550 Metropolitan Mortgage; NYSCEF Doc. No. 1192, 550 Metropolitan Mortgage.

NYSCEF Doc. No. 1275, Chassen Direct Testimony Affirmation. *See* NYSCEF Doc. No. 1347,

Post-Hearing Letter.

45.    Moreover, before the Commercial Division granted the receiver motion, even

Simpson apparently recognized the dire state he left JJ Arch in, and in a letter and a proposed

stipulation filed on NYSCEF he advocated for the sale of all the real properties that were

ultimately put into receivership. NYSCEF Doc. No. 1350, Proposed Stipulation; *See also*

NYSCEF Doc. No. 1176 Proposed Plan of Reorganization (seeking to liquidate JJ Arch LLC as

purported sole member). As Simpson's then-lawyer put it, "the assets are on fire itself."

NYSCEF Doc. No. 1434, March 5, 2025 Hr. Tr. at 20:2-9-22:7.

**J.    The State Court Appoints a Receiver over the JJ Arch Controlled Entities**

46.    On March 11, 2025, the Commercial Division, after a two-day evidentiary

hearing, appointed a temporary receiver, Eric Huebscher (who had been the sub-chapter 5 trustee

of JJ Arch during the JJ Arch bankruptcy) over the JJ Arch Controlled Entities. NYSCEF Doc.

No. 1360, Receiver Order.[15] The Receiver Order was issued in the wake of testimony and

evidence presented at a multi-day evidentiary hearing.[16] The Receiver Order removed managerial

control from Simpson and gave the Receiver sole and complete control over JJ Arch's

---

[15] In the leadup to the hearing, the Debtor sent the Commercial Division abusive emails despite being directed not to send such emails to the Court. *See e.g.,* NYSCEF Doc. Nos. 1248-1249; NYSCEF Doc. No. 1132, Simpson Feb. 9, 2025 Email to Justice Cohen. His behavior towards counsel in the leadup to the hearing was also extremely abusive. For example, he sat for a deposition on February 13, 2025, during which he lobbed abuse at counsel. NYSCEF Doc. No. 1374, Simpson Dep. Tr.

[16] *See e.g.,* NYSCEF Doc. No. 1347, Post-Hearing Letter; NYSCEF Doc. No. 1275, Chassen Direct Testimony Affirmation; NYSCEF Doc. No. 1166, Peldman Direct Testimony Affirmation; NYSCEF Doc. No. 1165, Nicolardi Direct Testimony Affirmation; NYSCEF Doc. No. 1162, Gandhi Direct Testimony Affirmation; NYSCEF Doc. No. 1346, Feb. 25, 2025 Hr. Tr.; NYSCEF Doc. No. 1371, Feb. 28, 2025; Hr. Tr.; NYSCEF Doc. No. 1434, Mar. 5, 2025 Hr. Tr.

managerial and membership interests in the JJ Arch Controlled Entities. NYSCEF Doc. No.
1360, Receiver Order.

### K. Simpson Purports to Remove the State Court Action to Federal District Court and Defies the Receiver Order

47.     Simpson's response to the Receiver Order was a second attempt to unilaterally
remove the State Court Action to federal court—despite being represented by counsel and there
being no basis for removal.[17] Thereafter, on March 20, 2025, Simpson e-filed multiple letters and
filings to the Court using his NYSCEF account credentials, which were notable for their
disrespect to the state court. NYSCEF Doc. No. 1384, Mar. 20, 2025 Letter to Court; NYSCEF
Doc. No. 1389, March 20, 2025 Letter to Court; NYSCEF Doc. No. 1406, March 24, 2025 Letter
to Court.

48.     On March 25, 2025, using his NYSCEF credentials, Simpson e-filed a "notice of
removal" containing a screenshot that showed a docket had been opened with the federal court
and a judge assigned.[18] That same day, the Commercial Division entered a notice on NYSCEF
which acknowledged the removal and informed Simpson and the parties that "All orders of this

---

[17] Though represented by counsel, (NYSCEF Doc. No. 1038), Simpson proceeded to remove the action to federal court via his own NYSCEF account. NYSCEF Doc. Nos. 1380, 1381, 1389. Immediately after the Commercial Division appointed a receiver in March 2025, Simpson also filed a Chapter 11 bankruptcy petition for YJ Simco LLC, his family entity, which was subsequently converted to a Chapter 7 proceeding. *See In Re YJ Simco LLC*, 25-10437-lgb (S.D.N.Y.). During that proceeding, and over the objections of the trustee, Simpson repeatedly sought, unsuccessfully, to have the Bankruptcy Court stay the receivership in the State Court Action by asserting, contrary to his prior sworn testimony in the JJ Arch bankruptcy and in the State Court Action, that YJ Simco was the sole owner of JJ Arch. *See id.* at ECF 80-97, 106, 109, 113-118, 126-135, 142-143. In December 2025, Simpson also demanded that the Bankruptcy Court require Justice Cohen to appear before it in an email to the Bankruptcy Court and Justice Cohen, where he stated to the Bankruptcy Court that Justice Cohen "ignore[s] all stays and had made clear that he hates bankruptcy and has caused this disastrous of a mess." NYSCEF Doc. No. 2177, Dec. 4, 2025 4:00p.m. Email. The YJ Simco proceeding was dismissed on March 31, 2026 on the motion of the trustee.

[18] NYSCEF Doc. No. 1408.

Court entered prior to removal, including the appointment of a receiver, remain in effect subject to any contrary orders made in the federal action."[19]

49.     Simpson's conduct after removal was the subject of testimony at a subsequent (and still unresolved) pending hearing to hold him in civil and criminal contempt that was *sub judice* prior to the bankruptcy filing. NYSCEF Doc. No. 2072, Post-Hearing Memorandum.

50.     On April 25, 2025, the United States District Court remanded the State Court Action because Simpson failed to pay the filing fees. *Simpson v. Chassen*, 1:25-CV-2372 (LTS), 2025 WL 1279005, at *1 (S.D.N.Y. Apr. 25, 2025), *appeal dismissed* (June 23, 2025), *mot for relief from judgment denied,* 1:25-CV-2372 (LTS), 2025 WL 1916137 (S.D.N.Y. June 3, 2025).

**L.  After the Second Remand, the State Court Enters an Order Enforcing the Receiver Order**

51.     After the second remand, the Receiver filed an order to show cause seeking to enforce the Receiver Order. NYSCEF Doc. Nos. 1435-1445 (the "Receiver's Enforcement Motion"). Thereafter, the Commercial Division held a conference and set hearing dates for May 12, 2025 for the Receiver's Enforcement Motion and May 20, 2025 for a contempt motion filed by Chassen.[20] The Debtor, while represented by counsel in the State Court Action, again attempted to remove the proceeding "pro se" by using his NYSCEF credentials to file purported removal documents.[21]

---

[19] NYSCEF Doc. No. 1409 (emphasis added). Simpson received direct notice of this court filing. NYSCEF Doc. No. 1997 (order directing clerk to remove his NYSCEF access and noting access from November 2, 2024 through October 8, 2025).

[20] NYSCEF Doc. No. 1480, Case Management Order; NYSCEF Doc. Nos. 1450-1462,1470-1471, Contempt Motion.

[21] NYSCEF Doc. Nos. 1484-1493.

52.     The Commercial Division held a hearing on the Receiver's Enforcement Motion. NYSCEF Doc. No. 1636, May 12, 2025 Hr. Tr.[22] The Commercial Division told Simpson and his counsel that any past or future removals to federal court do not nullify its orders. *Id.* at 9:24-10:1. It also warned Simpson that any further defiance would be treated severely. *Id.* at 26:9-17; *see also id.* at 59:4-6; *id.* at 64:1-6; *id.* at 71:14-16. During the hearing, Simpson's counsel assured the Court that it should not expect any further changing of the locks or breaches of the peace based on what removal means. *Id.* at 50:8-21. Simpson himself ultimately stormed out of the courtroom in the middle of the hearing. *Id.* at 60:23-75:3; *id.* at 82:23-83:1.

53.     The Commercial Division granted the Receiver's Enforcement Motion and issued an order compelling Simpson to comply with the Receiver Order (the "Enforcement Order").[23] The Enforcement Order, among other things, barred Simpson from entering any of the properties under receivership, transacting any business of any of the entities under receivership, harassing the Receiver, and interfering with the Receiver's exercise of his duties. *Id.*

**M. Simpson Removes the State Court Action a Third Time**

54.     On May 15, 2025, Simpson e-filed screenshots to the Court via his own NYSCEF account credentials showing that a new removal case had been opened in federal court and a judge assigned. NYSCEF Doc. No. 1517-1518. On May 23, 2025, the Court issued a notice stating that on "May 15, 2025, the Debtor (pro se) filed a Notice of Removal (NYSCEF Doc. 1517-1518) which confirms that this case has been removed to federal court and a docket number and judge (Swain, CJ) have been assigned." NYSCEF Doc. No. 1527, Court Notice.

---

[22] At the hearing, at which Simpson was present, the state court explained that it had still retained jurisdiction despite Simpson's attempted removal. *Id.* at 6:12-9:12. When invited to respond, Simpson's counsel did not object to proceeding with the hearing. *Id.* at 9:13-16.

[23] NYSCEF Doc. No. 1508.

55.      Within a handful of hours, Simpson's counsel emailed Chassen's counsel and the Receiver's counsel that the Court Notice had "divested the Receiver of authority," "[a]ll Receivership Orders are unenforceable," and the Debtor was "on his way to safeguard and take control of the assets immediately. If the keys are not readily available, my client will be changing locks as soon as this evening." NYSCEF Doc. No. 1649, May 23, 2025, 7:00 p.m. email (emphasis in original); *See also* NYSCEF No. 1638.

56.      Simpson's subsequent conduct was the subject of testimony at a subsequent (and still unresolved) pending hearing to hold him in civil and criminal contempt that was *sub judice* prior to the bankruptcy filing. NYSCEF Doc. No. 2072, Post-Hearing Memorandum.

**N.  The District Court Grants an Expedited Remand and Sanctions Simpson**

57.      On May 29, 2025, U.S. District Judge Furman granted an expedited remand of the State Court Action. *Simpson v. Chassen*, 1:25-cv-04004(JAV) (S.D.N.Y.), ECF 21. On June 27, 2025, the United States District Court sanctioned Simpson and enjoined him (the "Anti-Removal Injunction") from removing the State Court Action ever again without the District Court's prior permission. *Simpson*, 2025 WL 1784931, at *2.

**O.  After the Third Remand, Chassen and the Receiver Seek to Hold Simpson in Civil and Criminal Contempt of the State Court's Receiver Order and Enforcement Order**

58.      On May 30, 2025, Chassen filed an order to show cause seeking, inter alia, to hold Simpson in civil and criminal contempt (NYSCEF Doc. Nos. 1537-1548), joined by the Receiver in part, (NYSCEF Doc. No. 1549-1551), and which was set for hearing on June 27, 2025. NYSCEF Doc. No. 1557, OSC. The Debtor filed opposition to the contempt motion which did not dispute any of the allegations in the contempt motion.[24] On June 27, 2025, the

---

[24] NYSCEF Doc. No. 1586.

Commercial Division held an initial hearing at which the Debtor's counsel could not articulate

any disputed facts when asked to do so by the Commercial Division.[25]

59.     The Commercial Division heard testimony for the contempt motion on July 21,

2025, August 1, 2025, August 4, 2025, and October 10, 2025. NYSCEF Doc. Nos. 2000, 2050,

2051, 2052. Simpson did not appear at the October 10, 2025 contempt hearing despite being

ordered to do so. See NYSCEF Doc. No. 1679, Court Notice; See also NYSCEF Doc. No. 1557,

OSC. This was noted by the state court at the hearing. NYSCEF Doc. No. 2052, October 10,

2025 Hr. Tr. Before the hearing, Simpson had written the state court, in emails which he copied

multiple federal judges on, that he would not participate in any proceedings before the state

court. NYSCEF Doc. No. 2126, Oct. 8, 2025 Email ("I am not participating in anything

regarding a court hearing with you as it's adjudicator, not happening."); NYSCEF Doc. No.

2127, Oct. 9, 2025 Email. Prior to the bankruptcy filing, the civil and criminal contempt motion

was fully submitted and awaiting decision.

**P. While the Contempt Motion is Pending, Simpson is Sanctioned Four Times for Repeated Defiance of the State Court's Orders Barring *Ex Parte* and Substantive Emails to the Court**

60.     After the third remand, the Debtor was sanctioned four times by the Commercial

Division for repeatedly violating the Court's rules barring substantive or *ex parte* emails.

NYSCEF Doc. No. 1847, September 24, 2025 Order (sanctioning Simpson $500); NYSCEF

Doc. No. 1851, September 29, 2025 Order (sanctioning Simpson $1000); NYSCEF Doc. No.

1998, October 8, 2025 Order (sanctioning Simpson $1500); NYSCEF Doc. No. 2157, December

5, 2025 Order (sanctioning Simpson $2000 and warning that further violations could lead to his

---

[25] NYSCEF Doc. No. 1655, June 27, 2025 Hr. Tr. at 14:3-6, 21:23-25, 22:11-14, 47:13-14, 50:16-17, 62:9-11. At the hearing, Simpson's counsel affirmed that the orders were clear. NYSCEF Doc. No. 1655, June 27, 2025 Hr. Tr. at 6:21 (the Court's "orders were abundantly clear."); See also NYSCEF Doc. No. 2052, Oct. 10, 2025 Hr. Tr. at 31:2-5 (affirming that Simpson was not challenging that orders were clear and unequivocal).

pleading being stricken, after Simpson "sent more than a dozen emails" in which he became

"increasingly aggressive and abusive, among other things, repeatedly and baselessly accusing the

Court of 'being on the take' and daring the Court 'to give [him] sanctions.'"). After being

warned that he faced having his pleadings stricken if he continued, the Debtor continued to

violate these orders. *See* NYSCEF Doc. Nos. 2239, 2248, 2280-2288, 2346, 2349.

**Q. After the Third Remand, Simpson Tells the Commercial Division and the Parties that He Will Be Boycotting the State Court Proceedings**

61.     After the remand, Simpson repeatedly told the Commercial Division that he was

boycotting any proceedings before the state court. *See e.g.*, NYSCEF Doc Nos. 2126-2127

(informing Court that "I am not participating in anything regarding a court hearing with you as

it's adjudicator, not happening."); NYSCEF Doc. No. 2134 ("Unless I'm forced to by someone

under the law (with competent jurisdiction) I will not present myself in front of a disastrous

abomination of any type of justice system that occurs in the courtroom of Judge Joel Cohen.");

NYSCEF Doc. No. 2150 ("I'm going to copy the honorable Joel Cohen. His rules don't matter

anyway he makes them up as he goes and he breaks the CPLR rules on a daily basis."); NYSCEF

Doc. No. 2152 ("[M]y Fed removal was money good so no you had no authority and any

authority, you have when you broke the law. You break the law every day in this courtroom on

this case I'm sure you do it elsewhere too."); NYSCEF Doc. No. 2179 ("Go ahead with your

sanctions there will be a lawsuit that will bring this court to the federal court by Monday for its

horrific acts of extreme prejudice, bias, discrimination, negligence of reporting criminal acts and

much more to be followed. Take up your sanctions there. as I said many moons ago I will not

present myself in front of a corrupt / . judge court ever again."); *See also* NYSCEF Doc. Nos.

2239-2248; NYSCEF Doc. Nos. 1860-1897, 1909-1911, 2126-2134, 2150, 2152-2153, 2176,

2179-2185; NYSCEF Doc. Nos. 1923-1983.

22

**R. The Commercial Division Schedules a Trial for July 27, 2026, and Chassen and Oak Move for Discovery Sanctions Against Simpson for His Contumacious Refusal to Participate in Discovery, and Chassen Separately Moves for a Default Judgment Because Simpson Failed to Answer his Counterclaims**

62.     On December 12, 2025, the Commercial Division entered an order setting a July 27, 2026 trial date and closing discovery by April 3, 2026, including any motions to compel discovery, which had to be filed with sufficient time prior to the April 3, 2026 close of discovery deadline.[26] On January 14, 2026, Chassen and Oak moved for discovery sanctions for Simpson's refusal to appear at his scheduled deposition and for refusing to provide any discovery responses despite repeated orders.[27] On January 19, 2026, Chassen moved for a default judgment against Simpson for failing to respond to his Second Amended Counterclaims for nearly a year.[28] Both of those motions were unopposed and *sub judice*.

**S. Simpson Sues the New York State Unified Court System, Justice Joel M. Cohen, the Receiver, and Counsel, and When that Fails to Stop the State Court Action and the Receiver, Threatens to File Personal Bankruptcy**

63.     In early January 2026, Simpson filed three frivolous lawsuits under 42 U.S.C. § 1983 against Justice Cohen in federal district court, as well as a federal civil rights case against the New York State Unified Court System, the Receiver, and various counsel, in a failed effort to stop the state court proceedings and the Receiver. *Simpson v. New York State Unified Court System, et. al.*, Civ. No. 1:26-cv-00110(LTS) (S.D.N.Y.); *Simpson v. Cohen et. al.*, Civ No. 1:26-cv-00193(LTS) (S.D.N.Y.); *Simpson v. Cohen et. al.*, Civ. No. 1:26-cv-00130(LTS) (S.D.N.Y.); *Simpson v. Wilson et. al.*, Civ. No. 2:26-cv-00125(SJB)(ARL) (E.D.N.Y.). The actions in this district were dismissed after Simpson failed to pay the filing fee.

---

[26] NYSCEF Doc. No. 2167.

[27] NYSCEF Doc. Nos. 2230-2255.

[28] NYSCEF Doc. No. 2258-2264.

64.     On January 14, 2026, the Commercial Division scheduled a status conference for January 21, 2026 via Court Notice. NYSCEF Doc. No. 2229, Court Notice. On January 16, 2026, in response to the Court Notice, Simpson wrote the Commercial Division the following:

> Joel Cohen,
>
> What don't you understand? You are corrupt and I filed an action against you and the participants here. Inviting the folks to take action against me is further deteriorating from the damages that you judge Joel Cohen have created. No independent outside party disagrees and I demand police intervention now.
>
> I demand justice and I demand it now. You don't get the right to speak up any further about anything here with what you've done to cause destruction. And Gold, you will lose your license for practicing soon just like the rest.

NYSCEF Doc. No. 2285, Simpson Jan 16, 2026 Email. On January 17, 2026, Simpson wrote the state court "courtesy copy attached here of my letter to the bankruptcy court this morning reacting to breach of 'stay', as I mentioned previously. It was submitted through ECF. I understand that Joel Cohen here has given his views on this issue that are arbitrary and prejudicial, because he hates bankruptcy court and he hates losing control of a case, especially when he's been wrong for over two years and if he loses control of the situation , it will be more than me exposing him." NYSCEF Doc. No. 2287, Simpson Jan. 17, 2026 Email. A few days later, Simpson wrote the Commercial Division: "There will NOT be a conference this week (or ever ), on my case (in front of Cohen) , that I called for until justice is served and we get clarity from people who are not biased and prejudicial. If you, Cohen, proceed you're doing at your own risk." NYSCEF Doc. No. 2281, Simpson Jan. 19, 2026 Email.

65.     The Commercial Division held the status conference (the transcript has not yet been uploaded to the docket). On January 24, 2026, Simpson wrote Justice Cohen (copying this Court):

24

> Once again, SHAME ON YOU JUDGE JOEL COHEN, for what you have done and continue to do - all prejudicial, biased and with intentional harm to me, including your actions this week.
>
> If i must file for personal bankruptcy as a result to stop your absurdity, that i will do and your "unclean" hands will be investigated to the nth degree.
>
> I will once again go to all law enforcement agencies with your actions.  I can only imagine where your immunity starts and stops as it relates to federal bankruptcy code crimes.

*See Simpson v. Chassen*, 1:25-cv-04004(JAV) (S.D.N.Y.), ECF 78-1, Simpson Jan. 24, 2026 Email. On February 11, 2026, Simpson wrote to Justice Cohen, saying that "He is corrupt and he's not deciding a single thing in my case, the end." NYSCEF Doc. No. 2346, Feb. 11, 2026 Email.

**T.  Simpson Files Bankruptcy and Seeks Permission to Remove the State Court Action to this Court**

66.     On February 19, 2026, Simpson filed for Chapter 11 bankruptcy. ECF 67. On March 12, 2026 and in recognition of the Anti-Removal Injunction, the Debtor moved in the United States District Court for permission to remove the State Court Action to this Court. *Simpson v. Chassen*, 1:25-cv-04004(JAV) (S.D.N.Y.), ECF 71-72. In so doing, Simpson made clear that he wished to immediately proceed to litigate the State Court Action, but only in a different forum. On April 20, 2026, Chassen opposed the motion. ECF 77-78. Oak and AREH also separately opposed the motion. ECF 79.

**U.  The District Court Denies Simpson Permission to Remove the State Court Action to this Court**

67.     On June 3, 2026, Judge Vargas denied Simpson's motion for relief from the Anti-Removal Injunction. In so ruling, Judge Vargas found that such removal would be futile, as the State Court Action is subject to both mandatory and permissive abstention. *Simpson*, 2026 WL 1584643. The District Court also found that to allow Simpson to remove the State Court Action

to this Court and thereby "reward Simpson's repeated baseless attempts to remove the State Court Action to federal court and his repeated and frivolous efforts to delay state court proceedings, to say nothing of his threats to file for personal bankruptcy to thwart state court jurisdiction, would make a mockery of the Court." *Id.* at *2 (internal citations and quotations omitted, cleaned up).

## V. Simpson Reaffirms his Bad-Faith Intent in Filing the Bankruptcy and Abuses Counsel at a Deposition in the Adversary Proceeding He Initiated Against the Receiver

68.     At a deposition on June 5, 2026, Simpson admitted, in vulgar and abusive language, that he filed this bankruptcy to forum shop the State Court Action, telling Marty Bunin, the Receiver's counsel, the "State court is full of s[**]t . . . That's why I filed bankruptcy, you moron."  Schwartz Decl., Exhibit 1, Simpson Deposition Tr. at 563:12-16. Simpson's behavior in this proceeding has also already been of the same tenor as his behavior before the Commercial Division. For example, at the June 5, 2026 deposition in the Montauk Property AP, Simpson heaped abuse on both Chassen's counsel and the Receiver's counsel. *Id.* at 25:9 ("corrupt scumbag"); *id.* at 27:16 ("scumbag shmuck"); *id.* at 77:17 ("scum piece of s[**]t."); *id.* at 110:8-9 ("I don't care what your question was, Goddammit. Move on, you crook.").

69.     And despite being directed on the record to stop sending emails to this Court when the Court granted his attorney's retention motion, Simpson has nonetheless blanketed this Court, the Commercial Division, and the parties with harassing and abusive emails that violate both the state court and this Court's directives not to send such emails to the court. Schwartz Decl., Exhibit 2 (collected emails).[29] Further, in some of these emails Simpson also addresses

---

[29] NYSCEF Doc. No. 1847, September 24, 2025 Order; NYSCEF Doc. No. 1851, September 29, 2025 Order; NYSCEF Doc. No. 1998, October 8, 2025 Order; NYSCEF Doc. No. 2157, December 5, 2025 Order.

them to the Receiver in violation of the Receiver Order. NYSCEF Doc. No. 1360, Receiver

Order at 6. And in his most recent email (as of this filing), Simpson added Judge Vargas in

violation of her direct order. *See Simpson v. Chassen*, 1:25-cv-04004-JAV (S.D.N.Y), ECF 53,

Nov. 25, 2025 Order ("Mr. Simpson shall not send emails or communications directly to

Chambers.").

### BASES FOR RELIEF

70.     As demonstrated herein, Chassen asserts that the automatic stay should be

modified to permit the State Court Action to fully proceed before the Commercial Division.

71.     If this Motion is not granted, the claims asserted in the State Court Action will not

be decided by any Court. This is the case since it is now impossible for Simpson to remove the

State Court Action to this Court based upon the recent ruling of U.S. District Judge Vargas.

**I.     The Stay Applies Only With Respect to Direct Claims Against Simpson**

72.     The Bankruptcy Code provides that a bankruptcy petition operates as a stay of the

commencement or the continuation of a proceeding against a debtor. 11 U.S.C. § 362(a).

73.     While the automatic stay expressly prohibits certain actions against the debtor and

property of the bankruptcy estate, the automatic stay does not extend to third parties, such as the

JJ Arch Controlled Entities and does not prohibit the Receiver from continuing to manage the

property of the JJ Arch Controlled Entities. The automatic stay generally only applies to the

debtor and its property. *See Teachers. Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir.

1986); *Nev. Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 408 (S.D.N.Y.

2007).

74.     Notwithstanding, the general rule that the automatic stay does not apply to third

parties, the Second Circuit has recognized that the automatic stay can extend to non-debtors in

27

limited circumstances. *See Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282 (2003)(the automatic stay may apply to non-debtors where a claim against the non-debtor would have an immediate adverse economic consequence for the debtor's estate.).

75.     In *Queenie*, a plaintiff sought to continue the prosecution of a cause of action against a non-debtor, where continued prosecution of that cause of action was simultaneously stayed against the debtor.  There, the debtor argued that continued prosecution of the cause of action against the non-debtor would effectively liquidate the claim against the debtor, thereby resulting in an adverse impact on the debtor's estate.

76.     The Court should find that the automatic stay imposed by the Debtor's Chapter 11 Case does not extend to prohibit the Receiver from managing the non-debtor JJ Arch Controlled Entities including without limitation, marketing and selling the non-debtor property owned by those entities.

77.     The Receiver's continued management of the JJ Arch Controlled Entities after the Debtor filed his individual Chapter 11 Case is the polar opposite of *Queenie* because applying the stay to prevent the Receiver from continuing in his role for JJ Arch would actually result in an adverse economic consequence to the Debtor. Significantly, the Commercial Division has previously determined that sufficient grounds existed for the appointment of the Receiver and that his appointment was in the best interests of the JJ Arch Controlled Entities due to the Debtor's prior mismanagement of those entities, having left all their properties in default and foreclosure. Having recognized that the Debtor was unfit to manage and preserve the value of the JJ Arch Controlled Entities, the Commercial Division granted to the Receiver sole managerial authority to maximize the remaining equity value of the JJ Arch Controlled Entities, which included the potential sale of the assets of the JJ Arch Controlled Entities.

78.    As detailed above, Simpson and Chassen are each guarantors of the JJ Arch

Controlled Entities' mortgages and named guarantor-defendants in the foreclosure actions that

are still pending against these entities.[30] To Chassen's knowledge, the 89th Street Property is

already over $1,500,000.00 underwater (that is the amount of the debt is greater than the

remaining equity by $1.5 million),[31] with Chassen's and the Debtor's guaranty exposure

increasing with each passing month of default interest accrual. 1640 Montauk is accruing default

interest at the rate of approximately $30,000.00 per month. Without the Receiver being able to

effectuate the sales or other dispositions of the properties, the loans will continue to accrue

default interest such that Chassen and Simpson will not only lose all remaining equity but will

face increased liability on the guaranty of the mortgage. Such a scenario would almost certainly

result in an increase in the claims against the Debtor's bankruptcy estate.

79.    For these reasons, the Court should find that the automatic stay arising in this

Chapter 11 Case does not apply to the Receiver's acts on behalf of the JJ Arch Controlled

Entities. Alternatively, if the Court determines that the automatic stay is applicable to the

Receiver, the Court should modify the stay to allow him to continue to manage the JJ Arch

Controlled Entities for the reasons discussed below.

---

[30] The Receiver successfully resolved the foreclosures of 550 Metropolitan and Head of Pond by a third-party sale in the case of Head of Pond, and a deed in lieu of foreclosure in the case of 550 Metropolitan.

[31] In its recently filed motion for relief from the automatic stay [DE 78], 146 89th Street Funding LLC asserts by sworn statement that the total balance due exceeds $6 million and offers an appraisal that values the 89th Street Property at $5,750,000.  However, the lender makes clear that the only offers to purchase the 89th Street Property were not close to such appraised amount.

II.   **The Court Should Modify the Stay to Allow the State Court Action to Proceed in Its Entirety Before the Commercial Division**

80.   The Court may grant a party relief from the automatic stay under section 362(d) of the Bankruptcy Code, which, in pertinent part, provides:

> On request of a party in interest and after notice and a hearing, the court shall[32] grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d).

81.   "[T]he term 'for cause' [is] 'a broad and flexible concept that must be determined on a case-by-case basis.'" *Osuji v. Deutsche Bank, N.A.*, 589 B.R. 502, 508 (E.D.N.Y. 2018) (*quoting U.S. Bank Tr. Nat'l Assoc. v. Am. Airlines, Inc. (In re AMR Corp.)*, 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013)).

82.   Moreover, the Second Circuit considers twelve factors in determining whether cause exists to lift the stay, including:

1. whether relief would result in a partial or complete resolution of the issues;
2. lack of any connection with or interference with the bankruptcy case;
3. whether the other proceeding involves the debtor as a fiduciary;
4. whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
5. whether the debtor's insurer has assumed full responsibility for defending it;
6. whether the action primarily involves third parties;
7. whether litigation in another forum would prejudice the interests of other creditors;
8. whether the judgment claim arising from the other action is subject to equitable subordination;
9. whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
10. the interests of judicial economy and the expeditious and economical resolution of litigation;

---

[32] "Section 362(d) is mandatory, not permissive." *In re Harmony Holding Grp. LLC*, 655 B.R. 849, 854 (E.D.N.Y. 2023) (citing *In re Zeoli*, 249 B.R. 61, 63 (Bankr. S.D.N.Y. 2000)).

11. whether the parties are ready for trial in the other proceeding; and

12. impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (citation omitted).

83.     Courts may consider an additional factor of "whether the automatic stay is being used to shield misconduct." *In re Anton*, 145 B.R. 767, 770 (E.D.N.Y. 1992). "[T]he Court need only consider the relevant factors in making its determination." *In re Containership Co. (TCC) A/S*, 466 B.R. 219, 225 (Bankr. S.D.N.Y. 2012); *see also In re Sonnax Indus., Inc.*, 907 F.2d at 1286 (utilizing only four of the factors).  "Further, the Court may apportion weight among the factors as it sees fit." *Matter of Kossoff PLLC*, No. 21-10699 (DSJ), 2023 WL 3361053, at *4 (Bankr. S.D.N.Y. May 10, 2023).

84.     Courts have found cause to lift the stay based on one factor alone. *See, e.g., In re U.S. Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994) ("The factor of judicial economy may be considered in deciding whether to lift the automatic stay; in fact, a decision to lift the stay may be upheld on this ground alone.") (citation omitted); *cf. In re Sonnax Indus.*, 907 F.2d at 1286 (stating that the decision of whether to lift the stay is committed to the discretion of the bankruptcy judge) (internal citation omitted).

85.     In the instant matter, the following *Sonnax* factors are implicated and weigh in favor of lifting the stay.

86.     <u>Partial or complete resolution of the issues</u>.  The Commercial Division is able to completely resolve the state law issues concerning the Governance Disputes and membership status of both the JJ Arch and AREH.  Indeed, but for the filing of the instant Chapter 11 Case this case was set for trial in July 2026, with pending motions for default judgment and discovery sanctions. Importantly, the Commercial Division is now the only venue available for these

31

disputes to be determined since Simpson remains subject to the Anti-Removal Injunction which U.S. District Judge Vargas recently refused to modify.

87.    <u>Lack of any connection with or interference with the bankruptcy case</u>.  If this Motion is granted, the Debtor would continue to enjoy the protections of the automatic stay as it relates to matters other than the State Court Action.  There is no negative impact upon any property of the estate if the Commercial Division were to continue to hear the Governance Disputes and the Receiver is able to proceed with the management and sale of the property of the JJ Arch Controlled Entities.  To the contrary, allowing the Receiver to sell the non-debtor property owned by JJ Arch Controlled Entities while he negotiates releases from guaranty liability for the benefit of Simpson and Chassen would only serve to shrink the Debtor's creditor body and the aggregate amount of claims against the Debtor's bankruptcy estate.  This is a goal that Simpson should, but does not share.

88.    Moreover, JJ Arch and the JJ Arch Controlled Entities are clearly non-debtors. Proceeding with administration of the assets of non-debtors simply does not impact the administration of the Debtor's bankruptcy estate.

89.    <u>Whether the other proceeding involves the debtor as a fiduciary</u>.  The State Court Action does involve the question about whether the Debtor is capable of acting as a fiduciary and the Commercial Division answered that question definitively when it appointed the Receiver to take control over the JJ Arch Controlled Entities.

90.    <u>Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action</u>.  It is universally acknowledged that the Commercial Division is a well-run and respected specialized Court that oversees very complex commercial issues under New York State's laws.  As Judge Martin Glenn has expressed, the Commercial Division is adept and well

positioned to deal with complex commercial cases dealing with only state law claims. *See*, *In re Residential Capital LLC*, 488 B.R. 565 at 578 (Bankr. S.D.N.Y. 2013) (finding that "New York Supreme Court's Commercial Division is a specialized division for dealing with complex commercial cases, such as this case, and the action alleges only state law claims."); *Allstate Ins. Co. v Credit Suisse Sec. (USA) LLC*, 11 CIV. 2232 NRB, 2011 WL 4965150, at *7 (S.D.N.Y. Oct. 19, 2011) (stating that "because the underlying action alleges only state claims, the Commercial Division may have an edge in the relevant legal expertise"); *Allstate Ins. Co. v. Ace Sec. Corp.,* 2011 WL 3628852, at *10 (S.D.N.Y. Aug. 7, 2011) ("While federal district courts naturally possess expertise in applying federal law, this advantage dissipates for cases alleging exclusively state claims."). There can be no doubt that the Commercial Division is well qualified to decide matters such as the Governance Disputes. Movant asserts that the Governance Disputes fit squarely within the jurisdiction and expertise of the Commercial Division and the pending State Court Action.

91.     Moreover, the Commercial Division was initially chosen by Simpson as the place to resolve these state law issues, as he is the original Plaintiff in the pending action. Unhappy with the Commercial Division's decisions, Simpson now seeks to collaterally attack the Commercial Division's orders in this Court.

92.     Whether litigation in another forum would prejudice the interests of other creditors.    There are no creditors who would be prejudiced by the swift adjudication of the State Court Action in the Commercial Division.

93.     The interests of judicial economy and the expeditious and economical resolution of litigation. The Commercial Division has been recognized by the Bankruptcy Court and Judge Vargas as having the structure and ability to swiftly determine complex state law matters. Here,

33

the Commercial Division had already granted preliminary injunctions addressing corporate governance matters between Simpson and Chassen based on months of legal activity before it and was on the brink of determining the state law status of the JJ Arch's Membership. The Commercial Division's orders on these issues are clear, notwithstanding Simpson's contrary conduct. This Court should permit the long-litigated issue of JJ Arch's, and AREH's governance issues to be determined by the court that is most familiar and well-positioned to bring the matter to a swift and economical conclusion, *i.e.* the Commercial Division.

94. <u>The impact of stay on the parties and the balance of harms</u>. Finally, Simpson is using the automatic stay to shield his misconduct and further his forum shopping strategy. As more fully described above, the State Court Action involves a limited universe of parties. Simpson caused JJ Arch to file a chapter 11 proceeding in 2024 to frustrate the legitimate efforts of AREH and Chassen to execute transactions and has filed the instant Chapter 11 Case for the same purpose. *See, e.g.*, *In re Anton*, 145 B.R. at 771 ("[T]he timing strongly suggests that this Chapter 11 was filed for the shelter provided by the automatic stay against the pending litigation."). At the time of the commencement of this Chapter 11 Case, Simpson was facing a fully submitted civil and criminal contempt motion for his long-standing defiance of the Commercial Division's orders, which was *sub judice* following a multi-day evidentiary hearing. On numerous occasions, Simpson admitted in emails to the Commercial Division that he would essentially do anything necessary to prevent the Commercial Division from continuing to preside over the State Court Action. Over the course of the last three years, he has done just that by first commencing the JJ Arch chapter 11 case in bad faith, and then by frivolously attempting to remove the State Court Action to federal courts on multiple occasions.

34

95.     In addition, the Commercial Division appointed the Receiver to preserve value because Simpson had mismanaged JJ Arch and the JJ Arch Controlled Entities.  Allowing Simpson to use the automatic stay as a sword against the Receiver so that he can attempt to regain control of and prevent the Receiver from consummating the value preserving sales of the JJ Arch Controlled Entities' properties would harm every party in interest, including the Debtor's bankruptcy estate. The harm that Chassen and Simpson face if the Receiver is unable to act is financially devastating. Chassen and Simpson have ongoing guarantor liability that grows on a daily basis.

96.     If Simpson were interested in preserving the value of his bankruptcy estate for his creditors, he would be urging the Court to allow the Receiver to proceed in his role so that he could preserve value by consummating the sale of the JJ Arch Controlled Entities' properties while some measure of equity might still exist.  Instead, Simpson has done everything he can to interfere with the Receiver out of spite, including now filing this Chapter 11 Case. The fact that Simpson continues to put his own interest ahead of those of his estate and creditors calls into question whether he is fit to administer this Chapter 11 Case and suggests that the appointment of a Chapter 11 trustee may be warranted.

97.     The clear facts are that the ongoing delays caused by Simpson's tactics are leading to an erosion of equity and increased guarantor liability for Chassen and Simpson. Moreover, any stay of the Receiver's ability to act will mean that either no one is in charge of the JJ Arch Controlled Entities or Simpson or Chassen would need to be placed in charge. The record of the past 3 years, including but not limited to Judge Mastando's findings of gross mismanagement, shows that Simpson is incapable of being a fiduciary.

98.     The foregoing constitutes "cause" to modify the automatic stay for the purpose of allowing the State Court Action to proceed in its entirety before the Commercial Division, or at the very least to allow the Receiver to continue to manage the JJ Arch Controlled Entities.

**III.   The Court Should Follow the Rulings of Judge Mastando, Judge Furman, and Judge Vargas**

99.     In his decision modifying the stay in JJ Arch's chapter 11 case to allow the State Court Action to proceed before the Commercial Division, Judge Mastando noted that the first, tenth, eleventh and twelfth *Sonnax* factors weighed in favor of modifying the stay.  In his decision, Judge Mastando stated as follows:

> Because the automatic stay applies to only a fraction of the claims asserted in the State Court Proceeding, the wholesale continuation of the State Court Proceeding would result in the resolution of the issues outstanding at the time of removal. Judicial economy would therefore be served by the lifting of the stay, particularly in light of: (i) Justice Cohen's familiarity with the issues raised by both parties; (ii) the interrelated nature of their respective claims; and (iii) the fact that, prior to this bankruptcy, Justice Cohen was poised to answer an "ultimate issue" in this case: the party properly in control of the Debtor. *See* [Doc. 1-2, pp. 334–363] (the docket from the Commercial Division, which contains over 600 docket entries logged between August and the date of removal); *see also* [Ch. 11 Dkt., Doc. 41-19]; [Ch. 11 Dkt., Doc. 4-5, pp. 42, 63].
>
> Relatedly, the twelfth factor—impact of the stay and the balance of harms—favors lifting the stay. Prior to this bankruptcy, the parties spent seven months litigating their rights before Justice Cohen. That litigation resulted in a robust record, as well as the issuance of Interim Orders designed to, in the words of Justice Cohen, "keep the ship afloat while the litigation proceeds . . . ." [Ch. 11 Dkt., Doc. 14-1, p. 82]. This bankruptcy (and its resulting automatic stay) has therefore: (i) deprived the parties to the State Court Proceeding of the benefit of a court familiar with the issues presented in this case; and (ii) cast doubt on the applicability of provisional orders intended to benefit *all* parties by maintaining the Debtor's ability to operate AREH.

*In re JJ Arch LLC*, 2024 WL 2928033, at \*10. Another two years of litigation before the Commercial Division have come to pass and just as the Commercial Division had put in place procedures to bring about a swift determination of the ultimate issues in dispute, Simpson once

36

again halted progress with another bankruptcy filing in yet another coordinated effort to move the State Court Action away from the Commercial Division.  Judge Mastando's rationale in the JJ Arch decisions are equally, if not more applicable in the instant Chapter 11 Case.

100.   Similarly instructive is the June 3, 2026 decision from U.S. District Judge Vargas who after considering the same record set forth herein, refused Simpson's request to override the Anti-Removal Injunction and permit him to remove the State Court Action to this Court now that he filed his personal bankruptcy. *See Simpson,* 2026 WL 1584643. In that decision, the District Court found that any removal of the State Court Action to this Court would be futile, because mandatory and permissive abstention require remand. *Id.* at *1-2. Moreover, the District Court adopted Judge Mastando's analysis in the JJ Arch bankruptcy. *Id.* Finally, the District Court found that while all relevant factors mandated permissive abstention, the most salient point was that "reward[ing] Simpson's repeated baseless attempts to remove the State Court Action to federal court and his repeated and frivolous efforts to delay state court proceedings, to say nothing of his threats to file for personal bankruptcy to thwart state court jurisdiction, would make a mockery of the Court." *Id.* (citations and quotations omitted, cleaned up).

101.   Considering the continuing nature of the Anti-Removal Injunction, the only way for the claims in the State Court Action to proceed is before the Commercial Division. Moreover, these decisions, while not binding on this Court, nonetheless provide compelling reason for the Court to grant this motion and lift the automatic stay.

### **WAIVER OF BANKRUPTCY RULE 4001(a)(3) STAY**

102.   Pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3), Chassen requests that the Court direct that any order modifying the stay is immediately enforceable and not subject to the customary 14-day stay.  *See* Fed. R. Bankr. P. 4001 Advisory Committee Notes ("The

court may, in its discretion, order that Rule 4001(a)(3) is not applicable so that the prevailing party may immediately enforce and implement the order granting relief from the automatic stay. Alternatively, the court may order that the stay under Rule 4001(a)(3) is for a fixed period less than 10 days.").

## NOTICE

Notice of this Motion will be given to: (i) the Debtor and his counsel; (ii) the United States Trustee for the Southern District of New York; and (iii) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 4001(a)(1) and 9013. In light of the nature of the relief requested, Movant submits that no other or further notice is required or needed under the circumstances.

## CONCLUSION

WHEREFORE, Movant respectfully requests that this Court enter an order substantially in the form submitted herewith, permitting the State Court Action to proceed before the Commercial Division.

Dated: June 16, 2026

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**
By: */s/ Sean C. Southard*
Sean C. Southard
Brendan M. Scott
200 West 41st Street, 17th Floor
New York, New York 10036
ssouthard@klestadt.com
bscott@klestadt.com

-and-

**SCHWARTZ LAW PLLC**
By:/s/ Allen Schwartz
Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, New York 10038
347-460-5379

38

allen@allenschwartzlaw.com

*Counsel for Jared Chassen*