UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

In re:                                                          Case No. 26-10359-lbg

Jeffrey Solomon Simpson,                                        Chapter 11

                                    Debtor.                     Hon. Lisa G. Beckerman

----------------------------------------------------------------x

**OPPOSITION TO DEBTOR'S MOTION TO AUTHORIZE
THE CONSOLIDATION OF THE NET ASSETS OF 1055
PARK AVE 1 LLC AND 1055 PARK AVE PH LLC INTO THE
DEBTOR'S ESTATE**

Shauna M. DeLuca, Esq., an attorney at law duly admitted to practice before the Courts of the State of New York and the U.S. Bankruptcy Court for the Southern District of New York, hereby states the following to be true under penalty of perjury:

1.  I am an attorney with the law firm of Hasbani & Light, P.C., attorneys for the opponents NEW YORK 555, LLC ("Creditor") and PARK 2 AVE 1055, LLC ("Owner", together with Creditor, the "Opponents") in the above-referenced matter. As such, I am fully familiar with the facts and circumstances of this case.

2.  This Declaration is made in opposition to the Debtor Jeffrey Solomon Simpson's ("Debtor" or "Simpson") Motion filed on June 2, 2026, for entry of an Order pursuant to 11 U.S.C. §§ 105(a), 363(b), 541(a), and 542(a) seeking to consolidate the net assets of 1055 Park Ave 1 LLC (the "U1 LLC") and 1055 Park Ave PH LLC (the "PH LLC", together with the U1 LLC, the "LLCs") into the Debtor's estate (the "Consolidation Motion"). *See,* ECF Dkt. No. 72.

3.  For the reasons set forth herein, the Consolidation Motion should be denied.

**SUBSTANTIVE AND PROCEDURAL HISTORY**

4.  The Creditor is indisputably the owner and holder of the following promissory notes:

    a. A Promissory Note[1] dated July 25, 2022, evidencing the PH LLC's promise to repay a loan in the original principal amount of $2,700,000.00, plus interest and fees (the "PH Loan"); and

    b. A Promissory Note[2] dated July 26, 2022, evidencing the U1 LLC's promise to repay a loan in the original principal amount of $3,300,000.00, plus interest and fees (the "U1 Loan", together with the PH Loan, the "**Loans**").

5. In connection with the Loans, the Debtor executed:

    a. A Share Certificate[3] on behalf of the PH LLC, certifying that YJ Simco, LLC ("YJ Simco") is the registered owner of 100% of the membership interests in the PH LLC (the "PH Share Certificate"); and

    b. A Share Certificate[4] on behalf of the U1 LLC, certifying that YJ Simco is the registered owner of 100% of the membership interests in the U1 LLC (the "U1 Share Certificate", together with the PH Share Certificate, the "**Share Certificates**").

6. Additionally, the Debtor executed a Contribution Agreement on October 31, 2021, evidencing the transfer of Simpson's 100% interest in the LLCs to YJ Simco (the "Contribution Agreement"). A true and accurate copy of the Contribution Agreement is annexed hereto as **Exhibit A**.

7. As security for the PH Loan, the following documents were executed and delivered to the Creditor:

    a. A Mortgage[5] (the "PH Mortgage"), executed by the Debtor on behalf of the PH LLC, whereby the PH LLC granted Creditor a security interest over the real property located at 1055 Park Avenue, Unit PH, New York, NY 10028 (the "PH Property"); and

    b. A Pledge and Security Agreement[6] (the "PH Pledge"), executed by the Debtor on behalf of YJ Simco, whereby Debtor pledged to Creditor all of YJ Simco's membership interests in the PH LLC (the "PH Membership Interests").

---

[1] *See,* ECF Dkt. No. 60-4.
[2] *See,* ECF Dkt. No. 60-13.
[3] *See,* ECF Dkt. No. 60-6.
[4] *See,* ECF Dkt. No. 60-15.
[5] *See,* ECF Dkt. No. 60-5.
[6] *See,* ECF Dkt. No. 60-7.

8.  As security for the U1 Loan, the following documents were executed and delivered to the Creditor:

    a.  A Mortgage[7] (the "U1 Mortgage"), executed by the Debtor on behalf of the U1 LLC, whereby the U1 LLC granted Creditor a security interest over the real property located at 1055 Park Avenue, Unit 1, New York, NY 10028 (the "U1 Property", together with the PH Property, the "**Real Properties**"); and

    b.  A Pledge and Security Agreement[8] (the "U1 Pledge"), executed by the Debtor on behalf of YJ Simco, whereby Debtor pledged to Creditor all of YJ Simco's membership interests in the U1 LLC (the "U1 Membership Interests", together with the PH Membership Interests, the "**Membership Interests**").

9.  The LLCs defaulted under the Loans by failing to make the payments which came due on February 1, 2024. Additionally, the Loans matured on December 31, 2024, and the amounts owed were not repaid and remain due and outstanding. As a result, in February and March 2025 respectively, the Creditor commenced actions before the United States District Court for the Southern District of New York to foreclose the Mortgages (the "Foreclosure Actions"). *See,* Docket No.: 25-cv-01823-DEH-KHP and Docket No.: 25-cv-01687-LLS.

**THE YJ SIMCO BANKRUPTCY**

10. On March 9, 2025, the Foreclosure Actions were stayed after YJ Simco filed a Petition pursuant to Chapter 11 of the United States Bankruptcy Code before the Bankruptcy Court for the Southern District of New York which was assigned Docket Number 25-10437-lgb (the "YJ Simco BK"). A true and accurate copy of the Petition and Schedules filed in the YJ Simco BK are annexed hereto as **Exhibit B**.

11. On May 5, 2025, the Creditor filed Motions for Relief from the Automatic Stay with respect to the Membership Interests and Real Properties pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2) (the

---

[7] *See,* ECF Dkt. No. 60-14.
[8] *See,* ECF Dkt. No. 60-16.

"YJ Simco MFRs"). *See,* Docket No. 25-10437-lgb at ECF Dkt. Nos. 10-11.

12. On May 14, 2025, an Order was entered converting the YJ Simco BK from a Chapter 11 to a Chapter 7 case (the "Conversion Order"). *Id*., at ECF Dkt. No. 18.

13. On June 20, 2025, the Chapter 7 Trustee filed a Motion to Compel Simpson to grant the Trustee access to the Real Properties to Conduct Inspections. *Id*., at ECF Dkt. No. 27. That Motion was granted on June 26, 2026. *Id.,* at ECF Dkt. No. 37.

14. After the Chapter 7 Trustee conducted it inspections of the Real Properties, on August 26, 2025, the Chapter 7 Trustee abandoned the Real Properties based on insufficient equity. A true and accurate copy of the Trustee's Notice of Abandonment is annexed hereto as **Exhibit C**.

15. Subsequently, on August 28, 2025 and September 10, 2025, the Court granted the Creditor's YJ Simco MFRs. A true and accurate copy of these Orders are collectively annexed hereto as **Exhibit D**.

## THE UCC SALES

16. On December 2, 2025, the Creditor mailed:

   a. A Notice of Disposition[9] of collateral to the U1 LLC, advising that an Article 9 UCC Sale of the U1 Membership Interests would be sold by public auction on January 7, 2026 (the "U1 UCC Sale"); and
   b. A Notice of Disposition[10] of collateral to the PH LLC, advising that an Article 9 UCC Sale of the PH Membership Interests would be sold by public auction on January 7, 2026 (the "PH UCC Sale", together with the U1 UCC Sale, the "**UCC Sales**").

17. On January 7, 2026, the Creditor was the successful bidder[11] at the UCC Sales, and the Membership Interests were sold to the Creditor. By virtue of the Creditor's acquisition of the

---

[9] *See,* ECF Dkt. No. 60-19.
[10] *See,* ECF Dkt. No. 60-10.
[11] *See,* ECF Dkt. Nos. 60-11 and 60-20.

Membership Interests, the Creditor also became the owner of the Real Properties.

18. By Deeds[12] dated January 27, 2026, the LLCs, under the direction and control of Creditor, transferred its interests in the Real Properties to the Owner.

## THE INSTANT BANKRUPTCY

19. On February 19, 2026, the Debtor filed the instant petition pursuant to Chapter 11 of the United States Bankruptcy Code before the United States Bankruptcy Court for the Southern District of New York.

20. On May 6, 2026, the Creditor and Owner filed a Joint Motion to Confirm the Automatic Stay is not in effect with respect to their interests in the Membership Interests and Real Properties or alternatively, for relief from the provisions of the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2) (the "MFR"). *See,* ECF Dkt. No. 60.

21. On June 2, 2026, the Debtor filed an Opposition to the MFR. *See,* ECF Dkt. No. 74. That same day, Debtor filed the instant Consolidation Motion, alleging that Debtor is the sole member of the LLCs and as a result, his ownership interests in those entities are property of the bankruptcy estate, protected by the automatic stay. *See,* ECF Dkt. No. 72. The Opposition argues that if the Consolidation Motion is granted, the Real Properties will also become property of the bankruptcy estate and therefore protected by the automatic stay. *See,* ECF Dkt. No. 74.

22. On June 9, 2026, the Court held a hearing on the MFR, and adjourned the MFR to July 1, 2026, to be heard with the Consolidation Motion. As discussed at the June 9th hearing, central to the issue of the MFR is whether the Debtor owned (or owns) the Membership Interests.

23. For the reasons set forth herein, the Consolidation Motion should be denied.

---

[12] *See,* ECF Dkt. Nos. 60-12 and 60-21.

## A.  THE DEBTOR DOES NOT OWN THE MEMBERSHIP INTERESTS

24. The Debtor cannot consolidate the assets of the LLCs (*ie:* the Real Properties) into his individual bankruptcy estate because the Debtor did not own the Membership Interests at the time the Petition was filed and did not own the Membership Interests before the UCC Sales were completed. As a result, the Consolidation Motion must be denied.

### i.   *Debtor Did Not Own the Membership Interests Before the UCC Sales*

25. Debtor alleges that he owned the Membership Interests at the time of the UCC Sales. However, the documentary record establishes otherwise. Long before the UCC Sales were consummated, ownership of the Membership Interests were transferred to YJ Simco.

26. New York Limited Liability Company Law ("LLCL") § 602(b) reflects that, after the effective date of a limited liability company's initial articles of organization, a person may be admitted as a member:

> (1) in the case of a person acquiring a membership interest directly from the limited liability company, upon compliance with the operating agreement or, if the operating agreement does not so provide, upon the vote or written consent of a majority in interest of the members; or
>
> (2) in the case of an assignee of a membership interest of a member who has the power, as provided in the operating agreement, to grant the assignee the right to become a member, upon the exercise of that power and compliance with any conditions limiting the grant or exercise of the power.

*See,* LLCL §§ 602(b)(1) and (2). Courts look to the operating agreement, assignment documents, whether the transfer complied with the operating agreement, and whether the assignee was properly admitted as a member. *See, Behrend v. New Windsor Grp., LLC*, 180 A.D.3d 636, 639 (2d Dept. 2020); *Kaminski v. Sirera*, 169 A.D.3d 785, 786 (2d Dept. 2019).

27. Here, the Operating Agreements for the LLCs dated July 6, 2021, expressly permit the transfer of membership interests. Article 6 provides that "*the Member may transfer the whole or*

*any part of its Membership Interest.*" *See,* Consolidation Motion: Exhibits C and F: Article 6. Article 7 further provides that the Member (ie: Simpson) may substitute an assignee or transferee in its place, provided that the substituted member executes such instruments as may be necessary to effectuate the admission and agree to be bound by the Operating Agreement. *Id*., Article 7.1-7.2.

28. The operative transfer document is the Contribution Agreement dated October 31, 2022. That agreement identifies Simpson as the then-owner of 100% of the Membership Interests and expressly provides that Simpson "assigns, transfers and conveys" to YJ Simco "all of its right, title and interest" in the LLCs. *See,* **Exhibit A** (Contribution Agreement at Ex. A). The Operating Agreements impose no additional requirements for such a transfer. Accordingly, pursuant to the plain terms of the Contribution Agreement, Simpson transferred all of his ownership interest in the Membership Interests to YJ Simco[13].

29. Significantly, Debtor does not dispute that he executed the Contribution Agreement. Instead, he asserts that the agreement was somehow "never implemented." That contention is unsupported by any documentary evidence and is contrary to the operative transfer document itself. Debtor identifies no provision of the Operating Agreements, the Contribution Agreement, or the LLCL requiring any additional act to effectuate the transfer. Nor does he point to any document rescinding, voiding, or reversing the transfer after it occurred.

30. Debtor's reliance on the IRS SS-4 form and related communications with Arch Companies, Luxury Mortgage, and the IRS is misplaced. The SS-4 letter is dated May 25, 2021, and the referenced emails are from July 2021. *See,* Consolidation Motion: Exhibits B, D, E. All of these

---

[13] The LLCs were single-member LLCs when the October 2021 transfer occurred, which makes the admission/consent of other members which drove the Court in *Behrend and Kaminski* a non-issue here.

documents predate the October 31, 2022 Contribution Agreement and therefore shed no light on the ownership of the Membership Interests after the transfer was consummated.

31. The subsequent documentary record uniformly confirms YJ Simco's ownership of the Membership Interests. LLCL § 603(b) expressly contemplates that assignments of membership interests may be evidenced by certificates. *See,* LLCL § 603(b).  The July 2022 Share Certificates (executed by Simpson himself on behalf of the LLCs) identify YJ Simco as the holder of the Membership Interests and provide for their transfer. *See*, ECF Dkt. Nos. 60-6 and 60-15. These Share Certificates constitute contemporaneous evidence that the LLCs recognized YJ Simco as the owner of the Membership Interests.

32. Likewise, the Pledge Agreements executed by Simpson identify YJ Simco, not Simpson individually, as the owner of the Membership Interests pledged as collateral. *See*, ECF Dkt. Nos. 60-7 and 60-16. Having executed those agreements, Debtor cannot now disavow the ownership representations contained therein.

33. The same conclusion is reflected in the bankruptcy filings of YJ Simco. In the YJ Simco BK, YJ Simco identified the Membership Interests as property subject to Creditor's liens on Schedule D and disclosed its interest in the Membership Interests in its Statement of Financial Affairs. *See*, **Exhibit B**. Although Debtor now attempts to distance himself from those filings, this Court is aware that he regularly appeared and acted on behalf of YJ Simco in that case. The position advanced in the Consolidation Motion is therefore inconsistent not only with the governing transfer documents but also with the sworn representations made in the YJ Simco bankruptcy proceedings.

34. Finally, Debtor is equitably estopped from asserting that he personally owned the Membership Interests at the time of the UCC Sales. Under New York law, equitable estoppel precludes a party from taking a position inconsistent with prior conduct, representations, or

admissions where another party reasonably relied upon those representations to its detriment. *See*, *Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 184 (1982); *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 106 (2006). The uncontroverted record reflects that Debtor repeatedly represented, through executed corporate documents and related transactions, that YJ Simco, not Debtor individually, owned the Membership Interests. Creditor relied upon those representations in accepting the Membership Interests as collateral, entering into the loan transactions, and ultimately conducting the UCC Sales following default. Having induced Creditor to treat YJ Simco as the owner of the Membership Interests for years, Debtor cannot now reverse course and claim personal ownership merely because doing so serves his litigation objectives.

35. Every contemporaneous document bearing on ownership (the Operating Agreements, the Contribution Agreement, the Share Certificates, the Pledge Agreements, and the YJ Simco bankruptcy filings) confirms that YJ Simco owned the Membership Interests before the UCC Sales were completed. Debtor offers no documentary evidence establishing that he retained ownership after executing the Contribution Agreement, nor any evidence that the transfer was ever rescinded or undone. However, even if the Court were to conclude that some ambiguity exists regarding ownership (which the documentary record does not support) Debtor should be estopped from denying YJ Simco's ownership of the Membership Interests.

### ii. Debtor Did Not Own the Membership Interests When the Petition Was Filed

36. Even assuming that Debtor personally owned the Membership Interests prior to the UCC Sales, that assumption does not advance his position. Upon consummation of the UCC Sales, title to the Membership Interests passed to Creditor. Any interest Debtor may have had (though he had none) was extinguished upon completion of the UCC Sales. Accordingly, as of the Petition Date,

Debtor no longer held any legal or equitable interest in the Membership Interests and as a result, they are not property of his bankruptcy estate.

37. New York law strongly favors the finality of completed Article 9 foreclosure sales. As the Eastern District recently explained, "once a UCC sale is consummated, a debtor may seek money damages, but it may not unwind the sale." *Clean Air Car Serv. & Parking Branch Three, LLC v. Operr Plaza, LLC*, No. 24-CV-5445 (FB), 2025WL1181698, at *4 (E.D.N.Y. Apr. 23, 2025); *citing Atlas MF Mezzanine Borrower, LLC v. Macquerie Texas Loan Holder, LLC*, 174 A.D.3d 150, 162 (1st Dept. 2019) (internal quotations marks removed). Thus, even assuming Debtor could establish some defect[14] in the manner in which the UCC Sales were conducted, his remedy would be limited to damages; rescission of the completed sales is unavailable as a matter of New York law.

38. Debtor therefore cannot overcome the legal effect of the UCC Sales, all of which occurred before the commencement of this bankruptcy case. *See,* ECF Dkt. Nos. 60-11 and 60-20. To permit Debtor to recover the Membership Interests would effectively accomplish the very relief that New York law forbids: unwinding a completed Article 9 foreclosure sale. Such a result would undermine the finality afforded to secured creditors under New York law and improperly expand the scope of property entering the bankruptcy estate.

39. Recognizing this obstacle, Debtor speculates that the UCC Sales may constitute avoidable preferences under 11 U.S.C. § 547. That argument is deficient. Procedurally, no avoidance action

---

[14] Even assuming arguendo that Debtor personally owned the Membership Interests before they were pledged, the Pledge Agreements and subsequent UCC Sales remain valid because Creditor was a bona fide encumbrancer for value. The undisputed record establishes that Creditor extended substantial value in reliance upon the ownership representations contained in the loan documents, Pledge Agreements, Share Certificates, and related documents. At the time the security interests were granted, Creditor had no notice of any competing ownership claim or alleged defect in the pledgor's authority to pledge the Membership Interests. New York law protects parties who acquire security interests for value and in good faith reliance upon the apparent ownership and authority of the pledgor. *See*, N.Y. UCC § 9-203(b); *Karan v. Hoskins*, 22 A.D.3d 638, 639 (2d Dept. 2005).

has been commenced, no complaint has been filed, and no factual record has been developed. The Court is therefore being asked to assume the viability of a claim that does not presently exist.

40. Substantively, Debtor offers no analysis demonstrating a likelihood of success under § 547. To prevail on a preference claim, a debtor must establish, among other things, that the challenged transfer enabled the creditor to receive more than it would have received in a hypothetical Chapter 7 liquidation had the transfer not occurred. *See*, 11 U.S.C. § 547(b)(5). Debtor makes no attempt to satisfy this requirement, nor could he. The UCC Sales involved the foreclosure of the Creditor's collateral (the Membership Interests) following a default under the governing loan documents. As demonstrated in Opponents' pending MFR, the Real Properties are fully encumbered and lack equity. *See,* ECF Dkt. Nos. 60 and 77. Debtor cannot plausibly establish that the Creditor received more through the UCC Sales than it would have received in a Chapter 7 liquidation. Accordingly, Debtor fails to demonstrate any realistic prospect of success on a preference theory.

41. Debtor's passing assertion that the UCC Sales were defective because there is "no indication on ACRIS that transfer taxes were paid" is equally meritless. The UCC Sales involved the transfer of membership interests, not the conveyance of real property by deed. The absence of an ACRIS filing therefore does not establish that any transfer tax obligation existed, much less that one was violated. In any event, compliance with any applicable transfer tax requirements is a matter between the parties and the New York State Department of Taxation and Finance. It does not provide a basis for invalidating otherwise completed UCC Sales in this proceeding.

42. The Consolidation Motion rests on the assumption that the Membership Interests remain property that can be brought into this estate. They cannot. The Membership Interests were transferred through completed prepetition UCC Sales and are presently owned by Creditor. Unless and until Debtor successfully avoids those transfers (which he has made no effort to do) the

Membership Interests are beyond the reach of the estate. The Consolidation Motion is therefore premature, speculative, and incapable of providing Debtor any present relief.

**B. NEW YORK LIMITED LIABILITY COMPANY LAW § 1001 DOES NOT AUTHORIZE THE DEBTOR TO CONSOLIDATE THE ASSETS OF AN LLC INTO AN INDIVIDUAL'S BANKRUPTCY ESTATE**

43. Even if Debtor could overcome the threshold defect that the Membership Interests are not property of the estate, which he cannot, the Consolidation Motion fails on its own terms. Debtor relies upon LLCL § 1001, a statute that governs mergers and consolidations *between business entities*, not the absorption of LLC assets into an *individual's* personal bankruptcy estate, nor does the statute permit a debtor to collapse separate legal entities into his personal bankruptcy case by motion. Thus, the Consolidation Motion is devoid of any mechanism to allow the relief sought by Debtor and must be denied.

44. Pursuant to LLCL § 1001(a), consolidation "means a procedure in which two or more limited liability companies or other business entities consolidate into a single limited liability company or other business entity that shall be a new limited liability company or other business entity to be formed pursuant to the consolidation." LLCL § 1001(a).

45. "Pursuant to an agreement of consolidation … a domestic limited liability company may … consolidate with or into one or more domestic limited liability companies or other business entities **formed or organized under the laws of this state or any other state or the United States** … with such domestic limited liability company or other business entity as the agreement shall provide being the surviving or resulting domestic limited liability company or other business entity." LLCL § 1001(b).

46. LLCL § 102 defines a corporation, foreign corporation, foreign limited liability company, foreign limited partnership, limited liability company, domestic limited liability company, and

limited partnership as entities "formed under the laws of this state or any other state or the United States". *See,* LLCL §§ 102(g)(j)(k)(l)(m)(n).

47. "**Business**" is defined as "*every trade, occupation, professional or commercial activity.*" *See,* LLCL § 102(e). "**Other business entity**" is defined as "*any person, **other than a natural person** or domestic limited liability company.*" *See,* LLCL § 102(v). "**Person**" is defined as, among other things, "*any association, ... estate, ... or any other individual or entity in its own or any representative capacity.*" *See,* LLCL § 102(w).

48. Debtor argues that: (a) his bankruptcy estate qualifies as a "person" and therefore an "other business entity" which warrants consolidation of the LLCs' assets (ie: the Real Properties) into his personal bankruptcy estate; (b) the "motion" and "order" granting consolidation constitutes "the agreement for the consolidation"; and (c) "the estate is the surviving business entity". However, Debtor's bankruptcy estate is not a business entity contemplated by Article 10 and cannot satisfy the statutory mechanics of a consolidation.

49. First, the Debtor's bankruptcy estate, which is a collection of interests, is a statutory construct immediately created by the Bankruptcy Code upon the filing of the petition. *See,* 11 U.S.C. § 541. It is not a business entity **organized or formed under state law or the laws of the United States**, nor it is capable of entering into an agreement of consolidation as contemplated by LLCL § 1001(b) or Article 10 of the New York LLCL as a whole.

50. Second, Debtor seeks to accomplish through judicial fiat what Article 10 requires the constituent entities themselves to accomplish through a formal agreement of consolidation. An order granting the Consolidation Motion cannot substitute for the agreement mandated by LLCL § 1001(b). Among other things, the statute requires the parties to adopt a written agreement setting forth the terms and conditions of the consolidation, the manner and basis for converting ownership

interests, and the governance structure of the surviving entity. *See*, LLCL § 1002(b). Debtor identifies no such agreement and points to no authority permitting a court order to serve as a substitute.

51. Third, Debtor's proposed result bears no resemblance to the statutory consolidation contemplated by Article 10. Section 1001(a) describes a consolidation in which constituent entities combine into a surviving or newly formed business entity. By contrast, Debtor seeks to extinguish the separate existence of the LLCs and transfer their assets (the Real Properties) into a bankruptcy estate that already exists solely as a consequence of his bankruptcy filing. *See*, 11 U.S.C. § 541. Even if Debtor can get around the fact that the bankruptcy estate is not an entity organized or created under state law (though he cannot), no new business entity would be formed and no surviving business entity would continue operations. In fact, the bankruptcy estate itself will cease to exist upon completion of the case. The result would be that the LLCs "consolidated" with a **natural person** (Simpson), which is expressly what LLCL § 102(v) <u>excludes</u> from the definition of a "business entity". *See*, LLCL § 102(v). Debtor's theory therefore does not effectuate a statutory consolidation; it merely attempts to recharacterize LLC assets as his own.

52. This leads to the fourth reason the Consolidation Motion must be denied. Debtor's interpretation of LLCL § 1001 conflicts with the fundamental limits imposed by 11 U.S.C. § 541. A bankruptcy estate succeeds only to the legal and equitable interests held by the debtor as of the petition date; it acquires no greater rights than the debtor possessed. *See, In re S.W. Bach & Co.,* 435 B.R. 866 (Bankr. S.D.N.Y. 2010) (trustee can assert no greater rights in property, as property of the bankruptcy estate, than the debtor had on the date the case was commenced); *see also*, 11 U.S.C. § 541. Thus, even assuming Debtor owns the Membership Interests (though he does not), the estate would acquire *only* the Membership Interests, not the assets owned by the LLCs

themselves (*ie*: the Real Properties). As courts repeatedly recognize, "the property of an LLC is not property of individual members and members of an LLC have no interest in the specific property of the LLC." *See, Manson v. Friedberg*, No. 08 CIV. 3890 RO, 2013 WL 2896971, at *3 (S.D.N.Y. June 13, 2013); *see also, In re Reifler*, No. 22-CV-10201 (CS), 2023 WL 5510233, at *7 (S.D.N.Y. Aug. 25, 2023). As a result, the Debtor's reading of LLCL § 1001 would improperly enlarge the estate's property rights beyond those recognized under both New York law and the Bankruptcy Code.

53. For this reason, Debtor's reliance on 11 U.S.C. § 542(a) is equally misplaced. Section 542(a) authorizes turnover only of property that the trustee may use, sell, or lease under section 363. *See*, 11 U.S.C. § 542(a). Because section 363 applies only to property of the estate, section 542(a) is not a mechanism for disregarding separate legal entities (the LLCs) and compelling the turnover and absorption of assets owned by non-debtor LLCs. Rather, it applies only to property in which the estate already possesses a cognizable interest. Moreover, § 542(a) applies only where the property is of value or benefit to the estate, a showing Debtor cannot make for the reasons set forth in Opponents' pending MFR.

54. If granted, the Consolidation Motion would effectively pierce the corporate veil of the LLCs without the showing required under New York law and prejudice the Creditor by commingling the LLCs' assets subject to the Mortgage liens with the general assets of the Debtor's estate. Neither LLCL § 1001 nor the Bankruptcy Code authorizes such a result. As a result, the Consolidation Motion must be denied.

**WHEREFORE**, Opponents respectfully request an Order of this Court denying the Debtor's Motion to Consolidate in its entirety, and for such other, further and different relief as to this Court may deem just, proper and equitable.

Dated:  New York, NY
        June 24, 2026

                               **HASBANI & LIGHT, P.C.**
                               By: /s/ *Shauna M. DeLuca*
                               Shauna M. DeLuca, Esq.
                               Attorneys for Opponents
                               450 Seventh Ave, Suite 1901
                               New York, New York 10123
                               (212) 643-6677
                               sdeluca@hasbanilight.com