OLSHAN FROME WOLOSKY LLP
Jonathan T. Koevary
1325 Avenue of the Americas
New York, NY 10019
212.451.2300
jkoevary@olshanlaw.com

*Counsel for Arch Real Estate Holdings LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JEFFREY SOLOMON SIMPSON,<br><br>                        Debtor. | Chapter 11<br><br>Case No. 26-10359 (LGB) |

**OBJECTION OF ARCH REAL ESTATE HOLDINGS LLC TO DEBTOR'S MOTION
TO AUTHORIZE THE CONSOLIDATION OF THE NET ASSETS OF 1055 PARK AVE
<u>1 LLC AND 1055 PARK AVE PH LLC INTO THE DEBTOR'S ESTATE</u>**

13309772-1

Table of Contents

Page

ARGUMENT ..................................................................................................................4

    A.    The Motion Seeks a Disguised & Improper Substantive Consolidation .....................4

    B.    New York's Limited Liability Company Law Does Not Contemplate An
        Unchecked Asset Upstream ......................................................................................5

    C.    Transfer of Assets Away from LLCs Ignores YJ Simco's Interests and, in
        any Event, a Voidable Transfer under NY DCL.........................................................6

    D.    The Motion Seeks Equitable Relief Outside of Rule 7001 .........................................8

CONCLUSION ..............................................................................................................8

i

Table of Authorities

Page

CASES

*In re Augie/Restivo Baking Co., Ltd.*,
860 F.2d 515 (2d Cir. 1988)..................................................................................4

*In re JJ Arch LLC.*,
663 B.R. 258 (Bankr. S.D.N.Y. 2024), *motion for relief from judgment denied*
*sub nom. In re JJ Arch LLC*, 676 B.R. 675 (Bankr. S.D.N.Y. 2025), *and aff'd*
*sub nom. In re: JJ ARCH LLC*, Debtor., No. 24-CV-08649 (JAV), 2026 WL
1622865 (S.D.N.Y. June 5, 2026).........................................................................8

*In re Owens Corning*,
419 F.3d 195 (3d Cir. 2005)..................................................................................5

*Sealy v. Clifton, LLC*,
68 A.D.3d 846, 890 N.Y.S.2d 598 (2d Dept 2009) ..............................................4

STATUTES

New York Debtor & Creditor Law ...................................................................... 2, 6-7

New York's Limited Liability Company Law..........................................................5, 6

OTHER AUTHORITIES

Fed R. Bankr. P. 7001 ...............................................................................................8

ii

Arch Real Estate Holdings LLC for itself and for its affiliates Arch Asset Management LLC and Arch Property Management LLC (collectively, "AREH"), by and through its counsel, hereby files this objection (the "Objection"), to the Debtor's Motion to Authorize the Consolidation of the Net Assets of 1055 Park Ave 1 LLC and Park Ave PH LLC into the Debtor's Estate dated June 2, 2026 [ECF No. 72] (the "Motion").[1] In support of its Objection, AREH respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Motion seeks an order from this Court that would improperly upstream the assets of non-Debtor entities against which AREH has asserted claims into his bankruptcy estate, all while further bypassing an intermediate entity's interests, against which AREH also asserts claims. The relief sought amounts disguised substantive consolidation in violation of well-established and binding Second Circuit precedent prohibiting as such absent highly specific and limited circumstances subject to a substantial burden that the Motion makes no attempt to demonstrate. Instead, the Motion misplaces reliance on New York's limited liability company statute. Although, subject to creditor and member protections, the statute provides for a procedural mechanism to merge multiple New York limited liability companies into a single legal entity, no effort is shown to comply with this mechanism and in any event the relief sought is not a merger, but rather a taking of the LLCs' assets away from its creditors. So the statute is simply an inapplicable red herring. This taking doesn't simply affect the LLCs' creditors, but also YJ Simco's, against which AREH further asserts claims. While the Motion acknowledges the well-established dispute over the Debtor's ownership of the LLC and downplays previously provided evidence to the contrary through contribution agreements and a subsequent course of dealing that

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

YJ Simco, and not the Debtor, owns the membership interests. Without prejudice to any other objection, no upstream should occur without this issue being properly adjudicated. Moreover, the transfer of assets to the Debtor away from the LLCs would be voidable transfers violative of New York Debtor & Creditor Law. Finally, the Motion is improper to the extent it seeks relief that could only be granted through an adversary proceeding or as part of a chapter 11 plan or otherwise seeks relief over which this Court does not have subject matter jurisdiction or where abstention is warranted.

## FACTUAL BACKGROUND

2.      AREH is a creditor of the LLCs, and their parent, YJ Simco LLC ("YJ Simco"), for having provided extensive property, asset, and bookkeeping management services to the two LLCs, 1055 Park Ave PH LLC ("Park PH"), 1055 Park Ave ST LLC ("Park ST"), and 266 WMTR LLC (collectively, the "Disputed SPVs") and to YJ Simco LLC a multi-year period—services tied to real estate assets worth approximately $10 million—yet YJ Simco and the Disputed SPVs never paid the agreed-upon market-rate compensation required under Plaintiff's Operating Agreements.

3.      On June 1, 2026, AREH brought an action in Supreme Court, New York County alleging breach of contract and unjust enrichment as against the LLCs. (the "2026 Action"). A copy of the amended complaint dated June 5, 2026 is attached as **Exhibit A** hereto.

4.      The 2026 Action also seeks, among other things, to avoid as voidable transfers to the extent they occurred of (i) membership interests in Park ST and Park PH away from YJ Simco and (ii) Park Av ST's creation of a mortgage and guaranty in favor of Becker, Glynn, Muffly, Chassin & Hosinski LLP. Moreover, the 2026 Action seeks to avoid any avoidable transfers yet to be discovered that may have been made by YJ Simco or any of the Disputed SPVs, including the

2

13309772-1

LLCs to unknown "Jane Does," provided, however, that Jeffrey Simpson is expressly carved out from being a defendant.

5. Meanwhile, and as conceded in the Motion, the dispute over YJ Simco's ownership of the Disputed SPVs, including the LLCs are well documented and were the subject of several conferences before this Court in YJ Simco's bankruptcy case. This dispute was discussed in depth in YJ Simco Trustee's December 15 Status Report found at *In re YJ Simco LLC*, Bankr. S.D.N.Y. No. 15-10437 (LGB), ECF No. 80 at 14-19.[2]

6. The 2021 Contribution Agreements show that the Debtor and Yael Simpson transferred their membership interests in the Disputed SPVs to YJ Simco. *See* **Exhibit B**. Email correspondence, rent invoices to tenants from Disputed SPVs on YJ Simco letterhead, and YJ Simco financial statements prepared at the Debtor's direction listing the Disputed SPVs as subsidiaries of YJ Simco show a subsequent course of dealing that the Debtor and YJ Simco gave effect to the Contribution Agreements in practice. *See* **Exhibit C**. The transfer of the Disputed SPVs clearly occurred and was executed upon, and no evidence has ever been presented to the contrary.

7. The Motion further acknowledges the YJ Simco's abandonment of the estate interests in the LLCs, but omits the YJ Simco Trustee's rationale: "The Trustee, in his business judgment, has determined that there is no value in the Property considering the secured debt against the Property and the outstanding real estate taxes owed. Therefore, the Property has no value and is burdensome to the estate." YJ Simco ECF No. 51 at 1.

---

[2] The Motion twice blames the dispute on documents found through alleged improper seizure of the Debtor's personal records, but in fact the dispute arises from documents that form part of AREH's business records. This is explained in depth in AREH's *Statement and Reservation of Rights* dated April 6, 2026 ECF No. 45 at 2.

3

8.      The Debtor has a different view: "[t]he Debtor believes that with a properly conducted sale process, there is equity in the units." Motion ¶ 9.

## ARGUMENT

**A.      The Motion Seeks a Disguised & Improper Substantive Consolidation**

9.      "A membership interest in the limited liability company is personal property. A member has no interest in specific property of the limited liability company." NY Limited Liability Company Law § 601. *See Sealy v. Clifton, LLC*, 68 A.D.3d 846, 890 N.Y.S.2d 598 (2d Dept 2009) (50% owner of LLC lacks the capacity to sue for partition of real property owned by LLC).

10.     The Debtor claims a membership interest in the LLCs. That membership interest has been called into question in the YJ Simco case and was left unresolved. Assuming, *arguendo*, that the LLCs' membership interests do belong to the Debtor, the LLCs' assets do not.

11.     Through the 2026 Action, AREH asserts claims against the LLCs. The Debtor effectively asks for substantive consolidation of any of the LLCs' residual assets away from AREH's claims.

12.     Before a court may substantively consolidate entities, *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988), asks two "critical factors," namely, "whether creditors dealt with the entities as a single economic unit and, did not rely on their separate identity in extending credit, . . . [or] whether the affairs of the debtors are so entangled that consolidation will benefit all creditors." *Id.* at 518 (citation omitted).

> Resort to consolidation in such circumstances [involving commingling of assets and business functions], however, should not be Pavlovian. *Rather substantive consolidation should be used only after it has been determined that all creditors will benefit because untangling is either impossible or so costly as to consume the assets*. . . . Commingling, therefore, can justify substantive consolidation *only* where "the time and expense necessary even to attempt to unscramble them [is] so substantial as to threaten the realization of any net assets for all the creditors," . . . or where no accurate identification and allocation of assets is possible. In such circumstances, all creditors are better off with substantive consolidation.

4

*Id.* at 519 (emphasis added; citations omitted).

13.     "Substantive consolidation at its core is equity. Its exercise must lead to an equitable result. 'Communizing' assets of affiliated companies to one survivor to feed all creditors of all companies may to some be equal (and hence equitable). But it is hardly so for those creditors who have lawfully bargained prepetition for unequal treatment by obtaining guarantees of separate entities.'" *In re Owens Corning,* 419 F.3d 195, 216 (3d Cir. 2005), as amended (Aug. 23, 2005), as amended (Sept. 2, 2005), as amended (Oct. 12, 2005), as amended (Nov. 1, 2007).

14.     Here, the Debtor would have this Court merge two entities, substantive consolidation—not as part of a plan—but by motion under sections 363 and 105(a), without having made any showing or analysis as to whether substantive consolidation would be consistent with the requirements of *Augie Restivo*. To allow such a substantive consolidation on a summary basis without making any of the requisite findings, would not only be inequitable to creditors of the LLCs such as AREH, but would further encroach upon two generations of corporate law and any creditor's ability to rely on a non-consolidation opinion.

**B.     New York's Limited Liability Company Law Does Not Contemplate An Unchecked Asset Upstream**

15.     To get around this entrenched standard under *Augie Restivo*, the Debtor instead cites New York's LLC law in seeking approval of a quasi statutory consolidation from this Court. "Quasi," because New York's limited liability statutes do contemplate a consolidation procedure that under certain circumstances permit merging multiple limited liability companies into one. But that law does not contemplate what the Debtor seeks to accomplish here: a transfer of assets from one limited liability company to another, without having gone through the statutory merger requirements.

5

13309772-1

16.    The statute defines "other business entity" through the definition of "person" under § 102(w), which includes "any association, corporation, joint stock company, estate." However, the inclusion of "estate" in the generic definition of "person" hardly means that a bankruptcy estate of an individual debtor therefore qualifies as a "business entity" for purposes of the merger and consolidation provisions. The consolidation statute contemplates combinations of operating business entities, not the absorption of limited liability company assets into a bankruptcy estate simply because it suits the Debtor to ignore separate corporate existence in order to capture asset value. Importantly, New York LLC Law §§ 1001–1006 contain procedural protections for creditors (such as AREH) and members (such as YJ Simco, against which AREH is also a creditor), including requirements for a meeting called on twenty days' notice, filings with the Department of State, and protections for dissenting members and creditors, including the survival of lawsuits. The Debtor's Motion seeks to forgo these inconvenient state law requirements and simply have the Bankruptcy Court bless the upstream of assets to the Debtor because the separate corporate existence no longer benefits him. This is clearly a request for substantive consolidation, not adherence to New York's limited liability company law on merger.

**C.    Transfer of Assets Away from LLCs Ignores YJ Simco's Interests and, in any Event, a Voidable Transfer under NY DCL**

17.    Here, the treatment of the LLCs' membership interests as if they simply belong to the Debtor, such that any upstream would bypass YJ Simco's creditors flies in the face of evidence to the contrary showing that YJ Simco, and not the Debtor, owns the LLCs. No credence should be given to the Debtor's stated view in light of this dispute. Further, the purported transfers of the LLCs "net assets" to the Debtor's estate would be an obvious voidable transfer under New York's Uniform Voidable Transaction Act ("UVTA"), which, among other things, prohibits such no

13309772-1

consideration transfers as fraudulent to creditors when it renders the entity insolvent. *See* DCL §§ 273 and § 274.[3]

18.     Asking the Bankruptcy Court to essentially endorse the transfer of "net assets" without regard to existing disputes, corporate form, and applicable non-bankruptcy law is familiar territory for the Debtor. In the JJ Arch bankruptcy case, JJ Arch, then a debtor in possession acting at the current Debtor's direction, took on a similar tact. It filed a plan of reorganization in an effort to defeat a pending dismissal which plan was premised upon the transfer of assets to the JJ Arch bankruptcy estate, assets that were subject to pending challenge as to ownership and voidable transfer theories.

19.     In his dismissal memorandum and opinion Judge Mastando found:

However, the propriety of these transfers—much like the propriety of the Plan— depends entirely upon whether Mr. Simpson possesses the legal right to direct the subsidiaries controlled by the Debtor. On March 7, 2024 (the petition date) it was far from clear whether Mr. Simpson possessed this authority, as multiple parties (including Mr. Simpson) had spent seven months in state court litigating Mr. Simpson's continued membership in the Debtor. . . .  Seven months into this bankruptcy, it is still unclear whether Mr. Simpson possesses this authority.  . . . (asserting that the transfers contemplated by the Plan amount to "(1) breaches [of] Mr. Simpson's fiduciary duties to the various members of the[ ] [Portfolio Entities]; (2) [ ] fraudulent conveyance[s] under the New York's Uniform Voidable Transaction Act and (3) violat[ions] [of] the terms of the [Non-AREH Entities'] relevant Operating Agreements"); [Dismissal Reply, Doc. 188, p. 3] ("[T]he [P]lan relies upon the illegal transfer of interests of non-debtor subsidiaries to the Debtor

---

[3] Under the UVTA a "claim" means "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." DCL § 270(c). And a "creditor" is "a person that has a claim." DCL § 270(d). A "debtor" is "a person that is liable on a claim." DCL § 274 protects present creditors and provides that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." DCL § 273 protects both present and future creditors and provides that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation" where (1) there is "actual intent to hinder, delay or defraud any creditor of the debtor" or (2) the transfer was done "without receiving a reasonably equivalent value in exchange for the transfer" and (a) the remaining assets of the transferor "are unreasonably small" or (b) the debtor should have reasonably believed it would incur debts beyond its ability to pay as they become due.

7

13309772-1

and assets from subsidiaries for which the Debtor at this late hour has still not provided the information required by Bankruptcy Rule 2015.3.").

In summary, the Plan and the transfers it contemplates rest upon assumptions that: (i) were disputed by various parties throughout the course of the State Court Proceeding; and (ii) have thereafter been disputed before this Court from the outset of this case. Accordingly, any plan proposed solely at the direction of Mr. Simpson could not satisfy Sections 1129(a)(3) and 1129(a)(16) until the Debtor's governance—an issue first raised in, and central to, the State Court Proceeding—is determined. This necessarily means that, at the outset of this proceeding, there was "no reasonable possibility that the [D]ebtor [could] emerge from bankruptcy" which, in turn, compels a finding of bad faith.

*In re JJ Arch LLC.*, 663 B.R. 258, 287–88 (Bankr. S.D.N.Y. 2024), motion for relief from judgment denied *sub nom. In re JJ Arch LLC*, 676 B.R. 675 (Bankr. S.D.N.Y. 2025), and aff'd *sub nom. In re: JJ ARCH LLC*, Debtor., No. 24-CV-08649 (JAV), 2026 WL 1622865 (S.D.N.Y. June 5, 2026) (certain internal marks and citations omitted).

20.     As in the JJ Arch case, the proposed asset transfers here into the Debtor's estate, all while ignoring YJ Simco's interests, would constitute an illegal transfer of assets.

**D.     The Motion Seeks Equitable Relief Outside of Rule 7001**

21.     The Motion should be further denied on the grounds that it seeks the equitable relief of substantive consolidation outside of a plan. *See* Fed. R. Bankr. P. 7001(g). And to the extent the Motion relies on any sort of finding concerning the Debtor's interest in the property, the Motion would also violate Fed R. Bankr. P. 7001(b). Such an adversary proceeding and the corresponding procedural safeguards are necessary to protect the LLCs' and YJ Simco's creditors and questions over the extent of this Court's subject matter jurisdiction to administer assets of non-Debtor entities as well as questions over whether abstention would be warranted.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, AREH seeks an order (i) denying the Motion in all respects; and (ii) such other relief as is just and proper.

8

13309772-1

Dated: New York, New York
   June 24, 2026

           OLSHAN FROME WOLOSKY LLP


           By: /s/ Jonathan T. Koevary
              Jonathan T. Koevary
              1325 Avenue of the Americas
              New York, NY 10019
              212.452.2300
              jkoevary@olshanlaw.com

           *Attorneys for Arch Real Estate Holdings LLC*

9

13309772-1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 24, 2026, a true and correct copy of the foregoing was served on all parties in interest by electronic transmission via the Court's ECF system to all parties authorized to receive electronic notice in this case.

*/s/* Jonathan T. Koevary
Jonathan T. Koevary

13309772-1