UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re:                                          Chapter 11

JEFFREY SOLOMON SIMPSON,                         Case No. 26-10359-LGB

                Debtor.

------------------------------------------------------------------x

**IRVINE REALTY GROUP, INC.'S
MOTION FOR ENTRY OF AN ORDER
(I) CONFIRMING THE AUTOMATIC STAY IS NOT
IN EFFECT, (II) GRANTING RELIEF FROM THE AUTOMATIC
STAY, OR (III) COMPELLING PAYMENT OF COMMON CHARGES**

Irvine Realty Group, Inc. (the "Agent"), as agent for 1055 Park Avenue Condominium (the "Condominium Association"), by and through its undersigned counsel, hereby moves this Court (the "Motion") for entry of an order either (i) confirming the automatic stay under 11 U.S.C. § 362(a) does not apply to non-debtors 1055 Park Ave PH LLC, 1055 Park Ave 1 LLC, 1055 Park Ave 4 LLC, and 1055 Park Ave ST LLC (collectively, the "1055 Entities") to collect unpaid maintenance charges totaling $153,415.86, (ii) granting relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to allow the Agent to commence an action against the 1055 Entities to recover the unpaid maintenance charges, or (iii) compelling the Debtor to pay the unpaid maintenance charges pursuant to 11 U.S.C. § 503(b)(1).  In support hereof, the Agent respectfully states as follows:

**Preliminary Statement**

1.      While the Debtor and his spouse are believed to be the equity owners of each of the 1055 Entities, there have been no payments of Common Charges (defined below) since February (for Units S and 1) or April (for Units PH and S) of this year, which have exacerbated prior payment shortfalls.  The Property (defined below) cannot properly operate unless Common

Charges are paid by each occupant and hence the need for this Motion to address the delinquent payments.

2.     The 1055 Entities collectively own four of the six condominium units in the real property building located at 1055 Park Avenue, New York, New York 10028 (the "Property"). The 1055 Entities are therefore the beneficiaries of the services provided or arranged by the Agent, including various service agreements, heating contracts, exterminating contracts, cleaning services and other forms of maintenance and services at the Property (collectively, the "Common Charges").

3.     Even though the 1055 Entities have received and continue to receive substantial benefits from the Common Charges provided by the Agent, each of the 1055 Entities has been delinquent in payments to the Agent, both before and after the Debtor commenced this bankruptcy case.  As a result, the amounts owed to the Agent for Common Charges have swelled since the commencement of the Debtor's bankruptcy case and now total $153,415.86.  A ledger of the Common Charges owed for each of the four units at the Property is attached hereto as **Exhibit A**.

4.     The 1055 Entities are not debtors in this or any other Court.  Their connection to this bankruptcy case is the Debtor's purported ownership interest, directly or indirectly, in each of the 1055 Entities.  The Agent therefore seeks entry of a comfort order enabling it to pursue its remedies under applicable state law and stop the 1055 Entities' freeloading at the Property.

5.     Notwithstanding the foregoing, in an abundance of caution, particularly given the Debtor's efforts to "consolidate" his assets with that of 1055 Park Ave PH LLC and 1055 Park Ave 1 LLC, *see* [ECF No. 72], the Agent also requests alternative relief in the form of

2

termination of the automatic stay or compelling payment of the Common Charges in the event this Court decides any or all of the 1055 Entities' assets are property of the Debtor's estate.

**Background**

6.    The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 19, 2026, and thereafter has remained in possession of his assets and management of his business as a debtor-in-possession pursuant to Sections 1107 and 1108 of Title 11 of the United States Code.

7.    On March 5, 2026, the Debtor filed his *Schedules of Assets and Liabilities* [ECF No. 19] (the "Schedules").  The Debtor's Schedules do not list ownership interests in any of the condominium units at the Property.  *See* Schedule A/B.  However, the Schedules indicate that the Debtor is the 100% owner of the equity in three of the 1055 Entities (1055 Park Ave PH LLC, 1055 Park Ave 1 LLC, and 1055 Park Ave 4 LLC) and his wife is the 100% owner of the equity in the final 1055 Entity (Park Ave ST LLC).  *See* Schedule H Attachment.  The Debtor's Schedules further indicate that the Agent has a claim against the Debtor for "Prop manage 1055 condo," which is listed as contingent, unliquidated, and disputed.  *See* Schedule E/F ¶ 4.69.

8.    The Agent is the authorized agent of the Condominium Association.  Pursuant to the management agreement (the "Management Agreement") between the Condominium Association and the Agent, the Agent is authorized, on behalf of the Condominium Association, to collect all common charges or other charges due from tenants. *See* Management Agreement § 2(c)(2) ("Owner authorizes Agent to request, demand, collect, receive and receipt for any and all charges or rents which may at any time be or become due to Owner and to take such action in the name of the Owner by way of legal process, with the approval from the President of the Board of

3

Directors, and otherwise as may be required for the collection of delinquent rentals."). A true and correct copy of the Management Agreement is attached hereto as **Exhibit B**.

9.      As of the date hereof, the 1055 Entities owe Common Charges totaling $153,415.86, with the amounts owed per entity as follows:

| **1055 Entity** | **Amount Owed** |
|---|---|
| 1055 Park Ave PH LLC | $40,807.09 |
| 1055 Park Ave 1 LLC | $55,379.71 |
| 1055 Park Ave 4 LLC | $50,724.74 |
| 1055 Park Ave ST LLC | $6,504.32 |

## ARGUMENT

**A. The 1055 Entities' Assets Are Not Property of the Debtor's Estate and Therefore the Automatic Stay Does Not Apply to Those Assets**

10.      When a bankruptcy petition is filed, an estate is created and the debtor's property becomes part of the bankruptcy estate. Section 541(a) of the Bankruptcy Code defines property of the estate to include all "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Courts look to state law or other applicable nonbankruptcy law to determine whether a debtor has a prepetition interest in property. *See Butner v. United States*, 440 U.S. 48, 55 (1979) (stating that "[p]roperty interests are created and defined by state law"); *Taub v. Taub (In re Taub)*, 427 B.R. 208, 219 (Bankr.E.D.N.Y.2010) (stating that "[w]hether or not a debtor has an interest in property sufficient to bring it within the ambit of 'property of the estate' is determined by state law or other applicable nonbankruptcy law") (internal quotations marks omitted); *In re Dreier LLP*, 429 B.R. 112, 125 (Bankr. S.D.N.Y. 2010) (stating that absent an overriding federal policy, "[s]tate law or other applicable non-bankruptcy law normally determines the extent of the debtor's interest in property")

4

11.    Where the debtor has an interest under state law, section 541(a) of the Bankruptcy Code determines if that interest become property of the estate.  The Second Circuit has held that property of the estate includes "[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative." *See, e.g.*, *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir.2008) (internal quotation marks omitted).  However, "the estate succeeds to no more interest than the debtor had, and the estate takes its interest subject to the conditions under which the debtor held the interest."  *In re S. Side House, LLC*, 474 BR 391, 402 (Bankr. E.D.N.Y. 2012) (quoting *Kipp v. Depoy (In re Depoy)*, 29 B.R. 466, 469 (Bankr. N.D. Ind. 1983)).

12.    Although an individual shareholder's equity interests in a corporation or other business entity becomes part of his bankruptcy estate, the assets of the corporation or other business entity do not.  *Pryor v. D'Alessio (In re D'Alessio)*, 2014 Bankr. LEXIS 221, at *32-33 (Bankr. E.D.N.Y. Jan. 17, 2014) ("A corporation has a separate identity from its owners and, therefore, assets held by corporate entities are not property of an individual shareholder's bankruptcy estate."); *Manson v. Friedberg*, 2013 U.S. Dist. LEXIS 83488, at *8-9 (S.D.N.Y. June 13, 2013) ("The fact that Defendant . . . holds an ownership interest in [an] entity does not give him an ownership interest in assets owned by that entity.").

13.    The automatic stay generally only applies to debtors and their property.  *See, e.g.*, 11 U.S.C. 362(a)(3) (barring "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.").  Likewise, the automatic stay generally does not apply to any action against a debtor's equity holders or affiliates.  *See* 3 Collier on Bankruptcy P 362.03 (16th ed. 2026) ("[A]n action may be brought against general

5

partners of a partnership when the partnership, but not the partners, is in bankruptcy, or against corporate shareholders.") (citations omitted).

14.    Here, the Debtor is merely an equity holder, directly or indirectly, of the 1055 Entities and does not own any interest in the condominium units at the Property.  The 1055 Entities assets, including the condominium units, are therefore not property of the Debtor's estate.  Moreover, any action against the 1055 Entities is not an attempt an act to obtain possession of property of the Debtor's estate.  Accordingly, the Court should enter an order confirming the automatic stay does not apply to the 1055 Entities or their condominium units.

**B.  Cause Exists to Terminate the Automatic Stay to the Extent Applicable**

15.    Alternatively, if the 1055 Entities and their assets are property of the Debtor's estate, cause exists to terminate the automatic stay due to the Debtor's routine failure to pay for Common Charges post-petition.

16.    Under Section 362(d)(1) of the Bankruptcy Code, stay relief should be granted "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).  Neither the statute nor the legislative history defines the term "for cause" and the legislative history gives only very general guidance.  *See In re Sonnax Indus.*, 907 F.2d 1280, 1285 (2d Cir. 1990).  The party seeking relief from the automatic stay bears the initial burden of showing cause for relief from the stay, and, if "cause" is shown, the debtor must show that it is entitled to continuation of the automatic stay.  *In re 234-6 W. 22nd St. Corp.*, 214 B.R. 751, 756 (Bankr. S.D.N.Y. 1997).

17.    Although lack of adequate protection constitutes "cause" to lift the automatic stay, lack of adequate protection is not required to lift the automatic stay under section 362(d)(1).  *In re Hanna Jesionowska Practice LLC*, 2026 Bankr. LEXIS 1191, at *29 (Bankr. S.D.N.Y. May

6

14, 2026) ("[T]he statutory text makes clear that the two concepts are not coextensive, and that 'cause' can exist even where 'adequate protection' of eventual full payment is present.").

18.     Courts have routinely held that failure to make required post-petition payments constitutes "cause" to terminate the automatic stay. *Id.* at *28 ("Significant case law recognizes that an ongoing failure to make required payments, especially post-petition, can constitute cause to lift the stay."). This includes the failure to make mortgage payments, rental payments, and common charge payments. *Id*. at *29 (holding failure to pay post-petition condominium common charges constituted cause to terminate the automatic stay); *In re Moche*, 677 B.R. 592 (Bankr. S.D.N.Y. 2026) ("A debtor's failure to make required post-petition payments—whether mortgage payments or rent—can constitute cause to lift the stay and is one of the best examples of a lack of adequate protection' under section 362(d)(1).") (cleaned up); *In re Schuessler*, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008) (cause exists to terminate the automatic stay "where a debtor lacks the willingness; the current means; or a realistic, near-present ability to make contractual payments").

19.     The decision whether to vacate the automatic stay is committed to the sound discretion of the Court, after considering "the particular circumstances of the case and ascertain[ing] what is just to the claimants, the debtor, and the estate." *In re Mego Int'l, Inc.*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (citing *In re Terry*, 12 B.R. 578, 582 (Bankr. E.D. Wis. 1981).

20.     If the 1055 Entities' assets are property of the Debtor's estate, cause exists to terminate the automatic stay in this bankruptcy case. The Agent has not received Common Charge payments for Units S and 1 since the end of February. *See* Exhibit B at 1, 3. Similarly, the Agent has not received Common Charge payments for the remaining two units, Units PH and

4, since the beginning of April. *See* Exhibit B at 2, 4. As a result, the amounts owed by the 1055 Entities have swelled since the commencement of the Debtor's bankruptcy case, growing from $75,033.34 to $153,415.86. This is particularly damaging to the Condominium Association, the Agent, and the other owners at the Property given the 1055 Entities own 60% of the units at the Property. The continued failure to pay for Common Charges threatens continued maintenance and upkeep at the Property, and future payment in full may not be sufficient to undo the damage done. *In re Hanna Jesionowska Practice LLC*, 2026 Bankr. LEXIS 1191, at *38 ("[T]he impact of maintaining the stay severely prejudices the Board and other owners of condominium units given Debtor's ongoing failure to pay common charges, resulting in financial shortfalls that the Board and other occupants must subsidize for as long as Debtor is allowed to benefit from the stay without even making payments."). Given the foregoing, the automatic stay should be terminated to the extent the 1055 Entities' assets are property of the Debtor's estate.

**C. The Debtor Should Be Compelled to Pay the Common Charges if the 1055 Entities' Assets Are Property of His Estate**

21. If the 1055 Entities' assets are property of the Debtor's estate, and if the Court declines to terminate the automatic stay, the Debtor should be compelled to pay the post-petition Common Charges as necessary costs to preserve assets of the Debtor's estate.

22. Section 503(b)(1) of the Bankruptcy Code provides for the allowance of administrative expense claims for "the actual, necessary costs and expenses of preserving the estate … ." 11 U.S.C. § 503(b)(1)(A). An expense is administrative if it arises out of a transaction between the creditor and debtor-in-possession to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession. *In re Bethlehem Steel*, 479 F.3d 167, 172 (2d Cir. 2007). Consideration exists generally where (1) the debtor-in-possession induces the creditor to perform post-petition, or (2)

the creditor performs under an executory contract prior to rejection. *In re CIS Corp.*, 142 B.R. 640, 643 (S.D.N.Y. 1992). However, inducement is not required where the claim is based on the Debtor's use and enjoyment of property. *See, e.g., In re United Trucking Serv., Inc.*, 851 F.2d 159, 161 (6th Cir. 1988) (holding where the claim arises from the post-petition use of property pursuant to a prepetition lease, the "inducement" test does not apply, and the claim is based upon unjust enrichment). Typical examples of administrative expense claims include outlays for repairs, upkeep, freight, insuring the value of the property, storage of the property, rent and for other goods and services incidental to protecting, conserving, maintaining, and rehabilitating the estate. *See Bethlehem Steel*, 479 F.3d at 172; *Trustees of the Amalgamated Insurance Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986); 4 Collier on Bankruptcy P 503.06 (16th ed. 2026).

23. Here, the Agent has provided the Common Charges to all of the residents at the Property, including the 1055 Entities. The 1055 Entities have benefitted from their use and enjoyment of these services and the Common Charges have enabled the 1055 Entities to preserve the value of their respective condominium units. To the extent that the 1055 Entities' assets are assets of the Debtor's estate, the Debtor itself has benefitted from the Common Charges, and the Debtor should be required to immediately pay all outstanding post-petition Common Charges.

[*Remainder of page left intentionally blank*]

9

**WHEREFORE**, the Debtor respectfully requests entry of an order granting the relief sought herein and such other and further relief as is just and proper.

Dated: New York, New York
June 25, 2026

GOLDBERG WEPRIN
FINKEL GOLDSTEIN, LLP
Attorneys for Irvine Realty Group, Inc.
125 Park Avenue, 12th Floor
New York, New York 10017
(212) 221-5700


By:     /s/ Bryant P. Churbuck, Esq.