## MANAGEMENT AGREEMENT

AGREEMENT dated August 19, 2021 by and between 1055 Park Avenue Condominium hereinafter called ("OWNER") and Irvine Realty Group, Inc. (hereinafter called "AGENT"), having an office at 122 East 55th Street, New York, New York, 10022.

In consideration of the terms, conditions and covenants hereinafter set forth, the parties mutually agree as follows:

1.      Creation of Exclusive Agency :      The Owner appoints Agent and Agent accepts appointment, on the terms and conditions hereinafter provided, as the exclusive managing agent.   This shall apply to the following property (s) :

> 1055 Park Avenue, New York, New York
> (hereinaftercalled "Property")

2.      Duties of Agent:      Agent shall render services and perform duties as follows:

(a)      On the basis of a maintenance schedule, in compliance with the job standards and wage rates to be approved by Owner on the recommendation of Agent, to investigate, hire, pay, supervise and discharge the personnel necessary to be employed in order to properly maintain and operate the Property including but not limited to service agreements, heating contracts, exterminating contracts, cleaning services.   All such personnel shall be in the Owner's employ and payments of any kind including but not limited to wages, social security, disability insurance, federal/state taxes and unemployment contributions are Owner's responsibility.   Owner shall have the final approval for engaging any particular contractor as well as have the right to designate particular contractors for the Property.

(b)      Maintain businesslike relations with Owners, whose service requests shall be received, considered and acted upon and recorded in systematic fashion in order to show the action taken with respect to each to determine whether repairs or actions are responsibility of the Owner.   Agent shall use its best efforts to enforce the terms of the declaration and by laws of the condominium.

(c)      (1)      Use its best efforts to supervise and expedite the approval process for new and renewal leases, sales for residential rental space at the Property in accordance with the guidelines agreed upon between Owner and Agent and as required by applicable law.  Agent shall attend and coordinate all closing in cooperation with the Owners legal council for a fee which shall be paid by all buyers.   File with the City of New York and other governmental agencies all forms required by law.

(2)    At Owner's expense, collect all common charges or other charges due from tenants. Owner authorizes Agent to request, demand, collect, receive and receipt for any and all charges or rents which may at any time be or become due to Owner and to take such action in the name of the Owner by way of legal process, with the approval from the President of the Board of Directors, and otherwise as may be required for the collection of delinquent rentals.

(d)    At the sole cost and expense of Owner, Agent will, cause the property to be maintained according to standards acceptable to Owner, including by not limited to, interior and exterior cleaning painting, electrical, carpentry and such other normal maintenance and repair work as may be necessary. For any one item of repair or replacement the expense incurred shall not exceed the sum of $1000.00 unless specifically authorized by Owner; except however, that emergency repairs, involving danger to life or Property, to repair said violation of Law and Statute, or immediately necessary for the preservation and safety of the property or for the safety of the tenants, or required to avoid the suspension of a necessary service the Property, may be made by Agent at the sole cost and expense of Owner irrespective of the authority as to emergency repairs. It is understood and agreed that the Agent will if at all possible, confer immediately with the Owner regarding every such situation. The Owner expects the Agent to advise them of accounts payable on a timely basis and Owner will provide sufficient funds to Agent so that there are no excessive arrears. Agent shall not be liable for the non-payment of any bill or obligation in the event there are insufficient funds in the Owner's account. All repairs will be done in keeping with the standards of a Landmark building and in accordance with the Owners written specifications.

The Agent shall not be liable for any loss or damage incurred unless such injury or damage shall be caused by the Agent's gross negligence or willful misconduct. The Owner shall indemnify the Agent against and hold the Agent harmless and defend any action from (a) any liability, damage, costs and expenses (including attorney's fees) sustained or incurred for injury to any person or property about and in connection with the Property, for any cause whatsoever, unless such injury or damage shall be caused by the Agent's gross negligence or willful misconduct.

(e)    Owner shall carry liability and other such insurance as may be necessary for the protection of the interest of the Owner and Agent. Owner agrees to designate the Agent as a party insured with Owner. Copies of all insurance policies showing the amount of and that Agent is named insured shall be delivered to the Agent.

(f)    Subject to the approval by Owner, enter contracts for water, electric, gas fuel, oil, telephone, extermination, and other necessary services as Owner

Page 3

deems advisable, and place orders for such equipment, tools, appliance, materials, and supplies as are necessary to properly maintain the Property. All such contracts and

ordersshall be made in the name of Owner who shall be the responsible party thereunder and shall be subject to the limitations set forth in the Paragraph (d) or this Article.

(g)    To regularly and punctually disburse funds collected and deposited in the separate special account hereinafter provided for the following purposes:

1.    To pay salaries and any other compensation due and payable to Owner's employees for services rendered in connection with the Property.
2.    To pay real estate and other taxes.
3.    To pay insurance premiums
4.    To pay utility charges
5.    To pay other charges or payments which shall be authorized by Owner.

(h)    To maintain a comprehensive system of office records, books and accounts in a manner satisfactory to Owner, which records shall be subject to examination by Owner at reasonable hours upon reasonable notice.  Agent shall render a quarterly statement of receipts and disbursements and provide current financial information promptly as requested by Owner.

3.    <u>Bank Account :</u>    Agent shall establish and maintain, in a bank whose deposits are insured by the Federal Deposit Insurance Corporation, a separate bank account as Agent for Owner for the deposit of the monies of the Property with authority to draw thereon for any payments to be made by Agent in accordance with this agreement.  Interest earned on this special account shall be for the benefit of the Owner.  Owner shall, at all times, maintain a balance of not less than one (1) months carrying costs in order to permit Agent to make such payments as it is obligated to make on Owner's behalf in a timely manner.

4.    <u>Compensation :</u>

a)  Agent shall receive as compensation for its services as set forth in this agreement $2000.00 per month.  These fees shall be deducted from the account of the Owner as an expense of the property.

b)  Emergency repairs or other services requiring the attendance at the Property by Agent's employees for more than 10 hours per month shall be billed at the rate of $125.00 per hour.  Owner shall be notified of this fee's activation prior to it's commencement.

c)  If Owner requests repairs or improvements to the Property which shall exceed $10,000.00 per job in cost, Agent shall be entitled to a fee of 5 % of the total cost of the repair or improvement as a fee for the research and required supervision of said repairs or improvements.  Owner shall be notified of this fee's activation prior to it's commencement.

(d)    Agent shall charge Owner as an expense of the Property all disbursements incurred in the management of the Property including but not limited to messenger service, long distance telephone/fax charges, Federal Express or other overnight courier services including all costs of communicating with the Owner.

5.    <u>Effective Date, Termination :</u>    This agreement shall be effective commencing as of the date of this Agreement and shall continue thereafter unless terminated by either party upon not less than thirty (30) days prior written notice sent to the other unless the cause of such termination is for Agent's willful misconduct.  Upon the termination of this Agreement, Agent will immediately forward to the Owner the balance (if any) of the fund held in the special account after the payment of any outstanding expenses or charges incurred and due and owing pursuant to the terms of this agreement and return all records including all books and account referenced in provision 2 (g).

6.    <u>Miscellaneous :</u>

(a)    Owner shall at all times notify and advise Agent in writing of his current address and telephone/fax number and where and to whom Agent is to forward any statements, payments or inquiries.  Owner shall also provide Agent with a telephone/fax number of an individual other than Owner authorized by Owner to act on his behalf in the event of an emergency and his (Owner's) unavailability.

(b)    Owner will notify the resident(s) of the Property that all of the common charges due shall be paid directly to Agent.

(c)    This Agreement contains the entire understanding of the parties and may not be modified, altered or changed except by in writing subscribed to by both parties.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement.


Owner:                                            Agent:
1055 Park Avenue Condominium                      Irvine Realty Group, Inc.

BY: _Joan L. Greenberg_____    _____
  Joan L. Greenberg                 Paul Irvine
  President                         President


Approved by:

_____
Jeffrey Simpson
Presumptive President Elect