# COMMON INTEREST, JOINT PROSECUTION AND JOINT DEFENSE AGREEMENT

This Common Interest, Joint Prosecution and Joint Defense Agreement (the "Agreement"), made on August 6, 2023, but *nunc pro tunc* effective as of August 3, 2023 ("Effective Date"), memorializes certain understandings by and among 608941 NJ Inc. ("35Oak") and Jared Chassen ("Mr. Chassen," and with 35Oak, the "Parties" and individually, a "Party"), and among the Parties' respective undersigned counsel and any advisers acting on their behalf with reference to the following:

**WHEREAS,** Jeffrey Simpson ("Mr. Simpson") has threatened legal action against the Parties in connection with disputes related to Mr. Simpson's role with and removal from JJ Arch LLC ("JJ") and Arch Real Estate Holding LLC ("AREH") (the "Disputes");

**WHEREAS,** the Parties recognize that they share a common legal interest with respect to the Disputes and that their respective and common legal interests will be best served if they can exchange information related to the Disputes subject to and without waiver of the continued protection of the attorney-client privilege, attorney work product doctrine, common interest privilege, joint defense privilege and/or any other applicable privileges or protections.

**NOW THEREFORE,** in consideration of the mutual agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree to the following:

1. **DEFINITIONS.** The following definitions shall apply herein to this Agreement:

(a) **"Privileged Information"** means communications (oral, written and electronic) between the Parties, their representatives and/or their respective counsel ("Communications"), and documents generated by, or exchanged between, the Parties, their representatives and/or their respective counsel ("Documents"), each of which may include attorney work product, opinions or attorney-client privileged communications exchanged among the Parties, their representatives and/or their respective counsel in the course of or in connection with the Disputes, and information contained in, referred to or reflected in any such Communications or Documents.

(b) **"Exempted Information"** means information that would otherwise be considered Privileged Information, except one or more of the following specific exemptions applies: (i) the information was in the possession of or known by the receiving Party prior to the time it was first communicated by the supplying Party; (ii) the information was independently developed by the receiving Party without the use of Privileged Information of any other Party; or (iii) the information becomes known to the receiving Party from a source other than the supplying Party, without breach of this Agreement.

(c) **"Third Party"** means anyone besides a Party to this Agreement or attorneys and staff at the law firms of counsel listed below.

2. **MUTUALITY OF INTEREST / MAINTENANCE OF PRIVILEGE.** A mutuality of interest exists between the Parties with respect to the Disputes. Privileged Information is deemed

to be confidential and may be protected from disclosure to any Third Party by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, joint prosecution / defense privilege or any other applicable grounds of immunity from discovery. The Parties agree to ensure that the exchange and disclosure of information, materials or opinions does not diminish in any way the confidentiality of the Privileged Information and does not constitute a waiver of any privilege or immunity otherwise available. This Agreement itself constitutes Privileged Information and is subject to all the confidentiality restrictions contained in this Agreement, unless its production is required by legal process or its disclosure is needed to support a privilege or claim arising from this Agreement. Each Party shall use its reasonable best efforts to resist any attempt by any Third Party to obtain or gain access to Privileged Information and shall avail affirmatively (and assist any other Party in availing affirmatively) of all lawful steps, remedies and recourses for asserting, maintaining and defending the privileged and confidential status of such Privileged Information of any Party. This Agreement is in no way intended to encourage or commit any violation of law or unlawful interference with any official proceeding or investigation.

3.      **PROTECTIVE ORDERS.** Nothing in this Agreement operates to modify the protections afforded by any protective order that may be entered in this case. Upon entry of a protective order of the Court, any Privileged Information will be treated in accordance with the terms therein, those terms supplementing these. If there is any inconsistency between this Agreement and any protective order subsequently issued by the Court, then the terms of the protective order shall govern.

4.      **NUNC PRO TUNC.** Prior to the execution of this Agreement, certain of the Parties, after agreeing that there was a common legal interest among them relating to the Disputes and that their Communications would be privileged, may have shared information and materials with one another that would be deemed Privileged Information as defined in and governed by this Agreement. The Parties agree and acknowledge that such previously shared information is, *nunc pro tunc*, subject to: (a) the same legal privileges and protections as though it had been shared after the execution of this Agreement; and (b) all the terms and conditions of this Agreement.

5.      **AUTHORIZED USES OF PRIVILEGED INFORMATION.** Privileged Information of another Party may be disclosed, published or disseminated to a Third Party only in the following circumstances:

(a)     A Party may disclose Privileged Information to an outside consultant or outside expert retained in connection with the Disputes, provided that (a) such consultant or expert is under an obligation of confidentiality, (b) the consultant or expert agrees to be bound by the terms of this Agreement and (c) such disclosure is otherwise under circumstances that maintain applicable confidentiality, privileges and immunities.

NYSCEF DOC. NO. 1901

RECEIVED NYSCEF: 10/02/2025

(b)      A Party may disclose Privileged Information to a Third Party in response to an order, subpoena, request or demand for disclosure from any court or governmental agency, or from a party to any litigation or administrative proceeding (a "Disclosure Demand"); provided, however, that a Party receiving a Disclosure Demand shall as soon as reasonably possible give written notice to the other Parties of such Disclosure Demand so that such Parties shall have sufficient opportunity, if desired, to prevent such disclosure. Additionally, the disclosing Party shall assert any and all applicable privileges and protections and shall take any additional reasonable steps to ensure that any Privileged Information is protected from disclosure. If such information is ordered to be disclosed, the disclosing Party shall take reasonable steps to ensure the information is produced pursuant to a confidentiality or protective order.

(c)      A Party may disclose, publish or disseminate its own Privileged or Exempted Information. Such disclosure shall not include any Privileged Information of another Party.

The authorized use described above will not by itself establish an entitlement to use or disclose Privileged Information on behalf of any other Party or on behalf of a Third Party.

**6.      FURTHER RESTRICTION ON USE OF PRIVILEGED INFORMATION.** None of a Party's Privileged Information can be used against it by any other Party to this Agreement in connection with any lawsuit or any subsequent proceedings relating to the same subject matter. This prohibition does not apply to a Party's use of its own Privileged or Exempted Information. This obligation does not apply to materials or information that are obtained independently without breach of this Agreement; that are properly obtained through the discovery process of any litigation or that were originated by a Party or its counsel and do not incorporate Privileged Information received from another Party or its counsel.

**7.      RESPONSIBILITY FOR COSTS.** This Agreement does not impose any cost-sharing responsibilities and does not alter or abridge other separate cost-sharing or indemnification agreements between the Parties.

**8.      INDEPENDENCE OF PARTIES.** Nothing in this Agreement will be construed as limiting, altering or otherwise affecting the independent status of each of the Parties hereto, or their rights to independently manage and direct their legal and business strategy, including but not limited to the right to independently analyze and take action with respect to the Disputes.

**9.      NO ATTORNEY-CLIENT RELATIONSHIP CREATED.** The existence of this Agreement alone or of a joint prosecution / defense effort shall not be deemed to create an attorney-client relationship. Rather, said relationship may only be created by a fully executed engagement letter between the attorney and the respective party. The Parties expressly understand and acknowledge that each counsel will be acting only as the attorney for his respective client or clients and will owe a duty of loyalty only to that client or those clients. The Parties expressly agree that neither this Agreement nor the underlying relationship it documents will be used to attempt to disqualify any counsel that is a signatory hereto.

**10.      FORMAL DISCOVERY.** This Agreement is not intended to prevent or to limit any Party from seeking documents from any other Party to this Agreement through formal discovery

4892-6024-2805 v.2

3

processes. By executing this Agreement, no Party waives any objections that may be asserted in response to a formal discovery request.

**11.    AMENDMENTS / COUNTERPARTS.** This Agreement may be modified, amended or supplemented only by written mutual agreement of all Parties then part of the joint prosecution / defense effort. Any such modification, amendment or supplement shall not be binding on the other Parties until set out in writing, dated and signed by all the Parties, and thereafter shall be attached to this Agreement. This Agreement may be executed by electronic signature (facsimile or email (PDF)) and in any number of counterparts, all of which when taken together shall be deemed as an original, but all of which together shall constitute one and the same agreement.

**12.    ADDITIONAL PARTIES / ADDITIONAL COUNSEL.** Additional Parties can join this Agreement only with the express written consent of all then existing Parties. Any Party that retains additional or substitute counsel shall promptly give notice thereof to the other Parties and such additional or substitute counsel shall subscribe to this Agreement by giving notice to all Parties of the intention to abide by its terms before being given access to any Privileged Information.

**13.    RIGHT TO TERMINATE, TERMINATION IS PROSPECTIVE ONLY.** Each Party has the right to terminate its participation in this Agreement at any time. Such termination shall be effective upon tendering written notice to each other Party. A terminating Party remains bound to maintain the confidentiality of all Privileged Information, made or received under this Agreement and bound by the limitations on use of such materials as set forth in this Agreement. Any and all materials provided by the terminating Party can be utilized in connection with the Disputes as long as such use does not violate other non-disclosure provisions in this Agreement.

**14.    AUTOMATIC TERMINATION.** The privileges and immunities that exist by law and are confirmed in this Agreement shall not be waived upon final resolution of the Disputes and will be deemed to continue in full force and effect. Upon final resolution of the Disputes, each Party shall promptly return all tangible things, documents or other written communications or information that constitutes, contains or refers to Privileged Information provided pursuant to this Agreement to the Party that originally provided the tangible thing, document or other written communication or information. Upon final resolution of the Disputes, each Party shall also destroy all electronic information and documents received pursuant to this Agreement.

**15.    RETURN OF CONFIDENTIAL INFORMATION.** Upon request at any time, all written and electronic Privileged Information exchanged, including any copies (but not including written outside counsel work product that refers to Privileged Information), shall be returned or destroyed as directed by the Party who furnished the materials.

**16.    EQUITABLE RELIEF.** Disclosure of any Privileged Information in violation of this Agreement will cause the Parties or their counsel hereto to suffer irreparable harm for which there is no adequate legal remedy. The Parties and their counsel agree that equitable relief, including immediate injunctive relief or specific performance, is an appropriate and necessary remedy for violation of this Agreement.

**17.    BINDING EFFECT, ASSIGNMENT.** The respective obligations provided in this Agreement will be binding upon not only the Parties, but also their employees, representatives,

4892-6024-2805 v.2                                                            4

NYSCEF DOC. NO. 1901

RECEIVED NYSCEF: 10/02/2025

agents, legal successors and assigns. No Party may assign any of the rights contained herein without the written consent of all the other Parties to the Agreement.

18.    **ATTORNEY REPRESENTATIONS / NO AGENCY.** This Agreement shall not create any agency or similar relationship among the Parties.

19.    **RESERVATION OF CLAIMS.** Any claims the Parties may have against one another are not waived by the terms of this Agreement and are expressly reserved. This Agreement or any conduct of joint prosecution / defense by any Party does not waive any right to indemnity by any Party.

20.    **NO WARRANTY.** The Parties are not required to provide any information pursuant to this Agreement. No Party shall accept any responsibility or liability for any expenses, losses, damages or action incurred or undertaken by another Party as a result of the receipt of any information received in connection with this Agreement and/or the Disputes.

21.    **APPLICABLE LAW.** This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York. The Parties hereby irrevocably agree to submit any action, suit or proceeding arising out of, or connected with, this Agreement to the appropriate State Courts of the State of New York, which shall have the exclusive jurisdiction to adjudicate any such action, suit or proceeding.

22.    **ENTIRE AGREEMENT / SEVERABILITY.** In the event that any provision of this Agreement shall be held by any court of competent jurisdiction to be illegal, void or unenforceable, then such provision shall have no force or effect, but the illegality or unenforceability of such provision(s) shall neither affect nor impair the enforceability of any other provisions of this Agreement. The Parties shall negotiate in good faith to replace any illegal, invalid or unenforceable provision as soon as possible. This Agreement constitutes the entire agreement between and among the Parties and supersedes any prior oral or written agreement, representations, discussions or understandings between or among the Parties related to the Disputes.

**IN WITNESS HEREOF,** the Parties hereby execute and deliver this Agreement as of the Effective Date.

**PARTIES:**

**Jared Chassen**

608941 NJ Inc.

By: _____

_____

Name: ____Kevin Wiener_____
                    Authorized representative

4892-6024-2805 v.2                                                    5

COUNSEL:

HAYNES AND BOONE, LLP

By: _____
      Leslie C. Thorne

*Attorneys for 608941 NJ Inc.*

MISHAAN DAYON LLP

By: _____
      Saul Mishaan

THE LAW OFFICES OF JASON J. REBHUN, P.C.

By: _____
      Jason J. Rebhun

*Attorneys for Jared Chassen*

4892-6024-2805 v.1

7