# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

JEFFREY SIMPSON, individually and derivatively, as   :
managing member of JJ ARCH LLC, suing derivatively as :
managing member of ARCH REAL ESTATE   :
HOLDINGS LLC, and JJ ARCH LLC,   :
  :
        Plaintiff,   :
  :  Case No.: 1:25-cv-04004 (LTS)
   - against -   :
  :
JARED CHASSEN, FIRST REPUBLIC BANK   :
  :
       Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
  :

## JARED CHASSEN'S MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 2

I.    In this August 2023 proceeding, Simpson and Chassen seek to terminate each other as members of JJ Arch LLC and the Court enjoined both of them ................................................. 2

II.    Simpson's bad-faith bankruptcy filing as purported sole member of JJ Arch and his first bad-faith removal of this proceeding ................................................................................................. 4

III.    After the Bankruptcy Court dismisses the JJ Arch bankruptcy as a bad-faith filing, the Commercial Division appoints a temporary receiver over JJ Arch ........................................... 5

IV.    To avoid enforcement of the Receiver Order and a scheduled contempt hearing, in March 2025 Simpson frivolously removes this action again ................................................................. 7

V.    Simpson uses the bad-faith removal to defy the Receiver Order, prompting enforcment actions by Chassen and the Receiver upon remand ..................................................................... 9

VI.    Simpson attempts to remove the action a third time to avoid enforcement hearings ......... 9

VII.    The Commercial Division enters an order directing the Sheriff to physically remove Simpson from receivership property ...................................................................................... 11

VIII.    In defiance of the Commercial Division's orders, Simpson and his counsel seize receivership property and threaten the Receiver ....................................................................... 12

ARGUMENT .......................................................................................................................... 12

I.    The Court should hold Simpson and his counsel in contempt of the Receiver Order and Sheriff Order and order Simpson confined until he complies ................................................. 12

II.    The Court should order an expedited remand because Simpson's removal is facially frivolous and in bad faith and any delay only rewards Simpson and his counsel's bad faith .. 16

    A.    Simpson's removal is improper because Simpson is the plaintiff ............................... 17
    B.    Simpson's removal is improper because there are no federal claims .......................... 18
    C.    Simpson's removal is improper because it is untimely and without the consent of the defendants ...................................................................................................................... 19
    D.    Simpson's removal is improper because he failed to attach the pleadings and orders in the action and to include a short and concise statement of his grounds for removal ............ 19
    E.    Simpson's removal is an improper successive removal ............................................... 20

III.    The Court should award costs and attorney's fees against Simpson and his counsel and enjoin further removals because this sham removal was done in bad faith .............................. 21

IV.    The Court should immediately enforce the Receiver Order and Sheriff Order, barring Simpson from entering the properties and businesses in receivership, and directing the Marshal to remove him pending the resolution of these motions ........................................... 23

CONCLUSION ....................................................................................................................... 25

CERTIFICATION PURSUANT TO LOCAL RULE 7.1 ........................................................ 27

# TABLE OF AUTHORITIES

**CASES**

*Alemite Manufacturing Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930)
.................................................................................................................................. 13

*Behrens v JPMorgan Chase Bank, N.A.*, 96 F.4th 202 (2d Cir 2024)
.................................................................................................................................. 16

*Ben. Natl. Bank v Anderson*, 539 U.S. 1, 6 (2003)
.................................................................................................................................. 18

*Benthos Master Fund, Ltd.. v Etra*, 2023 U.S. App. LEXIS 34848  (2d Cir. Nov. 20, 2023)
.................................................................................................................................. 13

*Bey v Brann*, No. 23-CV-7247 (LTS), 2023 U.S. Dist. LEXIS 143934 (S.D.N.Y. Aug. 17, 2023)
.................................................................................................................................. 17

*Boivin v Town of Addison*, No. 2:08-CV-66, 2008 U.S. Dist. LEXIS 53777 (D. Vt. July 15, 2008)
.................................................................................................................................. 17

*Broad Coverage Serv. v Oriska Ins. Co.*, No. 20-CV-11108 (PMH), 2021 U.S. Dist. LEXIS 4900 (S.D.N.Y. Jan. 11, 2021)
.................................................................................................................................. 17

*Burchette v Gladsten*, No. 24-CV-4901 (LTS), 2024 U.S. Dist. LEXIS 159051 (S.D.N.Y. Aug. 26, 2024)
.................................................................................................................................. 17

*Cabrera v Lagerstrom*, No. 23-CV-7852 (LTS), 2023 U.S. Dist. LEXIS 160091 (S.D.N.Y. Sep. 11, 2023)
.................................................................................................................................. 19

*Calabro v Aniqa Halal Live Poultry Corp.*, 650 F.3d 163 (2d Cir. 2011)
.................................................................................................................................. 21

*Citibank, N.A. v Swiatkoski*, 395 F Supp 2d 5 (E.D.N.Y. 2005)
.................................................................................................................................. 19

*Coditron Corp. v AFA Protective Sys.*, 392 F. Supp 158 (S.D.N.Y. 1975)
.................................................................................................................................. 17

*CQS ABS Master Fund Ltd. v MBIA Inc.*, 2014 US Dist LEXIS 185280 (S.D.N.Y. Jan. 27, 2014)
.................................................................................................................................. 24

*Diallo v Puerta*, No. 23-CV-9452 (PKC) (MMH), 2024 U.S. Dist. LEXIS 26847  (E.D.N.Y. Feb. 15, 2024)
.................................................................................................................................. 20

*Disability Advocates, Inc. v. N.Y. Coal for Quality Assisted Living, Inc.*, 675 F.3d 149, 160 (2d Cir. 2012)
.................................................................................................................................. 19

*Forde v Hornblower NY, LLC*, 243 F Supp 3d 461 (S.D.N.Y. 2017)
.................................................................................................................................. 18

*Hess v New Jersey Tr. Rail Operations, Inc.*, 846 F.2d 114 (2d Cir. 1988)
.................................................................................................................................. 13

*In re JJ Arch LLC*, 663 B.R. 258, 275-290 (Bankr. S.D.N.Y 2024)
.................................................................................................................................. 4

*In re JJ Arch LLC*, Nos. 24-10381 (JPM), 24-1335 (JPM), 2024 Bankr LEXIS 1347  (Bankr. S.D.N.Y. June 10, 2024)
.............................................................................................................................. 4, 18

*Istituto Per Lo Sviluppo Economico Dell' Italia Meridionale v Sperti Prods., Inc.*, 47 F.R.D. 310 (S.D.N.Y. 1969). .......................................................................................................... 13

*Meagher v Doscher*, 157 A.D.3d 880 (2d Dep't 2018)
.............................................................................................................................. 24

*Miss Jones LLC v Stiles*, No. 17-cv-1450 (NSR), 2020 U.S. Dist. LEXIS 224618 (S.D.N.Y. Dec. 1, 2020)
.............................................................................................................................. 12

*Montefiore Med. Ctr. v Teamsters Local 272*, 642 F.3d 321 (2d Cir. 2011)
.............................................................................................................................. 16

*Nasca v Bytedance Ltd.*, No. 24-CV-2061 (NGG) (JMW)2024 U.S. Dist. LEXIS 243225 (E.D.N.Y. Apr. 26, 2024)............................................................................................ 15

Nat'l Acad. of TV Arts & Scis., Inc. v. Goodman, 2023 U.S. App. LEXIS 14764 (2d Cir. 2023)
.............................................................................................................................. 22

*Newco Family LLC v Haider*, No. 23-CV-8921 (LTS), 2023 U.S. Dist. LEXIS 188071 (S.D.N.Y. Oct. 18, 2023)
.............................................................................................................................. 18

*NY Communities for Change v County of Nassau*, No. 24-cv-8779 (JMA) (LGD), 2024 U.S. Dist. LEXIS 234825 (E.D.N.Y. Dec. 31, 2024)
.............................................................................................................................. 16

*NY State Nassau Supreme Ct. v Powell*, No. 18-CV-4079(JFB)(AYS), 2018 U.S. Dist. LEXIS 230850 (E.D.N.Y. Aug. 8, 2018)
.............................................................................................................................. 20

*Ortiz v City of NY*, 2013 U.S. Dist LEXIS 78641 (S.D.N.Y. June 4, 2013)
.............................................................................................................................. 20

*Ransmeier v. Mariani*, 718 F.3d 64 (2d Cir. 2013)
.............................................................................................................................. 21

*Reyes v Dollar Tree Stores, Inc.*, 781 F.3d 1185 (9th Cir. 2015)
.............................................................................................................................. 20

*Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124 (2d Cir. 2023)
.............................................................................................................................. 21

*Simkin v United States*, 715 F.2d 34 (2d Cir. 1983)
.............................................................................................................................. 13

*Somlyo v J. Lu-Rob Enters., Inc.*, 932 F.2d 1043 (2d Cir. 1991)
.............................................................................................................................. 16

*Taylor v Medtronic, Inc.*, 15 F.4th 148 (2d Cir 2021)
.............................................................................................................................. 19

*Tenore v Frost (In re Tenore),* No. 24-CV-9729 (CS), 2025 WL 35066, at *2-3 (S.D.N.Y. Jan. 6, 2025)
.............................................................................................................................. 5

*Thompson v Johnson*, 410 F. Supp. 633 (E.D. Pa. 1976)
.............................................................................................................................. 13

*Town of Newburgh v Newburgh Eom LLC*, No. 24-CV-5059 (CS), 2025 U.S. Dist. LEXIS 61516 (S.D.N.Y. Mar. 27, 2025)

............2

*Travelers Ins. Co. v Carpenter*, 411 F.3d 323 (2d Cir. 2005)
............17

*United States Bank Trust, N.A. v Walbert*, No. 3:17-cv-00991 (CSH), 2017 U.S. Dist. LEXIS 132576 (D. Conn. Aug. 18, 2017)
............21

*Universal City Studios, Inc. v N.Y. Broadway Intl. Corp.*, 705 F.2d 94 (2d Cir. 1983)
............13

*Vaden v Discover Bank*, 556 U.S. 49 (2009)
............18

*Waters v Kohl's Dept. Stores, Inc.*, No. 2:18-CV-00328-ODW-AFM, 2018 U.S. Dist. LEXIS 58521 (C.D. Cal. Apr. 4, 2018)
............20

*Weiss v Yotta Tech.*, Inc., 2024 U.S. Dist. LEXIS 174052 (S.D.N.Y. Sep. 25, 2024)
............21

*Windward Bora LLC v Lungen*, 2023 U.S. Dist. LEXIS 153609, (S.D.N.Y. Aug. 29, 2023)
............2

*Yonkers Racing Corp. v Yonkers*, 858 F.2d 855 (2d Cir. 1988)
............17

*Yun Fei Xiao v City of NY*, 2010 U.S. Dist. LEXIS 6181 (S.D.N.Y. Jan. 25, 2010)
............17

**STATUTES**

28 U.S.C. § 1331
............16, 17

28 U.S.C. § 1332
............16

28 U.S.C. § 1446(a)
............16, 18

28 U.S.C. § 1446(b)(1)
............18

28 U.S.C. § 1446(b)(2)(A)
............18

28 U.S.C. § 1447(c)
............19

28 U.S.C. § 1450
............13

28 U.S.C. §§ 1441(a)
............16

Fed. R. Crim. Pr. 42
............13

**TREATISES**

14C C. Wright, A. Miller, E. Cooper & J. Steinman, Fed. Prac. & Proc. § 3730 (4th ed.)
............16

## **INTRODUCTION**

This emergency motion seeks to prevent immediate irreparable injury and asks the Court to expedite the remand of this proceeding, impose contempt penalties and enforce court orders, award sanctions, and grant injunctive relief. Jeffrey Simpson, *the removing plaintiff*, is attacking the dignity and the integrity of the judicial system with impunity. Simpson's defiance of the Commercial Division's orders is egregious, and his repeated abuse of the removal process is a textbook case for enjoining unilateral removals. He is openly and repeatedly defying state court orders that were entered because of the danger he poses to Jared Chassen and using the cover of repeated frivolous "pro se" removals (while represented by counsel) to do it.

That Simpson's successive removal is frivolous and warrants an immediate remand is self-evident from his place in the caption alone. The removal statute is reserved for defendants, but Simpson is the plaintiff. The removal itself is wildly untimely, as this action has been ongoing since 2023, and it runs afoul of defendant consent requirements, as defendant Jared Chassen does not consent to remove. None of the claims asserted in this case are federal claims. *In re JJ Arch LLC*, 663 B.R. 258, 291, n. 56 (Bankr S.D.N.Y. 2024) (the claims in this action "arise exclusively under New York law."). Simpson also did not comply with any of the other procedural requirements for removal, failing to file a short concise statement of jurisdiction or to attach the pleadings and orders in the action.

This emergency motion also seeks to hold Simpson and his counsel, Benjamin Rajotte, in contempt because they are now both openly disobeying state court orders. On May 23, 2025, Simpson and his counsel unilaterally seized receiver property in defiance of court orders. Simpson himself, in defying the court, has already unleashed a torrent of abusive letters and emails towards the New York County Supreme Court, Commercial Division, the Honorable Joel

M. Cohen and the court appointed receiver. In addition to contempt penalties, their disobedience requires immediate enforcement of the court's orders to prevent immediate irreparable injury.[1] Simpson's defiance also comes in the face of two still pending contempt motions against him in the state court, the first filed in October 2024, that were set for hearing before each of Simpson's recent frivolous removals of this action. Simpson and his counsel are making a mockery of the judicial system.

## FACTUAL BACKGROUND

I.    **In this August 2023 proceeding, Simpson and Chassen seek to terminate each other as members of JJ Arch LLC and the Court enjoined both of them**

This 2023 state court action involves Simpson and Chassen's competing claims to terminate each other from an entity known as JJ Arch LLC, an entity they are both members in.[2] They formed JJ Arch in 2017 primarily to act as AREH's managing member, which was to manage a substantial real estate portfolio.[3] In addition to the properties owned by AREH, Chassen and Simpson purchased a handful of properties together which they owned and managed directly through JJ Arch, independent of AREH, as sole member of 1640 Montauk

---

[1] Chassen will also be seeking Rule 11 sanctions against Simpson and his counsel in another forthcoming motion and this motion is filed without prejudice to initiate a criminal contempt proceeding.

[2] This removed state court litigation also centers around longstanding state law disputes between Simpson and 608941 NJ Inc. ("Oak"), the investor member in Arch Real Estate Holdings, LLC ("AREH").

[3] NYSCEF No. 721, JJ Arch LLC Operating Agreement; NYSCEF No. 722, Amended JJ Arch LLC Operating Agreement; NYSCEF No. 720, AREH Operating Agreement. "NYSCEF" refers to the New York State Courts Electronic Filing system, and citations to NYSCEF refer to specific filings in the action captioned *Simpson et. al. v. Chassen et. al.*, Index No. 158055/2023 (N.Y. Co.). Due to the voluminous papers involved in the removed action, in lieu of being physically attached as exhibits, many of the documents from the action are cited to the NYSCEF record with hyperlinks. "[T]he Court may take judicial notice of documents filed on this system as they are part of the public record." *Windward Bora LLC v Lungen*, 2023 U.S. Dist. LEXIS 153609, at *2, n 2 (S.D.N.Y. Aug. 29, 2023); *Town of Newburgh v Newburgh Eom LLC*, No. 24-CV-5059 (CS), 2025 U.S. Dist. LEXIS 61516, at *5, n 5 (S.D.N.Y. Mar. 27, 2025) ("[T]he Court takes judicial notice of the docket entries filed in the state court from which Ramada removed this case.") (citation omitted).

LLC, 1640 Motors LLC, JJ NY 550 LLC, and 225 HPR LLC. Schwartz Decl., ¶ 8.[4] JJ Arch,

with outside investors, also formed three entities, 146 E 89 Borrower 1 LLC, 146 E 89 Borrower

2 LLC, and 146 E 89 Borrower 3 LLC, to purchase a real property in Manhattan through a tenant

in common structure, with JJ Arch acting as the managing member of each entity. *Id.*

Simpson, who started the lawsuit in August 2023, simultaneously filed an emergency

motion seeking to be restored to his managerial position at JJ Arch. Schwartz Decl., ¶ 9. In

August 2023, the Commercial Division entered an order that restored Simpson to managerial

control of JJ Arch, subject to, among other things, Chassen's membership and consent rights to

major decisions, defined in the JJ Arch Operating Agreement, and directed them to cooperate in

good faith with each other in their respective roles. *See* NYSCEF No. 36, Order Regarding

Interim Operating Procedures. The Commercial Division also nullified their respective August

2023 terminations of each other. *Id.*

Despite being directed to cooperate in good faith, within days of being restored to

managerial control, on September 1, 2023, Simpson attempted to terminate Chassen. Schwartz

Dec., ¶ 10. In orders entered in September and November 2023, the Commercial Division

restored Chassen and barred either member from terminating the other without prior court

permission. NYSCEF No. 86, September 2023 TRO; NYSCEF No. 419, November 2023

Preliminary Injunction.[5] The Commercial Division granted Simpson a preliminary injunction in

September 2023 in which it incorporated the August 2023 Interim Order and September 2023

TRO. NYSCEF No. 159, September Preliminary Injunction. The Commercial Division made

clear that "unless and until this partnership is broken up, Mr. Chassen is a 49 percent member

---

[4] "Schwartz Decl." refers to the Declaration of Allen Schwartz submitted herewith.

[5] *See also* NYSCEF No. 417, Nov. 20, 2023 Hr. Tr.

without managerial control . . . But Mr. Chassen, his contractual rights are to be a 49 percent member with substantial consent rights to important decisions." *See* NYSCEF No. 224, Sept. 29, 2023 Hr. Tr. at 54:5-55:4; *See also* NYSCEF No. 128, Sept. 15, 2023 Hr. Tr.; NYSCEF No. 83, Sept. 11, 2023, Hr. Tr.

## II.    Simpson's bad-faith bankruptcy filing as purported sole member of JJ Arch and his first bad-faith removal of this proceeding

In April 2024, Simpson removed this action to federal bankruptcy court after he filed a unilateral petition as purported "sole member" without Chassen's consent even though the Commercial Division's orders that had restored Simpson to managerial control in August 2023 were expressly conditioned on Chassen's consent rights and a bar on any unilateral terminations. NYSCEF Nos. 36, 86, 159, 419, 630, 631, 632, 635. The Bankruptcy Court (Mastando, J.), after a thorough review and recitation of the record, including the pleadings, orders, and hearing transcripts, found that Mr. Simpson's removal was an act of forum shopping. *See In re JJ Arch LLC*, Nos. 24-10381 (JPM), 24-1335 (JPM), 2024 Bankr. LEXIS 1347, at *33-47 (Bankr. S.D.N.Y. June 10, 2024); *id.* at, at *44, n 24 (citing to and noting that "[m]any of Mr. Simpson's emails indicate a certain displeasure for Mr. Chassen . . . and—perhaps most notably—Justice Cohen's Interim Orders.").

Later, on October 11, 2024, the Bankruptcy Court dismissed the JJ Arch bankruptcy case entirely because of, inter alia, Simpson's subjective and objective bad faith in filing it and his subsequent gross mismanagement of JJ Arch. *In re JJ Arch LLC*, 663 B.R. 258, 275-290 (Bankr. S.D.N.Y 2024). The Bankruptcy Court remanded this action and another proceeding, an insurance interpleader, to state court. *Id.* at 290.[6]

---

[6] Simpson appealed the Bankruptcy Court's October 2024 dismissal and remand, which is currently pending before Judge Vargas. *See In re JJ Arch LLC*, Dkt. No. 1:24-bk-10281 (Bankr. S.D.N.Y. 2024), at ECF No. 218 (Notice of Appeal). He did not, however, seek a stay pending appeal from the Bankruptcy Court or, if impracticable, the

### III.    After the Bankruptcy Court dismisses the JJ Arch bankruptcy as a bad-faith filing, the Commercial Division appoints a temporary receiver over JJ Arch

After the dismissal of the bankruptcy and remand of this proceeding, Chassen moved, among other things, to hold Simpson in contempt of the Commercial Division's orders and for a temporary receiver over the assets controlled by JJ Arch.[7] On March 11, 2025, the Commercial Division, after a two-day evidentiary hearing, appointed a temporary receiver over the entities controlled by JJ Arch, namely 1640 Montauk LLC, 1640 Motors LLC, JJ NY 550 LLC, 225 HPR LLC, 146 E 89 Borrower 1 LLC, 146 E 89 Borrower 2 LLC, and 146 E 89 Borrower 3 LLC. Schwartz Decl., Exhibit 1, NYSCEF No. 1508, Receiver Order. The Receiver Order was supported by an extensive factual record and showing, wherein Chassen established that Simpson had failed to pay taxes since 2022, caused all the subject properties to go into default or foreclosure, with Chassen named as a defendant guarantor, left properties vacant and unattended for over a year, diverted JJ Arch assets to himself rather than pay debt servicing and leases, and engaged in a longstanding pattern of defiance of court orders and unilateral actions in disregard of Mr. Chassen's rights as a member of JJ Arch as provided by prior court orders.[8]

In the leadup to the hearing, Simpson sent the Commercial Division abusive emails despite being directed not to send such emails to the Court. *See eg.* NYSCEF Nos. 1248-1249.

---

District Court hearing the appeal. *Tenore v Frost (In re Tenore),* No. 24-CV-9729 (CS), 2025 U.S. Dist. LEXIS 8509, at *2-3 (S.D.N.Y. Jan. 6, 2025) (to obtain a stay of a bankruptcy dismissal pending appeal, party seeking stay must follow Federal Rule of Bankruptcy Procedure 8007 and other requirements). The appeal itself remains unperfected since the October 2024 dismissal. *See generally In re JJ Arch LLC*, Dkt. No. 1:24-cv-08649 (S.D.N.Y. 2024).

[7] NYSCEF Nos. 711-757, 994-1000, 1002, 1004-1010, 1028-1037, 1041, 1080-1082, 1162, 1165, 1166, 1169-1278, 1346-1348, 1370-1379.

[8] *See, e.g.,* Schwartz Decl., Exhibit 2, NYSCEF No. 1347, Post-Hearing Letter; Schwartz Decl., Exhibit 3, NYSCEF No. 1275, Chassen Direct Testimony Affirmation,; *see also* NYSCEF No. 1166, Peldman Direct Testimony Affirmation; NYSCEF No. 1165, Nicolardi Direct Testimony Affirmation; NYSCEF No. 1162, Gandhi Direct Testimony Affirmation.

On February 9, 2025, Simpson sent an email directly to Justice Cohen in which he asserted that this:

> is a court of non-competent jurisdiction, who has been biased since the first day and has made rulings that are not at all practical or thoughtful or considerate to anything or anyone here especially when you can't even remember what it is you offered in a prior order or transcript. So you may not like my tone and you may criticize me and tell me that I'm not being proper but again if someone took from you what's been taken for me I would love to see what your tone will be like . . . All right reserved and yes I am copying every possible avenue of the NY court system that I know because there's no justice here. I will forward along later to the Southern District and make sure that all the judges who have touched this case have also seen what's going on here because it is not lawful.

NYSCEF No. 1132, Simpson Feb. 9, 2025 Email to Justice Cohen.

Simpson's behavior towards counsel in the leadup to the hearing was also extremely abusive. For example, Simpson sat for a deposition on February 13, 2025, during which he lobbed abuse at counsel: "You're scum. Yeah, scum lying garbage you are. Keep going. Keep going. You lied to the Court literally. Keeping lying. Keep going . . . I can't believe the bar gives you a license." NYSCEF No. 1374, Simpson Dep. Tr. at 115:17-25. Simpson called counsel a "disgusting lawyer," *id.* at 322:20-10, and told him that "I think you're a lying, cheating thief." *Id.* at 280:5-12. Mr. Simpson also called counsel a "disgusting pig," and said ominously "You've lied to the Court every single time. Go ahead. That's okay. We'll have an investigation of you of a different kind." *Id.* at 183:3-24.

The Commercial Division was finally set to hear Chassen's longstanding contempt motion that Chassen had filed in October 2024, the hearing scheduled on March 27, 2025. NYSCEF Nos. 711-757, 980-933, 1363, 1372-1379.

6

### IV.    To avoid enforcement of the Receiver Order and a scheduled contempt hearing, in March 2025 Simpson frivolously removes this action again

To avoid the Receiver Order and the upcoming contempt hearing, on March 20, 2025 Simpson purported to remove this action claiming there was federal question jurisdiction. *See* 1:25-cv-02372 (LTS), ECF 1. He also removed two other actions that were also before the Honorable Justice Joel M. Cohen, who he has accused of being biased against him. *See, e.g.*, NYSCEF Nos. 729, 730, 954, 955, 956, 957, 959, 1020, 1024, 1273, 1384, 1389, 1406, 1418. Simpson was represented by his former counsel, Robert Lorenc, when he purported to effectuate the removal. NYSCEF No. 1038.

Simpson then used the purported removal to defy the Receiver Order and sent contemptuous correspondence to Justice Cohen. NYSCEF No. 1384, Simpson March 20, 2025 Letter to Court ("[Y]ou will learn, I am and was a very effective leader by making informed and educated decisions and moving forward. This is not a 'free for all', it is my business that you invaded in ways that are unconscionable."); NYSCEF No. 1389, March 20, 2025 Letter to Court ("It is that you are simply fearful for your wrongdoings and bias nature of your role on the bench that you cannot help yourself but attack the most successful guy in the room (before you have attempted to ruin my life by bad orders, bias commentary and simply swallowing your own words from one hearing to another) . . . I will not be communicating with this Court again unless I am told otherwise by a higher power in the Federal Court."); NYSCEF No. 1406, March 24, 2025 Letter to Court (informing Commercial Division that he had expelled the Receiver from JJ Arch business).

Simpson instructed a JJ Arch lender not to give the Receiver a requested payoff statement, telling the lender that both Justice Cohen and the Receiver were "on the take." NYSCEF No. 1445, Simpson March 29, 2025 Email. On April 8, 2025, Simpson emailed the

Receiver telling him to "stand down" and that if he didn't, Simpson would pursue him "because you're out of line just like the day you showed up and I told the police to get you out of my property." NYSCEF No. 1444, Simpson Apr. 8, 2025 Email. On April 12, 2025, Simpson wrote the receiver, copying the Court, telling him that he had no authority or jurisdiction, and telling him "I remind you how you invaded the property at 1640 Montauk improperly and the police removed you for trespassing. You have also tried to invade the bank accounts this past week . . ." NYSCEF No. 1441, Simpson Apr. 12, 2025 Email. On April 14, 2025, Simpson wrote this Court, copying the Receiver, and saying that Commercial Division was "either clueless or intentionally looking the other way." NYSCEF No. 1442, Simpson Apr. 14, 2025 Email. Simpson then forwarded this email to the Commercial Division in an *ex parte* email in which he taunted Justice Cohen that "The NYS system is a mockery on society and you sir You do not listen to anything with merit or facts." NYSCEF No. 1418, Simpson Apr. 14, 2025 Email.

In an April 22, 2025 email to the Receiver, with the Commercial Division copied, he wrote "I just called him on the phone and warned him one more time not to step foot on one of my properties . . ." NYSCEF No. 1440, Simpson Apr. 22, 2025 Email.

On April 24, 2025, after Simpson failed to pay the filing fee in the removed action within the 30 days as directed, the Court remanded this action. *See* Schwartz Decl., Exhibit 4, Apr. 24, 2025 Order.[9]

---

[9] On March 25, 2025, the Court entered an order stating that it would take no action in the case until Simpson paid the filing fee, directed him to do so within 30 days, and told him that if he failed to do so, the Court would dismiss the action. *See* Schwartz Decl., Exhibit 5, Mar. 25, 2025 Order.

V.     **Simpson uses the bad-faith removal to defy the Receiver Order, prompting enforcment actions by Chassen and the Receiver upon remand**

On April 28, 2025, the Receiver filed an order to show cause seeking to enforce the Receiver Orders. NYSCEF Nos. 1435-1445 (the "Receiver's Motion"). In support of the Receiver's Motion, the Receiver submitted two affidavits and attached police reports and other evidence showing that Simpson had (1) expelled the Receiver from assets under receivership; (2) sent abusive emails to the Receiver in defiance of the Receiver Order; and (3) interfered with the Receiver and provided no information or books and records. Schwartz Decl., Exhibit 6, NYSCEF No. 1457, Receiver's Affirmation; Schwartz Decl., Exhibit 7,  NYSCEF No. 1471, Supplemental Receiver's Affirmation. Simpson's contempt of the state court during the removal was further evident in the emails and letters he sent the Commercial Division, or copied it on, in connection with, and during, the removal.[10] On April 30, 2025, Chassen moved by order to show cause seeking to hold Simpson in civil and criminal contempt of the Receiver Order. *See* NYSCEF No. 1472, Chassen's Second Contempt Motion.

VI.    **Simpson attempts to remove the action a third time to avoid enforcement hearings**

On May 5, 2025, Benjamin Rajotte, Esq. appeared on behalf of Simpson in the Commercial Division. Schwartz Decl., Exhibit 8, NYSCEF No. 1479, Notice of Appearance. The next day, the Commercial Division held a conference and set hearing dates for May 12, 2025 for the Receiver's Motion and May 20, 2025 for Chassen's Second Contempt Motion.  NYSCEF No. 1480, Case Management Order. On May 9, 2025, Simpson, while represented by Mr. Rajotte, filed "pro se" requests to stay the proceedings to the Second Circuit Court of Appeals,

---

[10] *See, e.g.*, NYSCEF No. 1384; NYSCEF No. 1387; NYSCEF No. 1389;  NYSCEF No. 1406; NYSCEF No. 1418; NYSCEF No. 1440; NYSCEF No. 1441;  NYSCEF No. 1442; NYSCEF No. 1444.

and this Court, and again purported to remove the proceeding "pro se" to avoid the hearing.[11] Despite his purported pro se removal, Simpson's counsel himself recognized the state court's jurisdiction through his multiple filings <u>after</u> the purported *pro se* May 9, 2025 removal email, including opposition to the Receiver's Motion. *See* Schwartz Decl., <u>Exhibit 9</u>, <u>NYSCEF No. 1498-1499</u>, May 9, 2025 Opposition to Receiver's Motion; *see also* <u>NYSCEF No. 1507</u>; <u>NYSCEF No. 1514</u>; <u>NYSCEF No. 1521</u>.

Justice Cohen held the hearing on May 12, 2025 and told the parties on the record that he still retained jurisdiction because (1) the removal could not be effectuated "pro se" under CPLR 321(a) without the Court's consent, as Simpson was represented by counsel who under the statute was the only one authorized to make filings in the case; (2) the removal was facially frivolous because Simpson could not remove as the plaintiff and there was Appellate Division, First Department precedent that held that a state court retained jurisdiction circumstances where a party was filing bad-faith frivolous removals to paralyze the judicial system; and (3) no docket had been opened yet in federal court and the matter could not be in no court with no judge able to provide relief. Schwartz Decl., ¶ 24.[12]

During the hearing Simpson insisted on speaking to the Court directly, refused to affirm that he would comply with the Receiver despite being directly asked, and stormed out of the courtroom, saying that the Court was not a "real court." Schwartz Decl., ¶ 25.

---

[11] <u>NYSCEF Nos. 1484-1490</u>.

[12] Chassen is still awaiting receipt of the hearing transcript.

### VII.    The Commercial Division enters an order directing the Sheriff to physically remove Simpson from receivership property

On May 13, 2025, the Commercial Division entered an Order Compelling Jeffrey Simpson to Comply with the Receivership Order and Directing Sheriff to Enforce Receivership Order (the "Sheriff Order"). Schwartz Decl., Exhibit 10, NYSCEF No. 1508, Sheriff Order. Simpson's counsel, Benjamin Rajotte, then sought to adjourn the hearing on Chassen's Second Contempt Motion claiming that Simpson was focused on complying with the Court's orders. Schwartz Decl., Exhibit 11, NYSCEF No. 1516, Rajotte So-Ordered Letter. On May 14, 2025, the Commercial Division granted his counsel's request to adjourn the contempt hearing, setting a new hearing date of June 13, 2025. *Id.* (granting adjournment request and saying that the Court "views future compliance with the Receivership Order, including the Court's recent order granting Mot. Seq. 023 (NYSCEF 1508), to have the highest priority at the moment.").

Simpson only minimally complied with the Receiver Order, but the Receiver was able to take possession of the receivership properties. Schwartz Decl., Exhibit 12, NYSCEF No. 1528, Receiver's Report. On May 15, 2025, Simpson filed a notice of removal on the NYSCEF system *pro se* showing that a federal docket had been opened a judge assigned. Schwartz Decl., Exhibit 13, NYSCEF No. 1517-1518, Simpson May 15, 2025 Notices of Removal. His counsel then filed several days later a letter seeking to stay parts of the Sheriff Order on May 21, 2025 and a proposed order to show cause seeking that relief on May 23, 2025.[13] On May 23, 2025, Justice Cohen issued a Court Notice that stated that in light of the May 15, 2025 notice of removal showing that a case had been opened in this Court and a judge assigned, it could not rule on any motions until it received an order of remand. Schwartz Decl., Exhibit 14, NYSCEF No. 1527,

---

[13] NYSCEF No. 1521-1526.

11

Court Notice. *Id.* (stating that post-May 15, 2025, when Simpson showed that there was a federal docket opened and a judge assigned, the Commercial Division would not proceed, but that on May 12, 2025, where there was no ECF docket or judge assigned, this case "could not have been treated as being in NO court.").

**VIII.    In defiance of the Commercial Division's orders, Simpson and his counsel seize receivership property and threaten the Receiver**

Within a handful of hours, Simpson's counsel, Benjamin Rajotte, wrote the Receiver and Mr. Chassen's counsel that the Receiver was now "divested of authority" and that Simpson "was on his way to safeguard and take control of the assets immediately." Schwartz Decl., Exhibit 15, Rajotte Email Chain; *id.* (saying that "Court had divested him of any continuing authority."). Simpson and his counsel were advised that pursuant to 28 U.S.C. § 1450, the Commercial Division's orders, including the Receiver Order, remain in effect. *Id.* Simpson has since expelled the Receiver from Rever Motors. Chassen Decl. ¶ 4.[14] The Receiver has stated that he is afraid to go back. Schwartz Decl., Exhibit 17, Receiver's Letter.

**ARGUMENT**

**I.    The Court should hold Simpson and his counsel in contempt of the Receiver Order and Sheriff Order and order Simpson confined until he complies**

To establish a civil contempt, it must be shown that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Miss Jones LLC v Stiles*, No. 17-cv-1450 (NSR), 2020 U.S. Dist. LEXIS 224618, at *9 (S.D.N.Y. Dec. 1, 2020) (citations omitted). A non-party can be held in contempt where they had actual knowledge of the order and "either abet[ed] the defendant, or [][is] . . . legally identified with

---

[14] "Chassen Decl." refers to the Declaration of Jared Chassen submitted herewith.

12

him." *Thompson v Johnson*, 410 F. Supp. 633, 640 (E.D. Pa. 1976) (quoting *Alemite Manufacturing Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930)).

"It is well established that a civil contempt sanction is a coercive device, imposed to secure compliance with a court order . . ." *Benthos Master Fund, Ltd.. v Etra*, 2023 U.S. App. LEXIS 34848, at *2 (2d Cir. Nov. 20, 2023) (citations and quotations omitted). "As long as the judge is satisfied that the coercive sanction might yet produce its intended result, the confinement may continue." *Simkin v United States*, 715 F.2d 34, 37 (2d Cir. 1983). In addition to its coercive aspect, "civil contempt remedies are available to provide compensation or other remedial relief for the party for whose benefit the injunction was entered, and criminal contempt penalties may be imposed, where appropriate, to punish the violation and vindicate the court's authority." *Universal City Studios, Inc. v N.Y. Broadway Intl. Corp.*, 705 F.2d 94, 96 (2d Cir. 1983).[15]

A state court's actions are the equivalent of federal court orders because "[a] federal court to which a state action is removed takes the action in the posture in which it existed when removed from a state court's jurisdiction and must give effect to all actions and procedures accomplished in a state court prior to removal." *Istituto Per Lo Sviluppo Economico Dell' Italia Meridionale v Sperti Prods., Inc.*, 47 F.R.D. 310, 312 (S.D.N.Y. 1969).  Under 28 U.S.C. § 1450, the Commercial Division's Receiver Order (and Sheriff Order) remain in effect upon removal and could not be unilaterally disobeyed as Simpson and his counsel did.

---

[15] Chassen is moving in this motion to hold Simpson in civil contempt without prejudice to seeking to hold Simpson in criminal contempt for these violations. A civil contempt is one where "the sentence of contempt is imposed for the coercive or remedial purpose of compelling obedience to a court order and providing compensation or relief to the complaining party . . . [but] if the sentence is unconditionally and punitively imposed to vindicate the authority of the court and not to provide private benefits, the contempt is criminal." *Hess v New Jersey Tr. Rail Operations, Inc.*, 846 F.2d 114, 115 (2d Cir. 1988). Criminal contempt has greater procedural requirements before it may imposed. *See* Fed. R. Crim. Pr. 42.

The Receiver Order was clear and unambiguous—it gave sole control of these assets, including Rever Motors, to the Receiver, and barred Simpson from interfering with the Receiver's control. Schwartz Decl., Exhibit 1, NYSCEF No. 1508, Receiver Order. The Sheriff Order was necessitated by Simpson's refusal to comply with the Receiver Order and prior bad-faith removal. Schwartz Decl., Exhibit 10, NYSCEF No. 1508, Sheriff Order. After the Commercial Division notified the parties that the federal court had jurisdiction of this proceedings (Schwartz Decl., Exhibit 14, NYSCEF No. 1527, Court Notice), Simpson and his counsel openly defied the Receiver Order and Sheriff Order by unilaterally seizing control of Rever Motors on May 23, 2025 and by threatening the Receiver if he made any attempt to regain control. Schwartz Decl., Exhibit 15, Rajotte Email Chain. They have done the opposite of attempt to comply in a reasonable manner but have instead acted to willfully disobey it. *Id.*

Simpson and his counsel have taken the position that the May 13, 2025 Sheriff Order is ineffective because they say it was entered after Simpson's purported *pro se* removal of this action. Schwartz Decl., Exhibit 15, Rajotte Email Chain. Even if that were true—and it is not—the Receiver Order has been in place since March 2025, and Simpson refused to comply with it since its entry. Schwartz Decl., Exhibit 1, NYSCEF No. 1508, Receiver Order; Schwartz Decl., Exhibit 6, NYSCEF No. 1457, Receiver's Affirmation; Schwartz Decl., Exhibit 7, NYSCEF No. 1471, Supplemental Receiver's Affirmation. His and his counsel's defiance on and after May 23, 2025 cannot be excused by claiming that the Sheriff Order was issued without jurisdiction because they are actively defying the Receiver Order. Indeed, in his opposition to the Receiver's Motion, Simpson and his counsel's acknowledged that the Receiver Order applied to the four properties, and merely sought clarification that it was limited to those properties. Schwartz Decl., Exhibit 16, NYSCEF No. 1498, Rajotte Affirm. at ¶ 10. The opposition was effectively a motion

asking the Commercial Division not to enforce the Receiver Order because they claimed it was to "harsh." *Id.* at ¶ 6.

In any case, the Commercial Division had jurisdiction to enter the Sheriff Order on May 13, 2025.

First, Simpson's counsel himself recognized the state court's jurisdiction through his multiple filings just <u>after</u> the purported *pro se* May 9, 2025 removal email, including opposition he filed just before midnight *after* Simpson's purported removal. *See* Schwartz Decl., <u>Exhibit 9</u>, NYSCEF No. 1498-1499, May 9, 2025 Opposition to Receiver's Motion; *see also* NYSCEF No. 1507; NYSCEF No. 1514; NYSCEF No. 1521.

Second, CPLR 321(a) provides that "[i]f a party appears by attorney such party may not act in person in the action except by consent of the court." Simpson had, and has, counsel and thus any removal action he took had to be done through counsel, unless done with the consent of the Commercial Division.

Third, there was no docket, or any judge assigned in this removal action until May 14, 2025, the day after the Court entered the Sheriff Order. Simpson himself did not notify the Commercial Division that the docket was opened and a judge assigned until May 15, 2025. Schwartz Decl., <u>Exhibit 13</u>, <u>NYSCEF No. 1517-1518</u>, Simpson May 15, 2025 Notices of Removal; *See also* 28 U.S.C. § 1446(d) (removal filing after notice given to state court). As the Commercial Division recognized, just as the "state and federal courts cannot both have jurisdiction over the same case," neither could no court have jurisdiction during the interregnum period of a purported "pro se" removal, where filings must be first screened by the Pro Se Intake Unit. *Nasca v Bytedance Ltd.*, No. 24-CV-2061 (NGG) (JMW)2024 U.S. Dist. LEXIS 243225, at *7 (E.D.N.Y. Apr. 26, 2024).

15

Finally, the Commercial Division properly relied on Appellate Division, First Department precedent—similar to other state courts—that has held that a state court can in some circumstances retain jurisdiction over a matter under egregious circumstances of a bad faith removal "where it was made in bad faith at the eleventh hour," and where it was "undeniably untimely." *Astoria Fed. Sav. & Loan Ass'n/Fid. New York FSB v. Lane*, 64 A.D.3d 454, 456 (1st Dep't 2009).

**II.    The Court should order an expedited remand because Simpson's removal is facially frivolous and in bad faith and any delay only rewards Simpson and his counsel's bad faith**

Chassen also seeks an expedited remand of this proceeding. *NY Communities for Change v County of Nassau*, No. 24-cv-8779 (JMA) (LGD), 2024 U.S. Dist. LEXIS 234825, at *2 (E.D.N.Y. Dec. 31, 2024) (remanding within 5 days of request for an expedited remand).

On a remand motion, the removing party—not the movant—bears the burden to show that removal is proper and that the Court has subject matter jurisdiction over the action. *Montefiore Med. Ctr. v Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011). Further, "federal courts construe the removal statute narrowly, resolving any doubts against removability." *Somlyo v J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-1046 (2d Cir. 1991) (citations omitted). Federal courts have a duty to "ensure that they do not lack subject-matter jurisdiction, even if the parties fail to identify any jurisdictional defect . . ." *Behrens v JPMorgan Chase Bank, N.A.*, 96 F.4th 202, 206-207 (2d Cir. 2024) (emphasis removed); *Travelers Ins. Co. v Carpenter*, 411 F.3d 323, 328 (2d Cir. 2005) ("[W]here jurisdiction is questionable we are obliged to examine the question *sua sponte*.").

16

In his notice of removal, Simpson predicated this removal on 28 U.S.C. §§ 1331, 1441, and 1446, (ECF 1), but failed to attach a copy of any of the pleadings.[16]

## A. Simpson's removal is improper because Simpson is the plaintiff

Under 28 U.S.C. §§ 1441(a) and 1446(a) "only a defendant can remove an action to federal court." *Burchette v Gladsten*, No. 24-CV-4901 (LTS), 2024 U.S. Dist. LEXIS 159051, at *3 (S.D.N.Y. Aug. 26, 2024) (citing 28 U.S.C. §§ 1441(a) and 1446(a)).[17] "Quite simply, a party who is in the position of a plaintiff cannot remove." *Yonkers Racing Corp. v Yonkers*, 858 F.2d 855, 863 (2d Cir. 1988). This is so "even when they are in the position of defendants with regard to a counterclaim asserted against them." *Yun Fei Xiao v City of NY*, 2010 U.S. Dist. LEXIS 6181, at *2 (S.D.N.Y. Jan. 25, 2010) (citing 14C C. Wright, A. Miller, E. Cooper & J. Steinman, Fed. Prac. & Proc. § 3730 (4th ed.).[18] In fact, even "parties brought into the lawsuit for the first time by the counterclaim" may not remove. *Home Depot U.S.A., Inc. v Jackson*, 587 U.S. 435, 441 (2019); *Broad Coverage Serv. v Oriska Ins. Co.*, No. 20-CV-11108 (PMH), 2021 U.S. Dist. LEXIS 4900, at *2 (S.D.N.Y. Jan. 11, 2021) (holding that third party defendants may not remove an action).

As the plaintiff—whether he asserted federal claims or had federal claims asserted against him—Simpson cannot remove this action. This fact alone compels remand.

---

[16] Simpson predicates his removal on 28 U.S.C. § 1331, which grants original jurisdiction to district courts of civil actions "arising under the Constitution, laws, or treaties of the United States."

[17] *See also Bey v Brann*, No. 23-CV-7247 (LTS), 2023 U.S. Dist. LEXIS 143934, at *4 (S.D.N.Y. Aug. 17, 2023) (same). 28 U.S.C. § 1441(a) provides that "the defendant or defendants" may remove a civil action brought in state court for which the district court would have original jurisdiction. 28 U.S.C. § 1446(a) requires that the "defendant or defendants" file a notice of removal.

[18] *See also Coditron Corp. v AFA Protective Sys.*, 392 F. Supp. 158, 161 (S.D.N.Y. 1975); *Boivin v Town of Addison*, No. 2:08-CV-66, 2008 U.S. Dist. LEXIS 53777, at *8 (D. Vt. July 15, 2008);

**B. Simpson's removal is improper because there are no federal claims**

Under 28 U.S.C. § 1331, the basis for Simpson's purported removal, "[t]he district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States." *Id.* Under the "well-pleaded complaint" rule "a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." *Ben. Natl. Bank v Anderson*, 539 U.S. 1, 6 (2003). "As a general rule . . . a case will not be removable if the complaint does not affirmatively allege a federal claim." *Id.* Simpson's complaint does not contain any federal claims but only claims for breach of fiduciary duty, breach of contract, and declaratory and injunctive relief. *See* NYSCEF No. 1, Summons and Complaint.[19]

And even if Chassen had asserted federal counterclaims, federal jurisdiction still could not rest upon "an actual or anticipated counterclaim." *Vaden v Discover Bank*, 556 U.S. 49, 60 (2009); *see also Newco Family LLC v Haider*, No. 23-CV-8921 (LTS), 2023 U.S. Dist. LEXIS 188071, at *6 (S.D.N.Y. Oct. 18, 2023). Similarly, an intervenor complaint cannot provide the basis for jurisdiction because "it is well-established in this circuit 'that if jurisdiction is lacking at the commencement of a suit, it cannot be aided by the intervention of a plaintiff with a sufficient claim.'" *Forde v Hornblower NY, LLC*, 243 F. Supp. 3d 461, 468 (S.D.N.Y. 2017) (quoting *Disability Advocates, Inc. v. N.Y. Coal for Quality Assisted Living, Inc.*, 675 F.3d 149, 160 (2d

---

[19] And even if Simpson could rely on Chassen's counterclaims or Oak's intervenor claims for federal question jurisdiction, these also assert only routine state law claims. *See* NYSCEF No. 1070, Chassen's Second Amended Verified Answer and Counterclaims, also available at; NYSCEF No. 319, Oak Intervenor Complaint. Ultimately, as the Bankruptcy Court recognized during Simpson's forum shopping effort last year, this action "involves claims that arise under state law and concern issues relating almost exclusively to the internal composition of the Debtor [JJ Arch] and its foremost subsidiary [AREH]." *In re JJ Arch LLC*, 2024 Bankr. LEXIS 1347, at *22.

Cir. 2012)); *see also W. Hartford v Operation Rescue*, 915 F.2d 92, 95 (2d Cir. 1990).[20] The lack

of any federal claims in this action deprives the Court of jurisdiction. This compels remand.

### C. Simpson's removal is improper because it is untimely and without the consent of the defendants

Pursuant to 28 U.S.C. § 1446(b)(1), a notice of removal "shall be filed within 30

days after the receipt by the defendant" of the initial pleading or summons, "whichever period is

shorter." *Id.* "[N]othing in the statute provides a court with any discretion to allow a party to cure

a failure to meet the statute's requirements once the thirty-day period for removal lapses." *Taylor*

*v Medtronic, Inc.*, 15 F.4th 148, 153 (2d Cir. 2021). "And within that thirty-day window,

'all defendants who have been properly joined and served must join in or consent to

the removal of the action' the so-called rule of unanimity." *Id.* (quoting 28 U.S.C. §

1446(b)(2)(A)). Even if Simpson was not the plaintiff, he failed to meet the 30-day deadline in

this 2023 action and did not obtain consent of the defendants, including from Chassen, which is

also fatal to his removal. *Taylor*, 15 F.4th at 153.

### D. Simpson's removal is improper because he failed to attach the pleadings and orders in the action and to include a short and concise statement of his grounds for removal

Under 28 U.S.C. § 1446(a), Simpson was required to file "a notice of removal signed

pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain

statement of the grounds for removal, together with a copy of all process, pleadings, and orders

served upon such defendant or defendants in such action." *Id.* Simpson failed to attach any

pleadings or orders, which is another defect supporting remand. *Diallo v Puerta*, No. 23-CV-

---

[20] And while Simpson contends that the Commercial Division violated his rights, "a state court's purported violation of a party's federal due process rights" does not provide a "basis for removing the state court proceeding to federal district court." *Cabrera v Lagerstrom*, No. 23-CV-7852 (LTS), 2023 U.S. Dist. LEXIS 160091, at *6 (S.D.N.Y. Sep. 11, 2023) (quoting *Citibank, N.A. v Swiatkoski*, 395 F. Supp. 2d 5, 9 (E.D.N.Y. 2005)).

9452 (PKC) (MMH), 2024 U.S. Dist. LEXIS 26847, at *11 (E.D.N.Y. Feb. 15, 2024) (remanding for failure to include the pleadings and orders) (citing cases). And "[r]ather than file a 'short and plain statement of the ground for removal,' [Simpson] has filed a [multi][]-page, [multi-document] incoherent Notice of Removal." *NY State Nassau Supreme Ct. v Powell*, No. 18-CV-4079(JFB)(AYS), 2018 U.S. Dist. LEXIS 230850, at *3 (E.D.N.Y. Aug. 8, 2018) (remanding where *pro se* party failed to include pleadings and filed a rambling, incoherent statement of the grounds for removal).

### E.  Simpson's removal is an improper successive removal

Simpson's removal is an improper successive removal based on the same grounds as his prior removal. *See* 1:25-cv-02372 (LTS), ECF 1. "[F]ederal courts have adhered to a general rule that, absent an intervening change in the underlying factual circumstances, a second removal by the same party on the same ground is impermissible and may subject the removing party to sanction." *Ortiz v City of NY*, 2013 U.S. Dist LEXIS 78641, at *7-8 (S.D.N.Y. June 4, 2013). This applies "[e]ven when the first remand was due to a procedural error on the part of the defendant . . ." *Waters v Kohl's Dept. Stores, Inc.*, No. 2:18-CV-00328-ODW-AFM, 2018 U.S. Dist. LEXIS 58521, at *14 (C.D. Cal. Apr. 4, 2018). Simpson's removal identifies no "relevant change of circumstances" or "subsequent pleadings or events reveal[ing] a *new* and *different* ground for removal" to escape the bar on successive removals. *Reyes v Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1188 (9th Cir. 2015) (internal citations and quotations omitted) (emphasis in original).

20

**III.    The Court should award costs and attorney's fees against Simpson and his counsel and enjoin further removals because this sham removal was done in bad faith**

Pursuant to 28 U.S.C. § 1447(c), the Court may award costs and attorney's fees, "where the removing party lacked an objectively reasonable basis for seeking removal." *Calabro v Aniqa Halal Live Poultry Corp.*, 650 F.3d 163, 166 (2d Cir. 2011). This award does not require "a showing of bad faith or frivolity," and but may be awarded merely based upon "the overall nature of the case, circumstances of remand, and effect on the parties." *United States Bank Trust, N.A. v Walbert*, No. 3:17-cv-00991 (CSH), 2017 U.S. Dist. LEXIS 132576, at *13 (D. Conn. Aug. 18, 2017). In addition, courts have "the inherent power to impose sanctions for the bad-faith conduct of litigants—and Rule 11 does not displace that power." *Weiss v Yotta Tech.*, Inc., 2024 U.S. Dist. LEXIS 174052, at *9 (S.D.N.Y. Sep. 25, 2024) (quoting *Chambers v NASCO, Inc.*, 501 U.S. 32, 46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). "A federal court may 'exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023) (quoting *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013)).[21]

Several factors support the imposition of costs and attorney's fees here against both Simpson and his counsel. First, Simpson may have filed the removal purportedly *pro se*, but he is represented by counsel, who has affirmed the bad-faith removal by relying on it to encourage and advise Simpson to defy court orders. Schwartz Decl., ¶ 17. Second, the timing of the removal evidences its bad-faith and supports the imposition of sanctions. Simpson's March 2025 removal came on the heels of the Commercial Division's March 11, 2025 Receiver Order—after a two-day evidentiary hearing and before a March 27, 2025 contempt hearing. Schwartz Decl., ¶ 23.

---

[21] Chassen intends to separately move for sanctions under Rule 11 against Simpson and his counsel.

21

And he filed this removal right before a May 12, 2025 hearing seeking to enforce the Receiver Order. Schwartz Decl., ¶ 23. He and his counsel then used the removal as a vehicle to defy the Commercial Division's orders. Schwartz Decl., Exhibit 15, Rajotte Email Chain. Third, Simpson's contemptuous correspondence, e-filed to the Commercial Division on NYSCEF in connection with his removals, also shows his bad-faith intent. *See e.g.*, NYSCEF No. 1384, NYSCEF No. 1389, NYSCEF No. 1406. Fourth, Simpson's prior history of bad faith supports sanctions. Since the beginning of this action, Simpson has repeatedly disobeyed or collaterally attacked the Commercial Division, this removal being only the latest iteration. *See e.g.*, Schwartz Decl., ¶ 10 (Simpson re-terminating Chassen days after the Court directed good-faith cooperation as a condition of Simpson's preliminary injunction restoring him to managerial control); *id.* at ¶¶ 11-12 (Simpson filing a unilateral, adjudicated bad faith bankruptcy as sole member despite Court orders); *id.* at ¶¶ 22-28 (Simpson removing again to avoid enforcment proceedings and commit a contempt of Court after this Court's April 2025 remand).

This record warrants awarding costs and attorney's fees against Simpson and his counsel for this removal.

The Court should also enjoin further removals by Simpson. "A district court may, in its discretion, impose sanctions against litigants who abuse the judicial process, including an injunction forbidding further litigation." *Nat'l Acad. of TV Arts & Scis., Inc. v. Goodman*, 2023 U.S. App. LEXIS 14764, at *2 (2d Cir. 2023). Courts consider the litigant's history of vexations or harassing litigation, the litigant's motive, the litigant's status as represented by counsel or otherwise, the litigant's imposition of unnecessary costs and burdens on the other parties and the courts, and whether other sanctions would be adequate to protect the court and the parties. *Deutsche Bank Natl. Trust Co,* 2023 U.S. Dist. LEXIS 185162, at *6-7.

22

These factors support the imposition of an order barring any further removals without the prior permission of this Court. "As to the first factor, [Simpson] has engaged in needlessly duplicative litigation by seeking to remove the state court action" twice. *Id.* at \*7. As to the second factor, "his motive is delay for the sake of delay," attempting to forestall court orders and a contempt hearing, without any objectively reasonable basis for removal. *Id.* Third, Simpson filed the frivolous removal *pro se* despite having counsel. "[I]t is clear . . . that [Simpson's] litigation tactics are attributable to his desire to delay rather than to any innocent misunderstanding about what the law requires." *Id.* As to the fourth factor, Simpson has interfered with and delayed the state court proceedings, including the work of the temporary receiver and upcoming hearings. Finally, "no other form of sanctions would be as effective to prevent [Simpson] from delaying and disrupting the state court . . . proceedings again. Only by preventing [Simpson] from abusing the right to remove a state court action can he be stopped from imposing months and months more of wasteful delay." *Id.* at \*9.

Ultimately, without such an order, nothing will prevent Simpson from continuing to use the federal courts as a vehicle to collaterally attack the New York State Supreme Court and to ignore its orders.

IV.    **The Court should immediately enforce the Receiver Order and Sheriff Order, barring Simpson from entering the properties and businesses in receivership, and directing the Marshal to remove him pending the resolution of these motions**

The Court should enter the annexed proposed order seeking immediate enforcment of the Receiver Order and the Sheriff Order while these motions are being heard. The proposed order effectively seeks the immediate entry of the Sheriff Order already entered by Justice Cohen— and thus already an order of this Court—but here directed to the Federal Marshals.

23

As detailed above, Chassen is likely to succeed on the merits of both the contempt and remand motions, and faces irreparable injury if Simpson is allowed to defy the Commercial Division's orders while these motions are pending. The receiver was appointed because Chassen had shown "the need to protect the moving party's interests . . ." *Meagher v Doscher*, 157 A.D.3d 880, 884 (2d Dep't 2018) (citations and quotations omitted).[22] Chassen had established that Simpson had looted assets, failed to pay taxes, and caused all the properties to go into foreclosure, while he is a full recourse guarantor. Schwartz Decl., Exhibit 3, NYSCEF No. 1275, Chassen Direct Testimony Affirmation. The receiver has since determined that Rever Motors, which Simpson has unilaterally seized, is already insolvent and there is thus a grave danger that Simpson will loot whatever remains. *See* Schwartz Decl., Exhibit 12, NYSCEF No. 1528, Receiver's Report. *CQS ABS Master Fund Ltd. v MBIA Inc.*, 2014 US Dist LEXIS 185280, at *3-4 (S.D.N.Y. Jan. 27, 2014) (irreparable injury where "the defendant is insolvent or likely to become insolvent" because "an award of damages from a judgment-proof defendant is not much of a remedy at all.").[23]

Further, there is an ongoing irreparable injury that is occurring to the judicial system itself if Simpson is allowed to defy multiple court orders and threaten a court appointed receiver

---

[22] And "[t]he powers and duties of the receiver appointed pursuant to the court's equity powers are formulated as a matter of judicial discretion." *64 B Venture v Am. Realty Co.*, 194 A.D.2d 504, 504 (1st Dep't 1993).

[23] In addition to the Commercial Division's findings, and the Bankruptcy Court's findings of gross mismanagement, Simpson has also been found to have grossly mismanaged the assets of his own personal limited liability company, YJ Simco, which he recently put into a Chapter 11 Bankruptcy. On April 14, 2025, the United States Trustee moved to convert the bankruptcy to a Chapter 7 liquidation or to dismiss it for gross mismanagement and failure to insure properties, calling YJ Simco under Simpson a "poster child example of a debtor that does not abide by its fiduciary duties as a debtor-in-possession." *In Re YJ Simco LLC*, Case No. 25-10437 (LGB) (Bankr. S.D.N.Y.), United States Trustee Motion, ECF 7. On May 14, 2025, the Bankruptcy Court granted the motion and converted the YJ Simco bankruptcy to a Chapter 7 liquidation and appointed a Chapter 7 Trustee to take control of YJ Simco. *See* ECF 18, Order Converting Chapter 11 Case to Case Under Chapter 7.

24

while these motions are pending. *Coronet Capital Co. v Spodek*, 279 A.D.2d 600, 602 (2d Dep't 2001) ("A receiver is . . . an officer of the court . . .").

Further, this enforcement injunction seeks to restore the status quo before May 23, 2025 when Simpson took the law in his own hands and acted unilaterally and seize receivership property. The equities greatly favor Chassen since Simpson is a bad-faith actor who the Commercial Division found poses a danger to Chassen and who is actively defying court orders. Simpson has already previously engaged in repeated patter of defiance of court orders, as evidenced by his defiance of the receiver order, his bad faith bankruptcy filing, and his repeated attacks on Justice Cohen, and abusive conduct throughout the litigation. *See e.g.,* NYSCEF No. 1374, Simpson Dep. Tr. at 115:17-25 (calling counsel at deposition "lying garbage"); *Id.* at 280:5-12 (calling counsel at deposition "disgusting pig"); NYSCEF No. 1436, at ¶ 20 (calling Receiver a "disgusting human," a "money hungry pig," and "the biggest crook I've ever met."); NYSCEF No. 1445, Simpson Mar. 28, 2025 Email to Lender (baselessly impugning Court and Receiver of being "on the take"); NYSCEF No. 1389, March 20, 2025 Letter to Court (making baseless, unsupported accusations of bias); NYSCEF No. 739 (telling Mr. Chassen that "only thing else you knew to do was be a male prostitute. Maybe that's what you're going be pursuing now because you're not able to do anything.").

## CONCLUSION

For the forgoing reasons, the Court should grant this motion in its entirety together with such other relief the Court deems just and proper.

Dated: New York, New York
     May 27, 2025

SCHWARTZ LAW PLLC

By:___/s/_____
    Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, New York 10038

25

Tel: 347-460-5379
allen@allenschwartzlaw.com

*Counsel for Defendant Jared Chassen*

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1</u>

I, Allen Schwartz, Esq., certify that the foregoing Memorandum of Law contains less than 8750 words, as counted by Microsoft Word's word-processing system, excluding the caption, table of contents, table of authorities and signature block, and that it complies with the applicable word limits.

/s/ _____
Allen Schwartz

27