# EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

JEFFREY SIMPSON, *et. al.*,       :

              :

       Plaintiff,    :

              :

  - against -        :

              :

JARED CHASSEN *et. al.*,     :  Case No.: 1:25-cv-04004 (JAV)

              :

       Defendants  :

              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## JARED CHASSEN'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION SEEKING RELIEF FROM ANTI-REMOVAL INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 3

    A.    The State Court Restores Simpson to Interim Managerial Control of JJ Arch Subject to Chassen's Consent Rights to Major Decisions ........................................................... 3

    C.    After the Bankruptcy Court Dismisses the JJ Arch Bankruptcy for Gross Mismanagement and Bad-Faith, the State Court Appoints a Temporary Receiver over the JJ Arch Controlled Entities ........................................................................................................................ 5

    D.    Simpson Removes the State Court Action to Federal Court and Uses the Removal to Prevent the Receiver from Taking Control of Receivership Property ....................... 6

    E.    After Judge Swain Remands the State Court Action, the State Court Grants the Receiver's Motion to Enforce the Receiver Order ................................................... 10

    F.    Simpson Again Removes the State Court Action to Federal Court and Uses the Removal to Seize Receivership Property ..................................................................................... 11

    G.    Judge Furman Grants an Expedited Remand and Enjoins Simpson from Further Removals without Court Permission ......................................................................... 12

    H.    After the Remand, Chassen and the Receiver Seek to Hold Simpson in Civil and Criminal Contempt of the State Court's Receiver Order and Enforcement Order ................................. 12

    I.    While the Contempt Motion is Pending, Simpson is Sanctioned Four Times for Repeated Defiance of the State Court's Orders Barring Ex Parte and Substantive Emails to the Court . 13

    J.    After the Remand, Simpson Also Announces in Email Correspondence to the State Court and the Parties that He Will Be Boycotting the State Court Proceedings ................................. 14

    K.    The State Court Schedules a Trial for July 27, 2026, and Chassen and Oak Move for Discovery Sanctions Against Simpson for His Contumacious Refusal to Participate in Discovery, and Chassen Moves for a Default Judgment ........................................... 15

    L.    Simpson Uses the YJ Simco Bankruptcy to Collaterally Attack the State Court ............ 15

    M.    Simpson Sues the New York State Unified Court System, Justice Joel M. Cohen, the Receiver, and Counsel, and When that Fails to Stop the State Court Action, Threatens to File Personal Bankruptcy ................................................................................................... 16

    N.    Simpson Files for Personal Bankruptcy and Seeks Permission to Remove the State Court Action to Federal Court for a Fourth Time ............................................................... 18

ARGUMENT ...................................................................................................................... 18

    I.    The Anti-Removal Injunction Applies to Simpson as a Debtor in Possession ................. 18

    II.    The Court Should Deny the Motion Pursuant to Fed. R. Civ. P. 60(b) Because This is Another Bad-Faith Attempt to Remove the State Court Action ............................................. 21

    III.    The Court Should Deny the Motion Because Simpson's Requested Removal Would Be Futile as the State Court Action is Subject to Mandatory Abstention Pursuant to 28 U.S.C. § 1334(c)(2) ................................................................................................................ 23

CONCLUSION..................................................................................................................... 26

WORD-COUNT CERTIFICATION ............................................................................... 28

## TABLE OF AUTHORITIES

**CASES**

*Allstate Ins. Co. v Ace Sec. Corp.*, 11 CIV. 1914 LBS, 2011 WL 3628852 (S.D.N.Y. Aug. 17, 2011)
................................................................................................................................ 23

*Biltmore Assoc., LLC v Twin City Fire Ins. Co.*, 572 F.3d 663 (9th Cir. 2009)
................................................................................................................................ 19

*Horne v Flores*, 557 U.S. 433 (2009)
................................................................................................................................ 21

*In re Footstar, Inc.*, 323 B.R. 566 (Bankr. S.D.N.Y. 2005)
................................................................................................................................ 20

*In re HardRock HDD, Inc.*, 17-46425, 2017 WL 2839203 (Bankr. E.D. Mich. June 29, 2017)......
................................................................................................................................ 19

*In re JJ Arch LLC*, 663 B.R. 258 (Bankr. S.D.N.Y 2024)
................................................................................................................................ 4

*In re JJ Arch LLC*, Nos. 24-10381 (JPM), 24-1335 (JPM), 2024 Bankr. LEXIS 1347 (Bankr. S.D.N.Y. June 10, 2024)
.................................................................................................... 4, 25, 26

*In re R.J. Reynolds*, 315 B.R. 674 (Bankr. W.D. Va. 2003)
................................................................................................................................ 20

*Indian Harbor Ins. Co. v Zucker for Liquidation Tr. of Capitol Bancorp Ltd.*, 860 F.3d 373 (6th Cir. 2017)
................................................................................................................................ 18

*Kahlon v Yitzhak*, 24-CV-5383 (PKC) (LGD), 2025 WL 1566469 (E.D.N.Y. June 3, 2025)
................................................................................................................................ 23

*MHS Capital v Goggin*, 16-CV-1794 (VM), 2016 WL 3522198, at *3 (S.D.N.Y. June 13, 2016).
................................................................................................................................ 23

*N.L.R.B. v Bildisco and Bildisco*, 465 U.S. 513 (1984)
................................................................................................................................ 19

*Panthers Capital, LLC v Jar 259 Food Corp*, 22 CV 2674 (DG)(RML), 2023 WL 4823942 (E.D.N.Y. Mar. 6, 2023)
................................................................................................................................ 24

*Parmalat Capital Fin. Ltd.*  v. Bank of Am. Corp., 639 F.3d 572 (2d. Cir. 2011)
................................................................................................................................ 24

*Simpson v Chassen*, 1:25-CV-2372 (LTS), 2025 WL 1279005, at *1 (S.D.N.Y. Apr. 25, 2025), *appeal dismissed* (June 23, 2025), *mot for relief from judgment denied*, 1:25-CV-2372 (LTS), 2025 WL 1916137 (S.D.N.Y. June 3, 2025)
................................................................................................................................ 10

*Socialist Republic of Romania v Wildenstein & Co. Inc.*, 147 F.R.D. 62 (S.D.N.Y. 1993)
................................................................................................................................ 21

*SPV Osus Ltd. v UBS AG*, 882 F.3d 333 (2d Cir. 2018)
................................................................................................................................ 24

*Windward Bora LLC v Lungen*, 2023 U.S. Dist. LEXIS 153609 (S.D.N.Y. Aug. 29, 2023)
............................................................................................................................................ 3

**STATUTES**

11 U.S.C. § 1107(a)
............................................................................................................................................ 20

28 U.S.C. § 1334(c)(1)
............................................................................................................................................ 26

28 U.S.C. § 1334(c)(2)
............................................................................................................................................ 23

28 U.S.C. § 1452(b)
............................................................................................................................................ 26

Fed R. Civ. P. 60(b)(5)
............................................................................................................................................ 21

**TREATISES**

William L. Norton, Jr., 5 Norton Bankruptcy Law and Practice § 91:1 (3d ed. 2008) at § 93:2
............................................................................................................................................ 20

**INTRODUCTION**

This is Jeffrey Simpson's ("Simpson") fourth attempt to remove the 2023 state court action, *Simpson v. Chassen*, Index No. 158055/2023 (N.Y. Co.) (the "State Court Action"), to federal court. This Court found Simpson's three prior removals to be "baseless," and found his conduct in the state court to be "vexatious." ECF 31 at 2-3. His repeated forum shopping led this Court to enjoin Simpson from removing the State Court Action ever again without its prior permission. *Id.* And in issuing the anti-removal injunction, this Court recognized Simpson had repeatedly used "removal as a vehicle to defy [the state court's] orders." *Id.* at 2.

Simpson's conduct has been *sui generis*. It is difficult, if not impossible, to identify any precedent for litigation conduct like Simpson's, where he has attacked and abused a state court judge and state court system over a period of years, defied its orders, boycotted its proceedings, and repeatedly attempted to use the federal courts as a vehicle to defy, and collaterally attack, state court orders and proceedings. His fourth attempted removal comes on the heels of a months-long boycott of state court proceedings—memorialized in email tirades to the state court—and his filing of multiple, since dismissed, frivolous civil rights lawsuits against the state court. It also comes as he faces a fully submitted civil and criminal contempt motion for his defiance of state court orders during and after the prior two removals of the State Court Action (after four days of testimony spanning July through October 2025), motions pending against him for a dispositive default judgment for his boycott of discovery and for failing to answer Chassen's claims in the State Court Action for over a year, and a trial that was otherwise scheduled to begin in just over three months.

1

Simpson's hair-splitting argument that he does not need permission to remove because the anti-removal injunction does not apply to him (he argues he is now no longer Simpson but instead he is a trustee for Simpson's bankruptcy estate), runs afoul of numerous cases which recognize that an individual debtor in bankruptcy does not transform himself into an entirely new being merely by filing bankruptcy. Moreover, while Simpson's motion is premised on the misguided notion that any case relating to a bankruptcy always belongs in bankruptcy, Simpson's motion glaringly ignores mandatory abstention, which provides for an absolute right of remand for cases relating to a bankruptcy, when the cases began in state court, have no other basis for federal jurisdiction and can be timely adjudicated in state court. Mandatory abstention (not to mention permissive abstention and equitable remand) would render any removal futile here, as this case at most "relates to" Simpson's bankruptcy, was started in state court 3 years ago, has no independent basis for being in federal court, and can be timely adjudicated in state court, with two pending dispositive motions, and a trial scheduled for July 2026.

Further, allowing Simpson to remove would be unjust and inequitable and would only reward his longstanding forum shopping campaign. In advance of his bankruptcy filing, Simpson did not hide that his bankruptcy filing was a means of collaterally attacking the state court through this very attempted removal, writing the state court, for example, "If i must file for personal bankruptcy as a result to stop your absurdity, that i will do and your 'unclean' hands will be investigated to the nth degree."[1] After repeatedly using removal as a vehicle to defy the state court's orders, Simpson should not be allowed to use removal as an escape hatch when he is being made to answer for that very same disobedience.

---

[1] Schwartz Decl., Ex. 1, Simpson Jan. 24, 2026 Email.

In short, giving Simpson permission to remove the State Court Action to federal court would be not only futile and lead to a mandatory remand—exacting yet more unnecessary and exorbitant costs from the courts and the parties for his repeated forum shopping campaigns—but it would be inequitable. The Court should deny Simpson's motion.

**FACTUAL BACKGROUND**

**A. The State Court Restores Simpson to Interim Managerial Control of JJ Arch Subject to Chassen's Consent Rights to Major Decisions**

The State Court Action involves Simpson and Chassen's competing claims to terminate each other as members of JJ Arch LLC ("JJ Arch"), an entity they formed in 2017 primarily to act as Arch Real Estate Holdings, LLC's ("AREH") managing member, which in turn was to manage a substantial real estate portfolio.[2] The State Court Action also involves longstanding state law disputes between Simpson and JJ Arch and 608941 NJ Inc. ("Oak"), the investor member in AREH, with Oak subsequently intervening in the State Court Action to protect its significant financial stake in AREH's real estate portfolio.

After both JJ Arch members purported to terminate each other as members in August 2023, the state court entered an order that restored Simpson to managerial control of JJ Arch, subject to, among other things, Chassen's membership and consent rights to major decisions.[3] Despite being directed in that order to cooperate in good faith, within days of being restored to

---

[2] NYSCEF Doc. No. 721, JJ Arch LLC Operating Agreement; NYSCEF Doc. No. 1, Complaint; NYSCEF Doc. No. 1070, Second Amended Answer with Counterclaims; NYSCEF Doc. No. 720, AREH Operating Agreement. Due to the voluminous filings involved in the State Court Action, in lieu of being physically attached as exhibits, documents from the State Court Action are cited the New York State Court Electronic Filing system ("NYSCEF") by reference to the NYSCEF docket number in the State Court Action (with hyperlinks). "[T]he Court may take judicial notice of documents filed on this system as they are part of the public record." *Windward Bora LLC v Lungen*, 2023 U.S. Dist. LEXIS 153609, at *2, n 2 (S.D.N.Y. Aug. 29, 2023).

[3] NYSCEF Doc. No. 36, August 2023 Interim Order.

managerial control, on September 1, 2023, Simpson again attempted to terminate Chassen, but in orders entered in September and November 2023, the state court restored Chassen and barred either member from terminating the other without prior court permission.[4] The state court also granted Simpson a preliminary injunction in September 2023 in which it incorporated the August 2023 Interim Order and September 2023 TRO.[5]

### B. Simpson Puts JJ Arch into Bankruptcy without Chassen's Consent and Removes the State Court Action to Bankruptcy Court in an Act the Bankruptcy Court Determined to be Forum Shopping

In April 2024, Simpson, acting on behalf of JJ Arch, removed the State Court Action to federal bankruptcy court after he filed a unilateral Chapter 11 bankruptcy petition on behalf of JJ Arch in March 2024 as its purported "sole member" and without Chassen's consent.[6] The Bankruptcy Court, after an extensive review of the record, found that Simpson's removal was an act of forum shopping. *See In re JJ Arch LLC*, Nos. 24-10381 (JPM), 24-1335 (JPM), 2024 Bankr. LEXIS 1347, at *33-47 (Bankr. S.D.N.Y. June 10, 2024) (recommending remand because of, inter alia, Simpson's forum shopping and reciting record and evidence of forum shopping); *id.* at *44, n. 24 (citing to and noting that "[m]any of Mr. Simpson's emails indicate a certain displeasure for Mr. Chassen . . . and—perhaps most notably—Justice Cohen's Interim Orders."). Later, on October 11, 2024, the Bankruptcy Court dismissed the JJ Arch bankruptcy case entirely because it found, among other things, that Simpson had filed it in subjective and objective bad faith. *In re JJ Arch LLC*, 663 B.R. 258 (Bankr. S.D.N.Y 2024).

---

[4] NYSCEF Doc. No. 86, September 2023 TRO; NYSCEF Doc. No. 419, November 2023 Preliminary Injunction.

[5] NYSCEF Doc. No. 159, September Preliminary Injunction. *See also* NYSCEF Doc. No. 224, Sept. 29, 2023 Hr. Tr. at 54:5-55:4; *See also* NYSCEF Doc. No. 128, Sept. 15, 2023 Hr. Tr.; NYSCEF Doc. No. 83, Sept. 11, 2023, Hr. Tr. In November 2024, the state court granted Oak a preliminary injunction removing JJ Arch as the managing member of AREH. NYSCEF Doc. No. 418, Amended Preliminary Injunction.

[6] NYSCEF Doc. Nos. 629, 630, 631, 632, Notice of Bankruptcy and Correspondence; NYSCEF Doc. Nos. 635-636, Notice of Removal.

### C. After the Bankruptcy Court Dismisses the JJ Arch Bankruptcy for Gross Mismanagement and Bad-Faith, the State Court Appoints a Temporary Receiver over the JJ Arch Controlled Entities

After the dismissal of the JJ Arch bankruptcy in October 2024, Chassen moved, among other things, to hold Simpson in contempt of the state court's prior orders and for a preliminary injunction enforcing the interim removal of Simpson as member of JJ Arch, with Chassen, as the remaining member, taking managerial control in his stead.[7] In December 2024, Chassen moved for a temporary receiver over certain assets controlled by JJ Arch in the alternative.[8]

On December 19, 2024, the state court entered a scheduling order that ordered that fact discovery would close by June 27, 2025, expert discovery would be completed by October 3, 2025, and discovery would be completed by October 3, 2025. NYSCEF Doc. No. 1001.

On March 11, 2025, the state court, after a two-day evidentiary hearing, appointed a temporary receiver, Eric Huebscher (who had been the sub-chapter 5 trustee during the JJ Arch bankruptcy).[9] The Receiver Order was supported by clear and convincing evidence showing that Simpson had failed to pay taxes since 2022, caused all the subject properties to go into default or foreclosure, with Chassen named as a defendant guarantor, left properties vacant and unattended

---

[7] NYSCEF Doc. Nos. 711-757, 942-943. The state court denied Chassen's request for a temporary restraining order. NYSCEF Doc. No. 934, Nov. 20, 2024 Decision and Order. The request for a preliminary injunction was withdrawn on March 13, 2025. NYSCEF Doc. No. 1363, Mar. 14, 2025 So-Ordered Letter.

[8] NYSCEF Doc. Nos. 994-1010. The assets controlled by JJ Arch directly (and not through AREH, which were not subject to receivership), included: (1) the real property located at 1640 Montauk Highway, Water Mill, New York ("Montauk Property"), owned by 1640 Montauk LLC; (2) the business known as Rêver Motors ("Rever Motors"), owned by 1640 Motors LLC, and which had been situated on the Montauk Property pursuant to a lease with 1640 Montauk; (3) the real property known as 225 Head of Pond Road in Water Mill, New York ("Head of Pond"), owned by 225 HPR LLC; (4) the real property known as 550 Metropolitan Avenue, Brooklyn, New York ("550 Metropolitan"), owned JJ NY 550 LLC; and (5) the real property known as 146 E. 89th Street, New York, New York ("89th Street Property"), owned by 146 E 89 Borrower 1 LLC, 146 E 89 Borrower 2 LLC, and 146 E 89 Borrower 3 LLC (collectively, the "JJ Arch Controlled Properties"). These were each controlled by limited liability companies in which JJ Arch was a member (the "JJ Arch Controlled Entities.").

[9] NYSCEF Doc. No. 1360, Receiver Order.

for over a year, diverted JJ Arch assets to himself rather than pay debt servicing and leases, and engaged in a longstanding pattern of defiance of court orders and unilateral actions in disregard of Chassen's rights as a member of JJ Arch and Oak's rights as the investor member in AREH, as provided by prior court orders.[10]

The state court barred Simpson and Chassen from communicating with the Receiver except through counsel unless requested by the Receiver, and if either did not have counsel, mandated that they communicate only via email during business hours, and to cease if requested by the Receiver.[11] Simpson and Chassen were also enjoined from "interfering with the Receiver in exercising his . . . duties."[12]

### D. Simpson Removes the State Court Action to Federal Court and Uses the Removal to Prevent the Receiver from Taking Control of Receivership Property

Simpson's response to the Receiver Order was a second attempt to unilaterally remove the State Court Action to federal court—despite being represented by counsel and there being no basis for removal.[13] Thereafter, Simpson e-filed multiple letters and filings to the state court using his NYSCEF account credentials, which were notable for their disrespect to the state court.[14] On March 25, 2025, using his NYSCEF credentials, Simpson e-filed a "notice of

---

[10] *See, e.g.,* NYSCEF Doc. No. 1347, Post-Hearing Letter; NYSCEF Doc. No. 1275, Chassen Direct Testimony Affirmation; NYSCEF Doc. No. 1166, Peldman Direct Testimony Affirmation; NYSCEF Doc. No. 1165, Nicolardi Direct Testimony Affirmation; NYSCEF Doc. No. 1162, Gandhi Direct Testimony Affirmation; NYSCEF Doc. No. 1346, Feb. 25, 2025 Hr. Tr.; NYSCEF Doc. No. 1371, Feb. 28, 2025; Hr. Tr.; NYSCEF Doc. No. 1434, Mar. 5, 2025 Hr. Tr.

[11] NYSCEF Doc. No. 1360, Receiver Order at 6.

[12] *Id.*

[13] Though represented by counsel, (NYSCEF Doc. No. 1038), Simpson proceeded to remove the action to federal court via his own NYSCEF account. NYSCEF Doc. Nos. 1380, 1381, 1389.

[14] NYSCEF Doc. Nos. 1384, 1389, 1406.

6

removal" containing a screenshot that showed a docket had been opened with the federal court and a judge assigned.[15] That same day, the state court entered a notice on NYSCEF which acknowledged the removal and informed Simpson and the parties that "All orders of this Court entered prior to removal, including the appointment of a receiver, remain in effect subject to any contrary orders made in the federal action."[16]

Simpson quickly began interfering with the Receiver by emailing a principal of two JJ Arch Controlled Entities' mortgage lender, telling the lender not to send a payoff statement to the Receiver or Chassen because Simpson baselessly asserted that the Receiver and the state court were "on the take."[17]

Simpson also prevented the Receiver from entering Rever Motors, a receivership asset, leading to a police incident. NYSCEF Doc. No. 2000, July 21, 2025 Hr. Tr. at 47:7-12; NYSCEF Doc. No. 2051, August 1, 2025 Hr. Tr. at 59:9-14 (Simpson was "screaming at me at the top of his lungs," and called the Receiver a "scumbag among other vulgarities."). Simpson asserted that the Receiver did not have any right to be at Rever Motors because the Receiver Order was dismissed.[18] The Receiver had to leave Rever Motors because of Simpson. NYSCEF Doc. No. 2000, July 21, 2025 Hr. Tr. at 47:24. Simpson acknowledged in a letter he filed to NYSCEF that he had forced the Receiver to leave Rever Motors that day and called the police on him.

---

[15] NYSCEF Doc. No. 1408.

[16] NYSCEF Doc. No. 1409 (emphasis added). Simpson received direct notice of this court filing. NYSCEF Doc. No. 1997 (order directing clerk to remove his NYSCEF access and noting access from November 2, 2024 through October 8, 2025).

[17] NYSCEF Doc. No. 1634, Simpson Mar. 28, 2025 email at 12:38 p.m.; NYSCEF Doc. No. 2052, Oct. 10, 2025 Hr. Tr. at 111:19-115:15

[18] NYSCEF Doc. No. 1620, Mar. 24, 2025 Police Report; NYSCEF Doc. No. 2000, July 21, 2025 Hr. Tr. at 47:24; NYSCEF Doc. No. 1406, Mar. 24, 2025 Letter; NYSCEF Doc. No. 1633, Simpson April 8, 2025 Email to Receiver.

NYSCEF Doc. No. 1406, Mar. 24, 2025 Letter; *see also* NYSCEF Doc. No. 1633, Simpson April 8, 2025 Email to Receiver ("you're out of line just like the day you showed up and I told the police to get you out of my property.").

On April 22, 2025, the Receiver made another attempt to enter Rever Motors, this time with an armed guard to protect himself from potential violence by Simpson but was unable to gain entry.[19] Simpson called the Receiver directly telling him to stand down.[20] He also sent an email to the Receiver on April 22, 2025, copying the Court, in which he told the Receiver and the other recipients, inter alia, that he had just called the Receiver on the phone and demanded that he not "step foot" on his properties.[21] This was followed up by a text message from Simpson to the Receiver in which he told the Receiver, among other things, "You are not to step foot on one of my properties ever again. You are nothing but a disgusting human that's a money hungry pig . . . ."[22]

Meanwhile, on April 12, 2025, after the Receiver engaged a new broker to market the Head of Pond property (a receivership property), (NYSCEF Doc. No. 2000, July 21, 2025 Hr. at 71), Simpson wrote the Receiver, copying the Court, saying that, "Once again, I urge you to stand down . . ."[23] Simpson then repeatedly removed the for-sale signs at Head of Pond and interfered with the Receiver by calling the police on the Receiver on April 14, 2025, telling the

---

[19] NYSCEF Doc. No. 2000, July 21, 2025 Hr. Tr. at 50:21-52:6.

[20] *Id.* at 52:7-14.

[21] NYSCEF Doc. No. 1621, Simpson Apr. 22, 2025 Email; *see also* NYSCEF Doc. No. 2000, July 21, 2025 Hr. Tr. at 54:13-21.

[22] NYSCEF Doc. No. 1622, Text Message; *See also* NYSCEF Doc. No. 2000, July 21, 2025 Hr. Tr. at 68:6-70.

[23] NYSCEF Doc. No. 1627, Apr. 12, 2025 Email Chain.

police that Simpson was to have sole control of Head of Pond.[24]

On April 14, 2025, Simpson also sent an email to the Receiver and federal court in which he attached pictures of the for-sale signs, and stated, among other things, that he was waiting for the police to take a report.[25] Simpson forwarded his email correspondence to state court, in an email in which he stated, in part: "The NYS system is a mockery on society and you sir you do not listen to anything with merit or facts."[26]

After the Receiver had installed an alarm system at Head of Pond, the alarm was triggered and then destroyed by Simpson.[27] At a subsequent hearing, Simpson's counsel admitted that Simpson had triggered and then disabled the alarm system. NYSCEF Doc. No. 1655, June 27, 2025 Hr. Tr. at 21:23-25 (Simpson "Disabled it [the alarm system]. He changed it when called the South Hampton Town Police . . ."); *Id.* at 22:11-14 ("the alarm was tripped at the Head of Pond Property . . ."). According to the police report, Simpson destroyed and removed the alarm system because it was put in place by the Receiver without his permission or authorization to do so.[28]

On April 25, 2025, U.S. District Court Judge Swain remanded the State Court Action because Simpson failed to pay the filing fees. *Simpson v Chassen*, 1:25-CV-2372 (LTS), 2025 WL 1279005, at *1 (S.D.N.Y. Apr. 25, 2025), *appeal dismissed* (June 23, 2025), *mot for relief from judgment denied*, 1:25-CV-2372 (LTS), 2025 WL 1916137 (S.D.N.Y. June 3, 2025).

---

[24] *Id.* at 73; NYSCEF Doc. No. 1628, Apr. 14, 2025 Incident Report; NYSCEF Doc. No. 2000, July 21, 2025 Hr. Tr. at 71-74.

[25] NYSCEF Doc. No. 1629, Simpson Apr. 14, 2025 Email.

[26] NYSCEF Doc. No. 1648, Simpson April 14, 2025 Email.

[27] NYSCEF Doc. No. 2000, July 21, 2025 Hr. Tr. at 78.

[28] NYSCEF Doc. No. 1630, Apr. 25, 2025 Incident Report; NYSCEF Doc. No. 2000, July 21, 2025 Hr. Tr. at 77-79.

**E. After Judge Swain Remands the State Court Action, the State Court Grants the Receiver's Motion to Enforce the Receiver Order**

After the remand, the Receiver filed an order to show cause seeking to enforce the Receiver Order. NYSCEF Doc. Nos. 1435-1445 (the "Receiver's Enforcement Motion"). Thereafter, the state court held a conference and set hearing dates for May 12, 2025 for the Receiver's Enforcement Motion and May 20, 2025 for a contempt motion filed by Chassen.[29] Simpson, while represented by counsel in the State Court Action, again attempted to remove the proceeding "pro se" by using his NYSCEF credentials to file purported removal documents.[30]

The Court held a hearing on the Receiver's Enforcement Motion. NYSCEF Doc. No. 1636, May 12, 2025 Hr. Tr.[31] The state court made it clear to Simpson and his counsel, that any past or future removals to federal court do not nullify its orders. *Id.* at 9:24-10:1. It also warned Simpson that any further defiance would be treated severely. *Id.* at 26:9-17; *see also id.* at 59:4-6; *id.* at 64:1-6; *id.* at 71:14-16. During the hearing, Simpson's counsel assured the Court that it should not expect any further changing of the locks or breaches of the peace based on what removal means. *Id.* at 50:8-21. Simpson himself ultimately stormed out of the courtroom in the middle of the hearing. *Id.* at 60:23-75:3; *id.* at 82:23-83:1.

The Court granted the Receiver's Enforcement Motion and issued an order compelling Simpson to comply with the Receiver Order (the "Enforcement Order").[32] The Enforcement Order,

---

[29]NYSCEF Doc. No. 1480, Case Management Order; NYSCEF Doc. Nos. 1450-1462,1470-1471, Contempt Motion.

[30] NYSCEF Doc. Nos. 1484-1493.

[31] At the hearing, at which Simpson was present, the state court explained that it had still retained jurisdiction despite Simpson's attempted removal. *Id.* at 6:12-9:12. When invited to respond, Simpson's counsel did not object to proceeding with the hearing. *Id.* at 9:13-16.

[32] NYSCEF Doc. No. 1508.

among other things, barred Simpson from entering any of the properties under receivership, transacting any business of any of the entities under receivership, harassing the Receiver, and interfering with the Receiver's exercise of his duties. *Id.* After entry of the Enforcement Order, the Receiver was able to take possession of Rever Motors for the first time 56 days after his appointment.[33]

### F. Simpson Again Removes the State Court Action to Federal Court and Uses the Removal to Seize Receivership Property

On May 15, 2025, Simpson e-filed screenshots to the state court via his own NYSCEF account credentials showing that a new removal case had been opened in federal court and a judge assigned.[34] On May 23, 2025, the state court issued a notice stating that it could not act on filings since on "May 15, 2025, Mr. Simpson (pro se) filed a Notice of Removal (NYSCEF Doc. 1517-1518) which confirms that this case has been removed to federal court and a docket number and judge (Swain, CJ) have been assigned."[35]

Within a handful of hours, Simpson's counsel emailed the parties that the Court Notice had "divested the Receiver of authority," "[a]ll Receivership Orders are unenforceable," and Simpson was "on his way to safeguard and take control of the assets immediately. If the keys are not readily available, my client will be changing locks as soon as this evening."[36]

Upon receipt of this e-mail, counsel for Chassen and the Receiver advised Simpson's counsel that the state court orders remained in effect upon removal, including the Receiver Order

---

[33] NYSCEF Doc. No. 2000, July 21, 2025 Hr. Tr. at 154-155.

[34] NYSCEF Doc. No. 1517-1518.

[35] NYSCEF Doc. No. 1527, Court Notice.

[36] NYSCEF Doc. No. 1649, May 23, 2025, 7:00 p.m. email (emphasis in original); *See also* NYSCEF Doc. No. 1638.

that was in place since March 2025. *Id.* Later that evening, Simpson's counsel wrote the parties

indicating that Simpson had gone to Rever Motors that evening after his counsel sent the email,

claiming "doors were left unlocked," vehicle parts and tools missing and the basement

ransacked.[37] Simpson then changed the locks at Rever Motors. NYSCEF Doc. No. 2000, July 21,

2025 Hr. Tr. at 99, 115 (Receiver testifying that locks had been changed); *see also* NYSCEF

Doc. No. 1655, June 27, 2025 Hr. Tr. at 14:3-6 (Simpson's counsel admitting that Simpson was

exercising "possession of Rever" insofar as he was attempting "to follow the requests of certain

customers, like the ones in the affidavits, um, to try and get them their cars back, or see if they

could be finished."); *see also id.* at 47:13-14; *id.* at 50:16-17; *id.* at 62:9-11.[38]

### G. Judge Furman Grants an Expedited Remand and Enjoins Simpson from Further Removals without Court Permission

On May 29, 2025, U.S. District Judge Furman granted an expedited remand of the State

Court Action. ECF 21; *see also* ECF 7, Emergency Motion. Judge Furman later sanctioned

Simpson for filing a frivolous removal to federal court and enjoined him from further removals

without this Court's prior permission. ECF 31.

### H. After the Remand, Chassen and the Receiver Seek to Hold Simpson in Civil and Criminal Contempt of the State Court's Receiver Order and Enforcement Order

On May 30, 2025, Chassen filed an order to show cause seeking, inter alia, to hold

Simpson in civil and criminal contempt (NYSCEF Doc. Nos. 1537-1548), joined by the Receiver

in part, (NYSCEF Doc. No. 1549-1551), and which was set for hearing on June 27, 2025.

NYSCEF Doc. No. 1557, OSC. Simpson filed opposition to the contempt motion which did not

---

[37] NYSCEF Doc. No. 1649, May 23, 2025, 11:11 p.m. email.

[38] Chassen also visually confirmed that on May 24, 2025, Simpson had taken control of Rever Motors. NYSCEF Doc. No. 2052, Oct. 10, 2025 Hr. Tr. at 93:18-94:12, 107:5-23, 108:5-23.

dispute any of the allegations in the contempt motion.[39] On June 27, 2025, the state court held an initial hearing at which Simpson's counsel could not articulate any disputed facts when asked to do so by the state court.[40]

The state court heard testimony for the contempt motion on July 21, 2025, August 1, 2025, August 4, 2025, and October 10, 2025. Simpson did not appear at the October 10, 2025 contempt hearing despite being ordered to do so. *See* NYSCEF Doc. No. 1679, Court Notice; *See also* NYSCEF Doc. No. 1557, OSC. This was noted by the state court at the hearing. NYSCEF Doc. No. 2052, October 10, 2025 Hr. Tr. Before the hearing, Simpson had written the state court, in emails which he copied multiple federal judges on, that he would not participate in any proceedings before the state court. NYSCEF Doc. No. 2126, Oct. 8, 2025 Email ("I am not participating in anything regarding a court hearing with you as it's adjudicator, not happening."); NYSCEF Doc. No. 2127, Oct. 9, 2025 Email.

## I. While the Contempt Motion is Pending, Simpson is Sanctioned Four Times for Repeated Defiance of the State Court's Orders Barring Ex Parte and Substantive Emails to the Court

After the remand, Simpson was sanctioned four times by the state court for repeatedly violating the Court's rules barring substantive or *ex parte* emails. NYSCEF Doc. No. 1847, September 24, 2025 Order (sanctioning Simpson $500 for repeatedly violating orders barring email communications to the Court even after repeated warnings, and noting that one email from the Simpson to the state court said, "if you want to assess me a fine, please do."); NYSCEF Doc. No. 1851, September 29, 2025 Order (sanctioning Simpson $1000 after Simpson sent numerous

---

[39] NYSCEF Doc. No. 1586.

[40] NYSCEF Doc. No. 1655, June 27, 2025 Hr. Tr. at 14:3-6, 21:23-25, 22:11-14, 47:13-14, 50:16-17, 62:9-11. At the hearing, Simpson's counsel affirmed that the orders were clear. NYSCEF Doc. No. 1655, June 27, 2025 Hr. Tr. at 6:21 (the Court's "orders were abundantly clear."); *See also* NYSCEF Doc. No. 2052, Oct. 10, 2025 Hr. Tr. at 31:2-5 (affirming that Simpson was not challenging that orders were clear and unequivocal).

emails right after the first sanctions orders, including an email that stated "So this time I'm going to step on the rules (the ones that apply only to the thieves and to the judge (when he wants to ) who has a serious memory and corruption problem) please issue me a fine and I'll appeal it, whatever it takes to get me far away from you because you have no respect for me and my rights, zero."); NYSCEF Doc. No. 1998, October 8, 2025 Order (sanctioning Simpson $1500 after Simpson continued to violate the Court's orders); NYSCEF Doc. No. 2157, December 5, 2025 Order (sanctioning Simpson $2000 and warning that further violations could lead to his pleading being stricken, after Simpson "sent more than a dozen emails" in which he became "increasingly aggressive and abusive, among other things, repeatedly and baselessly accusing the Court of 'being on the take' and daring the Court 'to give [him] sanctions.'"). After being warned that he faced having his pleadings stricken if he continued, Simpson continued to violate these orders. *See* NYSCEF Doc. Nos. 2239, 2248, 2280-2288, 2346, 2349.

### J. After the Remand, Simpson Also Announces in Email Correspondence to the State Court and the Parties that He Will Be Boycotting the State Court Proceedings

After the remand, Simpson repeatedly told the state court that he was boycotting any proceedings before the state court. *See e.g.*, NYSCEF Doc Nos. 2126-2127 (informing Court that "I am not participating in anything regarding a court hearing with you as it's adjudicator, not happening."); NYSCEF Doc. No. 2134 ("Unless I'm forced to by someone under the law (with competent jurisdiction) I will not present myself in front of a disastrous abomination of any type of justice system that occurs in the courtroom of Judge Joel Cohen."); NYSCEF Doc. No. 2150 ("I'm going to copy the honorable Joel Cohen. His rules don't matter anyway he makes them up as he goes and he breaks the CPLR rules on a daily basis."); NYSCEF Doc. No. 2152 ("[M]y Fed removal was money good so no you had no authority and any authority, you have when you broke the law. You break the law every day in this courtroom on this case I'm sure you do it elsewhere

14

too."); NYSCEF Doc. No. 2179 ("Go ahead with your sanctions there will be a lawsuit that will bring this court to the federal court by Monday for its horrific acts of extreme prejudice, bias, discrimination, negligence of reporting criminal acts and much more to be followed. Take up your sanctions there. as I said many moons ago I will not present myself in front of a corrupt / . judge court ever again."); *See also* NYSCEF Doc. Nos. 2239-2248; NYSCEF Doc. Nos. 1860-1897, 1909-1911, 2126-2134, 2150, 2152-2153, 2176, 2179-2185; NYSCEF Doc. Nos. 1923-1983.

**K.  The State Court Schedules a Trial for July 27, 2026, and Chassen and Oak Move for Discovery Sanctions Against Simpson for His Contumacious Refusal to Participate in Discovery, and Chassen Moves for a Default Judgment**

On December 12, 2025, the state court entered an order setting a July 27, 2026 trial date and closing discovery by April 3, 2026, including any motions to compel discovery, which had to be filed with sufficient time prior to the April 3, 2026 close of discovery deadline.[41] On January 14, 2026, Chassen and Oak moved for discovery sanctions for Simpson's refusal to appear at his scheduled deposition and for refusing to provide any discovery responses despite repeated orders.[42] On January 19, 2026, Chassen moved for a default judgment against Simpson for failing to respond to his Second Amended Counterclaims for nearly a year.[43] Both of those motions were unopposed and *sub judice*.

**L.  Simpson Uses the YJ Simco LLC Bankruptcy to Collaterally Attack the State Court**

Immediately after the state court appointed a receiver in March 2025, Simpson filed a Chapter 11 bankruptcy petition for YJ Simco LLC, his family entity, which was subsequently converted to a Chapter 7 proceeding. *See In Re YJ Simco LLC*, 25-10437-lgb (S.D.N.Y.). During

---

[41] NYSCEF Doc. No. 2167.

[42] NYSCEF Doc. Nos. 2230-2255.

[43] NYSCEF Doc. No. 2258-2264.

that proceeding, and over the objections of the trustee, Simpson repeatedly sought, unsuccessfully, to have the Bankruptcy Court stay the receivership in the State Court Action by asserting, contrary to his prior sworn testimony in the JJ Arch bankruptcy and in the State Court Action, that YJ Simco was the sole owner of JJ Arch. *See id.* at ECF 80-97, 106, 109, 113-118, 126-135, 142-143. In December 2025, Simpson also demanded that the Bankruptcy Court require Justice Cohen to appear before it in an email to Judge Beckerman and Justice Cohen, where he stated to Judge Beckerman, the judge presiding over the YJ Simco bankruptcy (and now his personal bankruptcy), that Justice Cohen "ignore[s] all stays and had made clear that he hates bankruptcy and has caused this disastrous of a mess." NYSCEF Doc. No. 2177, Dec. 4, 2025 4:00p.m. Email. Judge Beckerman issued an order denying this request. *See In Re YJ Simco LLC*, 25-10437-lgb, ECF 71, Order Denying Simpson's Additional Request. The YJ Simco proceeding was dismissed on March 31, 2026 on the motion of the trustee.

### M. Simpson Sues the New York State Unified Court System, Justice Joel M. Cohen, the Receiver, and Counsel, and When that Fails to Stop the State Court Action, Threatens to File Personal Bankruptcy

In early January 2026, Simpson filed three frivolous lawsuits under 42 U.S.C. § 1983 against Justice Cohen in federal district court, as well as a federal civil rights case against the temporary receiver, and various counsel, in a failed effort to stop the state court proceedings and the Receiver. *Simpson v. New York State Unified Court System, et. al.*, Civ. No. 1:26-cv-00110(LTS) (S.D.N.Y.); *Simpson v. Cohen et. al.*, Civ No. 1:26-cv-00193(LTS) (S.D.N.Y.); *Simpson v. Cohen et. al.*, Civ. No. 1:26-cv-00130(LTS) (S.D.N.Y.); *Simpson v. Wilson et. al.*, Civ. No. 2:26-cv-00125(SJB)(ARL) (E.D.N.Y.). The actions in this district were dismissed after Simpson failed to pay the filing fee.

On January 14, 2026, the state court scheduled a status conference for January 21, 2026

16

via Court Notice. NYSCEF Doc. No. 2229, Court Notice. On January 16, 2026, in response to the

Court Notice, Simpson wrote the state court the following:

> Joel Cohen,
>
>        What don't you understand? You are corrupt and I filed an action against
> you and the participants here. Inviting the folks to take action against me is further
> deteriorating from the damages that you judge Joel Cohen have created. No
> independent outside party disagrees and I demand police intervention now.
>
>        I demand justice and I demand it now. You don't get the right to speak up
> any further about anything here with what you've done to cause destruction. And
> Gold, you will lose your license for practicing soon just like the rest.

NYSCEF Doc. No. 2285, Simpson Jan 16, 2026 Email. On January 17, 2026, Simpson wrote the

state court "courtesy copy attached here of my letter to the bankruptcy court [Judge Beckerman]

this morning reacting to breach of 'stay', as I mentioned previously. It was submitted through ECF.

I understand that Joel Cohen here has given his views on this issue that are arbitrary and prejudicial,

because he hates bankruptcy court and he hates losing control of a case, especially when he's been

wrong for over two years and if he loses control of the situation , it will be more than me exposing

him." NYSCEF Doc. No. 2287, Simpson Jan. 17, 2026 Email. A few days later, Simpson wrote

the state court: "There will NOT be a conference this week (or ever ), on my case (in front of

Cohen) , that I called for until justice is served and we get clarity from people who are not biased

and prejudicial. If you, Cohen, proceed you're doing at your own risk." NYSCEF Doc. No. 2281,

Simpson Jan. 19, 2026 Email.

       The Court held the status conference (the transcript has not yet been uploaded to the

docket). On January 24, 2026, Simpson wrote Justice Cohen (copying Judge Beckerman):

> Once again, SHAME ON YOU JUDGE JOEL COHEN, for what you have done
> and continue to do - all prejudicial, biased and with intentional harm to me,
> including your actions this week.
>
> If i must file for personal bankruptcy as a result to stop your absurdity, that i will
> do and your "unclean" hands will be investigated to the nth degree.

17

I will once again go to all law enforcement agencies with your actions. I can only imagine where your immunity starts and stops as it relates to federal bankruptcy code crimes.

Schwartz Decl., Ex. 1, Simpson Jan. 24, 2026 Email. On February 11, 2026, Simpson wrote to Judge Cohen, saying that "He is corrupt and he's not deciding a single thing in my case, the end." NYSCEF Doc. No. 2346, Feb. 11, 2026 Email.

### N. Simpson Files for Personal Bankruptcy and Seeks Permission to Remove the State Court Action to Federal Court for a Fourth Time

On February 19, 2026, Simpson filed for Chapter 11 bankruptcy. ECF 67. On March 12, 2026, Simpson moved for permission to remove the State Court Action to federal court for a fourth time. ECF 70-72.

## ARGUMENT

### I.     The Anti-Removal Injunction Applies to Simpson as a Debtor in Possession

The Court should reject Simpson's hair-splitting argument that the anti-removal injunction does not apply to him in his capacity as trustee for his bankruptcy estate. On the contrary, "[t]he debtor and the debtor-in-possession is one and the same person, although 'wearing two hats.'" *Indian Harbor Ins. Co. v Zucker for Liquidation Tr. of Capitol Bancorp Ltd.*, 860 F.3d 373, 377 (6th Cir. 2017). "Even if settings remain in which it makes good sense to treat the debtor and debtor in possession as legally distinct, this is not one of them." *Id.*

In *Indian Harbor*, the Sixth Circuit addressed whether a debtor in possession was a "legally distinct" entity from the pre-petition debtor for purposes of an insured-versus-insured exclusion in a D&O liability policy. The debtor's representatives argued that the bankruptcy filing "transformed" the debtor into a new entity, making the exclusion inapplicable. The Sixth Circuit rejected this argument, holding that while "the bankruptcy estate is a nominal entity that cannot act on its own," and "needs a debtor in possession or trustee to sue on its behalf," when

18

the debtor in possession filed the lawsuit on behalf of the bankruptcy estate it was still a lawsuit by the same entity and fit within the insured-versus-insured exclusion. *Id.* at 378.

Other courts have similarly rejected the argument that the filing of a bankruptcy transforms the debtor into an entirely different legal status. *Biltmore Assoc., LLC v Twin City Fire Ins. Co.*, 572 F.3d 663, 673 (9th Cir. 2009) ("Once it filed its voluntary bankruptcy petition, ownership of the cause of action fell into the bankruptcy estate. Visitalk became the debtor in possession of the bankruptcy estate, empowered to act as a trustee and required to act as a fiduciary for its creditors and shareholders. The differences in the fiduciary responsibilities of Visitalk's management on account of bankruptcy, however, do not make Visitalk a different entity for purposes of the insured versus insured exclusion."); *In re HardRock HDD, Inc.*, 17-46425, 2017 WL 2839203, at *2 (Bankr. E.D. Mich. June 29, 2017) ("The fact that a bankruptcy estate was created when HardRock filed Chapter 11 does not make HardRock a "new entity" with license to disregard all pre-bankruptcy contracts that it has made."). Instead, as the United States Supreme Court has said, "it is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have done absent the bankruptcy filing." *N.L.R.B. v Bildisco and Bildisco*, 465 U.S. 513, 528 (1984).

The same logic applies here. Just as a lawsuit by an insured company is still by the same insured company even after a bankruptcy filing, a removal by Simpson is a removal by the same person who filed three prior frivolous removals. Moreover, in issuing the anti-removal injunction, the Court itself recognized that Simpson had effectuated *three* prior baseless removals. The first of those removals was in a representative capacity, purportedly as managing member on behalf of JJ Arch, but it was still Simpson effectuating it. Here too, it is still Simpson

19

effectuating the removal. Simpson does not cease to be Simpson merely because he filed for bankruptcy.

Simpson asserts that the anti-removal injunction would not apply to an independent court-appointed trustee, and it therefore also does not apply to him as a debtor-in-possession. But even assuming arguendo that the anti-removal injunction would not extend to an independent trustee, a trustee is not the same as a debtor-in-possession. On the contrary, "[a] pre-petition debtor is the same entity as a debtor-in-possession, but a debtor-in-possession is not the same entity as a chapter 11 trustee." *In re R.J. Reynolds*, 315 B.R. 674, 679 (Bankr. W.D. Va. 2003). Indeed, "[n]owhere does the Bankruptcy Code define 'trustee' as synonymous with 'debtor' or 'debtor in possession.' Quite the contrary, when the Bankruptcy Code refers to both 'trustee' and 'debtor' (or 'debtor in possession') in the same statutory provisions, the two terms are invariably invested with quite different meanings." *In re Footstar, Inc.*, 323 B.R. 566, 571 (Bankr. S.D.N.Y. 2005).

Moreover, the Sixth Circuit in *Indian Harbor* recognized a critical difference between the two: a debtor-in-possession is incapable of the impartial decision-making that characterizes a court-appointed trustee. Thus, it noted that while "Chapter 11 gives the debtor in possession all the statutory powers and duties of a trustee . . . there is one revealing exception: The debtor in possession need not investigate the debtor's financial condition or any improper conduct because 'the debtor cannot be expected to inform on itself.'" *Id.* at 377 (quoting William L. Norton, Jr., 5 *Norton Bankruptcy Law and Practice* § 91:1 (3d ed. 2008) at § 93:2 and citing 11 U.S.C. § 1107(a)). In other words, unlike an independent trustee, a debtor in possession cannot be expected to act disinterestedly in circumstances where a trustee would. *Id.* at 377. Unlike

20

Simpson, a court-appointed trustee would have no history of three frivolous removals and no incentive to use removal as a tool of obstruction and forum shopping.

In short, the anti-removal injunction applies to Simpson even after he filed for bankruptcy because he is still Simpson. That injunction requires that Simpson obtain the Court's permission before removal. Simpson is now seeking that permission in this motion. But for the reasons detailed below, the Court should not give him that permission.

II.      **The Court Should Deny the Motion Pursuant to Fed. R. Civ. P. 60(b) Because This is Another Bad-Faith Attempt to Remove the State Court Action**

Simpson seeks relief under Fed R. Civ. P. 60(b)(5) on the ground that applying the Injunction Order prospectively is "no longer equitable" considering his bankruptcy filing and the stay entered by Justice Cohen. ECF 71 at 7-8. Alternatively, he seeks relief under Rule 60(b)(6), a remedy that is reserved for "exceptional circumstances." *Socialist Republic of Romania v Wildenstein & Co. Inc.*, 147 F.R.D. 62, 64 (S.D.N.Y. 1993). Based on the same reasons, he contends that the Court should grant him permission to remove even if it does not grant relief under Rule 60(b). ECF 71 at 8. As the moving party, Simpson "bears the burden of establishing that changed circumstances warrant relief . . ." *Horne v Flores*, 557 U.S. 433, 447 (2009).

There are no changed circumstances that warrant relief from the anti-removal injunction. In addition to the proposed removal being futile as further detailed below, the record shows that Simpson's attempt to remove the State Court Action is motivated by the same bad faith that led to the anti-removal injunction and that it would be inequitable to allow him to remove the action. *See* supra at pgs. 3-17.

Simpson makes much of Justice Cohen's stay of the State Court Proceeding and his statement in a Court Notice that in his opinion the cases in front of him should be heard in one forum, and that that forum appeared to be Bankruptcy Court right now. ECF Nos. 72-2, 72-3.

But Justice Cohen's stay of the State Court Action was expressly stated as being in deference to and subject to the federal court's interpretation of the scope of any automatic stay, something that has not yet been determined and which will be the subject of forthcoming motion practice by Chassen. And it was expressly an act of comity to the federal court that came in the backdrop of Simpson's two years of unrelenting attacks on him, including baseless accusations that Justice Cohen "hated bankruptcy" and that he would attempt to hold onto the case at all costs because of Simpson's threats that he would have Justice Cohen investigated in Bankruptcy Court. Moreover, Justice Cohen's opinion on removal lacked the benefit of adversarial briefing on issues such as the applicability of mandatory abstention or this Court's anti-removal injunction and was not a legal determination as to whether removal is proper, something only the federal court can determine.

Moreover, one does not need look any further than Simpson's own emails to discern his intent in filing the bankruptcy. On January 24, 2026, for example, he wrote Justice Cohen:

> Once again, SHAME ON YOU JUDGE JOEL COHEN . . . If i must file for personal bankruptcy as a result to stop your absurdity, that i will do and your "unclean" hands will be investigated to the nth degree . . . I can only imagine where your immunity starts and stops as it relates to federal bankruptcy code crimes.

Schwartz Decl., Ex. 1, Simpson Jan. 24, 2026 Email.

The record of Simpson's unrelenting attacks on Justice Cohen and the New York State Unified Court System, together with the numerous pending dispositive and other motions against him, and the imminent trial date, make clear Simpson's motive: forum shopping. Granting him permission to remove under these circumstances would only reward litigant conduct that is without precedent and which has violated all norms of litigant behavior.

22

**III.    The Court Should Deny the Motion Because Simpson's Requested Removal Would Be Futile as the State Court Action is Subject to Mandatory Abstention Pursuant to 28 U.S.C. § 1334(c)(2)**

Simpson's request for permission to remove the State Court Action to federal court—for a fourth time—should also be denied as futile as he plainly cannot overcome the application of 28 U.S.C. § 1334(c)(2), which provides for mandatory abstention even when a case "relates to" a bankruptcy proceeding and may otherwise be removed. Pursuant to 28 U.S.C. § 1334(c)(2), "a district court must abstain from hearing claims that are merely 'related to' a pending bankruptcy proceeding where: (1) a timely motion for abstention has been brought; (2) the action is based upon a state law claim; (3) the action is related to a bankruptcy proceeding as opposed to "arising under" the Bankruptcy Code or "arising in" a case under the Bankruptcy Code; (4) the sole federal jurisdictional basis for the action is Section 1334; (5) the action was commenced in state court; and (6) the action is capable of being timely adjudicated in state court." *MHS Capital v Goggin*, 16-CV-1794 (VM), 2016 WL 3522198, at *3 (S.D.N.Y. June 13, 2016).[44]

Simpson would "bear the burden of demonstrating that the test for mandatory abstention has not been met." *Allstate Ins. Co. v Ace Sec. Corp.*, 11 CIV. 1914 LBS, 2011 WL 3628852, at *7 (S.D.N.Y. Aug. 17, 2011) (citations omitted); *Kahlon v Yitzhak*, 24-CV-5383 (PKC) (LGD), 2025 WL 1566469, at *5 (E.D.N.Y. June 3, 2025) ("The party opposing mandatory abstention bears the burden of showing that such abstention is not warranted.").

Applying these factors, any removal of the State Court Action would be subject to mandatory abstention and thus entirely futile. First, the State Court Action does not arise in bankruptcy or under bankruptcy law, but at most is merely related to Simpson's bankruptcy

---

[44] If the Court permits Simpson to file a notice of removal (which it should deny for all the reasons stated herein), Chassen plans to file a motion to remand on the grounds of mandatory and permissive abstention, among others.

filing. "Proceedings arising under the Bankruptcy Code are those that clearly invoke substantive rights created by federal bankruptcy law." *Panthers Capital, LLC v Jar 259 Food Corp*, 22 CV 2674 (DG)(RML), 2023 WL 4823942, at *2 (E.D.N.Y. Mar. 6, 2023) (citations and quotations omitted). Proceedings "arising in" bankruptcy refer to proceedings that "would have no existence outside of the bankruptcy." *Id.* (citations and quotations omitted). And "an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *SPV Osus Ltd. v UBS AG*, 882 F.3d 333, 340 (2d Cir. 2018) (citations and quotations omitted); *See also Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d. Cir. 2011).

Here, the State Court Action clearly does not arise in or under the bankruptcy code, as it neither invokes rights created by substantive bankruptcy law, nor qualifies as a proceeding that would have no existence outside of the bankruptcy. Indeed, the State Court Action predates the Simpson bankruptcy by nearly three years and principally seeks to resolve issues relating to corporate control and the parties' conduct in corporate roles. As a proceeding only "related to" the bankruptcy, it is subject to mandatory abstention.

The State Court Action also meets all the other criteria for mandatory abstention. The claims asserted in the State Court Action assert only state law claims involving primarily claims of breach of fiduciary duty, common law fraud, breach of contract and claims for injunctive and declaratory relief. *See* NYSCEF Doc. No. 1, Simpson/JJ Arch Complaint; NYSCEF Doc. No. 1070, Chassen Counterclaims; NYSCEF Doc. No. 319, Oak Complaint; NYSCEF Doc. No. 471, Simpson Counterclaims; NYSCEF Doc. No. 483, JJ Arch Counterclaims. Further, there is no other basis for federal jurisdiction other than Section 1334. Indeed, as this Court's remand order

made clear, a plaintiff cannot remove their own case to federal court. ECF 21, Remand Order. And as explained in Chassen's emergency remand motion, (ECF 7), there was no basis for federal jurisdiction otherwise. And, of course, as the pleadings and the record of this case make clear, the State Court Action was commenced in state court.

Moreover, the Bankruptcy Court has already engaged in a fulsome analysis of the merits of removal of the State Court Action in the JJ Arch bankruptcy case when it remanded the State Court Action. In its decision to remand, the Bankruptcy Court determined that Simpson actively engaged in forum shopping in seeking to remove the State Court Action, and also determined that: (i) The Bankruptcy Court possessed only "related to" jurisdiction over the State Court Action under 28 U.S.C. § 1334(b); (ii) the State Court Action was a "non-core" proceeding within the meaning of 28 U.S.C. § 157(b); (iii) the Commercial Division of the Supreme Court of the State of New York could "timely adjudicate" the State Court Action; (iv) abstention was mandated under 28 U.S.C. § 1334(c)(2); and (v) alternatively, permissive abstention and equitable remand were warranted under 28 U.S.C. §§ 1334(c)(1) and 1452(b). *See In re JJ Arch LLC*, 2024 Bankr. LEXIS 1347, at *15-47. Simpson has not explained why the State Court Action would not be subject to remand for the same reasons now, some two years later.

Finally, the State Court Action is clearly capable of being timely adjudicated in state court. Indeed, the State Court Action was scheduled for trial in July 2026 and there were several dispositive pending motions, including a fully submitted motion for a default judgment against Simpson filed in January 2026, and a motion for sanctions also filed that month based on Simpson's boycott of discovery in the State Court Action. Further, as this Court found, Simpson himself delayed the action with his "three baseless attempts to remove [the State Court Action] to federal court" and his "repeated and frivolous efforts to delay state court proceedings . . ."

25

ECF 31 at 2-3. Indeed, Simpson's 2025 removals blew through a discovery schedule entered in December 2024, (NYSCEF Doc. No. 1001), and his bankruptcy filing has now stalled a trial scheduled for July 2026. NYSCEF Doc. No. 2167. Simpson's repeated frivolous removal efforts—spanning 2024, 2025, and now 2026—have only served to continuously delay the resolution of the State Court Action.

Accordingly, because the record clearly demonstrates that any removal under Section 1334 would be futile and subject to mandatory abstention, the Court should deny Simpson's motion seeking permission to remove the State Court Action to federal court. Allowing a removal that would be followed by an inevitable remand would only cause further "needless expense to the other parties" and "burden[] the federal and state courts involved . . ." ECF 31 at 2-3.[45]

## CONCLUSION

For the foregoing reasons, the Court should deny this motion. Simpson's record of bad-faith removals, his vexatious conduct, and his repeated attacks on the state court warrant denying him relief from the anti-removal injunction.

Dated: New York, New York
      April 20, 2026

**SCHWARTZ LAW PLLC**

By:/s/ Allen Schwartz
Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, NY 10038
Telephone: (347) 460-5379
allen@allenschwartzlaw.com

-and-

---

[45] Simpson's removal is also futile because it would be subject to permissive abstention pursuant to 28 U.S.C. § 1334(c)(1), and equitable remand pursuant to 28 U.S.C. § 1452(b). A motion for permissive abstention requires the Court to weigh multiple factors, which here, as in the JJ Arch bankruptcy proceeding, would favor remand. *See In re JJ Arch LLC*, 2024 Bankr. LEXIS 1347, at *28-47.

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**
Sean C. Southard, Esq.
Brendan M. Scott, Esq.
200 W. 41st Street, 17th Floor
New York, New York 10036
(212) 972-3000

*Counsel to Jared Chassen*

27

## WORD-COUNT CERTIFICATION

I, Allen Schwartz, Esq., certify that the foregoing Memorandum of Law contains fewer than 8750 words, as counted by Microsoft Word's word-processing system, excluding the caption, table of contents, table of authorities and signature block, and that it complies with the applicable word limits.

/s/ Allen Schwartz____
Allen Schwartz

28