BECKER, GLYNN, MUFFLY,
CHASSIN & HOSINSKI LLP
299 Park Avenue
New York, New York 10171
(212) 888-3033
Alec P. Ostrow
aostrow@beckerglynn.com

*Attorneys for Plaintiff, Jeffrey Solomon Simpson,*
*as Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JEFFREY SOLOMON SIMPSON,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-10359 (LGB) |
| JEFFREY SOLOMON SIMPSON, as Debtor and Debtor in Possession,<br><br>Plaintiff,<br><br>- against -<br><br>ARCH REAL ESTATE HOLDINGS LLC, ARCH ASSET MANAGEMENT LLC, and ARCH PROPERTY MANAGEMENT LLC,<br><br>Defendants. | Adversary No.<br><br>**COMPLAINT** |

Plaintiff Jeffrey Solomon Simpson (the "Debtor"), as Debtor and Debtor in Possession, complaining of the defendants, respectfully sets forth and alleges:

## Introduction

1. This adversary proceeding is commenced by the Debtor and Debtor in Possession to obtain an injunction to prevent the defendants from continuing an action in the Supreme Court

of the State of New York, County of New York, Index No. 653216/2026 (the "State Court Action") that they commenced against several persons and entities, including the Debtor's wife, Yael Simpson, entities co-owned by the Debtor and the Debtor's wife, YJ Simco LLC ("YJ Simco") and 266 WMTR LLC ("266 WMTR"), an entity owned by the Debtor's wife, 1055 Park Ave ST LLC ("ST LLC"), and the Debtor's bankruptcy counsel, Becker, Glynn, Muffly, Chassin & Hosinski LLP ("Becker Glynn"). As set forth herein, the Debtor seeks to enjoin the State Court Action because of who the defendants in the State Court Action are and what the issues in the State Court Action are, the State Court Action threatens the Debtor's reorganization efforts and seeks to litigate outside this Court a claim that has been recently interposed against the Debtor.

**<u>Jurisdiction and Venue</u>**

2. This adversary proceeding is commenced in connection with the Debtor's chapter 11 bankruptcy case pending in this district, case no. 26-10359 (LGB). The Debtor filed his voluntary chapter 11 petition with this Court on February 19, 2026.

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

5. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtor consents to the entry of final orders or a final judgment by the bankruptcy court.

## Parties

6. Plaintiff is the Debtor and the debtor in possession in this bankruptcy case. On the filing of the Debtor's voluntary chapter 11 petition, the Debtor became a debtor in possession, pursuant to sections 1101(1) and 1107(a) of title 11 of the United States Code (the "Bankruptcy Code"). No separate trustee or examiner has been appointed.

7. Defendant Arch Real Estate Holdings LLC ("AREH") is a limited liability company with a place of business in the State of New York, and is the sole member of defendant Arch Asset Management LLC, which is a limited liability company with a place of business in New York. Defendant Arch Asset Management LLC is the sole member of defendant Arch Property Management LLC, which is a limited liability company with a place of business in New York. The defendants will collectively be referred to as (the "Arch Entities" or the "Defendants").

## Factual Background

8. The circumstances leading to the filing of the Debtor's petition derive from the Debtor's interest in and operation of a group of real estate holding and operating companies known as the "Arch Companies." At their peak, the Arch Companies managed or controlled real estate valued in excess of $1 billion across the United States. The Arch Companies are composed of numerous affiliated operating and investment entities, including an operating company and a holding company for each real property. In the aggregate, there were approximately 125 third-party investors in the Arch Companies' properties in addition to the Debtor, the Debtor's family, and other related parties. The structure of the Arch Companies necessarily required the Debtor to be a fiduciary for the benefit of all parties and there were

provisions that limited AREH's Managing Member role to prevent its benefiting financially for itself or its members without the consent of other parties, except as expressly set forth in the applicable documents.

9. The following is a simplified version of a complex corporate structure for the Arch Companies. In general, the Arch Companies' properties were managed by AREH, as a non-member manager of the separate limited liability companies owning or operating the properties. Prior to the litigation described below, the Debtor was the sole person, corporately through JJ Arch LLC ("JJ Arch"), directing the operations of AREH and hence had direct supervision over all the Arch Companies' properties and business affairs.

10. AREH, in turn, had two members, JJ Arch, the managing member had an 80% interest, and 608941 NJ Inc. ("Oak"), an investor member, had a 20% interest with a sunset provision after a 5-year exclusivity period. Oak is subsidiary of 35 Oak Holdings Ltd. ("35 Oak"). In the Arch Companies' business model, Oak's purpose was not managerial. It had only the ability to veto certain major decisions and/or transactions. Its purpose was to provide loan guarantees and seed equity alongside funding provided by the Debtor, Jared Chassen, a minor owner of JJ Arch, the families of the Debtor and Mr. Chassen, and a few key employees. Oak's main benefit was to receive 50% of all property-related profits in return for the contractual obligations it undertook until its exclusivity expired in 2022.

11. Oak is a New Jersey corporation with a principal place of business in Toronto, Canada. Its principals are Kevin Wiener, William Wiener, and Michael Weiner. In the corporate structure for each of the Arch Companies' properties, the holding company was owned by JJ Arch or a company controlled by JJ Arch and Oak or an affiliate of Oak or the Weiner family, and the property owner was owned by the holding company and several independent

investors. The economics of the Arch Companies, including the distributions of profits, were controlled through a separate company, Arch Property Holdings I ("ARPH I"), which is a party to various operating agreements and of which Oak served as the Class A member, JJ Arch as the Class B member, which is the managing member, and two former key employees, Michelle Miller and Tristan Last, were Class C members. The Debtor also permitted a few other key employees to invest from time to time. ARPH I operated in conjunction with JJ Arch to control property-based distributions.

12. From the outset and at all relevant times, the Debtor was majority owner and managing member of JJ Arch. The only other minority owner was Mr. Chassen. As discussed below, Mr. Chassen's interest in JJ Arch was initially modified by amendment in 2021 and then divested in 2023, pursuant to the terms of the JJ Arch operating agreement, which the Debtor has referred to as both a resignation and a deemed resignation, based on Mr. Chassen's non-compliance with his financial obligations and his collusive relationship with Oak, which was not permitted by his agreement with JJ Arch, and manifested by his Common Interest, Joint Prosecution and Joint Defense Agreement with 35 Oak, dated August 6, 2023, but made effective *nunc pro tunc* as of August 3, 2023, an agreement the Debtor did not see until it was produced to the Debtor in litigation about two years after it was entered into. This agreement, combined with a purported "settlement" email, dated July 19, 2023, sent by Oak's counsel, illuminates a scheme by Oak, in which Mr. Chassen participated, to strip the Debtor from his interests in the Arch Companies and JJ Arch. Since Oak had no contractual ability to control any of the investment entities, the only path to get the control they sought was through JJ Arch and Mr. Chassen's minority interest in JJ Arch. The Common Interest, Joint Prosecution and Joint Defense Agreement combined with the purported "settlement" email also resulted in a de facto

merger of JJ Arch and AREH with Oak in control that violated the agreements AREH and its affiliates had entered into with the third-party investors. Oak sought to exercise control through Mr. Chassen's apparent authority at JJ Arch, even though an amendment to the JJ Arch Operating agreement provided that Mr. Chassen had no significant managerial authority. As discussed below, the Debtor also fired Mr. Chassen. (The interplay among resignation, dissolution, deemed resignation, and firing has been the subject of considerable litigation filings, and need not be elaborated in this complaint.)

13. Although the Debtor maintained his managerial control of JJ Arch, his ownership interest in JJ Arch was transferred to YJ Simco in 2022. Mr. Chassen also transferred his interest to a separate entity for reasons he described to the Debtor as estate planning purposes.

14. As the relationship with Oak was reaching its contractual sunset, the Debtor began the process of establishing himself as the sole future guarantor for AREH's properties. The Debtor's lawyers, accountants, and internal team helped him start to build up a family office structure using YJ Simco, along with a proposed family trust for the benefit of his wife and children. Given the need to have a bankable balance sheet for institutional lenders' financial requirements, the Debtor started purchasing properties directly with his wife and through JJ Arch. In the last AREH acquisition, which involved property in Palm Beach, Florida, the Debtor was able to satisfy a lender to use his personal guaranty as the sole guaranty of property to be acquired by AREH, but Oak's guaranty was nevertheless included, even though not required.

15. Starting in late 2022, owing to financial turmoil in the global real estate investment and lending markets due to high inflation and exceptional interest rate growth, and coincidentally as Oak's period of exclusivity was ending, substantial disagreement developed among Oak and JJ Arch regarding the Debtor as the only controlling person in the Arch

Companies. In particular, the Debtor took part in a presentation to Oak in November of 2022, forecasting to August of 2023, that demonstrated significant potential future capital needs which Oak would be required to fund pursuant to its agreements and loan guarantee obligations. Despite its contractual obligations, Oak refused to provide the required funding. Although other investors, including the Debtor and Mr. Chassen, had the right to fund and could have chosen to fund, they did not have the requirement or responsibility to do so. The Debtor spent six months working with outside counsel, Y. David Scharf of Morrison Cohen, his internal team, and separate lender and investor groups trying to find solutions for Oak's unwillingness to fund. By mid-2023, the loans were imbalanced due to the increase in interests rates, and the lack of funding of equity caused a lack of lender fundings. Oak nevertheless demanded that the projects continue on the credit and good name AREH had in the market, and this resulted in $25 million of unpaid obligations across the AREH portfolio within 90 days. The Debtor, as managing member of JJ Arch, the managing member of AREH, and with Mr. Chassen's knowledge, also worked with an outside corporate attorney, Len Breslow of Breslow & Walker, who suggested that the only options for AREH were to source a new partner, dissolve, or to file for bankruptcy. The Debtor, as managing member of JJ Arch, the managing member of AREH, and with Oak's consent, hired a broker to explore the first two options. Also under consideration was the dissolution of AREH and its affiliates. Oak was aware of this, and it worked to sabotage the broker's efforts, by, among other things, working with Infinity, an existing partner of AREH, of principal of which, David Berg, is a cousin of Mr. Chassen's.

16. As a result, the Debtor, as managing member of JJ Arch, the managing member of AREH, proposed exploring a possible bankruptcy filing of AREH and related entities. Since the Debtor could not come to terms with Oak, Oak gave the Debtor two options: (1) Give the keys

to the properties back to their respective lenders to allow Oak to seek guarantee relief; and (2) Oak would borrow funds, but the Debtor had to change the distribution waterfall on the properties to Oak's benefit (and to the detriment of the independent investors), a change that was prohibited by the relevant documents. In mid-July 2023, Oak decided that it would push the Debtor out of the Arch Companies and use Mr. Chassen to implement this plan, a maneuver that would result in substantial defaults under all lender and investor agreements, which provide for the Debtor to be a key principal and controlling party. A July 19, 2023 "settlement" email sent by counsel for Oak to Mr. Breslow illustrates both Oak's motive and the blueprint for what ultimately followed. This "settlement" email caused an immediate conflict between Mr. Chassen and the Debtor. Mr. Chassen refused the Debtor's request to say "no" to Oak, and the Debtor fired him, after trying to work with him for almost two weeks, because the Debtor, as a fiduciary to the other parties, felt he had no choice. Oak's principals resisted the firing of Mr. Chassen and the potential bankruptcy filings for AREH and related entities because they believed that bankruptcy filings would trigger numerous corporate and personal guarantees they had issued in connection with the Arch Companies' properties. Subsequently, 35 Oak and Mr. Chassen entered into the Common Interest, Joint Prosecution and Joint Defense Agreement, described above, to allow their attorneys to share confidential attorney-client matter because they determined that their economic interests were aligned and contrary to the Debtor's. Litigation over the control of the Arch Companies eventually ensued. Some, but not all, of this litigation and the activities in the litigation will be described below.

17. After the Debtor fired Mr. Chassen on August 5, 2023, in furtherance of his plan with Oak, he took several unauthorized actions against the Debtor in connection with the Arch Companies. In particular, Mr. Chassen misled a banking institution into removing the Debtor's

access to the bank accounts of AREH, JJ Arch, YJ Simco, and affiliated companies, and amazingly, the accounts belonging to the Debtor and his family, at First Republic Bank. Mr. Chassen misled an information technology consultant into removing his access to company email and electronic records, and Mr. Chassen arranged to deactivate the Debtor's physical access to the Arch Companies' office.

18. Oak initiated litigation against the Debtor in the District Court for the Southern District of New York on August 10, 2023, alleging, among other things, breach of fiduciary duties, tortious interference with prospective business advantage, and defamation, This case was later withdrawn by Oak, approximately six months after it was commenced. In October of 2023, Oak intervened in the 158055 Action (defined below).

19. On August 14, 2023, the Debtor commenced an action in the Supreme Court of the State of New York, County of New York, Index No. 158055/2023 (the "158055 Action") individually and derivatively as managing member of JJ Arch, and in turn, derivatively as managing member of AREH against Mr. Chassen and First Republic Bank, which sought to restore his access to the Arch Companies' accounts and re-establish his control over AREH. Oak was not named in this action, although it later intervened. The Debtor came to learn that Oak had funded Mr. Chassen's legal fees in this action, in excess of $250,000 to start, even hiring the firm of Fried, Frank, Harris, Shriver & Jacobson LLP to represent Mr. Chassen, a firm that had worked for AREH while the Debtor was in control of AREH.

20. After the Debtor achieved some initial success in the 158055 Action in restoring his access and managerial rights, Oak intervened and with Mr. Chassen's support sought the temporary appointment of a receiver and a preliminary injunction to be installed as the managing member of AREH, while continuing to resist its obligations to fund the Arch Companies and

continuing to make threats against the Debtor when the Debtor pressed the possibility of an AREH bankruptcy petition. Even though Mr. Chassen admitted to his "self-help" initiatives, the state court allowed him back in the business and eventually enjoined the Debtor from removing him, but did not and could not prevent Mr. Chassen from having resigned by virtue of his own actions.

21. Even though Oak told the Debtor that it was not involved with Mr. Chassen's earlier activities, Oak quickly persuaded Justice Joel M. Cohen in the 158055 Action to issue a preliminary injunction to install Oak as the temporary managing member of AREH by November of 2023, and enjoined the Debtor from engaging in managerial activities for AREH. The November 3, 2023 order provided that "Oak will serve as acting managing member of AREH, owing all applicable duties to AREH and its members." As a result, the order required Oak to be a fiduciary to the Debtor, but Oak has not provided any information to the Debtor or observed the duties to JJ Arch as required by the AREH Operating Agreement. The results of Oak's management of AREH have been catastrophic, as illustrated by proofs of claim filed in the Debtor's case. Bills have gone unpaid and Arch Companies' properties have gone into foreclosure or been disposed of through deeds in lieu of foreclosure, engineered by Oak in exchange for guarantee relief, transactions prohibited by the relevant agreements in the absence of consent from investors as well as from the Debtor in his capacity as the sole representative of the managing member of the relevant investment entities in the corporate structure. Oak has also withheld distributions to JJ Arch or the Debtor as required by the AREH Operating Agreement.

**The Debtor's Chapter 11 Case, the Retention of Counsel, and the Mortgage on the Condominium Unit Owned by ST LLC**

22. As stated above, the Debtor filed his voluntary chapter 11 petition with this Court on February 19, 2026. On March 20, 2026, the Debtor filed an application to retain Becker Glynn as his counsel (the "Retention Application"). The Retention Application attached as Exhibit A the Declaration of Disinterestedness of Alec P. Ostrow in Support of Application of Debtor and Debtor in Possession to Retain Becker, Glynn, Muffly, Chassin & Hosinski LLP as Counsel to Debtor and Debtor in Possession as of the Petition Date, and as Exhibit B the Disclosure of Compensation of Attorney for Debtor filed by Becker Glynn on March 5, 2026, which, in turn, attached the Engagement Agreement between Becker Glynn and the Debtor, dated February 18, 2026. The Engagement Agreement provided for a financial arrangement that included:

> A consummated agreement with 1055 Park Ave ST LLC, a limited liability company owned by [the Debtor's] wife, Yael Simpson, for a nonrecourse guaranty of the fees and expenses of the Engagement, collateralized by a mortgage on the condominium apartment known as Unit Suit [sic], 1055 Park Avenue, New York, NY (the "Unit").

23. The Retention Application drew several objections, including a joint objection from Oak and Mr. Chassen, filed on April 1, 2026, as well as a document filed by AREH on April 6, 2026, entitled "Statement and Reservation of Arch Real Estate Holdings LLC Concerning Application of Debtor and Debtor in Possession to Retain Becker, Glynn, Muffly, Chassin & Hosinski LLP as Counsel to Debtor and Debtor in Possession as of the Date of the Petition," which stated, among other things, that AREH had filed a claim in the YJ Simco bankruptcy case "for Mr. Simpson's use of AREH's property for YJ Simco business."

24. The gravamen of the objections to the retention of Becker Glynn concerned the mortgage executed by ST LLC in favor of Becker Glynn (the "Mortgage") and the guaranty executed by ST LLC in favor of Becker Glynn (the "Guaranty").

25. On April 7, 2026, a Supplemental Declaration in Support of Application of Debtor and Debtor in Possession to Retain Becker, Glynn, Muffly, Chassin & Hosinski LLP as Counsel to Debtor and Debtor in Possession as of the Date of the Petition, was submitted by Alec P. Ostrow, which attached as Exhibit A the Mortgage, as Exhibit B the Guaranty, and as Exhibit C the affidavit executed by Yael Simpson, individually and in her capacity as the sole member of ST LLC.

26. This Court held two hearings on the Retention Application, on April 8, 2026 and May 7, 2026. After the April 8, 2026 hearing, this Court entered the Order Adjourning Hearing on Retention Application on April 8, 2026, which order, among other things, directed Yael Simpson to file a declaration addressing the questions raised by the Court at such hearing concerning the formation of, and the membership interests held in, ST LLC. On May 4, 2026, a supplemental statement in support of the Retention Application was filed, which attached the declarations of Yael Simpson and Ilan Lerman, the transactional attorney who represented her in connection with her declaration and who had represented ST LLC in connection with the Mortgage and the Guaranty. Attached to the declaration of Yael Simpson as Exhibit 1 was the Articles of Organization of ST LLC, as Exhibit 2 was the filing receipt for the Articles of Organization of ST LLC as issued by the New York State Department of State, and as Exhibit 3 was the notice from the Internal Revenue Service assigning an employer identification number, issued to Yael Simpson as the sole member of ST LLC. At the May 8, 2026 hearing, the Court considered and overruled the objections, and granted the Retention Application. On May 8,

2026, this Court entered an order overruling the objections to the Retention Application and granting the Retention Application.

**<u>Oak's Proof of Claim and Amended Dischargeability Complaint</u>**

27. On February 23, 2026, the clerk of the bankruptcy court issued a Notice of Chapter 11 Bankruptcy Case in the Debtor's case, which, among other things, set May 26, 2026 as the last date to file a complaint objecting to the dischargeability of debts under section 523(a)(2), (4), or (6) of the Bankruptcy Code.

28. On May 26, 2026, Oak filed a complaint in this Court commencing adversary proceeding number 26-01046 (LGB) (the "Oak Nondischargeability Action"), to determine that the claims asserted by Oak against the Debtor in an intervenor complaint in the 158055 Action (the "Intervenor Complaint") represented debts to Oak that were nondischageable under section 523(a)(2), (4), or (6) of the Bankruptcy Code.

29. On June 23, 2026, this Court entered the Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof, which set July 31, 2024 as the last date for non-governmental units to file a proof of claim.

30. On July 27, 2026, the Debtor moved to dismiss Oak's nondischargeability complaint. The Debtor's motion to dismiss was based, among other things, on Oak's failure to plead fraud-based claims with particularity and failure to allege sufficient, plausible facts, giving rise to the requisite culpable state of mind.

31. On July 30, 2026, Oak filed proof of claim number 25 in the Debtor's bankruptcy case in the amount of $50,000,000.00, attaching a rider that referred to the Intervenor Complaint as the basis for the proof of claim.

32. On September 7, 2026, counsel for Oak and the Debtor executed in the Oak Nondischargeability Action a Notice of Adjournment of Hearing on Motion to Dismiss, which provided for the Debtor's consent to Oak's filing an amended complaint and the withdrawal of the motion to dismiss.

32. On September 15, 2026, Oak filed an amended complaint in the Oak Nondischargeability Action (the "Oak Amended Complaint").[1] In addition to attaching the Intervenor Complaint, the Oak Amended Complaint contains the following allegations:

> 95. In addition to improper cash transfers Mr. Simpson made for his own benefit, he also misappropriated AREH assets by putting himself on the AREH benefits plan and by using AREH employees to provide services to JJ Arch and to Mr. Simpson and his companies, without authority to do so and often without any benefit or reimbursement to AREH.
>
> 96. Mr. Simpson put employees on AREH's payroll that were not performing work for AREH, but were working on construction on his other projects, working on cars at Mr. Simpson's separate company, Rever Motors, doing account and bookkeeping for Mr. Simpson's other companies, and doing taxes and other financial tasks for Mr. Simpson individually.

**<u>The State Court Action</u>**

33. On June 1, 2026, the Arch Entities commenced the State Court Action. On June 5, 2026, the Arch Entities filed their first amended complaint (the "FAC"), a copy of which, excluding exhibits, is annexed hereto as Exhibit A.

34. The FAC seeks to impose liability on many of the defendants in the State Court Action, including YJ Simco, ST LLC, and 266 WMTR, which are included in the FAC's definition of "Contract Defendants," on claims of breach of contract (first cause of action) and

[1] The Amended Complaint was initially filed in the main case on September 15, 2026. It was refiled in the Oak Nondischargeability Action on September 18, 2026.

unjust enrichment (second cause of action) based on the conduct of the Debtor. The FAC contains the following allegations:

> 17. Until November 3, at the direction of J. Simpson, each Contract Defendant used AREH's resources including bookkeeping. J. Simpson acted as AREH's managing member until that date, when this Court entered a series of interim orders in the case captioned *Simpson v. Chassen et al.*, Index No. 158055/2023 (Sup. Ct. N.Y. Cty.) (Cohen, J.). The Court granted sole management rights over Plaintiff to 608941 NJ, Inc., subject only to certain "Major Decisions" which must be submitted jointly to both Jeffrey Simpson and Jared Chassen, and which either can unilaterally approve. These interim orders remain in effect.
>
> 18. Under Section 7.1.3(x) of AREH's Operating Agreement, attached as **Exhibit A** hereto, each Contract Defendant is an "Affiliate" that was required to pay a "market rate" for Plaintiff's management services. Plaintiff, however, was not paid for its services. Plaintiff seeks a minimum of $550,000, amounting to 2% fee per annum as a "market rate" for fees for its management services under the Operating Agreement. Alternatively, Plaintiff seeks to be made whole by each Contract Defendant under a theory of unjust enrichment.

35. The FAC also seeks to invalidate the Mortgage and Guaranty issued by ST LLC in favor of Becker Glynn, based, among other things, on the Arch Entities being a creditor of ST LLC as a result of the allegations quoted above, and that the transfer to Becker Glynn by ST LLC was a voidable transaction under New York Debtor and Creditor Law section 273(A)(1) (fourth cause of action), New York Debtor and Creditor Law section 273(A)(2) (fifth cause of action), and New York Debtor and Creditor Law section 274(a) (sixth cause of action).

36. The FAC also seeks to impose liability for attorneys on Becker Glynn and Yael Simpson, who are included in the FAC's definition of "Transfer Defendants," for attorneys' fees under New York Debtor and Creditor Law section 276-a.

37. Becker Glynn has moved to dismiss the FAC. Becker Glynn's motion to dismiss is based on, among others, that the Arch Entities are not creditors of the Contract Defendants

under the New York Debtor and Creditor Law, and that the Mortgage and Guaranty do not violate the New York Debtor and Creditor Law. A copy of the memorandum of law in support of Becker Glynn's motion to dismiss the FAC is attached hereto as Exhibit B.

38. Other than Becker Glynn, none of the other defendants in the State Court Action have answered or moved to dismiss the FAC.

39. The non-Becker Glynn defendants in the State Court Action have sought to retain counsel, but have been able to do so because they lack the funds necessary to pay a retainer sought by prospective counsel. Prior to August 2023, the other defendants depended on the Debtor and the Debtor's resources for funding of expenses such as the retention of counsel to defend them in litigation. In light of the Debtor's financial condition as a result of the actions of Oak, Mr. Chassen, and AREH since August 2023, as described above, the Debtor lacks the resources to fund the litigation expenses of the non-Becker Glynn defendants. Following the Debtor's chapter 11 filing, the Debtor may not use estate resources for such purpose without permission from this Court.

**<u>Claim for Relief – Injunction to Protect Reorganization Efforts – 11 U.S.C. § 105(a)</u>**

40. The Debtor repeats and realleges the allegations in paragraphs 1 through 39 of this complaint as if set forth at length herein.

41. Section 105 of the Bankruptcy Code authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. This provision has been construed to authorize injunctive relief against acts and actions that that have immediate adverse economic consequences for a debtor's estate, or when the estate is likely to suffer irreparable harm. This provision also been construed to

authorize injunctive relief against litigation against a non-debtor when there is such an identity of interests between the non-debtor and the debtor such that the debtor is the real party in interest, including when the litigation against a non-debtor seeks to establish a claim against a debtor.

42. In the present case, the State Court Action seeks to establish liability against the Contract Defendants who, prior to August 2023, were controlled by the Debtor, based on the Debtor's conduct. As a result of the Oak Amended Complaint, Oak, which now controls the Arch Entities as a result of orders entered in the 158055 Action, has asserted the same claim against the Debtor that is asserted against the Contract Defendants in the FAC.

43. Moreover, because the Intervenor Complaint is the basis of Oak's proof of claim, and suffers from the same infirmity as Oak's original complaint in the Oak Nondischargeability Action, an objection to Oak's proof of claim will likely cause Oak to amend its proof of claim to assert, among other things, the same allegation against the Debtor as set forth in the Oak Amended Complaint, thus making the same claim against the Debtor's estate as has been made against the Debtor.

44. In addition, because the FAC attacks the Mortgage and Guaranty, the FAC seeks to invalidate the Debtor's financial arrangement with Becker Glynn that was a condition for Becker Glynn's agreement to be engaged as counsel to represent the Debtor and Debtor in Possession. An invalidation of the Mortgage and Guaranty puts the Debtor at risk of losing his chapter 11 counsel, which puts the Debtor's reorganization efforts at risk.

45. Significantly, because the FAC seeks to impose liability on the Debtor's wife for attorneys' fees in connection with the alleged voidable transactions of the Mortgage and Guaranty, the basis of which allegations is the pre-August 2023 conduct of the Debtor, the

Debtor's ability and desire to devote his energy to his reorganization efforts has been severely and adversely affected.

46. In addition, the inability of the non-Becker Glynn defendants to retain counsel due to lack of resources, which had been previously furnished by the Debtor, and the prospect of a default judgment being entered against the non-Becker Glynn defendants puts the Debtor at risk of losing the value of his direct and indirect equity interests in the entities, and most important, puts the Debtor at risk of not being able to support and protect his wife and his family.

47. To prosecute the chapter 11 case, the Debtor has been sent for his review and comments a draft chapter 11 plan and drafts of objections to four proofs of claim, which represents the first set of objections to claims. If the injunctive relief sought by this complaint is granted, the Debtor will be able to devote his time and energy to proposing, confirming, and consummating a chapter 11 plan, and reducing the amount and number of allowed claims entitled to distribution under such plan. Such plan will be confirmable within a reasonable period of time.

48. As a result, the Debtor is entitled to an injunction, pursuant to section 105(a) of the Bankruptcy Code against the Arch Entities enjoining them from continuing to prosecute the State Court Action.

WHEREFORE, the Debtor respectfully prays for a judgment enjoining the Arch Entities from continuing to prosecute the State Court Action, granting the Debtor his costs and

disbursements of this adversary proceeding, and granting the Debtor such other and further relief as is just.

Dated: New York, New York
September 25, 2026

BECKER, GLYNN, MUFFLY,
CHASSIN & HOSINSKI LLP

By: _*/s/ Alec P. Ostrow*___
Alec P. Ostrow
aostrow@beckerglynn.com
299 Park Avenue
New York, New York 10171
(212) 888-3033

*Attorneys for Jeffrey Solomon Simpson, as Debtor and Debtor in Possession*