# Exhibit B

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - -x

In the Matters of:

Jeffrey Solomon Simpson, Lead Case No.

Debtor. 26-10359-lgb

- - - - - - - - - - - - - - - - - - - - -x

JEFFREY SOLOMON SIMPSON, Adv. Proc. No.

Plaintiff, 26-01097

v.

ARCH REAL ESTATE HOLDINGS LLC, et al.,

Defendants.

- - - - - - - - - - - - - - - - - - - - -x

United States Bankruptcy Court

One Bowling Green

New York, New York

October 19, 2026

04:32 PM

B E F O R E:

HON. LISA G. BECKERMAN

U.S. BANKRUPTCY JUDGE

ECRO: K. BRAITHWAITE

Plaintiff's Motion for Preliminary Injunction

Order to Show Cause

Transcribed by: Lisa Beck
eScribers, LLC
7227 North 16th Street, Suite #207
Phoenix, AZ 85020
(800) 257-0885
operations@escribers.net

A P P E A R A N C E S (All present by video or telephone):

BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP

Attorneys for Debtor

299 Park Avenue

16th Floor

New York, NY 10171

BY: ALEC P. OSTROW, ESQ.

OLSHAN FROME WOLOSKY LLP

Attorneys for Arch Real Estate Holdings LLC, et al.,

1325 Avenue of the Americas

New York, NY 10019

BY: JONATHAN KOEVARY, ESQ.

DEAN OSWALD, ESQ.

P R O C E E D I N G S

THE COURT: Good afternoon. This is Judge Beckerman. Court is now in session. I'm going to call the case and then I'll ask the parties to please identify themselves. Simpson v. Arch Real Estate Holdings LLC, et al, adversary proceeding number 26-01097. May I have appearances, please?

MR. OSTROW: Good afternoon, Your Honor. Alec Ostrow from Becker, Glynn, Muffly, Chassin and Hosinski for Jeffrey Solomon Simpson.

THE COURT: Good afternoon.

MR. KOEVARY: Good afternoon, Your Honor. Jonathan Koevary, Olshan Frome Wolosky for the defendants in this case. And on the line with me is my colleague from Olshan Frome Wolosky, Dean Oswald.

THE COURT: Good afternoon. Good afternoon also, Mr. Simpson. I saw you.

All right.

MR. SIMPSON: Good afternoon. I apologize, Your Honor, that I'm not in court attire.

THE COURT: That's okay, Mr. Simpson. Good afternoon.

MR. SIMPSON: Apologize.

THE COURT: This is a discovery dispute between lawyers. So sorry.

All right. Mr. Koevary, you had asked for a conference, so you had raised some issues about this week.

MR. KOEVARY: Yes. Yes, Your Honor. Thank you, Your Honor. And I really appreciate Your Honor and chambers and your staff accommodating us so quickly. And I also hope that Your Honor's surgery last week was a success.

THE COURT: Yes. One good eye and one still wampy eye next to be done on Wednesday, but thank you.

MR. KOEVARY: Oh, okay. Very quickly. Okay. Well --

THE COURT: I got one good eye. If you see me putting glasses on and off, there's a reason because it's all --

MR. KOEVARY: Okay.

THE COURT: -- a little odd for me at the moment but that's okay.

MR. KOEVARY: Fair enough. And I especially appreciate you seeing us on such short notice. So --

Your Honor, I sought a conference today for a number of reasons. The big picture, one, Your Honor, is that we really should be having a proper, streamlined evidentiary hearing next week to discover what is before the Court. That's the preliminary injunction. And nothing provided by the debtor, by the deadline to supplement, ought to expand the scope of what the debtor conceded in his motion and what was discussed at the most recent discovery conference on October 8th.

And by the way -- and we remain prejudiced because we're doing this all while the defendants are bound by this

Court's temporary restraining order.

On the other hand, Your Honor, we have a debtor who, as of this morning, hadn't complied with the most basic of his discovery requirements and who clearly, from the record, thinks this is an opportunity to harass and address his personal grievances. That's what this is all about. He put it on the record, Your Honor, that this purpose is to interrogate my client principal, personally.

I have information, though Mr. Ostrow could speak to this for sure, but the information that came our way that the plaintiff issued blanket subpoenas on a number of parties over the last few days, trial subpoenas. I haven't received any notice of that but I think that goes well above and beyond the scope of what was discussed on October 8th. And I don't think there's been anything other than the two declarations, additional declarations that were filed, that should give any rise to expanding the scope of this hearing.

And the purpose -- I mean, we've seen today to create some sort of perceived criminal record. And essentially, what we're seeing is some sort of unwieldy mess all while my client remains prejudiced. And today, Your Honor -- I mean, the debtor went so far as to give the Court an ultimatum in his communication. He said, "Your Honor, so it's your own choice here. I can interrogate him or you'll let the criminal justice folks do it." Speaking about my client principal. Then he

wrote, "Yes, ma'am", speaking to, Your Honor, "that's what we're dealing with here. And once you realize that, you'll never insult me again and you'll start to see why a procedure is irrelevant because this is hostile and illegal." That's the ultimatum. Those are the plaintiff's words.

So this imbalance between a streamlined procedure and wanting the universe of expanded subpoenas and expanded right to interrogate my client on everything manifests itself in a number of ways. Like so, for example, on Thursday afternoon, late Thursday afternoon, we received for the first time deposition topics which we received 10 days after we had our Rule 26 conference and our meet and confer.

And we objected to them the next day. And with a deposition scheduled for Tuesday -- now Mr. Ostrow last week asked for Wednesday. We weren't available then but we offered this past Tuesday. We offered Friday. We offered a date next week. He chose the first date. I have a feeling he wanted to go first. That was the reason we didn't object to that.

But then we got the deposition topics giving only two business days in between to respond and, as pursuant to our objections, I mean, they're incredibly overbroad. They seek legal -- call for legal questions. All sorts of issues with them. And they're just -- for the purpose of just obtaining from the defendants what the debtor needs to prove its burden is just wholly inappropriate. So that's one reason.

And then on Friday, that's when we put the deadline for a document request. I know Mr. Ostrow was here complaining that every document request should have 30 days. I don't think that's what the Court ruling was that he was going to have to comply. We chose October 16th and we served the document requests also on October 5th having the October 22nd deposition in mind. We hoped we were going to have this last weekend to review documents and we didn't get anything. So we lost the weekend on that.

Over the weekend, we learned about what we believe to be blanket trial subpoenas. I haven't seen one. They're wholly inappropriate as I've said before. And then last night and today, we received letters from the debtor making clear the true intended scope and purpose of this whole process. And that the debtor also himself intends to interrogate my client principal tomorrow.

So we did receive some -- we received the objections this morning. We have issues with the objections that we received. Other -- beyond that they're simply being late. This afternoon I really haven't had a chance to look. We've got -- looks like 39 files were produced at some point this afternoon. Based on the objections, however, it looks like notwithstanding this Court's ruling, it just -- the debtor is unwilling to share any communications concerning the allegation that Becker Glynn will withdraw or anything else along the

lines. So we don't see how any of that piece of the declaration ought to be in evidence.

So above all, my clients, the defendants, they stand here prejudiced by the TRO. They're ready, willing and able to move forward on the 29th. They could have also sought some sort of expansive hearing. Clients have not even noticed the deposition of the other two people who filed declarations.

But they're prejudiced by the full-throated use of these proceedings as a vehicle for harassment while having to run to the court for relief to ensure their own -- to ensure the plaintiff's own discovery compliance even though the burden is squarely on the plaintiff.

So Your Honor, we seek guidance as to what next week's hearing should be. And beyond that, we seek a protective order heading into tomorrow's deposition that limits the 30(b)(6) topics to what may be discoverable for the limited basis of allowing the plaintiff to prove its preliminary injunction motion based on the standard argued in their own papers and what the Court discussed last week. And also further ensures that counsel and not the debtor ask questions. And we're reserving all rights to seek waiver and the like, as we put in our letter, for failing to comply with discovery obligations to date.

So we felt just given the timeline and given everything that was going on, it was important to get before

Your Honor now and then that's why we're here, Your Honor. Thank you.

THE COURT: Mr. Ostrow?

MR. OSTROW: Thank you, Your Honor. I join Mr. Koevary in wishing you a complete recovery from your surgery and hopefully that the next one goes as well as the first one seems to have gone.

First, with respect to the document request, the October 16th deadline -- first, that deadline was arbitrary. It was not on the face page of the request. It was on -- hidden on page 6 in the end of the instruction section. And on the face page, it says pursuant to Rule 34 and Rule 34 gives 30 days.

So an October 5 request with an October 16 deadline is an eleven-day deadline, which is arbitrary, and I submit unenforceable. We always intended to provide the response in the documents at least a couple of days before the debtor's deposition on the 22nd. And that has been done. We did it today. That's one business day after October 16th.

But I don't know other than the loss of the weekend what the prejudice is, especially when the eleven-day return date was arbitrary. And I don't think there was any direction that date be complied with other than we cooperate in trying to make discovery make sense in the context of an October 29 evidentiary hearing. And we think we've done that in good

faith. And we think that we have fulfilled the spirit of the obligation. And there's no basis for an insistence on an arbitrary October 16 deadline.

On the topics, Your Honor, the purpose of the topics provision in a Rule 30(b)(6) deposition is to enable the corporate party to select the appropriate representative. No other deposition notice requires topics. But we already knew who Mr. Koevary was going to select in advance because he told us. So the topics was basically a formality that was adhered to.

And the topics in Rule 30(b)(6) do not determine the scope of discovery. The scope of discovery is determined by Rule 26(b). And other than the notion of proportionality and reference to resources, the scope is relevant to the party's claim or defense and the discovery need not be admissible evidence.

So the topics should not be used as a predicate for an advance limitation in the scope of the examination. The scope of the examination is what's relevant to any party's claim or defense and we intend to ask questions that are related to any party's claim or defense.

And obviously, if he gets an advance limitation from, Your Honor, then he could use that to instruct his client not to answer questions because there are only three grounds under Rule 30(c)(2) to direct a witness not to answer a question.

It's to preserve a privilege, enforce a court limitation or to move to terminate the deposition based on the depositions being conducted in bad faith or with annoyance or embarrassment or oppression.

So Your Honor, he's asking for an advance limitation based on an improper interpretation of the topics in 30(b)(6) which are not limitations in terms of the scope of discovery. So we ask that no such limitation be presented.

With respect to the subpoenas, Your Honor, obviously, we had a discussion about the presentation of witnesses. And I said twelve, and Your Honor said we're not having twenty. I issued six subpoenas. And I don't think there's any requirement, since they're not deposition subpoenas, there's not any requirement to give notice. But I did say, at the October 8 conference, who our potential witnesses were. And the six that I issued were to people that I named at that conference.

They are Tristan Last, David Heyman (ph.), Evan Azriliant (ph.), Yechiel Lehrman, Jason Paul and Jared Chassen. And what I did was I emailed each of these potential witnesses or their counsel asking them to accept service so I don't have to send out process servers. With respect to Mr. Chassen, I sent it to his lawyers, Mr. Schwartz (ph.) -- Mr. Southard (ph.) and Mr. Scott (ph.), asking if they would accept service to avoid, obviously, having a process server. The same was

done to all the other witnesses. And these are people identified by me at the last conference.

So obviously, I don't know if we're going to call all of these people. But I wanted to make sure that if we decided to call any of them that they had as much notice as possible and so that they have their own opportunity to move to quash if they think that's necessary or to fight the subpoena if they think that's necessary.

But these are not deposition subpoenas so I don't know of any requirement. And as I say, I named all of these people at the last conference. And I think it's a matter of courtesy to ask them if they would accept service via email, in the first instance, rather than sending a process server around. So I don't think that there's any issue there.

Now obviously, Your Honor, you have the ability to control the presentation of testimony at the hearing and determine the length. But until we get to closer in, I'm not going to know exactly what my presentation of evidence is going to be. We've done a lot of stuff in terms of preparation. There have been additional declarations filed and additional documents filed. We've had conferences. We have two depositions scheduled. There's been a discovery demand and a response. I have not made a document discovery request on the defendants.

Your Honor, I think that we're doing the best that we

can in good faith to make sure that we have the proper presentation of evidence on the hearing on the 29th.

Now with respect to tomorrow's deposition, I want to raise one issue in advance. And that's with respect to the conduct of the deposition. Mr. Koevary's 30(b)(6) witness is, as he announced at the last conference, Kevin Wiener. Kevin Wiener, as he and I discussed, is going to be in Canada.

So we agreed to a remote deposition on October 5. What I don't want is an objection to the conduct of the deposition because if the witness is in Canada and we can't get somebody authorized to administer oaths under Canadian law. Obviously, Rule 30 says that -- (c) says the deposition continues subject to the objection. And the objection can be hashed out later. But I don't want any gotchas here. We're trying to be -- we're trying to be accommodating and get this done as quickly as possible. So I hope that there will -- if we can't find somebody who's authorized to administer oaths under Canadian law that that's not going to be the grounds for a useless exercise tomorrow.

Now as to Mr. Simpson's emails, I did not send them. And I obviously, I did not encourage him to send them. I discourage him from acting other than through counsel as he's supposed to do. So at least as far as my intention is concerned, I'm going to be the one asking the questions.

So I think, Your Honor, that the discovery -- the

document discovery demand has been met appropriately. I think that there is no basis for an advance limitation on the scope. The subpoenas have been issued appropriately. And I'm hoping that we can get a direction to avoid an objection to the authority of the person administering oaths at tomorrow's deposition. Thank you.

THE COURT: Okay. Mr. Ostrow, I'm trying to make sure that I understand the scope of what should be going on here. And that's definitely an issue, I think, that's a concern of mine. I have your motion. And so whatever's alleged as the basis for the relief and the motion is certainly a fair game.

I think that the actual underlying state court action itself in the sense of the fact that it was brought, I myself raised some issues about whether or not, for example, there's a basis, for example, for either there being any amounts owed or if there were, what the -- how could they possibly be the amounts that were asserted for some of these entities based on what they do or my understanding of what they do. And there are obviously are things alleged in the complaint in the state court action.

But I have a hard time understanding how it can go beyond that because either there's an injunction that you're seeking to enjoin whatever the state court action is seeking to do, and that's what you're asking me for, and then your basis for it is clearly spelled out in your motion and that's the

basis for it along with the supplemental declaration. It can't go beyond that. And if it does, I will be cutting things off because I don't think that that's right. This is a preliminary injunction hearing.

As I pointed out to you, because of my own surgeries, this is happening on a longer time period than I would have otherwise had a preliminary injunction hearing here. And it's not a merits decision making but it does have to -- you do have to show certain things that you chose to plead in the motion under the standards, as you properly articulate, for a preliminary injunction. And some of that does have to do with likelihood of success on the merits. But the issue that you've raised in connection with that is the impact on the restructuring.

So I think there's a restructuring group. There's maybe what's within the four walls of the complaint in the state court action that was pled by Mr. Koevary's client. And then there's things that go beyond that. And that's where I'm going to start having trouble if it starts going beyond that because I'm not -- you pled your theory.

You've provided me with declarations where people have said this is the reason that they're seeking the injunction. And whatever is set forth in the declaration is set forth in the declaration. But it has to meet the standards. And it's the impact on the reorganization standard that you've

articulated.

So I just want to be clear that, to me, there's -- I don't look at this maybe as narrowly as Mr. Koevary is looking at it. But I'm not looking at it as broadly as you're looking at it either just so you understand based on my re-reviewing of the motion and the complaint again.

And I read it again today because I wanted to make sure I wasn't missing something. And I just want to make sure you understand that this is not -- there are obviously a lot of other claims between the parties that exist potentially and this is limited to the entities we're talking about who are sued because those are the people you're asking me to enjoin.

So now, going back to what you all raised, Mr. Koevary, I don't disagree with Mr. Ostrow's point that the 30(b)(6) list is supposed to put you on notice that -- as to what the party needs to be prepared for. That's true. That's why we have it.

If something's unclear to you, I'm sure you can speak to Mr. Ostrow and you have to prepare your witness how you have to prepare your witness. And I'm sorry that this wasn't provided sooner but, again, unless you want to consent to my extending the TRO to some other date and having this preliminary injunction hearing some other date, we're just going to all have to move ahead and suck it up here.

That's just where we're going. So I don't think

that's what you want to do. So given that you don't, your client is obviously going to have to be deposed tomorrow.

Mr. Ostrow's provided you with 30(b)(6) topics for preparation. He's right that it has to go to claim or defense but I've just pointed out to both of you where I see that could be here in terms of the breadth of what it is. I don't think it could be everything that has ever happened because it's limited to what is being sought in that state court action and why there's an argument that there's liabilities that are there. And then, of course, the reorganization impact.

So I think there are some limitations to it. I don't think it's -- Mr. Ostrow, I don't think it's anything you can dream up but you've kind of already put out your -- what you're seeking from me which is an injunction of these specific parties on a specific theory. And obviously, what's been alleged in the complaint could have to do with, for example, issues about impact. I think I've raised that myself.

Issues about whether or not it's likely to succeed, although you have the burden of proving that not Mr. Koevary. But still, if it's a frivolous litigation, for example, may be argument. But I don't think this is a fishing expedition. There's a complaint. There are arguments in the complaint. There's arguments in your complaint, in your motion, rather. Sorry. So that's where I see that.

With respect to tomorrow, Mr. Koevary, I can issue an

order saying that only Mr. Ostrow can ask questions at the deposition if you think I really need to do that. I think Mr. Ostrow has been practicing for like, forty years. I'm guessing more or less something close to that and probably understands the Federal Rules of Civil Procedure as much as you or I do but probably maybe more since he's a law professor.

But regardless, certainly as much as we understand it. So I don't think that he's going to be asking -- having his client asking questions. I know that someone's represented by counsel, they're not to ask questions at a deposition. Their counsel is to ask questions at a deposition. If that's too hard for you to deal with then there's -- my suggestion would be that the client doesn't doesn't attend because if they can't control themselves and allow you to do your job, Mr. Ostrow -- but that's between you and your client.

With respect to the trial subpoenas, Mr. Koevary, I'm not going to quash them now. I think I've noted that there are limitations, in my view, on the scope of this. And so if somebody wants to come and file a motion to quash or somebody wants to come and file a motion to object to the subpoena in your part, for example, that's fine. We'll deal with it then. I'm not going to deal with it now.

I don't think this should be a five-day trial here on this preliminary injunction request given what's been put at stake which is the impact on the reorganization and maybe the

validity of the case itself but nothing else. I don't -- not sure -- as it affects, by the way, the parties I'm seeking to enjoin not as it affects Mr. Simpson. That's going to be for a different day.

You filed proofs of claim. Somebody will object to them. We have a nondischargeability litigation. We got lots of times where that merits is going to come up but that's not for this purpose with Mr. Simpson. It's only with respect to the other parties, people who are being -- who I'm being asked to enjoin permanently on a preliminary basis.

So I mean, I can issue that order that I just said about tomorrow's deposition if you want but I'm not really sure where it's going to get you.

MR. KOEVARY: Your Honor, thank you. Look, if it's understood that Mr. Simpson doesn't is not going to be asking questions, Mr. Ostrow and I can handle that between the two of us and we don't need the order. I think it's clear that we don't intend to -- that will be an issue if Mr. Simpson starts asking questions. So I don't think we need an order for that.

I would like to ask just one point of clarification. And I understand there's a -- obviously, not a consensus on scope. But I had thought -- we had two conferences in this proceeding, Your Honor. This is the third. And at the first conference, Your Honor, which was just fresh out of the gate, sort of -- Your Honor sort of raised like the underlying points

of proving the underlying case. And we talked about that something that may happen going forward.

But I thought we sort of resolved that on October 8 at the second conference that really, this really isn't about the underlying case. And one of the issues also that we also have is that the complaint, at least from our perspective, from our read, the complaint and the motion and the declaration, which are all pretty similar to one another, have -- list a whole -- paragraphs and paragraphs of grievances.

But then when you get to the end of the line, what they're really talking about is, well, what's Count I? Count I of the complaint is a permanent injunction. What's the motion? A preliminary injunction. And there, the standard is -- and we have a brief that's due on Wednesday and we're very well along the way on that. But like, the standard is the debtor's burden. Likelihood of success on the merits is not our case. Likelihood of success on the merits is the debtor's ability to confirm a plan. And then the irreparable harm is the Queenie standard. And that's what we think the focus --

THE COURT: But the irreparable harm can also be the -- if I don't enjoin it, there's going to be a default and perhaps a default judgment issued against the parties. And you've asserted that there's all this money that's owed by these parties. So I don't see how that isn't relevant to that analysis because if the parties are -- actually, if there's a

judgment issued for some significant amount of money against these entities then that would certainly arguably impact the debtor's reorganization and the company itself, et cetera.

Certainly, we've discussed this with respect to YJ Simco and we've discussed this with respect to -- sorry. I never remember the entity but the entity that owns the house -- off the top of my head.

So anyway -- and or allegedly owns the house. I realize Mr. Simpson says that it doesn't -- that he and -- that that YJ Simco owns that entity is what you all argue, the entity that owns -- ultimately owns the house but that what Mr. Simpson argues is actually owned by him and his wife directly that entity.

So I'm not deciding that. But those things could be important. And you've also argued, for example, that these other entities, which I have a lot more skepticism about how it might impact the debtor -- I've been clear about that. I don't think anyone's going to be surprised by that -- is what are you seeking, what is that going to mean for those entities? And what kind of judgment are we talking about and does that impact the estate in some way? Does it not impact the estate?

But some of that goes to the -- and that's because of the action. And the action itself, having reread it again today, what I would say about that is, it's arguing under the applicable agreement of the parties in JJ -- and I guess it

affects the proper AREH entity and JJ Arch being a party to that. How that would be interpreted in terms of whether someone is liable or not is a question.

And obviously, there's also the question of what could you really have done for some of these entities? And yes, I have some skepticism about what could we be talking about here for some of these entities. And that's unfortunately because I've had -- and I don't mean this disrespectfully in any way to Mr. Simpson or YJ Simco. But I've had a whole year of YJ Simco before I got this case and what that told me -- or something close to that.

And what that told me is that some of that -- there were things I found out were never done here that I would have expected in an entity that owns a lot of assets or interests in different companies, allegedly. And that would be true for YJ Simco. This would also might be true for other entities but certainly for YJ Simco, whatever it owns.

And it's that there was no tax returns filed, for example, since 2021 for the debtor. And no one could even provide me with K1s. So I'm not sure what was happening with that. So like on the tax side, I didn't see some -- all this work being done. You know what I'm saying to you? And there was a discovery and this was an issue. So I'm just saying. So I know, for example, that there wasn't a lot that happened there.

And then an entity that owns one piece of property that doesn't rent it out, what is someone doing for that? Like, is it really hundreds of thousands of dollars? Or is this really like you owe them five cents? And that could make a difference in the impact actually on the failure for me to grant the injunction or not.

And it goes both ways, Mr. Koevary, because on one hand, if, for example -- I'm just going to pick on something and I'll call it by its shorthand name ST owes you five dollars under this -- if you work it through everything and it's not precluded by the agreement and you did five dollars worth of work for it. I'm not sure that my failure to grant an injunction would mean a heck of a lot for that.

But on the other hand, if it's hundreds of thousands of dollars that you're asserting are owed there, it might make a difference in terms of the impact. Again, that doesn't go to my viewpoint on whether that is an entity that meets the standards under Queenie for whether I should even be extending anything to it.

But I'm just looking to the -- even for the ones that I have already commented are part of -- are listed in schedules. There, I do think it matters. And also, remember something which you have to think about and I do think I have to take that into consideration, at least again, with respect to entities that are possibly listed in the debtor schedules.

I think I mentioned this to you as well. I don't think this is new. I definitely have said it, which was I've got proof of claim litigation coming up, too.

And so what's going to happen if the whole basis for your argument is Mr. Simpson's control and it's the same case as what I already have in front of me for the proof of claim in the merits. And then I already have an adversary proceeding. I have a proof of claim. I have a nondischargeability case.

I've got like three ways to litigate this to Sunday in front of me. Why am I going to allow it to be litigated in a default judgment when it's relevant to the estate because it's already been asserted here. And there's no question that Mr. Simpson, for example, was and is in control of YJ Simco. And so that's an example for you.

So I do think it has some relevance here in terms of what I'm being asked to do because I have to look at how does it impact the estate. Impact the estate is not -- from an economic perspective, does matter. But there's also some practicality to it. How would I allow a default judgment process to go forward on something that would impact by hundreds of thousands of dollars when I have a whole issue about whether there's any liability at all here already before me, three ways to Sunday, and I need to have a trial on that at some point if we get through that.

So I'm just trying to be practical, Mr. Koevary, by

explaining to you what my thinking is and that I don't think it's as narrow as you think only because it could go either way. Again, you might tell me, oh, it's five dollars. If you told me it was five dollars and that's what you're seeking a default judgment for, I might not think the world was coming to an end if Mr. Simpson was held liable for five dollars.

But that's not what I'm being told. So it does matter, I think, how it has an impact and certainly where it overlaps with claims before the estate. And there's definitely an issue of the debtor having been in control of that entity, frankly, either directly because of YJ Simco or under your argument through YJ Simco for the other -- the entity that owns the house, then I do think it's relevant.

So I'm just explaining to you why I don't think that's outside of the purview of what I have to consider for a preliminary injunction because when I look at the economic impact, which is something I have to look at, on the debtor, I have to consider those things. And what the economic impact is going to be on the nondebtor if it relates enough to the debtor.

Again, you still have to have the relation. I'm not arguing that, that that's a foregone conclusion. But I think it can matter. And particularly, where there is already some relation. You might argue it's not enough for me to grant the Queenie extension. I understand that. But I'm just saying to

you, and I'm not determining what I'm doing. But I'm explaining to you that I think it does matter in that circumstance.

So I'm just explaining to you that I think that there is some relevance to that. And it's because it's what you have told -- you have made it clear that otherwise if I didn't enjoin this party that the state court action would go forward, there would be default judgments there -- I mean, default -- say again. There might be default judgments. I understand there's always an argument about someone setting aside, getting counsel, lots of things. I'm not arguing that.

I'm just saying I have to think about what's the likely outcome here. And what I do know is that there isn't a lot of free cash flow around here that could be used to go to YJ Simco, for example, to defend right now because the only people who would be providing it are Mr. Simpson and Mrs. Simpson. And I don't have any evidence they have the money to do that. So right now I wouldn't see that.

So it's not a frivolous concern. That's all I'm saying. I'm not taking a position. I'm just explaining to you that I don't think it's as narrow as you're saying because, to me, it can have an economic impact under certain circumstances and you're still going to have to provide the -- how it impacts the debtor. No question about that.

But some cases, it's easier to show how it impacts the

debtor than some of the other -- some of the other parties that are in this litigation together which I don't think that should surprise you because I said that the first time we had a hearing on this. So that won't shock you.

So anyway, I'm hoping I'm being clear.

MR. KOEVARY: I appreciate the explanation, Your Honor.

THE COURT: Yeah. So I've given it a bunch of thought. It's not without thought on my part. Again, I've gone back and read that. I've read Queenie again. I've thought about this a little bit. When I saw your letter this morning, even though I had an evidentiary hearing today in Omega case for many hours as well as my session, my 10 o'clock calendar, I still did manage to read all of your correspondence to me and to have time to go back and relook at the complaint and the motion for the preliminary injunction and what it said because I agree with you. That's where I have to start. But I've explained to you why I don't think it just ends there.

MR. KOEVARY: Thank you.

THE COURT: Okay. All right. Mr. Ostrow and Mr. Koevary, I guess I'm going to ask you is there anything else that we need to discuss from a discovery perspective because this is a discovery conference. I've already explained and I think the parties understand where this would be on the deposition. I've already explained where I am on the trial

subpoenas. I've explained my view on 30(b)(6).

I don't know that there was anything else you asked me to do but I will just raise one more thing that you raised, Mr. Koevary, which was, Mr. Ostrow, one of the things I will say is I realize you just responded with a discovery request and the deposition is going to go forward because Mr. Koevary's options are not good. Either adjourn or -- and let this TRO go longer or go forward. So I get that. And that's going to happen. He's going to proceed.

But what I would say to you is this is a tough line, as in your pleading, to walk. And it's not going to be something the Court is unmindful of but the Court isn't going to be -- I'm not going to be sitting here deciding that you're claiming attorney/client privilege on everything when you produce things, yet you're making this argument.

If you decide you're going to have to put on real evidence on this argument, you have to think about it because if you're going to have to discuss things that are covered by the attorney/client privilege, I'm not sure how we're moving along here. And then argue to me it can't -- like you're not waiving it.

So you need to think about what your proof is going to be. I'm not telling you it's what's -- so far I've got what's in declarations. But it is something to think about. And so I'm mindful of that. I don't think that was a unrealistic

comment on the part of Mr. Koevary depending on how things go with either the deposition or whatever evidence you're planning on putting on at the hearing or not putting on. So you need to think about that. It's your case. So that's all I'm saying. I'm not ruling on something but I'm just noting that.

MR. OSTROW: I understand. Thank you, Your Honor. I just want to follow up on the request that I made. Are we going to have an issue about --

THE COURT: Oh, sorry about that. The deposition. Yes. And the oath. Mr. Koevary, is that really an issue?

MR. KOEVARY: To be frank, none of this has crossed my mind at all. Not in the slightest. I don't imagine -- we don't intend to make any issue along the way. I don't know if what I have to ask my client, if there's a specific request Mr. Ostrow wants to ask my client. If he makes that request offline, I'll make that request offline and hopefully we can get there and not have this hanging over.

THE COURT: Yeah, because, Mr. Koevary, in fairness, if the whole deposition happens and then this issue comes up and then you're going to try to not allow Mr. Ostrow to use the testimony that he elicited during this deposition even though you know that because your client's in Canada, he probably needs the deposition testimony potentially. And then you're going to tell me that because the oath wasn't sworn, we can't use it. That's not going to happen.

MR. KOEVARY: Right.

THE COURT: So I'm just telling you it won't.

MR. KOEVARY: Fair enough.

MR. OSTROW: One other question. Go ahead, counsel. Sorry.

MR. KOEVARY: No, no. The only question, if you're asking me to ask my client something right now, I don't want to speak for my client without going offline. But I have no intention of taking a position like that, Your Honor.

MR. OSTROW: The only other issue I want to ask, Your Honor, is if something comes up tomorrow, are you available to rule?

THE COURT: Yes. But I do have a pretty full calendar tomorrow, too. Sorry. Because due to my lovely schedule for -- well, first of all, I have you all.

MR. OSTROW: At 10 o'clock, yes.

THE COURT: So I have both of -- I have you and others tomorrow. And then I have a number of other matters although I don't think anything else is that complicated. It should all be relatively short. So other than that, yes. I am around.

MR. OSTROW: Well, I hope we won't have to resort to that but I just wanted to inquire in case we do.

THE COURT: Yes. I hope you won't, either. But I guess we'll find out.

Okay. Is there anything else that we need to discuss

today? Mr. Simpson, again, this is a discovery conference. It's lawyer talk. You're not a lawyer. Sorry.

MR. SIMPSON: Well the moment my lawyer got sued by Koevary improperly through AREH, that was compromised. So there you have it. So there is a misalignment that exists and that is a reality. So yes, we're aligned on a lot of things but we're misaligned on others. And he created that circumstance by suing my lawyer after this very judge, Your Honor, already said no. So I don't believe they're right here that I get to just defend myself through a lawyer who got sued and took a different position than I take as it relates to this very issue. So there's definitely concerns there.

THE COURT: Any time you want to terminate your lawyer, you'll have to -- you'll both have to come to me and seek to do that. But that is not before me today. It's not been filed on a motion.

MR. SIMPSON: You forced him to stay. You forced him to stay. You've said it several different ways. You've left it where there is no choice. Regardless if he's one man, a one-man band, and they have multiple resources and don't follow any agreements about obligations under -- this is purely to just destroy my ability to have counsel. That's what we're talking about. That's what this very issue is to talk about.

So my question to you is very simple. No, I do not want to ask the questions. No, I do not want to attend. No, I

don't want to be here today. I don't want to ever go to court ever again. I shouldn't have to go to court. I haven't done anything wrong. But if we're not going to be dealing with brass tacks, this is a waste of time.

And yes, there's motive here. Mr. Ostrow's explained it multiple times. But he's so -- he's so good at playing the nice game here. Nobody likes to be direct like I am and I'm direct. I'm sorry. But it works for my career for years and the Wieners loved it, okay? And my direct question is simple. These people are vindictive. They've been vindictive. We know what they're doing is vindictive.

And the questioning that Mr. Ostrow is going to ask is about the vindictiveness nature of their actions. And I want to flesh that out right now because if Mr. Ostrow asks the questions, gets the answers, you won't hear from me. But if those questions aren't being asked when they go and sue my wife? You've heard my wife now because, Your Honor, you made such a big deal you haven't heard from my wife who's a school teacher who makes like fifty grand a year who knows nothing about this stuff. Zero. So she went out on the line in an uncomfortable way because you gave her no choice to. So she had to, okay?

So yeah. And she's going to come in, take off a day from work on the 29th and be there to do whatever it is Your Honor wants. And no, she's not just cavalierly showing up to

the bankruptcy court and just signing a ballot that she can go put herself into bankruptcy because it's so easy, as Your Honor makes it out to be, because it's not. Our life is ruined. My life is ruined because of these people. Ruined. Ruined. So yes.

THE COURT: All right. Mr. Simpson --

MR. SIMPSON: I'm sorry. I'm sorry. I'm sorry. You've taken my time for a year and a half. You asked me to file personal bankruptcy. You told me to. You even told my wife she should. I'm sorry. I get a chance to speak here. And my attorney is compromised by this very action. He is compromised and misaligned.

THE COURT: Okay. So right now --

MR. SIMPSON: So my question is simple. Are we or are we not going to be digging into the motive behind Kevin Wiener through -- AREH is garbage. AREH doesn't own anything. AREH is dead. They killed it. It owns nothing. If you want to learn it, you'll learn it on your own. I've told you how you can find it out because I have nothing to hide. So are we going to be exploring or not so not to waste time tomorrow --

THE COURT: Mr. Simpson --

MR. SIMPSON: -- the motive behind the Wieners to take action against my wife and go on -- an entity -- and, by the way, your comment about all these entities, I don't know what you're talking about, Your Honor. What other entities are

there? There's 1055 Park Street, which I'm a manager of. There's 1055, Unit 4, which I'm a manager of, although I don't own either one of them, okay. I just got sued again, me or an entity. I'm not sure. I learned about it through the Real Deal this morning who called me to tell me I'm being sued and wanted to hear from me about the lawsuit, about the two other owners of the building who think that because I'm the president of the board, therefore the whole building is compromised.

And I told you it was going to happen. I told you this would happen. But you know what? The two other units that you claim I don't own them. But guess what? My schedules say I own them. So 1055 Park PH and 1055 Unit 1, I've shown you evidence in YJ. So I say I own those entities. You say I don't own them. Well, if I don't own them then why am I being sued for them? I am. Why are they suing me if I don't own them? So now we have a new party here. I guess the lender, right.

So what other entities are you talking about? My wife? Because it sounds to me like, if you narrow it down, the only one that doesn't have direct relationships, is my wife and we're married and she owns half of everything I own anyway. I don't really understand, what other entities are you talking about? Who are the people you're talking about? There is nobody else. Everything you're talking about is my involvement. So what are we proving here?

And my files? They have them all. If you haven't learned this by now four different ways, they have on YJ Simco's docket. So whatever Koevary's talking about, he stole them. And by the way, you'll see Kevin Wiener swore in a letter to me that he would never touch my personal access.

THE COURT: Mr. Simpson --

MR. SIMPSON: You're going to see all this. No, please, don't Mr. Simpson me. I've been through this for a year and a half. I want to put a bullet through my head at times --

THE COURT: Mr. Simpson, I'm sorry.

MR. SIMPSON: -- because of what you do.

THE COURT: The discovery --

MR. SIMPSON: I've been serious. If he's the last stop of the train, it's either you start listening or then what. Then put a bullet through my head and you're going to put up with that? Are you going to sleep at night? Because you wouldn't listen, the police wouldn't listen or the feds wouldn't listen. So please start listening. Start listening to what's happening here. My life's been ruined. And you're not doing anything about it.

That goddamn piece-of-shit guy, Koevary, he works for me. AREH is my company. It's on my schedules. Read it. Read it. Ask David Heyman when he comes in. They won't -- they won't come in. You know why? They threaten everybody. So

start receiving reality, goddamn it. You don't think it's respectful? My life is over. What's the difference? What is the goddamn difference anymore, okay? This is the life I have, a group of nothing. I'm self-made and his kid plays video games, whenever.

So once in my life, the litigation starts because his brother goes and screws hookers and his brother plays games with Chassen and writes all types of nasty grams, you can imagine. But no court has seen it. Did you see what Judge Cohen did just three days ago? He says nobody objected to the receiver. Of course I objected. It's like people including you. And he has the nerve to write nobody objected.

You said yourself you have a serious concern. So wake up. Start talking about it. And I did tell Mr. Ostrow if he isn't going to do what's necessary, he's out. And frankly, you're out. I will withdraw this case. And I don't know what's next.

But I don't need this bullshit in my life. Enough is enough is enough. I put up with three years of hell. Every week is something new. Of course they don't want me to argue. They don't like the results of what you gave them. But, God forbid, I remove a case from the federal court for my civil rights. God forbid.

So wake up, please. Wake up. And yes, I've gone to Second Circuit Court of Appeals. Yes, I have. And I confirmed

for them today. They've opened up a case because this is not right. It's not right. So let's start acting like a judiciary. Let's start protecting the person who had to file bankruptcy because you told me to. Why do you think I go to every building and do what needs to do.

But the jackass Chassen paid for my Oak, asked for it to be converted and you listened. You didn't give me a chance. Not one chance. But you give nice young ladies chances after chances after chances. I've seen it. So you've prejudiced me and it's time to stop doing that. I have been ruined. I can't pay for Ostrow.

Ostrow doesn't have the balls or the guts to deal with the hostile Kevin Wiener that he is. You have no idea what you're dealing with. And if you allow those witnesses to come in, you will see what you're dealing with because they will answer the questions if you make them answer the questions. None of them has even answered subpoenas. You know why? They don't have to because Judge Cohen allowed it, la di da, and blamed me for it. So enough is enough is enough.

If you're the last stop of the train, don't act like it. And give me a chance to deal with these pieces of crap who have ruined my life. But I'm not some nobody. Enough. For you to tell me I was executive. Yes, I am executive until these people robbed me of it in plain sight in the middle of the day. And they admitted it. They admitted it, God damn it.

And you still don't understand it. What the hell is wrong with the system? So wake up.

Yes, I still could ask the questions. But I'm telling you right now, if I watch those questions and Wiener starts ducking them, I'm shutting it down and I'm sending whatever letter I have to do or I'm appealing and I'm done with you and done with this fucking process, excuse my French. I don't care anymore because this man -- three years.

Ask him how much money they spent on my head. Do you need to know more? Why else would they spend fifteen million, twenty million dollars on my head, Your Honor? Why? Am I so valuable? Fifteen to twenty million dollars of legal bills. You don't think they pay for Heubscher? You don't think they paid for Bunen (ph.)? You don't think they paid for Chassen? They admitted it. What more do you need? They are ruining me and my livelihood. They impact my marriage. And God damn, they sue my wife and you just take it lightly. What is wrong with you?

So again, I've said it as nice as I can. I've tried to be nice for a year and a half. Enough is enough is enough. These people just stole my company in the middle of the day. They stole it. They stole bank accounts. They stole intellectual property. And they admitted they did it. And I have testimony.

And the fact that Judge Cohen's a pathetic moron --

and he is a moron or he's corrupt. Not my problem. And all the police said he should have done something. He had a lawful duty to do something and he didn't. And now I'm asking you to do something.

So yes, in my mind, for this to take one more step in the right direction, this will be about the prejudice on me, and this will be about how we got here and how these people will use any chance they can to hurt me or my family. They'll sue my children next. They don't -- you know what Wiener told my wife? He told Marie who will tell you. He will tell -- we'll bring in Tristan if we're going to have to fight it out of her. We'll bring in Michelle who participated. We'll bring in Jared who told me in writing what Kevin was doing. You have it. It's on the record, God damn it.

So none of this needs questioning. None of this needs subpoenas. It's all there. It just needs a judge with the courage to actually read the stuff and actually look at it.

I don't need discovery. I don't need testimony. I have it. I've had it for three years. So every time they sue me through my wife or do something extraordinary, it should be dealt with immediately. Just like Judge Cohen. When he told me to make a motion, I made a motion. He crossed out five pages of the work product and just said no, blatantly no, because the man is prejudicial.

So when do we start dealing with the real stuff?

When? I'm not paying Mr. Ostrow another dollar. I'm not endorsing another 100,000 dollars of legal bills to play this game that you want to play in this court. You have a lot of power as a bankruptcy judge.

People once told me bankruptcy judges have more power than the president of United States. And in some ways you do. We both know that. You may not want to exercise it but in some ways you do. And if you don't, so be it. Then we're going to take it to Circuit or go to -- I don't know where I go next. But enough is enough is enough.

So I can't afford to keep running up bills with Ostrow. Ostrow doesn't have it in him because he is not a young man, okay? I'm not criticizing his age. He's highly intelligent. He has other cases. He's one person. There's no room for him to put associates on this. There's no room for him to have teams of people to fight down these horrific litigants.

And then the spiral effect. You don't think when the Real Deal article comes out today, about 1055 Park where the case is made that because of my poor management, that's why the common charges aren't being paid? I told Your Honor -- I told you, I literally told you six months ago, eight months ago or nine months ago.

If you do what you do, those vindictive lenders which, by the way, is all a byproduct of this litigation, because it

would never happen to pay all my bills, even though, Your Honor, you said to me that I should have filed personal bankruptcy four years ago. Where the hell you came up with that?

Beats the hell out of me. But four years ago, I had two million cash in the bank and I could have retired. I owned plenty of stuff with no problems in my life. Zero. Until Kevin Wiener came in. When daddy asked him to because Michael Wiener did a lot of bad things and bought bad companies. All this needs to be discovered and explored.

So if not now when? And if your answer is it's not going to be relevant, let's know that right now. Let's shut it down right now because I'm not wasting another minute of having Alec Ostrow or another lawyer ask me to go through hundreds of documents that I proved to courts, I don't know, six times and no one reads them.

Judge Mastando didn't want to read it. You know why? Because all of you protect Judge Cohen. Why? Why? He's not a good person. He's a horrible human, okay? Just because he did it didn't make it right. You even said it yourself. So Judge Cohen is a goner. Goner. The police have said to me you have a judge problem. You don't think there's a reason I call him Joel to his face? I don't trust him because if I did something wrong, he'd have me arrested.

But he doesn't. You know why? He's scared to death

of me because he knows what he did. I called him out, addressed him in his courtroom. And then he said to me, Mr. Simpson, you won. You want to keep going? I said, yes, I do. I want to keep going because you allowed this to happen to me.

So you're allowing it, too. And the only difference is it's two years later and I have to file personal bankruptcy. I've had a major job that I lost, prejudiced because of this bankruptcy. I can't do anything because of this bankruptcy. No, I can't get a plan done. I can't pay for a lawyer. It's all circular.

It's all Kevin Wiener, the guy who plays video games for a living. He doesn't work. He's never worked. He went to be the Toronto mayor. He lost his suit to his opponent. God damn it. The two of the companies that his brother bought that failed sued them, too. Yes. That evidence is on the record. Wake up. Look at what's in front of you. To say to me are you surprised that they sued you in state court next to your wife? That's so disrespectful to say that to me. I'm surprised. Yeah. I'm surprised our system is so goddamn broken.

So yes, I am giving you an ultimatum. And I'm holding to it whichever way I have to. And you can do what you want because you're a judicial and I'm not. I've never been arrested in my life. If you're not going to allow the testimony to stretch to how we got here with the motive of what Kevin Wiener did to ruin my life, to ruin everything about me,

the reason I'm here in bankruptcy then this is over right now. You don't want to make it over. Then don't. You don't want to convert it? You go find someone to convert it to. Good luck to you.

But you're not going to find it when no one wants this. No one wants me. No one wants this case. No one wants any of it. So yes or no? Tomorrow, when we ask Kevin Wiener, how much money do you spend to have Simpson's head? And they say, objection. Are you going to allow the question or not? It's a simple question.

When we say to Wiener tomorrow, what was this email about on June 15th, 2023 when you and your brother conspired to hurt him and he says, objection, are you going to allow the line of questioning or not? It's a very simple question. Because if you're going to, great. I won't even attend. Why would Mr. Ostrow have prepared, frankly.

And we've had that argument, okay? I don't think he's prepared. I don't think he has any clue. Who could be? Thousands of documents, three years. But let's assume for a moment he is prepared. Are you going to allow the questioning? It's simple. Yes or no? If the answer is I don't know. If the answer is I don't know then we're wasting our time here.

THE COURT: Okay. Well, then you may feel you're wasting your time. I'm not giving advisory rulings on something --

MR. SIMPSON: I don't need advisory. I don't need advisory. I need to know.

THE COURT: You are --

MR. SIMPSON: The line of questioning is simple. They have a vindictive action which we brought up in our motion --

THE COURT: Mr. Simpson --

MR. SIMPSON: -- very clearly. Mr. Ostrow told you this.

THE COURT: -- we're not going --

MR. SIMPSON: -- that deposition will last five minutes and you'll be getting a phone call. So you want to deal with it tomorrow morning or you want to deal with it now? Which would you rather do?

THE COURT: I'm not --

MR. SIMPSON: Deal with it on the phone?

THE COURT: I'm not dealing with it now, Mr. Simpson. I'm sorry.

MR. SIMPSON: So tomorrow morning, you'll get a call, because the moment I see that Wiener doesn't answer the questions or lies, which he will do both -- lying, I guess, is so what. Good for me, right? But the moment he doesn't answer questions -- and he's not going to answer anything because he already heard from Koevary. And by the way, how did you just take it from Mr. Koevary? Has the authority to do what he's doing for AREH. Why is it you accept it as gospel? He has no

authority. The contract doesn't allow for that. Why is it you're just accepting it as gospel?

We're in the bankruptcy court. AREH is part of my schedules. Have you not read it? Wo's the founder of AREH? Whose idea was it? Whose business was it? Who was on every damn document? Who was the key principal on every damn thing that existed? Me and me and only me. You'll hear that from David Heyman. He already told the other courts that. So why do you think Jonathan Koevary can even do this under AREH?

You just accept it as gospel and allow him to continue to attack and continue to make motions. You could shut that down. You have every right to. Why do you do it? Why don't you look under the hood? Do you want me to explain it to you? Mr. Ostrow doesn't seem to know it. Do you want to understand it? Because I understand it. Heyman knows it, too. And Tristan Last knows it. Michelle Miller knows it. Jared Chassen -- he's weak but he knows a little bit. He knows how this works.

So do you want everyone to know? They can't do it. AREH has no authority to do anything because there is no AREH anymore. It's gone. They wiped it out. They got temporary control because Cohen told them if you're going to put money into the deal, they'll do that for you. They didn't put one dollar into anything. You want to call the hundred witnesses, the hundred investors who didn't sue me, who didn't make proof

of claims who lost 150 million dollars? God damn it. You want to bring them into your court? None of them are suing me.

Why? Because I didn't do anything wrong. You want to bring them here? Let's bring them. I have to face people in the street who lost twenty million dollars because of what they did. I had deals with every single lender. But nobody ever wants to hear real evidence. You know why? Because they'll spend more money than I will.

And your little itty bitty system here, your procedure and your process -- they'll just keep spending money, spending money. You'll see. Philip Reid will tell you. Kevin Wiener's told everybody. I'll put any amount of money I have to ruin Jeff Simpson. Jared told me to my face multiple times when we tried to settle. He can't do it because Kevin Wiener won't let him. And that's acceptable to you? That they've colluded together to hurt me? The receivership colluded together to hurt me. This is acceptable to you. What country are you in?

The U.S. doesn't allow that. There are laws in the federal law. You want me to cite the section the law that says that people maliciously gather together to hurt a human, it is unlawful. Do you want me to cite the section of law? I'll find it for you. You know better than me. You're a lawyer. I'm not. It's there. That's what they've done. They've proven it. They held it with Judge Vargas for two years. Two years. And then Cohen got it. He sat on it for a month. He

didn't know what to do with it.

And you know what? The moment they got it and the moment it was out, they pretend, rah, nobody cared. So we'll just tell everybody we're together. The Court didn't stop us. Why would they hold it back for two years? Why would they hold it for two years? Why is it the lawyer who promised it, Leslie Thorne, disappears the day after it's released when she promised the Court six months before she would release it. She didn't.

Because it's toxic, Your Honor. It's toxic. But why would anybody do anything about toxic stuff? Oh, because Judge Cohen made some bad rulings. And you guys just don't want to deal with it because you guys say, oh, my gosh, Rooker-Feldman. It's not Rooker-Feldman. It's my life on the line. It's not a corporate issue. I can't be sued personally by these documents. They don't allow such a thing. None if it does.

I'm pretty damn smart about it. The documents are good. They're really good. Cohen says I hate them. You're a dictator. That's what he said. You want to see the transcript? And you know what? That's right. I built it that way for a reason. Twenty-three years of my career. I was a dictator because that's what you have to be when you deal with goons like Kevin Wiener, people that are horrific. You've got to keep them in check. And I did keep him in check.

And the moment that they could steal the way they did

and Cohen allowed it, all bets are off for the law. The law is gone. There is no law. So you get guys like Koevary coming in little -- his little tie and pretends to be judicial. He ain't judicial. He's a lying thief like the rest of them.

So again, you decide. You don't want to deal with them? Don't. That's fine. I'm telling you right now, Mr. Ostrow -- the first question is -- I made it clear. I'll say it one more time. How much money was spent on Mr. Simpson's head to have him eroded in legal dollars? That's the first question. If they don't answer that question, you're getting a phone call or it's getting shut down. And that's how this is going to go because this is my livelihood on the line. Kevin Wiener is hiding in Canada. He told all the employees let them chase me in Canada.

You know how many times he said that to people? He's very comfortable being in Canada. You think Mr. Koevary -- his little laugh, his little giggle about the whole testimony issue. You think that's funny? It's not funny. He will absolutely come to you and say, hey, it's not eligible because I'm in Canada. That's what this guy does for a living. If you've read his emails, you've read anything Kevin Wiener does, he always tries to find some technicality that's favorable for him and he's always wrong. But you know, he paid the Court who did something. And Koevary's not even his lawyer. AREH --

MR. KOEVARY: Your Honor -- Your Honor --

MR. SIMPSON: No. Shut up, Koevary. Shut the fuck up. AREH is my goddamn company and you're not authorized. So shut the fuck up.

MR. KOEVARY: Your Honor, I feel compelled to make a record. I'm sure you don't want to hear from me, but I feel compelled to make a record right now.

MR. SIMPSON: How are you here? How are you here? What grounds are you here on? What grounds? What provision? Tell me the provision in the contract. Show me the court order. Show it to us now. Show it to us, God damn it. How is it you're here? How are you here in my company?

MR. KOEVARY: Your Honor, I'm asking you -- I'm asking Your Honor to direct Mr. Simpson to mute his line and I can make the record that I feel compelled to make.

MR. SIMPSON: Why are you here? Grounds? What are the grounds? Tell us. What grounds? What grounds, Jonathan Koevary? What authorizes you? What authorizes you? Give us the contract provision. Give us the court order. Tell us what allows you here. Tell the judge why you're allowed to be here.

THE COURT: Mr. Simpson, I think we've had enough for today.

MR. SIMPSON: You've had enough?

THE COURT: I have, Mr. Simpson. I've had enough. And Mr. Koevary, I don't --

MR. SIMPSON: The call (indiscernible). You could do

that. How about that?

MR. KOEVARY: Your Honor, I feel compelled to make a sixty-second record. If Your Honor objects to that, so be it. But I feel compelled to respond.

THE COURT: Okay. And why is that necessary? I think if anybody watched that, they would have their own views on that, Mr. Koevary.

MR. KOEVARY: Well, here's why, Your Honor. And I think I can explain it in sixty seconds, Your Honor. Because the transcript doesn't pick up what just happened. And the transcript doesn't pick up what just happened, which was basically unprecedented, unhinged red-face foaming at the mouth by somebody who's a fiduciary to all -- to the estate and creditors and somebody -- we haven't really talked about this, Your Honor. It hasn't come up.

But I think everybody needs to really take into consideration that in this day and age, is this debtor, is this plaintiff, is this movant a safety risk? Should this Court be thinking about issuing protective orders just because people want to litigate their claim? Because there are serious things beyond this case, Your Honor. And I think the record needs to show just what happened right now and just what the danger may be. And everybody needs to be taking it seriously. And that's my record, Your Honor. Thank you.

THE COURT: Okay. Mr. Koevary, I understand what you

mean. I mean, look, I have on my end, lots of organizations that are now involved, not due to me, but due to the fact that that's required. If you start sending emails to three federal bankruptcy judges in one district, it's not really surprising that, for example, the marshals would have to get involved.

And especially when one of them is my chief judge, things like that. There's obviously been a complaint made about me to Second Circuit, which people are allowed to do. There's a process for that. And this is not the first time it's happened to me, unfortunately, but it does happen. And it's just a process here.

So I understand. I can't suggest that I've had anything that crossed the line beyond what I've already sanctioned him for yet, but clearly, we'll see what else happens. And that's all I'm going to say about it. You made your point. All right.

MR. KOEVARY: Thank you, Your Honor.

THE COURT: Well, I guess you'll know where to find me tomorrow, Mr. Ostrow. But if I'm on listening to other people's arguments in this other matter, I'm not sure how quickly I'm going to get off for -- because I have motions to dismiss.

MR. WIENER: Sorry. Your Honor, I know my counsel said we didn't want an order, but candidly, I would like an order that I not be screamed at like that tomorrow. I don't

think I should be subjected to that torrent of abuse. And I think if it happens, I should have the right to either continue without Mr. Simpson on the line or not be deposed because that was just very disturbing.

THE COURT: Understood, Mr. Wiener.

Mr. Ostrow, that's an option.

MR. OSTROW: Your Honor, I'm not here to defend that conduct. I certainly don't condone it and I don't encourage it. And I have asked that it not happen. And I have less authority to control this than Your Honor does.

All I can say is that I have no intention of doing anything other than questioning Mr. Wiener in a businesslike manner. And Your Honor has already ruled that that Mr. Simpson is not to ask any questions. So I think that if something happens then it can be brought to Your Honor's attention when it happens.

THE COURT: All right. I'm going to -- Mr. Wiener, I'm going to wait and see what happens. But I am around tomorrow. So I understand your point that you should not be screamed at. You shouldn't have questions asked by Mr. Simpson at all.

And there shouldn't be -- and if Mr. Simpson can't control himself, I think we've seen evidence of that. Maybe it's really more appropriate that he doesn't attend tomorrow. But I can't force that right now. So I might order it if he

attends and doesn't -- acts in a similar way.

All right. Well, with that, thank you all for, I guess, for coming on today. And I think we've addressed everything else. And I'll wait for my phone to ring tomorrow.

MR. KOEVARY: Thank you, Your Honor.

MR. OSTROW: Thank you, Your Honor.

THE COURT: I don't even know where I'll be anyway. Okay. Thank you. Have a good rest of day. Court is now adjourned.

(Whereupon, these proceedings were concluded at 5:48 PM)

# C E R T I F I C A T I O N

I, Lisa Beck, certify that the foregoing transcript is a true and accurate record of the proceedings.

________________________________________

Lisa Beck

AAERT Certified Electronic Transcriber

eScribers

7227 North 16th Street, Suite #207

Phoenix, AZ 85020

Date: October 21, 2026

1

**15Th (1):** 44:12
**16Th (3):** 8:5, 10:9, 10:19

2

**22Nd (2):** 8:6, 10:18
**29Th (3):** 9:5, 14:2, 33:24

5

**5Th (1):** 8:6

8

**8Th (2):** 5:21, 6:14

A

**AREH (14):** 23:1, 32:4, 34:14, 34:14, 34:14, 36:20, 45:21, 46:3, 46:4, 46:9, 46:20, 46:20, 49:24, 50:2
**Ability (3):** 13:15, 21:17, 32:21
**Able (1):** 9:4
**Above (2):** 6:13, 9:3
**Absolutely (1):** 49:19
**Abuse (1):** 53:1
**Accept (5):** 12:21, 12:24, 13:12, 45:21, 46:10
**Acceptable (2):** 47:15, 47:17
**Accepting (1):** 46:2
**Access (1):** 36:5
**Accommodating (2):** 5:3, 14:15
**Accounts (1):** 39:22
**Act (1):** 38:20
**Acting (2):** 14:22, 38:2
**Action (11):** 15:12, 15:20, 15:23, 16:17, 18:8, 22:23, 22:23, 27:7, 34:10, 34:19, 45:4
**Actions (1):** 33:13
**Actual (1):** 15:12
**Actually (5):** 21:25, 22:12, 24:5, 40:17, 40:17
**Additional (3):** 6:16, 13:20, 13:20
**Address (1):** 6:5
**Addressed (1):** 43:2
**Adhered (1):** 11:9
**Adjourn (1):** 29:7
**Administer (2):** 14:11, 14:17
**Administering (1):** 15:5
**Admissible (1):** 11:15
**Admitted (4):** 38:25, 38:25, 39:15, 39:23
**Advance (6):** 11:8, 11:18, 11:22, 12:5, 14:4, 15:2
**Adversary (2):** 4:5, 25:7
**Advisory (3):** 44:24, 45:1, 45:2
**Affects (3):** 20:2, 20:3, 23:1
**Afford (1):** 41:11
**Afternoon (12):** 4:2, 4:7, 4:10, 4:11, 4:15, 4:15, 4:18, 4:20, 7:9, 7:10, 8:20, 8:22
**Again (17):** 7:3, 17:6, 17:7, 17:21, 22:23, 24:16, 24:24, 26:3, 26:21, 27:9, 28:9, 28:10, 32:1, 33:2, 35:3, 39:19, 49:5
**Against (3):** 21:22, 22:1, 34:19
**Age (2):** 41:13, 51:17
**Ago (6):** 37:10, 41:22, 41:22, 41:23, 42:3, 42:5
**Agree (1):** 28:17
**Agreed (1):** 14:8
**Agreement (2):** 22:25, 24:11
**Agreements (1):** 32:20
**Ahead (2):** 17:24, 31:4
**Aint (1):** 49:3
**Al (1):** 4:5
**Alec (2):** 4:7, 42:14
**Aligned (1):** 32:6
**Allegation (1):** 8:24
**Alleged (3):** 15:10, 15:19, 18:16
**Allegedly (2):** 22:8, 23:15
**Allow (13):** 19:14, 25:10, 25:19, 30:20, 38:14, 43:23, 44:9, 44:13, 44:20, 46:1, 46:10, 47:18, 48:16
**Allowed (5):** 38:18, 43:4, 49:1, 50:19, 52:8
**Allowing (2):** 9:17, 43:5
**Allows (1):** 50:19
**Along (5):** 8:25, 16:1, 21:14, 29:20, 30:13
**Although (3):** 18:19, 31:18, 35:2
**Always (4):** 10:16, 27:10, 49:22, 49:23
**Amount (2):** 22:1, 47:12
**Amounts (2):** 15:15, 15:17
**Analysis (1):** 21:25
**Announced (1):** 14:6
**Annoyance (1):** 12:3
**Answered (1):** 38:17
**Anymore (3):** 37:3, 39:8, 46:21
**Anyones (1):** 22:18
**Apologize (2):** 4:18, 4:21
**Appealing (1):** 39:6
**Appeals (1):** 37:25
**Appearances (1):** 4:6
**Applicable (1):** 22:25
**Appreciate (3):** 5:2, 5:13, 28:6
**Appropriate (2):** 11:6, 53:24
**Appropriately (2):** 15:1, 15:3
**Arbitrary (4):** 10:9, 10:15, 10:22, 11:3
**Arch (2):** 4:5, 23:1
**Arent (2):** 33:16, 41:21
**Arguably (1):** 22:2
**Argue (4):** 22:10, 26:24, 29:20, 37:20
**Argued (2):**

9:18, 22:15
**Argues (1):** 22:12
**Arguing (3):** 22:24, 26:22, 27:11
**Argument (8):** 18:9, 18:21, 25:5, 26:12, 27:10, 29:15, 29:17, 44:17
**Arguments (3):** 18:22, 18:23, 52:20
**Around (4):** 13:13, 27:14, 31:20, 53:18
**Arrested (2):** 42:24, 43:23
**Article (1):** 41:19
**Articulate (1):** 16:10
**Articulated (1):** 17:1
**As (52):** 6:3, 6:22, 7:20, 8:12, 9:9, 9:13, 9:21, 10:6, 10:6, 11:17, 13:5, 13:5, 13:10, 14:6, 14:7, 14:16, 14:16, 14:20, 14:22, 14:23, 14:23, 15:10, 16:5, 16:10, 17:3, 17:3, 17:4, 17:4, 17:15, 19:5, 19:5, 19:7, 19:7, 20:2, 20:3, 25:1, 25:6, 26:2, 26:2, 27:21, 27:21, 28:13, 28:13, 29:11, 32:11, 34:2, 39:19, 39:19, 41:4, 45:21, 46:2, 46:10
**Aside (1):** 27:10
**Asserted (3):** 15:17, 21:23, 25:12
**Asserting (1):** 24:15
**Assets (1):** 23:14
**Associates (1):** 41:15
**Assume (1):** 44:19
**Attack (1):** 46:11
**Attend (4):** 19:13, 32:24, 44:15, 53:24
**Attention (1):** 53:15
**Attire (1):** 4:19
**Attorney (1):** 34:10
**Attorneyclient (2):** 29:14, 29:19
**Authority (5):** 15:5, 45:20, 46:1, 46:20, 53:10
**Authorized (3):** 14:11, 14:17, 50:2
**Authorizes (2):** 50:17, 50:17
**Available (2):** 7:15, 31:11
**Avoid (2):** 12:25, 15:4
**Azriliant (1):** 12:19

B

**Back (4):** 17:13, 28:10, 28:15, 48:5
**Bad (4):** 12:3, 42:9, 42:9, 48:12
**Ballot (1):** 34:1
**Balls (1):** 38:12
**Band (1):** 32:19
**Bank (2):** 39:22, 42:6
**Bankruptcy (13):** 34:1, 34:2, 34:8, 38:4, 41:4, 41:5, 42:3, 43:6, 43:8, 43:8, 44:1, 46:3, 52:4
**Based (6):** 8:22, 9:18, 12:2, 12:6, 15:17, 17:5
**Basic (1):** 6:3
**Basically (2):** 11:9, 51:12
**Basis (9):** 9:16, 11:2, 15:2, 15:11, 15:15, 15:24, 16:1, 20:10, 25:4
**Beats (1):** 42:5
**Becker (2):** 4:8, 8:25
**Beckerman (1):** 4:2
**Behind (2):** 34:13, 34:18
**Best (1):** 13:25
**Bets (1):** 49:1
**Better (1):** 47:22
**Beyond (9):** 6:13, 8:19, 9:14, 15:22, 16:2, 16:18, 16:19, 51:21, 52:13
**Big (2):** 5:14, 33:18
**Bills (4):** 39:12, 41:2, 41:11, 42:1
**Bit (2):** 28:11, 46:17
**Bitty (1):** 47:9
**Blamed (1):** 38:19
**Blanket (2):** 6:11, 8:11
**Blatantly (1):** 40:23
**Board (1):** 35:8
**Both (6):** 18:5, 24:7, 31:17, 32:14, 41:7, 45:16
**Bought (2):** 42:9, 43:14
**Bound (1):** 5:23
**Brass (1):** 33:4
**Breadth (1):** 18:6
**Brief (1):** 21:14
**Bring (6):** 40:11, 40:12, 40:12, 47:2, 47:4, 47:4
**Broadly (1):** 17:4
**Broken (1):** 43:19
**Brother (4):** 37:7, 37:7, 43:14, 44:12
**Brought (3):** 15:13, 45:4, 53:15
**Building (3):** 35:7, 35:8, 38:5
**Built (1):** 48:20
**Bullet (2):** 36:8, 36:13
**Bullshit (1):** 37:18
**Bunch (1):** 28:8
**Bunen (1):** 39:14
**Burden (4):** 7:24, 9:11, 18:19, 21:16
**Business (3):** 7:20, 10:19, 46:5
**Businesslike (1):** 53:12
**Byproduct (1):** 41:25

C

**COURT (39):** 4:2, 4:10, 4:15, 4:20, 4:22, 5:5, 5:8, 5:10, 10:3, 15:7, 21:20, 28:8, 28:20, 30:9, 30:18, 31:2, 31:13, 31:17, 31:23, 32:13, 34:6,

34:12, 34:18, 36:6, 36:9, 36:11, 44:23, 45:3, 45:5, 45:7, 45:11, 45:12, 50:20, 50:23, 51:5, 51:25, 52:18, 53:5, 53:17
**Calendar (2):** 28:14, 31:13
**Call (11):** 4:3, 7:22, 13:3, 13:5, 24:9, 42:22, 45:8, 45:14, 46:24, 49:11, 50:25
**Called (2):** 35:5, 43:1
**Came (3):** 6:10, 42:3, 42:8
**Can (26):** 6:24, 14:1, 14:13, 15:4, 15:21, 17:18, 18:12, 18:25, 19:1, 20:11, 20:16, 21:20, 26:23, 27:22, 30:16, 34:1, 34:17, 37:8, 39:19, 40:8, 43:21, 46:9, 50:13, 51:9, 53:11, 53:15
**Canada (7):** 14:7, 14:10, 30:22, 49:13, 49:14, 49:16, 49:20
**Canadian (2):** 14:11, 14:18
**Candidly (1):** 52:24
**Cant (17):** 14:10, 14:17, 16:1, 19:13, 29:20, 30:24, 38:10, 41:11, 43:8, 43:9, 43:9, 46:19, 47:14, 48:15, 52:12, 53:22, 53:25
**Care (1):** 39:7
**Cared (1):** 48:3
**Career (2):** 33:8, 48:21
**Case (18):** 4:3, 4:12, 20:1, 21:1, 21:5, 21:16, 23:10, 25:5, 25:8, 28:13, 30:4, 31:22, 37:16, 37:22, 38:1, 41:20, 44:6, 51:21
**Cases (2):** 27:25, 41:14
**Cash (2):** 27:14, 42:6
**Cavalierly (1):** 33:25
**Cents (1):** 24:4
**Certain (2):** 16:9, 27:22
**Certainly (7):** 15:11, 19:7, 22:2, 22:4, 23:17, 26:8, 53:8
**Cetera (1):** 22:3
**Chambers (1):** 5:2
**Chance (6):** 8:20, 34:9, 38:7, 38:8, 38:21, 40:8
**Chances (3):** 38:8, 38:9, 38:9
**Charges (1):** 41:21
**Chase (1):** 49:14
**Chassen (6):** 12:19, 12:22, 37:8, 38:6, 39:14, 46:17
**Chassin (1):** 4:8
**Check (2):** 48:24, 48:24
**Chief (1):** 52:6
**Children (1):** 40:9
**Choice (3):** 6:23, 32:19, 33:21
**Chose (3):** 7:17, 8:5, 16:9
**Circuit (3):** 37:25, 41:9, 52:8
**Circular (1):** 43:10
**Circumstance (2):** 27:3, 32:8
**Circumstances (1):** 27:22
**Cite (2):** 47:19, 47:21
**Civil (2):** 19:5, 37:22
**Claim (10):** 11:15, 11:19, 11:21, 18:4, 20:5, 25:3, 25:6, 25:8, 35:11, 51:20
**Claiming (1):** 29:14
**Claims (3):** 17:10, 26:9, 47:1
**Clarification (1):** 20:20
**Clear (7):** 8:13, 17:2, 20:17, 22:17, 27:6, 28:5, 49:7
**Clearly (4):** 6:4, 15:25, 45:5, 52:14
**Client (15):** 6:8, 6:20, 6:25, 7:8, 8:15, 11:23, 16:17, 18:2, 19:9, 19:13, 19:15, 30:14, 30:15, 31:7, 31:8
**Clients (3):** 9:3, 9:6, 30:22
**Close (2):** 19:4, 23:11
**Closer (1):** 13:17
**Clue (1):** 44:18
**Cohen (10):** 37:10, 38:18, 40:21, 42:18, 42:21, 46:22, 47:25, 48:12, 48:18, 49:1
**Cohens (1):** 39:25
**Colleague (1):** 4:13
**Colluded (2):** 47:15, 47:16
**Comfortable (1):** 49:16
**Coming (3):** 25:3, 26:5, 49:2
**Comment (2):** 30:1, 34:20
**Commented (1):** 24:21
**Common (1):** 41:21
**Communication (1):** 6:23
**Communications (1):** 8:24
**Companies (3):** 23:15, 42:9, 43:14
**Company (5):** 22:3, 36:20, 39:21, 50:2, 50:11
**Compelled (5):** 50:4, 50:6, 50:14, 51:2, 51:4
**Complaining (1):** 8:2
**Complaint (12):** 15:19, 16:16, 17:6, 18:16, 18:22, 18:22, 18:23, 21:6, 21:7, 21:12, 28:15, 52:7
**Complete (1):** 10:5
**Compliance (1):** 9:11
**Complicated (1):** 31:19
**Complied (2):** 6:3, 10:23
**Comply (2):** 8:5, 9:22
**Compromised (4):** 32:4, 34:10, 34:11, 35:8

**Conceded (1):** 5:19
**Concern (3):** 15:9, 27:19, 37:13
**Concerned (1):** 14:24
**Concerning (1):** 8:24
**Concerns (1):** 32:12
**Conclusion (1):** 26:22
**Condone (1):** 53:8
**Conduct (3):** 14:5, 14:9, 53:8
**Conducted (1):** 12:3
**Confer (1):** 7:12
**Conference (13):** 4:25, 5:13, 5:20, 7:12, 12:15, 12:17, 13:2, 13:11, 14:6, 20:24, 21:4, 28:23, 32:1
**Conferences (2):** 13:21, 20:22
**Confirm (1):** 21:18
**Confirmed (1):** 37:25
**Connection (1):** 16:13
**Consensus (1):** 20:21
**Consent (1):** 17:21
**Consider (2):** 26:15, 26:18
**Consideration (2):** 24:24, 51:17
**Conspired (1):** 44:12
**Context (1):** 10:24
**Continue (3):** 46:10, 46:11, 53:2
**Continues (1):** 14:13
**Contract (3):** 46:1, 50:9, 50:18
**Control (8):** 13:16, 19:14, 25:5, 25:13, 26:10, 46:22, 53:10, 53:23
**Convert (2):** 44:3, 44:3
**Converted (1):** 38:7
**Cooperate (1):** 10:23
**Corporate (2):** 11:6, 48:15
**Correspondence (1):** 28:14
**Corrupt (1):** 40:1
**Counsel (9):** 9:20, 12:21, 14:22, 19:10, 19:11, 27:11, 31:4, 32:21, 52:23
**Count (2):** 21:11, 21:11
**Country (1):** 47:17
**Couple (1):** 10:17
**Courage (1):** 40:17
**Course (3):** 18:10, 37:11, 37:20
**Court (32):** 4:3, 4:19, 5:16, 6:22, 8:4, 9:10, 9:19, 12:1, 15:12, 15:20, 15:23, 16:17, 18:8, 27:7, 29:12, 29:12, 33:1, 33:2, 34:1, 37:9, 37:22, 37:25, 41:3, 43:17, 46:3, 47:2, 48:4, 48:8, 49:23, 50:9, 50:18, 51:18
**Courtesy (1):** 13:11
**Courtroom (1):** 43:2
**Courts (4):** 6:1, 8:23, 42:15, 46:8
**Covered (1):** 29:18
**Crap (1):** 38:21
**Create (1):** 6:18
**Created (1):** 32:7
**Creditors (1):** 51:14
**Criminal (2):** 6:19, 6:24
**Criticizing (1):** 41:13
**Crossed (3):** 30:11, 40:22, 52:13
**Cutting (1):** 16:2

D

**Da (1):** 38:18
**Daddy (1):** 42:8
**Damn (9):** 38:25, 39:16, 40:14, 43:14, 46:6, 46:6, 47:1, 48:17, 50:10
**Danger (1):** 51:22
**Date (7):** 7:16, 7:17, 9:23, 10:22, 10:23, 17:22, 17:23
**David (3):** 12:18, 36:21, 46:8
**Day (8):** 7:13, 10:19, 20:4, 33:23, 38:25, 39:21, 48:7, 51:17
**Days (7):** 6:12, 7:11, 7:20, 8:3, 10:13, 10:17, 37:10
**Dead (1):** 34:15
**Deadline (7):** 5:18, 8:1, 10:9, 10:9, 10:14, 10:15, 11:3
**Deal (15):** 19:12, 19:21, 19:22, 33:18, 35:5, 38:12, 38:21, 41:19, 45:9, 45:9, 45:11, 46:23, 48:13, 48:22, 49:5
**Dealing (6):** 7:2, 33:3, 38:14, 38:15, 40:25, 45:12
**Deals (1):** 47:6
**Dealt (1):** 40:21
**Dean (1):** 4:14
**Death (1):** 42:25
**Debtor (18):** 5:18, 5:19, 6:2, 6:22, 7:24, 8:13, 8:15, 8:23, 9:20, 22:17, 23:19, 24:25, 26:10, 26:17, 26:20, 27:24, 28:1, 51:17
**Debtors (4):** 10:17, 21:15, 21:17, 22:3
**Decide (2):** 29:16, 49:5
**Decided (1):** 13:4
**Deciding (2):** 22:14, 29:13
**Decision (1):** 16:8
**Declaration (5):** 9:2, 16:1, 16:23, 16:24, 21:7
**Declarations (6):** 6:15, 6:16, 9:7, 13:20, 16:21, 29:24
**Default (8):** 21:21, 21:22, 25:11, 25:19, 26:5, 27:8, 27:8, 27:9

**Defend (3):** 27:15, 32:10, 53:7
**Defendants (5):** 4:12, 5:23, 7:24, 9:3, 13:24
**Defense (4):** 11:15, 11:20, 11:21, 18:4
**Definitely (4):** 15:9, 25:2, 26:9, 32:12
**Demand (2):** 13:22, 15:1
**Depending (1):** 30:1
**Deposed (2):** 18:2, 53:3
**Deposition (30):** 7:11, 7:14, 7:19, 8:6, 9:7, 9:15, 10:18, 11:5, 11:7, 12:2, 12:13, 13:9, 14:3, 14:5, 14:8, 14:10, 14:12, 15:6, 19:2, 19:10, 19:11, 20:12, 28:25, 29:6, 30:2, 30:9, 30:19, 30:21, 30:23, 45:7
**Depositions (2):** 12:2, 13:22
**Destroy (1):** 32:21
**Determine (2):** 11:11, 13:17
**Determined (1):** 11:12
**Determining (1):** 27:1
**Di (1):** 38:18
**Dictator (2):** 48:19, 48:22
**Didnt (16):** 7:18, 8:8, 23:21, 27:6, 38:7, 40:3, 42:17, 42:20, 46:23, 46:25, 46:25, 47:3, 48:1, 48:4, 48:9, 52:24
**Difference (5):** 24:5, 24:16, 37:2, 37:3, 43:5
**Different (5):** 20:4, 23:15, 32:11, 32:18, 36:2
**Digging (1):** 34:13
**Direct (6):** 11:25, 33:7, 33:8, 33:9, 35:20, 50:13
**Direction (3):** 10:22, 15:4, 40:6
**Directly (2):** 22:12, 26:11
**Disagree (1):** 17:14
**Disappears (1):** 48:7
**Discourage (1):** 14:22
**Discover (1):** 5:16
**Discoverable (1):** 9:16
**Discovered (1):** 42:10
**Discovery (21):** 4:22, 5:20, 6:4, 9:11, 9:22, 10:24, 11:12, 11:12, 11:15, 12:7, 13:22, 13:23, 14:25, 15:1, 23:23, 28:22, 28:23, 29:5, 32:1, 36:11, 40:18
**Discuss (3):** 28:22, 29:18, 31:25
**Discussed (6):** 5:20, 6:14, 9:19, 14:7, 22:4, 22:5
**Discussion (1):** 12:10
**Dismiss (1):** 52:22
**Dispute (1):** 4:22
**Disrespectful (1):** 43:18
**Disrespectfully (1):** 23:8
**District (1):** 52:4
**Disturbing (1):** 53:4
**Docket (1):** 36:3
**Document (7):** 8:2, 8:3, 8:5, 10:8, 13:23, 15:1, 46:6
**Documents (7):** 8:8, 10:17, 13:21, 42:15, 44:19, 48:16, 48:17
**Doesnt (20):** 19:13, 19:13, 20:15, 22:9, 24:2, 24:16, 34:14, 35:20, 38:12, 41:12, 42:25, 43:12, 45:15, 45:17, 46:1, 46:14, 47:18, 51:10, 51:11, 53:24
**Dollar (2):** 41:1, 46:24
**Dollars (14):** 24:3, 24:9, 24:11, 24:15, 25:21, 26:3, 26:4, 26:6, 39:11, 39:12, 41:2, 47:1, 47:5, 49:9
**Done (15):** 5:6, 10:18, 10:25, 13:1, 13:19, 14:16, 23:5, 23:13, 23:22, 33:2, 39:6, 39:7, 40:2, 43:9, 47:23
**Dont (98):** 6:14, 8:3, 9:1, 10:20, 10:22, 12:12, 12:21, 13:3, 13:9, 13:14, 14:9, 14:14, 16:3, 17:3, 17:14, 17:25, 18:1, 18:6, 18:11, 18:12, 18:21, 19:8, 19:23, 20:1, 20:17, 20:18, 20:19, 21:21, 21:24, 22:17, 23:8, 25:1, 26:1, 26:14, 27:17, 27:21, 28:2, 28:18, 29:2, 29:25, 30:12, 30:13, 30:13, 31:7, 31:19, 32:9, 32:19, 33:1, 33:1, 34:20, 35:2, 35:11, 35:14, 35:14, 35:15, 35:22, 36:7, 37:1, 37:16, 37:18, 37:20, 37:21, 38:18, 38:20, 39:1, 39:7, 39:13, 39:13, 39:14, 40:9, 40:18, 40:18, 41:8, 41:9, 41:18, 42:15, 42:22, 42:23, 44:2, 44:2, 44:2, 44:17, 44:18, 44:21, 44:22, 45:1, 45:1, 46:12, 48:12, 48:16, 49:5, 49:6, 49:10, 50:5, 50:24, 52:25, 53:8, 53:8
**Down (6):** 35:19, 39:5, 41:16, 42:13, 46:12, 49:11
**Dream (1):** 18:13
**Ducking (1):** 39:5
**Due (4):** 21:14, 31:14, 52:2, 52:2
**During (1):** 30:21

**Duty (1):** 40:3

E

**Easier (1):** 27:25
**Easy (1):** 34:2
**Economic (4):** 25:18, 26:16, 26:18, 27:22
**Effect (1):** 41:18
**Eight (1):** 41:22
**Either (11):** 15:15, 15:22, 17:5, 26:2, 26:11, 29:7, 30:2, 31:23, 35:3, 36:12, 53:2
**Elicited (1):** 30:21
**Eligible (1):** 49:19
**Else (9):** 8:25, 20:1, 28:21, 29:2, 31:19, 31:25, 35:24, 39:10, 52:14
**Email (2):** 13:12, 44:11
**Emailed (1):** 12:20
**Emails (3):** 14:20, 49:21, 52:3
**Embarrassment (1):** 12:3
**Employees (1):** 49:13
**Enable (1):** 11:5
**Encourage (2):** 14:21, 53:8
**End (4):** 10:11, 21:10, 26:6, 52:1
**Endorsing (1):** 41:2
**Ends (1):** 28:18
**Enforce (1):** 12:1
**Enjoin (6):** 15:23, 17:12, 20:3, 20:10, 21:21, 27:7
**Enough (20):** 5:12, 26:19, 26:24, 31:3, 37:18, 37:19, 37:19, 38:19, 38:19, 38:19, 38:22, 39:20, 39:20, 39:20, 41:10, 41:10, 41:10, 50:20, 50:22, 50:23
**Ensure (2):** 9:10, 9:10
**Ensures (1):** 9:19
**Entities (14):** 15:17, 17:11, 22:2, 22:16, 22:19, 23:5, 23:7, 23:16, 24:25, 34:20, 34:21, 35:13, 35:18, 35:22
**Entity (13):** 22:6, 22:6, 22:10, 22:11, 22:13, 23:1, 23:14, 24:1, 24:17, 26:10, 26:12, 34:19, 35:4
**Eroded (1):** 49:9
**Especially (3):** 5:12, 10:21, 52:6
**Essentially (1):** 6:19
**Estate (8):** 4:5, 22:21, 22:21, 25:11, 25:17, 25:17, 26:9, 51:13
**Et (2):** 4:5, 22:3
**Evan (1):** 12:18
**Even (14):** 9:6, 9:11, 23:19, 24:18, 24:20, 28:12, 30:21, 34:8, 38:17, 42:1, 42:20, 44:15, 46:9, 49:24
**Everybody (5):** 36:22, 47:12, 48:4, 51:16, 51:23
**Everyone (1):** 46:19
**Evidence (11):** 9:2, 11:16, 13:18, 14:2, 27:17, 29:17, 30:2, 35:13, 43:15, 47:7, 53:23
**Evidentiary (3):** 5:15, 10:25, 28:12
**Exactly (1):** 13:18
**Examination (2):** 11:18, 11:19
**Example (14):** 7:9, 15:14, 15:15, 18:16, 18:20, 19:21, 22:15, 23:19, 23:24, 24:8, 25:13, 25:14, 27:15, 52:5
**Excuse (1):** 39:7
**Executive (2):** 38:23, 38:23
**Exercise (2):** 14:19, 41:7
**Exist (1):** 17:10
**Existed (1):** 46:7
**Exists (1):** 32:5
**Expand (1):** 5:18
**Expanded (2):** 7:7, 7:7
**Expanding (1):** 6:17
**Expansive (1):** 9:6
**Expected (1):** 23:14
**Expedition (1):** 18:21
**Explain (2):** 46:13, 51:9
**Explained (5):** 28:18, 28:23, 28:25, 29:1, 33:5
**Explaining (5):** 26:1, 26:14, 27:2, 27:4, 27:20
**Explanation (1):** 28:6
**Explored (1):** 42:10
**Exploring (1):** 34:18
**Extending (2):** 17:22, 24:18
**Extension (1):** 26:25
**Extraordinary (1):** 40:20
**Eye (3):** 5:5, 5:5, 5:8

F

**Face (5):** 10:10, 10:12, 42:23, 47:4, 47:13
**Fact (3):** 15:13, 39:25, 52:2
**Failed (1):** 43:15
**Failing (1):** 9:22
**Failure (2):** 24:5, 24:12
**Fair (3):** 5:12, 15:11, 31:3
**Fairness (1):** 30:18
**Faith (3):** 11:1, 12:3, 14:1
**Family (1):** 40:8
**Far (3):** 6:22, 14:23, 29:23
**Favorable (1):** 49:22
**Federal (4):** 19:5, 37:22, 47:19, 52:3
**Feds (1):** 36:15
**Feel (6):** 44:23, 50:4, 50:5, 50:14, 51:2, 51:4

**Feeling (1):** 7:17
**Felt (1):** 9:24
**Few (1):** 6:12
**Fiduciary (1):** 51:13
**Fifteen (2):** 39:10, 39:12
**Fifty (1):** 33:19
**Fight (3):** 13:7, 40:11, 41:16
**File (5):** 19:19, 19:20, 34:8, 38:3, 43:6
**Filed (8):** 6:16, 9:7, 13:20, 13:21, 20:5, 23:18, 32:16, 42:2
**Files (2):** 8:21, 36:1
**Find (8):** 14:17, 31:24, 34:17, 44:3, 44:5, 47:22, 49:22, 52:18
**Fine (2):** 19:21, 49:6
**First (13):** 7:10, 7:17, 7:18, 10:6, 10:8, 10:9, 13:13, 20:23, 28:3, 31:15, 49:7, 49:9, 52:9
**Fishing (1):** 18:21
**Five (8):** 24:4, 24:9, 24:11, 26:3, 26:4, 26:6, 40:22, 45:7
**Flesh (1):** 33:14
**Flow (1):** 27:14
**Foaming (1):** 51:12
**Focus (1):** 21:19
**Folks (1):** 6:25
**Follow (2):** 30:7, 32:19
**Forbid (2):** 37:22, 37:23
**Force (1):** 53:25
**Forced (2):** 32:17, 32:17
**Foregone (1):** 26:22
**Formality (1):** 11:9
**Forth (2):** 16:23, 16:23
**Forty (1):** 19:3
**Forward (6):** 9:5, 21:2, 25:20, 27:7, 29:6, 29:8
**Found (1):** 23:13
**Founder (1):** 46:4
**Four (4):** 16:16, 36:2, 42:3, 42:5
**Frank (1):** 30:11
**Frankly (3):** 26:11, 37:15, 44:16
**Free (1):** 27:14
**French (1):** 39:7
**Fresh (1):** 20:24
**Friday (2):** 7:16, 8:1
**Frivolous (2):** 18:20, 27:19
**Frome (2):** 4:12, 4:13
**Front (3):** 25:6, 25:10, 43:16
**Fuck (2):** 50:1, 50:3
**Fucking (1):** 39:7
**Fulfilled (1):** 11:1
**Full (1):** 31:13
**Funny (2):** 49:18, 49:18
**Further (1):** 9:19

G

**Game (3):** 15:11, 33:7, 41:3
**Games (3):** 37:5, 37:7, 43:11
**Garbage (1):** 34:14
**Gate (1):** 20:24
**Gather (1):** 47:20
**Gave (2):** 33:21, 37:21
**Gets (2):** 11:22, 33:15
**Giggle (1):** 49:17
**Given (5):** 9:24, 9:24, 18:1, 19:24, 28:8
**Gives (1):** 10:12
**Giving (3):** 7:19, 43:20, 44:24
**Glasses (1):** 5:9
**Glynn (2):** 4:8, 8:25
**God (8):** 37:21, 37:23, 38:25, 39:16, 40:14, 43:13, 47:1, 50:10
**Goddamn (5):** 36:19, 37:1, 37:3, 43:19, 50:2
**Goes (5):** 6:13, 10:6, 22:22, 24:7, 37:7
**Goner (2):** 42:21, 42:21
**Good (19):** 4:2, 4:7, 4:10, 4:11, 4:15, 4:15, 4:18, 4:20, 5:5, 5:8, 10:25, 14:1, 29:7, 33:6, 42:19, 44:3, 45:17, 48:18, 48:18
**Goons (1):** 48:23
**Gosh (1):** 48:13
**Gospel (3):** 45:21, 46:2, 46:10
**Gotchas (1):** 14:14
**Grams (1):** 37:8
**Grand (1):** 33:19
**Grant (3):** 24:6, 24:12, 26:24
**Great (1):** 44:15
**Grievances (2):** 6:6, 21:9
**Grounds (8):** 11:24, 14:18, 50:8, 50:8, 50:15, 50:16, 50:16, 50:16
**Group (2):** 16:15, 37:4
**Guess (7):** 22:25, 28:21, 31:24, 35:11, 35:16, 45:16, 52:18
**Guessing (1):** 19:3
**Guidance (1):** 9:13
**Guts (1):** 38:12
**Guy (3):** 36:19, 43:11, 49:20
**Guys (3):** 48:12, 48:13, 49:2

H

**Hadnt (1):** 6:3
**Half (4):** 34:7, 35:21, 36:8, 39:20
**Hand (3):** 6:2, 24:8, 24:14
**Handle (1):** 20:16
**Hanging (1):** 30:17

**Happen (10):** 21:2, 25:4, 29:8, 30:25, 35:9, 35:10, 42:1, 43:4, 52:10, 53:9
**Happened (6):** 18:7, 23:24, 51:10, 51:11, 51:22, 52:10
**Happening (3):** 16:6, 23:20, 36:17
**Happens (6):** 30:19, 52:15, 53:2, 53:15, 53:16, 53:18
**Harass (1):** 6:5
**Harassment (1):** 9:9
**Hard (2):** 15:21, 19:12
**Harm (2):** 21:18, 21:20
**Hashed (1):** 14:14
**Hasnt (1):** 51:15
**Hate (1):** 48:18
**Havent (7):** 6:12, 8:11, 8:20, 33:2, 33:18, 36:1, 51:14
**Head (7):** 22:7, 36:8, 36:13, 39:9, 39:11, 44:8, 49:9
**Heading (1):** 9:15
**Hear (5):** 33:15, 35:6, 46:7, 47:7, 50:5
**Heard (3):** 33:17, 33:18, 45:19
**Hearing (13):** 5:16, 6:17, 9:6, 9:14, 10:25, 13:16, 14:2, 16:4, 16:7, 17:23, 28:4, 28:12, 30:3
**Heck (1):** 24:13
**Hed (1):** 42:24
**Held (2):** 26:6, 47:24
**Hell (4):** 37:19, 39:1, 42:3, 42:5
**Heres (1):** 51:8
**Herself (1):** 34:2
**Hes (25):** 12:5, 14:22, 18:4, 19:6, 19:8, 29:9, 32:19, 33:6, 33:6, 36:11, 37:15, 40:1, 41:13, 41:14, 42:18, 42:19, 42:25, 43:12, 44:17, 45:18, 45:20, 46:17, 49:4, 49:15, 49:23
**Heubscher (1):** 39:13
**Hey (1):** 49:19
**Heyman (4):** 12:18, 36:21, 46:8, 46:15
**Hidden (1):** 10:11
**Hide (1):** 34:17
**Hiding (1):** 49:13
**Highly (1):** 41:13
**Himself (2):** 8:15, 53:23
**Hold (2):** 48:5, 48:5
**Holding (1):** 43:20
**Holdings (1):** 4:5
**Honor (59):** 4:7, 4:11, 4:19, 5:1, 5:2, 5:2, 5:13, 5:14, 6:2, 6:7, 6:21, 6:23, 7:1, 9:13, 10:1, 10:1, 10:4, 11:4, 11:23, 12:5, 12:9, 12:11, 13:15, 13:25, 14:25, 20:14, 20:23, 20:24, 20:25, 28:7, 30:6, 31:9, 31:11, 32:9, 33:17, 33:25, 34:2, 34:21, 39:11, 41:21, 42:2, 48:10, 49:25, 49:25, 50:4, 50:12, 50:13, 51:2, 51:3, 51:8, 51:9, 51:15, 51:21, 51:24, 52:17, 52:23, 53:7, 53:10, 53:13
**Honors (2):** 5:4, 53:15
**Hood (1):** 46:13
**Hookers (1):** 37:7
**Hope (4):** 5:3, 14:16, 31:21, 31:23
**Hoped (1):** 8:7
**Hopefully (2):** 10:6, 30:16
**Hoping (2):** 15:3, 28:5
**Horrible (1):** 42:19
**Horrific (2):** 41:16, 48:23
**Hosinski (1):** 4:8
**Hostile (2):** 7:4, 38:13
**Hours (1):** 28:13
**House (4):** 22:6, 22:8, 22:11, 26:13
**Human (2):** 42:19, 47:20
**Hundred (2):** 46:24, 46:25
**Hundreds (4):** 24:3, 24:14, 25:21, 42:14
**Hurt (5):** 40:8, 44:13, 47:16, 47:17, 47:20

I

**Idea (2):** 38:13, 46:5
**Identified (1):** 13:2
**Identify (1):** 4:4
**Ill (6):** 4:4, 24:9, 30:16, 47:12, 47:21, 49:7
**Illegal (1):** 7:4
**Im (97):** 4:3, 4:19, 13:17, 14:24, 15:3, 15:7, 16:18, 16:20, 17:4, 17:18, 17:20, 19:3, 19:16, 19:22, 20:2, 20:9, 20:12, 22:14, 23:20, 23:22, 23:23, 24:8, 24:12, 24:20, 25:16, 25:25, 26:7, 26:14, 26:21, 26:25, 27:1, 27:1, 27:1, 27:4, 27:11, 27:12, 27:19, 27:20, 27:20, 28:5, 28:5, 28:21, 29:13, 29:19, 29:23, 29:25, 30:4, 30:5, 30:5, 31:2, 33:7, 33:8, 34:6, 34:6, 34:6, 34:9, 35:1, 35:2, 35:4, 35:5, 35:7, 36:9, 37:4, 38:22, 39:3, 39:5, 39:5, 39:6, 39:6, 40:3, 41:1, 41:1, 41:13, 42:13, 43:18, 43:19, 43:20, 43:22, 44:1,

44:24, 45:11, 45:12, 45:13, 47:23, 48:17, 49:6, 49:20, 50:5, 50:12, 50:12, 52:15, 52:19, 52:20, 52:21, 53:7, 53:17, 53:18
**Imagine (2):** 30:12, 37:9
**Imbalance (1):** 7:6
**Immediately (1):** 40:21
**Impact (19):** 16:13, 16:25, 18:10, 18:17, 19:25, 22:2, 22:17, 22:20, 22:21, 24:5, 24:16, 25:17, 25:17, 25:20, 26:8, 26:17, 26:18, 27:22, 39:16
**Impacts (2):** 27:23, 27:25
**Important (2):** 9:25, 22:15
**Improper (1):** 12:6
**Improperly (1):** 32:4
**Inappropriate (2):** 7:25, 8:12
**Including (1):** 37:11
**Incredibly (1):** 7:21
**Indiscernible (1):** 50:25
**Information (2):** 6:9, 6:10
**Injunction (16):** 5:17, 9:17, 15:22, 16:4, 16:7, 16:11, 16:22, 17:23, 18:14, 19:24, 21:12, 21:13, 24:6, 24:13, 26:16, 28:16
**Inquire (1):** 31:22
**Insistence (1):** 11:2
**Instance (1):** 13:13
**Instruct (1):** 11:23
**Instruction (1):** 10:11
**Insult (1):** 7:3
**Intellectual (1):** 39:23
**Intelligent (1):** 41:14
**Intend (3):** 11:20, 20:18, 30:13
**Intended (2):** 8:14, 10:16
**Intends (1):** 8:15
**Intention (3):** 14:23, 31:9, 53:11
**Interests (1):** 23:14
**Interpretation (1):** 12:6
**Interpreted (1):** 23:2
**Interrogate (4):** 6:7, 6:24, 7:8, 8:15
**Into (8):** 9:15, 24:24, 34:2, 34:13, 46:23, 46:24, 47:2, 51:16
**Investors (1):** 46:25
**Involved (2):** 52:2, 52:5
**Involvement (1):** 35:25
**Irrelevant (1):** 7:4
**Irreparable (2):** 21:18, 21:20
**Is (176):** 4:2, 4:3, 4:13, 4:22, 5:14, 5:16, 6:5, 6:6, 6:7, 6:20, 7:4, 7:4, 7:25, 8:23, 9:12, 10:14, 10:15, 10:21, 11:5, 11:12, 11:14, 11:19, 13:18, 14:5, 14:7, 14:9, 14:10, 14:23, 15:2, 15:11, 15:23, 15:25, 16:3, 16:6, 16:13, 16:22, 16:23, 16:23, 17:3, 17:9, 17:11, 17:15, 18:2, 18:6, 18:8, 18:14, 18:21, 19:11, 19:25, 20:7, 20:15, 20:23, 21:6, 21:11, 21:12, 21:13, 21:15, 21:16, 21:17, 21:18, 22:10, 22:12, 22:18, 22:19, 22:24, 23:3, 23:3, 23:12, 24:2, 24:3, 24:3, 24:17, 25:1, 25:5, 25:13, 25:17, 26:1, 26:17, 26:18, 26:23, 27:5, 27:13, 28:21, 28:23, 29:4, 29:6, 29:10, 29:10, 29:12, 29:22, 29:24, 30:10, 31:11, 31:19, 31:25, 32:1, 32:5, 32:6, 32:15, 32:19, 32:20, 32:22, 32:23, 33:4, 33:9, 33:11, 33:12, 33:12, 33:24, 34:3, 34:4, 34:10, 34:10, 34:12, 34:14, 34:15, 35:8, 35:20, 35:23, 35:24, 36:20, 37:2, 37:2, 37:3, 37:18, 37:19, 37:20, 38:1, 38:13, 38:19, 38:19, 39:1, 39:17, 39:20, 39:20, 40:1, 40:24, 41:10, 41:10, 41:12, 41:20, 41:25, 42:11, 42:21, 43:6, 43:15, 43:19, 44:1, 44:20, 44:21, 44:22, 45:3, 45:16, 45:21, 46:1, 46:3, 46:20, 47:17, 47:20, 48:6, 49:1, 49:2, 49:7, 49:11, 49:12, 49:13, 50:2, 50:10, 51:5, 51:17, 51:17, 51:18, 52:6, 52:9, 53:11, 53:14
**Isnt (5):** 21:4, 21:24, 27:13, 29:12, 37:15
**Issue (19):** 13:14, 14:4, 15:9, 16:12, 18:25, 20:11, 20:18, 23:23, 25:21, 26:10, 30:8, 30:10, 30:13, 30:19, 31:10, 32:12, 32:22, 48:15, 49:18
**Issued (6):** 6:11, 12:12, 12:16, 15:3, 21:22, 22:1
**Issues (7):** 4:25, 7:22, 8:18, 15:14, 18:17, 18:18, 21:5
**Issuing (1):** 51:19
**Itty (1):** 47:9
**Ive (32):** 8:12, 18:5, 18:17, 19:17, 22:17, 23:8, 23:9, 25:2, 25:9, 28:8, 28:9, 28:10, 28:10, 28:18, 28:23, 28:25, 29:1, 29:23, 34:16, 35:12, 36:7,

36:11, 37:24, 38:9, 39:19, 39:19, 40:19, 43:7, 43:22, 50:23, 52:12, 52:13

J

**JJ (2):** 22:25, 23:1
**Jackass (1):** 38:6
**Jared (4):** 12:19, 40:13, 46:16, 47:13
**Jason (1):** 12:19
**Jeff (1):** 47:13
**Jeffrey (1):** 4:8
**Job (2):** 19:14, 43:7
**Joel (1):** 42:23
**Join (1):** 10:4
**Jonathan (3):** 4:11, 46:9, 50:16
**Judge (16):** 4:2, 32:8, 37:9, 38:18, 39:25, 40:16, 40:21, 41:4, 42:17, 42:18, 42:20, 42:22, 47:24, 48:11, 50:19, 52:6
**Judges (2):** 41:5, 52:4
**Judgment (6):** 21:22, 22:1, 22:20, 25:11, 25:19, 26:5
**Judgments (2):** 27:8, 27:9
**Judicial (3):** 43:22, 49:3, 49:4
**Judiciary (1):** 38:3
**June (1):** 44:12
**Justice (1):** 6:24

K

**KOEVARY (18):** 4:11, 5:1, 5:7, 5:9, 5:12, 20:14, 28:6, 28:19, 30:11, 31:1, 31:3, 31:6, 49:25, 50:4, 50:12, 51:2, 51:8, 52:17
**Keep (6):** 41:11, 43:3, 43:4, 47:10, 48:24, 48:24
**Kevin (15):** 14:6, 14:6, 34:13, 36:4, 38:13, 40:13, 42:8, 43:11, 43:25, 44:7, 47:11, 47:14, 48:23, 49:12, 49:21
**Key (1):** 46:6
**Kid (1):** 37:4
**Killed (1):** 34:15
**Kind (2):** 18:13, 22:20
**Knew (1):** 11:7
**Knows (7):** 33:19, 43:1, 46:15, 46:16, 46:16, 46:17, 46:17
**Koevary (28):** 4:12, 4:24, 10:5, 11:8, 17:3, 17:14, 18:19, 18:25, 19:16, 24:7, 25:25, 28:21, 29:4, 30:1, 30:10, 30:18, 32:4, 36:19, 45:19, 45:20, 46:9, 49:2, 49:16, 50:1, 50:17, 50:24, 51:7, 51:25
**Koevarys (5):** 14:5, 16:17, 29:6, 36:3, 49:24

L

**LLC (1):** 4:5
**La (1):** 38:18
**Ladies (1):** 38:8
**Last (14):** 5:4, 6:12, 7:14, 8:7, 8:12, 9:19, 12:18, 13:2, 13:11, 14:6, 36:11, 38:20, 45:7, 46:16
**Late (2):** 7:10, 8:19
**Later (2):** 14:14, 43:6
**Laugh (1):** 49:17
**Law (9):** 14:11, 14:18, 19:6, 47:19, 47:19, 47:21, 49:1, 49:1, 49:2
**Lawful (1):** 40:2
**Laws (1):** 47:18
**Lawsuit (1):** 35:6
**Lawyer (11):** 32:2, 32:2, 32:3, 32:8, 32:10, 32:14, 42:14, 43:9, 47:22, 48:6, 49:24
**Lawyers (2):** 4:23, 12:23
**Learn (2):** 34:16, 34:16
**Learned (3):** 8:10, 35:4, 36:2
**Least (4):** 10:17, 14:23, 21:6, 24:24
**Left (1):** 32:18
**Legal (5):** 7:22, 7:22, 39:12, 41:2, 49:9
**Lehrman (1):** 12:19
**Lender (2):** 35:16, 47:6
**Lenders (1):** 41:24
**Length (1):** 13:17
**Leslie (1):** 48:6
**Less (2):** 19:4, 53:9
**Lets (6):** 38:2, 38:3, 42:12, 42:12, 44:19, 47:4
**Letter (4):** 9:22, 28:11, 36:5, 39:6
**Letters (1):** 8:13
**Liabilities (1):** 18:9
**Liability (1):** 25:22
**Liable (2):** 23:3, 26:6
**Lies (1):** 45:16
**Life (11):** 34:3, 34:4, 37:2, 37:3, 37:6, 37:18, 38:22, 42:7, 43:23, 43:25, 48:14
**Lifes (1):** 36:17
**Lightly (1):** 39:17
**Likelihood (3):** 16:12, 21:16, 21:17
**Likely (2):** 18:18, 27:13
**Likes (1):** 33:7
**Limitation (6):** 11:18, 11:22, 12:1, 12:5, 12:8, 15:2
**Limitations (3):** 12:7, 18:11, 19:18
**Limited (3):** 9:16, 17:11, 18:8
**Limits (1):** 9:15
**Line (11):** 4:13, 21:10, 29:10, 33:20, 44:14, 45:3, 48:14, 49:12,

50:13, 52:13, 53:3
**Lines (1):** 9:1
**List (2):** 17:15, 21:8
**Listed (2):** 24:21, 24:25
**Listen (3):** 36:15, 36:15, 36:16
**Listened (1):** 38:7
**Listening (4):** 36:12, 36:16, 36:16, 52:19
**Literally (1):** 41:22
**Litigants (1):** 41:17
**Litigate (2):** 25:9, 51:20
**Litigated (1):** 25:10
**Litigation (6):** 18:20, 20:6, 25:3, 28:2, 37:6, 41:25
**Little (8):** 5:10, 28:11, 46:17, 47:9, 49:3, 49:3, 49:17, 49:17
**Livelihood (2):** 39:16, 49:12
**Living (2):** 43:12, 49:20
**Longer (2):** 16:6, 29:7
**Look (10):** 8:20, 17:3, 20:14, 25:16, 26:16, 26:17, 40:17, 43:16, 46:13, 52:1
**Looking (4):** 17:3, 17:4, 17:4, 24:20
**Looks (2):** 8:21, 8:22
**Loss (1):** 10:20
**Lost (5):** 8:8, 43:7, 43:13, 47:1, 47:5
**Lot (10):** 13:19, 17:9, 22:16, 23:14, 23:24, 24:13, 27:14, 32:6, 41:3, 42:9
**Lots (3):** 20:6, 27:11, 52:1
**Loved (1):** 33:9
**Lovely (1):** 31:14
**Luck (1):** 44:3
**Lying (2):** 45:16, 49:4

M

**Maam (1):** 7:1
**Major (1):** 43:7
**Makes (3):** 30:15, 33:19, 34:3
**Making (3):** 8:13, 16:8, 29:15
**Maliciously (1):** 47:20
**Man (4):** 32:19, 39:8, 40:24, 41:13
**Manage (1):** 28:14
**Management (1):** 41:20
**Manager (2):** 35:1, 35:2
**Manifests (1):** 7:8
**Manner (1):** 53:13
**Many (2):** 28:13, 49:15
**Marie (1):** 40:10
**Marriage (1):** 39:16
**Married (1):** 35:21
**Marshals (1):** 52:5
**Mastando (1):** 42:17
**Matter (6):** 13:11, 25:18, 26:8, 26:23, 27:2, 52:20
**Matters (2):** 24:22, 31:18
**May (7):** 4:6, 9:16, 18:20, 21:2, 41:7, 44:23, 51:22
**Maybe (5):** 16:16, 17:3, 19:6, 19:25, 53:23
**Mayor (1):** 43:13
**Mean (10):** 6:18, 6:21, 7:21, 20:11, 22:19, 23:8, 24:13, 27:8, 52:1, 52:1
**Meet (2):** 7:12, 16:24
**Meets (1):** 24:17
**Mentioned (1):** 25:1
**Merits (6):** 16:8, 16:12, 20:7, 21:16, 21:17, 25:7
**Mess (1):** 6:20
**Met (1):** 15:1
**Michael (1):** 42:8
**Michelle (2):** 40:12, 46:16
**Middle (2):** 38:24, 39:21
**Might (8):** 22:17, 23:16, 24:15, 26:3, 26:5, 26:24, 27:9, 53:25
**Miller (1):** 46:16
**Million (6):** 39:10, 39:11, 39:12, 42:6, 47:1, 47:5
**Mind (3):** 8:7, 30:12, 40:5
**Mindful (1):** 29:25
**Mine (1):** 15:10
**Minute (1):** 42:13
**Minutes (1):** 45:8
**Misaligned (2):** 32:7, 34:11
**Misalignment (1):** 32:5
**Missing (1):** 17:8
**Moment (8):** 5:10, 32:3, 44:20, 45:15, 45:17, 48:2, 48:3, 48:25
**Money (11):** 21:23, 22:1, 27:17, 39:9, 44:8, 46:22, 47:8, 47:10, 47:11, 47:12, 49:8
**Month (1):** 47:25
**Months (4):** 41:22, 41:22, 41:23, 48:8
**More (11):** 19:4, 19:6, 22:16, 29:3, 39:10, 39:15, 40:5, 41:5, 47:8, 49:8, 53:24
**Morning (6):** 6:3, 8:18, 28:12, 35:5, 45:9, 45:14
**Moron (2):** 39:25, 40:1
**Most (2):** 5:20, 6:3
**Motion (17):** 5:19, 9:18, 15:10, 15:11, 15:25, 16:9, 17:6, 18:23, 19:19, 19:20, 21:7, 21:12, 28:16, 32:16, 40:22, 40:22, 45:4
**Motions (2):** 46:11, 52:21
**Motive (4):** 33:5, 34:13, 34:18, 43:24
**Mouth (1):** 51:12
**Movant (1):** 51:18
**Move (4):** 9:5,

12:2, 13:6, 17:24
**Moving (1):** 29:19
**Mrs (1):** 27:16
**Much (6):** 13:5, 19:5, 19:7, 39:9, 44:8, 49:8
**Muffly (1):** 4:8
**Multiple (3):** 32:19, 33:6, 47:13
**Mute (1):** 50:13
**Myself (3):** 15:13, 18:17, 32:10

N

**Name (1):** 24:9
**Named (2):** 12:16, 13:10
**Narrow (3):** 26:2, 27:21, 35:19
**Narrowly (1):** 17:3
**Nasty (1):** 37:8
**Nature (1):** 33:13
**Necessary (4):** 13:7, 13:8, 37:15, 51:5
**Need (17):** 11:15, 19:2, 20:17, 20:19, 25:23, 28:22, 29:22, 30:3, 31:25, 37:18, 39:10, 39:15, 40:18, 40:18, 45:1, 45:1, 45:2
**Needs (11):** 7:24, 17:16, 30:23, 38:5, 40:15, 40:15, 40:16, 42:10, 51:16, 51:21, 51:23
**Nerve (1):** 37:12
**New (3):** 25:2, 35:16, 37:20
**Next (10):** 5:6, 5:16, 7:13, 7:16, 9:13, 10:6, 37:17, 40:9, 41:9, 43:17
**Nice (4):** 33:7, 38:8, 39:19, 39:20
**Night (2):** 8:12, 36:14
**Nine (1):** 41:23
**Nobody (7):** 33:7, 35:24, 37:10, 37:12, 38:22, 47:6, 48:3
**Nondebtor (1):** 26:19
**Nondischargeability (2):** 20:6, 25:8
**None (6):** 30:11, 38:17, 40:15, 40:15, 47:2, 48:16
**Noted (1):** 19:17
**Notice (6):** 5:13, 6:13, 11:7, 12:14, 13:5, 17:15
**Noticed (1):** 9:6
**Noting (1):** 30:5
**Notion (1):** 11:13
**Notwithstanding (1):** 8:23
**Number (5):** 4:6, 5:13, 6:11, 7:9, 31:18

O

**OSTROW (8):** 4:7, 10:4, 30:6, 31:4, 31:10, 31:16, 31:21, 53:7
**Oak (1):** 38:6
**Oath (2):** 30:10, 30:24
**Oaths (3):** 14:11, 14:17, 15:5
**Object (3):** 7:18, 19:20, 20:5
**Objected (4):** 7:13, 37:10, 37:11, 37:12
**Objection (6):** 14:9, 14:13, 14:13, 15:4, 44:9, 44:13
**Objections (4):** 7:21, 8:17, 8:18, 8:22
**Objects (1):** 51:3
**Obligation (1):** 11:2
**Obligations (2):** 9:22, 32:20
**Obtaining (1):** 7:23
**Obviously (14):** 11:22, 12:9, 12:25, 13:3, 13:15, 14:12, 14:21, 15:19, 17:9, 18:2, 18:15, 20:21, 23:4, 52:7
**Oclock (2):** 28:13, 31:16
**October (14):** 5:20, 6:14, 8:5, 8:6, 8:6, 10:9, 10:14, 10:14, 10:19, 10:24, 11:3, 12:15, 14:8, 21:3
**Odd (1):** 5:10
**Off (6):** 5:9, 16:2, 22:7, 33:23, 49:1, 52:21
**Offered (3):** 7:15, 7:16, 7:16
**Offline (3):** 30:16, 30:16, 31:8
**Olshan (2):** 4:12, 4:13
**Omega (1):** 28:13
**Once (3):** 7:2, 37:6, 41:5
**One (35):** 5:5, 5:5, 5:8, 5:14, 7:25, 8:11, 10:6, 10:6, 10:19, 14:4, 14:24, 20:20, 21:5, 21:8, 23:19, 24:1, 24:7, 29:3, 29:4, 31:4, 32:19, 35:3, 35:20, 38:8, 40:5, 41:14, 42:16, 44:5, 44:6, 44:6, 44:6, 46:23, 49:8, 52:4, 52:6
**Ones (1):** 24:20
**Only (11):** 7:19, 11:24, 19:1, 20:8, 26:2, 27:15, 31:6, 31:10, 35:20, 43:5, 46:7
**Opened (1):** 38:1
**Opponent (1):** 43:13
**Opportunity (2):** 6:5, 13:6
**Oppression (1):** 12:4
**Option (1):** 53:6
**Options (1):** 29:6
**Order (11):** 6:1, 9:14, 19:1, 20:11, 20:17, 20:19, 50:10, 50:18, 52:24, 52:25, 53:25
**Orders (1):** 51:19
**Organizations (1):** 52:1
**Ostrow (31):** 4:7, 6:9, 7:14, 8:2, 10:3, 15:7, 17:19, 18:12, 19:1, 19:3,

19:14, 20:16, 28:20, 29:4, 30:15, 30:20, 33:12, 33:14, 37:14, 38:11, 38:12, 41:1, 41:12, 41:12, 42:14, 44:16, 45:5, 46:14, 49:7, 52:19, 53:6
**Ostrows (3):** 17:14, 18:3, 33:5
**Oswald (1):** 4:14
**Others (2):** 31:17, 32:7
**Otherwise (2):** 16:7, 27:6
**Ought (2):** 5:18, 9:2
**Out (23):** 12:22, 14:14, 15:25, 16:5, 18:5, 18:13, 20:24, 23:13, 24:2, 31:24, 33:14, 33:20, 34:3, 34:17, 37:15, 37:16, 40:11, 40:22, 41:19, 42:5, 43:1, 46:21, 48:3
**Outcome (1):** 27:13
**Outside (1):** 26:15
**Over (6):** 6:11, 8:10, 30:17, 37:2, 44:1, 44:2
**Overbroad (1):** 7:21
**Overlaps (1):** 26:9
**Owe (1):** 24:4
**Owed (3):** 15:15, 21:23, 24:15
**Owes (1):** 24:9
**Own (17):** 6:23, 9:10, 9:11, 9:18, 13:6, 16:5, 34:14, 34:16, 35:3, 35:11, 35:12, 35:13, 35:14, 35:14, 35:15, 35:21, 51:6
**Owned (2):** 22:12, 42:6
**Owners (1):** 35:7
**Owns (11):** 22:6, 22:8, 22:10, 22:11, 22:11, 23:14, 23:17, 24:1, 26:12, 34:15, 35:21

P

**PH (1):** 35:12
**Page (3):** 10:10, 10:11, 10:12
**Pages (1):** 40:23
**Paid (5):** 38:6, 39:14, 39:14, 41:21, 49:23
**Papers (1):** 9:18
**Paragraphs (2):** 21:9, 21:9
**Park (3):** 35:1, 35:12, 41:19
**Part (5):** 19:21, 24:21, 28:9, 30:1, 46:3
**Participated (1):** 40:12
**Particularly (1):** 26:23
**Parties (12):** 4:4, 6:11, 17:10, 18:15, 20:2, 20:9, 21:22, 21:24, 21:25, 22:25, 28:1, 28:24
**Party (5):** 11:6, 17:16, 23:1, 27:7, 35:16
**Partys (3):** 11:14, 11:19, 11:21
**Past (1):** 7:16
**Pathetic (1):** 39:25
**Paul (1):** 12:19
**Pay (4):** 38:11, 39:13, 42:1, 43:9
**Paying (1):** 41:1
**People (24):** 9:7, 12:16, 13:1, 13:4, 13:10, 16:21, 17:12, 20:9, 27:16, 33:10, 34:4, 35:23, 37:11, 38:24, 39:21, 40:7, 41:5, 41:16, 47:4, 47:20, 48:23, 49:15, 51:19, 52:8
**Peoples (1):** 52:20
**Perceived (1):** 6:19
**Perhaps (1):** 21:22
**Period (1):** 16:6
**Permanent (1):** 21:12
**Permanently (1):** 20:10
**Person (4):** 15:5, 38:3, 41:14, 42:19
**Personal (5):** 6:5, 34:8, 36:5, 42:2, 43:6
**Personally (2):** 6:8, 48:15
**Perspective (3):** 21:6, 25:18, 28:22
**Ph (6):** 12:18, 12:19, 12:23, 12:24, 12:24, 39:14
**Philip (1):** 47:11
**Phone (3):** 45:8, 45:11, 49:11
**Pick (3):** 24:8, 51:10, 51:11
**Picture (1):** 5:14
**Piece (2):** 9:1, 24:1
**Pieces (1):** 38:21
**Plain (1):** 38:24
**Plaintiff (4):** 6:11, 9:12, 9:17, 51:18
**Plaintiffs (2):** 7:5, 9:11
**Plan (2):** 21:18, 43:9
**Planning (1):** 30:2
**Play (2):** 41:2, 41:3
**Playing (1):** 33:6
**Plays (3):** 37:4, 37:7, 43:11
**Plead (1):** 16:9
**Pleading (1):** 29:11
**Please (5):** 4:4, 4:6, 36:7, 36:16, 37:24
**Pled (2):** 16:17, 16:20
**Plenty (1):** 42:7
**Point (6):** 8:21, 17:14, 20:20, 25:24, 52:16, 53:19
**Pointed (2):** 16:5, 18:5
**Points (1):** 20:25
**Police (3):** 36:15, 40:2, 42:21
**Poor (1):** 41:20
**Position (3):** 27:20, 31:9, 32:11
**Possible (2):** 13:5, 14:16
**Possibly (2):** 15:16, 24:25
**Potential (2):** 12:15, 12:20
**Potentially (2):** 17:10,

30:23
**Power (2):** 41:4, 41:5
**Practical (1):** 25:25
**Practicality (1):** 25:19
**Practicing (1):** 19:3
**Precluded (1):** 24:11
**Predicate (1):** 11:17
**Prejudice (2):** 10:21, 40:6
**Prejudiced (6):** 5:22, 6:21, 9:4, 9:8, 38:9, 43:7
**Prejudicial (1):** 40:24
**Preliminary (11):** 5:17, 9:17, 16:3, 16:7, 16:11, 17:23, 19:24, 20:10, 21:13, 26:16, 28:16
**Preparation (2):** 13:19, 18:4
**Prepare (2):** 17:19, 17:20
**Prepared (4):** 17:16, 44:16, 44:18, 44:20
**Presentation (4):** 12:10, 13:16, 13:18, 14:2
**Presented (1):** 12:8
**Preserve (1):** 12:1
**President (2):** 35:7, 41:6
**Pretend (1):** 48:3
**Pretends (1):** 49:3
**Pretty (3):** 21:8, 31:13, 48:17
**Principal (4):** 6:8, 6:25, 8:16, 46:6
**Privilege (3):** 12:1, 29:14, 29:19
**Probably (3):** 19:4, 19:6, 30:22
**Problem (2):** 40:1, 42:22
**Problems (1):** 42:7
**Procedure (4):** 7:3, 7:6, 19:5, 47:9
**Proceed (1):** 29:9
**Proceeding (3):** 4:5, 20:23, 25:7
**Proceedings (1):** 9:9
**Process (9):** 8:14, 12:22, 12:25, 13:13, 25:20, 39:7, 47:10, 52:9, 52:11
**Produce (1):** 29:15
**Produced (1):** 8:21
**Product (1):** 40:23
**Professor (1):** 19:6
**Promised (2):** 48:6, 48:8
**Proof (5):** 25:2, 25:6, 25:8, 29:22, 46:25
**Proofs (1):** 20:5
**Proper (3):** 5:15, 14:1, 23:1
**Properly (1):** 16:10
**Property (2):** 24:1, 39:23
**Proportionality (1):** 11:13
**Protect (1):** 42:18
**Protecting (1):** 38:3
**Protective (2):** 9:14, 51:19
**Prove (2):** 7:24, 9:17
**Proved (1):** 42:15
**Proven (1):** 47:24
**Provide (3):** 10:16, 23:20, 27:23
**Provided (4):** 5:17, 16:21, 17:21, 18:3
**Providing (1):** 27:16
**Proving (3):** 18:19, 21:1, 35:25
**Provision (4):** 11:5, 50:8, 50:9, 50:18
**Purely (1):** 32:20
**Purpose (6):** 6:7, 6:18, 7:23, 8:14, 11:4, 20:8
**Pursuant (2):** 7:20, 10:12
**Purview (1):** 26:15
**Put (16):** 6:6, 8:1, 9:21, 17:15, 18:13, 19:24, 29:16, 34:2, 36:8, 36:13, 36:14, 37:19, 41:15, 46:22, 46:23, 47:12
**Putting (3):** 5:8, 30:3, 30:3

Q

**Quash (3):** 13:6, 19:17, 19:19
**Queenie (4):** 21:18, 24:18, 26:25, 28:10
**Quickly (4):** 5:3, 5:7, 14:16, 52:21

R

**Rah (1):** 48:3
**Raise (2):** 14:4, 29:3
**Raised (7):** 4:25, 15:14, 16:13, 17:13, 18:17, 20:25, 29:3
**Rather (3):** 13:13, 18:23, 45:10
**Read (12):** 17:7, 21:7, 28:10, 28:10, 28:14, 36:20, 36:20, 40:17, 42:17, 46:4, 49:21, 49:21
**Reads (1):** 42:16
**Ready (1):** 9:4
**Real (6):** 4:5, 29:16, 35:4, 40:25, 41:19, 47:7
**Reality (2):** 32:6, 37:1
**Realize (3):** 7:2, 22:9, 29:5
**Really (18):** 5:2, 5:15, 8:20, 19:2, 20:12, 21:4, 21:4, 21:11, 23:5, 24:3, 24:4, 30:10, 35:22, 48:18, 51:14, 51:16, 52:4, 53:24
**Reason (7):** 5:9, 7:18, 7:25, 16:22, 42:22, 44:1, 48:21
**Reasons (1):** 5:14
**Receive (1):** 8:17
**Received (6):** 6:12, 7:10, 7:11, 8:13, 8:17, 8:19
**Receiver (1):** 37:11
**Receivership (1):** 47:16
**Receiving (1):** 37:1
**Recent (1):** 5:20
**Record (11):** 6:4, 6:7, 6:19, 40:14, 43:15,

50:5, 50:6, 50:14, 51:3, 51:21, 51:24
**Recovery (1):** 10:5
**Reference (1):** 11:14
**Regardless (2):** 19:7, 32:19
**Reid (1):** 47:11
**Related (1):** 11:20
**Relates (2):** 26:19, 32:11
**Relation (2):** 26:21, 26:24
**Relationships (1):** 35:20
**Relatively (1):** 31:20
**Release (1):** 48:8
**Released (1):** 48:7
**Relevance (2):** 25:15, 27:5
**Relevant (6):** 11:14, 11:19, 21:24, 25:11, 26:13, 42:12
**Relief (2):** 9:10, 15:11
**Relook (1):** 28:15
**Remain (1):** 5:22
**Remains (1):** 6:21
**Remember (2):** 22:6, 24:22
**Remote (1):** 14:8
**Remove (1):** 37:22
**Rent (1):** 24:2
**Reorganization (4):** 16:25, 18:10, 19:25, 22:3
**Representative (1):** 11:6
**Represented (1):** 19:9
**Request (12):** 8:2, 8:3, 10:8, 10:10, 10:14, 13:23, 19:24, 29:5, 30:7, 30:14, 30:15, 30:16
**Requests (1):** 8:6
**Required (1):** 52:3
**Requirement (3):** 12:13, 12:14, 13:10
**Requirements (1):** 6:4
**Requires (1):** 11:7
**Reread (1):** 22:23
**Reserving (1):** 9:21
**Resolved (1):** 21:3
**Resort (1):** 31:21
**Resources (2):** 11:14, 32:19
**Respect (11):** 10:8, 12:9, 12:22, 14:3, 14:4, 18:25, 19:16, 20:8, 22:4, 22:5, 24:24
**Respectful (1):** 37:2
**Respond (2):** 7:20, 51:4
**Responded (1):** 29:5
**Response (2):** 10:16, 13:23
**Rest (1):** 49:4
**Restraining (1):** 6:1
**Restructuring (2):** 16:14, 16:15
**Results (1):** 37:21
**Retired (1):** 42:6
**Return (1):** 10:21
**Returns (1):** 23:18
**Review (1):** 8:8
**Right (33):** 4:17, 4:24, 7:7, 16:3, 18:4, 27:15, 27:18, 28:20, 31:1, 31:7, 32:9, 33:14, 34:6, 34:12, 35:17, 38:2, 38:2, 39:4, 40:6, 42:12, 42:13, 42:20, 44:1, 45:17, 46:12, 48:20, 49:6, 50:6, 51:22, 52:16, 53:2, 53:17, 53:25
**Rights (2):** 9:21, 37:23
**Rise (1):** 6:17
**Risk (1):** 51:18
**Robbed (1):** 38:24
**Room (2):** 41:15, 41:15
**Ruin (3):** 43:25, 43:25, 47:12
**Ruined (7):** 34:3, 34:4, 34:4, 34:4, 36:17, 38:10, 38:22
**Ruining (1):** 39:15
**Rule (9):** 7:12, 10:12, 10:12, 11:5, 11:11, 11:13, 11:25, 14:12, 31:12
**Ruled (1):** 53:13
**Rules (1):** 19:5
**Ruling (3):** 8:4, 8:23, 30:5
**Rulings (2):** 44:24, 48:12
**Run (1):** 9:10
**Running (1):** 41:11

S

**SIMPSON (21):** 4:18, 4:21, 32:3, 32:17, 34:6, 34:12, 34:18, 36:6, 36:10, 36:11, 45:1, 45:3, 45:5, 45:7, 45:11, 45:14, 50:1, 50:7, 50:15, 50:22, 50:25
**ST (1):** 24:9
**Safety (1):** 51:18
**Same (2):** 12:25, 25:5
**Sanctioned (1):** 52:14
**Sat (1):** 47:25
**Saw (2):** 4:16, 28:11
**Saying (8):** 19:1, 23:22, 23:23, 26:25, 27:12, 27:20, 27:21, 30:4
**Scared (1):** 42:25
**Schedule (1):** 31:14
**Scheduled (2):** 7:14, 13:22
**Schedules (5):** 24:22, 24:25, 35:11, 36:20, 46:4
**School (1):** 33:18
**Schwartz (1):** 12:23
**Scope (14):** 5:19, 6:14, 6:17, 8:14, 11:12, 11:12, 11:14, 11:18, 11:18, 12:7, 15:2, 15:8, 19:18, 20:22
**Scott (1):** 12:24
**Screamed (2):** 52:25, 53:20
**Screws (1):** 37:7
**Second (3):**

21:4, 37:25, 52:8
**Seconds (1):** 51:9
**Section (3):** 10:11, 47:19, 47:21
**Seeing (2):** 5:13, 6:20
**Seek (5):** 7:21, 9:13, 9:14, 9:21, 32:15
**Seeking (7):** 15:23, 15:23, 16:22, 18:14, 20:2, 22:19, 26:4
**Seem (1):** 46:14
**Seems (1):** 10:7
**Select (2):** 11:6, 11:8
**Send (3):** 12:22, 14:20, 14:21
**Sending (3):** 13:13, 39:5, 52:3
**Sense (2):** 10:24, 15:13
**Sent (1):** 12:23
**Serious (3):** 36:11, 37:13, 51:20
**Seriously (1):** 51:23
**Served (1):** 8:5
**Server (2):** 12:25, 13:13
**Servers (1):** 12:22
**Service (3):** 12:21, 12:24, 13:12
**Session (2):** 4:3, 28:13
**Set (2):** 16:23, 16:23
**Setting (1):** 27:10
**Settle (1):** 47:14
**Several (1):** 32:18
**Share (1):** 8:24
**Shes (2):** 33:23, 33:25
**Shock (1):** 28:4
**Short (2):** 5:13, 31:20
**Shorthand (1):** 24:9
**Shouldnt (3):** 33:2, 53:20, 53:22
**Show (6):** 16:9, 27:25, 50:9, 50:10, 50:10, 51:22
**Showing (1):** 33:25
**Shown (1):** 35:12
**Shut (6):** 42:12, 46:11, 49:11, 50:1, 50:1, 50:3
**Shutting (1):** 39:5
**Side (1):** 23:21
**Sight (1):** 38:24
**Significant (1):** 22:1
**Signing (1):** 34:1
**Simco (10):** 22:5, 22:10, 23:9, 23:9, 23:16, 23:17, 25:13, 26:11, 26:12, 27:15
**Simcos (1):** 36:3
**Similar (1):** 21:8
**Simple (7):** 32:23, 33:9, 34:12, 44:10, 44:14, 44:21, 45:3
**Simply (1):** 8:19
**Simpson (32):** 4:4, 4:9, 4:16, 4:20, 20:3, 20:8, 20:15, 20:18, 22:9, 22:12, 23:9, 25:13, 26:6, 27:16, 27:17, 32:1, 34:6, 34:18, 36:6, 36:7, 36:9, 43:3, 45:5, 45:12, 47:13, 50:13, 50:20, 50:23, 53:3, 53:13, 53:20, 53:22
**Simpsons (4):** 14:20, 25:5, 44:8, 49:8
**Single (1):** 47:6
**Sitting (1):** 29:13
**Six (5):** 12:12, 12:16, 41:22, 42:15, 48:8
**Sixty (1):** 51:9
**Sixtysecond (1):** 51:3
**Skepticism (2):** 22:16, 23:6
**Sleep (1):** 36:14
**Slightest (1):** 30:12
**Smart (1):** 48:17
**Solomon (1):** 4:9
**Somebody (7):** 14:11, 14:17, 19:19, 19:19, 20:5, 51:13, 51:14
**Someone (4):** 23:3, 24:2, 27:10, 44:3
**Someones (1):** 19:9
**Somethings (1):** 17:18
**Sooner (1):** 17:21
**Sorry (16):** 4:23, 17:20, 18:24, 22:5, 30:9, 31:5, 31:14, 32:2, 33:8, 34:6, 34:6, 34:6, 34:9, 36:9, 45:13, 52:23
**Sort (6):** 6:19, 6:20, 9:6, 20:25, 20:25, 21:3
**Sorts (1):** 7:22
**Sought (3):** 5:13, 9:5, 18:8
**Sounds (1):** 35:19
**Southard (1):** 12:23
**Speak (4):** 6:9, 17:18, 31:8, 34:9
**Speaking (2):** 6:25, 7:1
**Specific (3):** 18:14, 18:15, 30:14
**Spelled (1):** 15:25
**Spend (3):** 39:10, 44:8, 47:8
**Spending (2):** 47:10, 47:10
**Spent (2):** 39:9, 49:8
**Spiral (1):** 41:18
**Spirit (1):** 11:1
**Squarely (1):** 9:12
**Staff (1):** 5:3
**Stake (1):** 19:25
**Stand (1):** 9:3
**Standard (5):** 9:18, 16:25, 21:13, 21:15, 21:19
**Standards (3):** 16:10, 16:24, 24:18
**Start (12):** 7:3, 16:19, 28:17, 36:12, 36:16, 36:16, 37:1, 37:14, 38:2, 38:3, 40:25, 52:3
**Starts (4):** 16:19, 20:18, 37:6, 39:4

**State (7):** 15:12, 15:19, 15:23, 16:17, 18:8, 27:7, 43:17
**States (1):** 41:6
**Stay (2):** 32:17, 32:18
**Steal (1):** 48:25
**Step (1):** 40:5
**Still (7):** 5:5, 18:20, 26:21, 27:23, 28:14, 39:1, 39:3
**Stole (5):** 36:3, 39:21, 39:22, 39:22, 39:22
**Stop (4):** 36:12, 38:10, 38:20, 48:4
**Streamlined (2):** 5:15, 7:6
**Street (2):** 35:1, 47:5
**Stretch (1):** 43:24
**Stuff (6):** 13:19, 33:20, 40:17, 40:25, 42:7, 48:11
**Subject (1):** 14:13
**Subjected (1):** 53:1
**Submit (1):** 10:15
**Subpoena (2):** 13:7, 19:20
**Subpoenas (13):** 6:11, 6:12, 7:7, 8:11, 12:9, 12:12, 12:13, 13:9, 15:3, 19:16, 29:1, 38:17, 40:16
**Succeed (1):** 18:18
**Success (4):** 5:4, 16:12, 21:16, 21:17
**Suck (1):** 17:24
**Sue (5):** 33:16, 39:17, 40:9, 40:19, 46:25
**Sued (9):** 17:12, 32:3, 32:10, 35:3, 35:5, 35:15, 43:15, 43:17, 48:15
**Suggest (1):** 52:12
**Suggestion (1):** 19:12
**Suing (3):** 32:8, 35:15, 47:2
**Suit (1):** 43:13
**Sunday (2):** 25:9, 25:23
**Supplement (1):** 5:18
**Supplemental (1):** 16:1
**Supposed (2):** 14:23, 17:15
**Sure (15):** 6:10, 13:4, 14:1, 15:7, 17:8, 17:8, 17:18, 20:2, 20:12, 23:20, 24:12, 29:19, 35:4, 50:5, 52:20
**Surgeries (1):** 16:5
**Surgery (2):** 5:4, 10:5
**Surprise (1):** 28:3
**Surprised (4):** 22:18, 43:17, 43:18, 43:19
**Surprising (1):** 52:4
**Swore (1):** 36:4
**Sworn (1):** 30:24
**System (3):** 39:2, 43:19, 47:9

T

**TRO (3):** 9:4, 17:22, 29:7
**Tacks (1):** 33:4
**Talk (2):** 32:2, 32:22
**Talked (2):** 21:1, 51:14
**Talking (12):** 17:11, 21:11, 22:20, 23:6, 32:22, 34:21, 35:18, 35:22, 35:23, 35:24, 36:3, 37:14
**Tax (2):** 23:18, 23:21
**Teacher (1):** 33:19
**Teams (1):** 41:16
**Technicality (1):** 49:22
**Telling (4):** 29:23, 31:2, 39:3, 49:6
**Temporary (2):** 6:1, 46:21
**Terminate (2):** 12:2, 32:13
**Terms (6):** 12:7, 13:19, 18:6, 23:2, 24:16, 25:15
**Testimony (7):** 13:16, 30:21, 30:23, 39:24, 40:18, 43:24, 49:17
**Thats (65):** 4:20, 5:11, 5:16, 6:6, 7:1, 7:4, 7:25, 8:1, 8:4, 10:1, 10:19, 13:7, 13:8, 14:4, 14:18, 15:9, 15:9, 15:24, 15:25, 16:3, 16:18, 17:16, 17:16, 17:25, 18:1, 18:24, 19:11, 19:15, 19:21, 20:3, 20:7, 21:14, 21:19, 21:23, 22:22, 23:7, 25:14, 26:4, 26:7, 26:14, 26:22, 27:19, 28:17, 29:8, 30:4, 30:25, 32:21, 32:22, 41:20, 43:18, 47:15, 47:23, 48:19, 48:20, 48:22, 49:6, 49:9, 49:11, 49:18, 49:20, 49:22, 51:23, 52:3, 52:15, 53:6
**Theory (2):** 16:20, 18:15
**Therefore (1):** 35:8
**Theres (38):** 5:9, 6:15, 11:2, 12:12, 12:13, 13:14, 13:22, 15:14, 15:22, 16:15, 16:15, 16:18, 17:2, 18:9, 18:9, 18:22, 18:23, 19:12, 20:21, 21:21, 21:23, 21:25, 23:4, 25:12, 25:18, 25:22, 26:9, 27:10, 30:14, 32:12, 33:5, 35:1, 35:2, 41:14, 41:15, 42:22, 52:7, 52:9
**Theyll (4):** 40:8, 46:23, 47:7, 47:10
**Theyre (13):** 7:21, 7:23, 8:11, 8:19, 9:4, 9:8, 12:13, 16:22, 19:10, 21:11, 32:9, 33:11, 48:18
**Theyve (5):** 33:10, 38:1, 47:15, 47:23, 47:23
**Thief (1):** 49:4
**Thinking (2):** 26:1, 51:19

**Third (1):** 20:23
**Thorne (1):** 48:7
**Though (5):** 6:9, 9:11, 28:12, 30:21, 42:1
**Thought (5):** 20:22, 21:3, 28:9, 28:9, 28:11
**Thousands (4):** 24:3, 24:14, 25:21, 44:19
**Threaten (1):** 36:22
**Three (9):** 11:24, 25:9, 25:23, 37:10, 37:19, 39:8, 40:19, 44:19, 52:3
**Thursday (2):** 7:9, 7:10
**Tie (1):** 49:3
**Timeline (1):** 9:24
**Times (6):** 20:7, 33:6, 36:9, 42:15, 47:13, 49:15
**Today (14):** 5:13, 6:18, 6:21, 8:13, 10:19, 17:7, 22:24, 28:12, 32:1, 32:15, 33:1, 38:1, 41:19, 50:21
**Together (5):** 28:2, 47:16, 47:16, 47:20, 48:4
**Told (26):** 11:8, 23:10, 23:12, 26:4, 26:7, 27:6, 34:8, 34:8, 34:16, 35:9, 35:9, 38:4, 40:9, 40:10, 40:13, 40:21, 41:5, 41:21, 41:21, 41:22, 45:5, 46:8, 46:22, 47:12, 47:13, 49:13
**Tomorrow (16):** 8:16, 14:19, 18:2, 18:25, 31:11, 31:14, 31:18, 34:18, 44:7, 44:11, 45:9, 45:14, 52:19, 52:25, 53:19, 53:24
**Tomorrows (4):** 9:15, 14:3, 15:5, 20:12
**Took (1):** 32:11
**Top (1):** 22:7
**Topics (11):** 7:11, 7:19, 9:16, 11:4, 11:4, 11:7, 11:9, 11:11, 11:17, 12:6, 18:3
**Toronto (1):** 43:13
**Torrent (1):** 53:1
**Touch (1):** 36:5
**Tough (1):** 29:10
**Toxic (3):** 48:10, 48:10, 48:11
**Train (2):** 36:12, 38:20
**Transcript (3):** 48:20, 51:10, 51:11
**Trial (6):** 6:12, 8:11, 19:16, 19:23, 25:23, 28:25
**Tried (2):** 39:19, 47:14
**Tries (1):** 49:22
**Tristan (3):** 12:18, 40:11, 46:16
**Trouble (1):** 16:19
**True (4):** 8:14, 17:16, 23:15, 23:16
**Trust (1):** 42:23
**Try (1):** 30:20
**Trying (5):** 10:23, 14:15, 14:15, 15:7, 25:25
**Tuesday (2):** 7:14, 7:16
**Twelve (1):** 12:11
**Twenty (4):** 12:11, 39:11, 39:12, 47:5
**Two (15):** 6:15, 7:19, 9:7, 13:21, 20:16, 20:22, 35:6, 35:10, 42:6, 43:6, 43:14, 47:24, 47:24, 48:5, 48:6
**Types (1):** 37:8

U

**Ultimately (1):** 22:11
**Ultimatum (3):** 6:22, 7:5, 43:20
**Unclear (1):** 17:18
**Uncomfortable (1):** 33:21
**Under (12):** 11:24, 14:11, 14:18, 16:10, 22:24, 24:10, 24:18, 26:11, 27:22, 32:20, 46:9, 46:13
**Underlying (4):** 15:12, 20:25, 21:1, 21:5
**Understands (1):** 19:4
**Understood (2):** 20:15, 53:5
**Unenforceable (1):** 10:16
**Unfortunately (2):** 23:7, 52:10
**Unhinged (1):** 51:12
**Unit (2):** 35:2, 35:12
**United (1):** 41:6
**Units (1):** 35:10
**Universe (1):** 7:7
**Unlawful (1):** 47:21
**Unless (1):** 17:21
**Unmindful (1):** 29:12
**Unprecedented (1):** 51:12
**Unrealistic (1):** 29:25
**Unwieldy (1):** 6:20
**Unwilling (1):** 8:24
**Up (25):** 17:24, 18:13, 20:7, 25:3, 30:7, 30:19, 31:11, 33:25, 36:14, 37:14, 37:19, 37:24, 37:24, 38:1, 39:2, 41:11, 42:3, 43:16, 45:4, 50:1, 50:2, 50:3, 51:10, 51:11, 51:15
**Use (5):** 9:8, 11:23, 30:20, 30:25, 40:8
**Used (2):** 11:17, 27:14
**Useless (1):** 14:19

V

**Validity (1):** 20:1
**Valuable (1):** 39:12
**Vargas (1):** 47:24
**Vehicle (1):** 9:9
**Via (1):** 13:12
**Video (2):** 37:4, 43:11
**View (2):**

19:18, 29:1
**Viewpoint (1):** 24:17
**Views (1):** 51:6
**Vindictive (5):** 33:10, 33:10, 33:11, 41:24, 45:4
**Vindictivenes s (1):** 33:13

W

**WIENER (1):** 52:23
**Wait (1):** 53:18
**Waiver (1):** 9:21
**Waiving (1):** 29:21
**Wake (5):** 37:13, 37:24, 37:24, 39:2, 43:16
**Walk (1):** 29:11
**Walls (1):** 16:16
**Wampy (1):** 5:5
**Wants (9):** 19:19, 19:20, 30:15, 33:25, 44:5, 44:6, 44:6, 44:6, 47:7
**Wasnt (4):** 17:8, 17:20, 23:24, 30:24
**Waste (2):** 33:4, 34:18
**Wasting (3):** 42:13, 44:22, 44:24
**Watch (1):** 39:4
**Watched (1):** 51:6
**Way (16):** 5:22, 6:10, 20:2, 21:15, 22:21, 23:8, 26:3, 30:13, 33:21, 34:20, 36:4, 41:25, 43:21, 45:19, 48:21, 48:25
**Ways (8):** 7:9, 24:7, 25:9, 25:23, 32:18, 36:2, 41:6, 41:8
**Weak (1):** 46:17
**Wednesday (3):** 5:6, 7:15, 21:14
**Week (7):** 4:25, 5:4, 5:16, 7:14, 7:17, 9:19, 37:20
**Weekend (4):** 8:7, 8:9, 8:10, 10:20
**Weeks (1):** 9:13
**Werent (1):** 7:15
**Weve (10):** 6:18, 8:20, 10:25, 13:19, 13:21, 22:4, 22:5, 44:17, 50:20, 53:23
**Whatevers (1):** 15:10
**Whats (15):** 11:19, 16:16, 18:15, 19:24, 21:11, 21:12, 25:4, 27:12, 29:23, 29:23, 36:17, 37:2, 37:15, 37:17, 43:16
**Whenever (1):** 37:5
**Whichever (1):** 43:21
**Whole (8):** 8:14, 21:8, 23:9, 25:4, 25:21, 30:19, 35:8, 49:17
**Wholly (2):** 7:25, 8:12
**Whos (3):** 14:17, 33:18, 51:13
**Whose (2):** 46:5, 46:5
**Wiener (21):** 14:6, 14:7, 34:13, 36:4, 38:13, 39:4, 40:9, 42:8, 42:9, 43:11, 43:25, 44:7, 44:11, 45:15, 47:14, 48:23, 49:13, 49:21, 53:5, 53:12, 53:17
**Wieners (3):** 33:9, 34:18, 47:11
**Wife (12):** 22:12, 33:17, 33:17, 33:18, 34:9, 34:19, 35:19, 35:20, 39:17, 40:10, 40:20, 43:17
**Willing (1):** 9:4
**Wiped (1):** 46:21
**Wishing (1):** 10:5
**Withdraw (2):** 8:25, 37:16
**Within (1):** 16:16
**Without (3):** 28:9, 31:8, 53:3
**Witness (5):** 11:25, 14:5, 14:10, 17:19, 17:20
**Witnesses (6):** 12:10, 12:15, 12:20, 13:1, 38:14, 46:24
**Wolosky (2):** 4:12, 4:14
**Won (1):** 43:3
**Wont (9):** 28:4, 31:2, 31:21, 31:23, 33:15, 36:21, 36:22, 44:15, 47:14
**Words (1):** 7:5
**Work (6):** 23:22, 24:10, 24:12, 33:24, 40:23, 43:12
**Worked (1):** 43:12
**Works (3):** 33:8, 36:19, 46:18
**World (1):** 26:5
**Worth (1):** 24:11
**Wos (1):** 46:4
**Wouldnt (4):** 27:18, 36:15, 36:15, 36:16
**Write (1):** 37:12
**Writes (1):** 37:8
**Writing (1):** 40:13
**Wrong (6):** 33:3, 39:1, 39:17, 42:24, 47:3, 49:23
**Wrote (1):** 7:1

Y

**YJ (12):** 22:4, 22:10, 23:9, 23:9, 23:15, 23:17, 25:13, 26:11, 26:12, 27:15, 35:13, 36:2
**Year (5):** 23:9, 33:19, 34:7, 36:8, 39:20
**Years (14):** 19:3, 33:8, 37:19, 39:8, 40:19, 42:3, 42:5, 43:6, 44:19, 47:24, 47:25, 48:5, 48:6, 48:21
**Yechiel (1):** 12:19
**Youll (12):** 6:24, 7:2, 7:3, 32:14, 32:14, 34:16, 36:4, 45:8, 45:14, 46:7, 47:11, 52:18
**Young (2):** 38:8, 41:13
**Youre (43):** 15:22, 15:24,

17:4, 17:12, 18:13, 24:15, 26:4, 27:21, 27:23, 29:13, 29:15, 29:16, 29:18, 29:20, 30:2, 30:20, 30:23, 31:6, 32:2, 34:21, 35:23, 35:24, 36:6, 36:13, 36:17, 37:16, 38:14, 38:15, 38:20, 43:5, 43:22, 43:23, 44:5, 44:15, 44:23, 46:2, 46:22, 47:22, 48:18, 49:10, 50:2, 50:11, 50:19

**Youve (15):**
16:12, 16:21, 16:25, 18:13, 21:23, 22:15, 32:18, 32:18, 33:17, 34:7, 38:9, 48:23, 49:21, 49:21, 50:22

Z

**Zero (2):**
33:20, 42:7