# Exhibit D

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------x
IN THE MATTER OF:

JEFFREY SOLOMON SIMPSON,

DEBTOR/PLAINTIFF,

v. ADV. NO. 26-01013-LGB

ERIC MICHAEL HUEBSCHER,

RECEIVER.

-----------------------------x

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
One Bowling Green
New York, NY 10004

Wednesday, June 10, 2026
10:32 a.m.

B E F O R E:

HON. LISA G. BECKERMAN
U.S. BANKRUPTCY JUDGE

ECRO: K. BRAITHWAITE/F. FERGUSON

Proceedings recorded by FTR electronic sound recording; transcript produced by transcription service.

A P P E A R A N C E S:

FOR JEFFREY SIMPSON: BY: ALEC OSTROW, ESQ.
BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI, LLP
299 Park Avenue
16th Floor
New York, NY 10171

FOR JARED CHASSEN: BY: ALLEN SCHWARTZ, ESQ.
SCHWARTZ LAW, PLLC
150 Broadway
Suite 701
New York, NY 10038

FOR ERIC HUEBSCHER: BY: MARTIN G. BUNIN, ESQ.
FARRELL FRITZ, P.C.
613 Third Avenue
Suite 37200
New York, NY 10017

TRANSCRIPTION SERVICE: BY: ACORN TRANSCRIPTS, LLC
3572 Acorn Street
North Port, FL 34286
(800) 750-5747

C A L E N D A R

EVIDENTIARY HEARING, DEBTOR'S DOCUMENT LIST OF PERSONAL PROPERTY

# I N D E X

## W I T N E S S E S

| PLAINTIFF'S WITNESSES | VD | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|---|
| Jeffrey Simpson | | (Declaration) | | | |
| (By Mr. Bunin) | | | 15 | | |
| (By Mr. Schwartz) | | | 104 | | |
| (By The Court) | | | 132 | | |

## E X H I B I T S

| EXHIBIT# | DESCRIPTION | MARKED | ADMITTED |
|---|---|---|---|
| 1 | Simpson Declaration | 15 | 15 |
| 4 through 10 | Unidentified | 122 | 122 |
| 11 | Email | 78 | 78 |
| 13 | Email | 66 | 66 |
| 14 | Email | 64 | 64 |

THE COURT: You know a lot about Land Rovers. I'll definitely say that.

THE WITNESS: I'm a nut case. I bought my first one at 16. No, but -- before I even had this business, my house that I bought in 2017, my wife was going to kill me. She's like, what's with so many cars outside? So I extended the garage practically myself to make it two more plus two deep, because she's like, do I get a room above? I said, you get a room above.

THE COURT: But I'm going back to the business.

THE WITNESS: Because I did both. Right? I also liked vehicles. It wasn't just a business. I had my own stuff, too.

THE COURT: No, I get that. But my point to you is I'm being asked to determine, and again, this is just, again, my rounding commentary, because that's all it is. And I appreciated that you were identifying things for clients. You were explaining how things were acquired. I was glad I watched the whole video. That was very helpful for me. It definitely showed me that you really knew what was on the premises. You had really been involved. Not that I didn't believe that, but it was definitely helpful to see.

But what that says to me is if this is a business, and you're a business person, and you're running this business like a business, and you're trying to make the business work,

then why is all the stuff that's left all your personal stuff? Not all of it, but 70 percent of it, 60 percent of it. It's a pretty high percentage of what's left that you identified as being your stuff. And that's hard for me to understand.

THE WITNESS: I've tried to share this with you before, and I appreciate you rounding up the question. As I mentioned, the money is not here. The money's gone. So the money where the value was, the vehicles, the value was. So if you look at --

THE COURT: I get that, but still, why would --

THE WITNESS: If you drove by there, there's 30 less cars, 40 less cars than used to be there. It was hundreds of thousands of dollars.

THE COURT: I believe you.

THE WITNESS: So the only thing left is junk, and the junk is things that I bought. So I bring things there from my house. For example, if we're working on something, right, and we need a part X, Y, and Z, and I have it in my bucket of collection, I would bring it.

THE COURT: I get that. And that would explain why some of it would definitely not be in the name of the company, and I totally understand that. But if someone is running a business, and they're doing things, and they're either doing speculative work, like you discussed doing, like doing stuff on spec, they're doing a job for a client, or, for example, it's

But putting that all aside, if I'm the only one in control, and I guarantee you if you spoke to anyone that spent time there in 2023 to 2025, they'll tell you one name, only one name, me. Okay? And if you spoke to former employees, if you spoke to clients --

THE COURT: That's, again, why I'm wondering, like, why is all this stuff in your name and not in the business name? That just doesn't make sense to me. You told me you would transfer money. Now, look, I know some of it makes sense to me that you just go, like, one-off and buy an engine from somebody. Maybe that makes some sense. I get that. Although, and we haven't gotten to my question about that yet, which is cash. Like, you live in the New York area. I live in the New York area. Everyone here pretty much lives in the New York area. I mean, if you go to buy something from somebody and you're going to go do that, that's fine, but you have to have cash. And you probably don't walk around with, I don't know, $5,000, $2,000 of cash on you. So usually you'd have to go and get the cash before you decided to drive out and go buy this thing off the person.

THE WITNESS: Sure.

THE COURT: So then there would be a withdrawal from your account. So I don't even have any -- like I bought this from --

THE WITNESS: It's a major analysis. It's a major

analysis. So, again, I'm going to zoom out and reflect here for a moment if I can. The total value here is valuable to me and nobody else. If he goes through with his auction, I guarantee you he might end up with 50 grand, if that. We're spending so much in legal. There's so much brain damage. Oh, it's all vindictive. And there's absolute value. Let's assume you give me zero and he sells it all --

THE COURT: I'm not trying to be vindictive.

THE WITNESS: No, no, no. I'm not saying you are.

THE COURT: I'm trying to figure out what you actually own legally.

THE WITNESS: I'm not suggesting you are. I'm saying --

THE COURT: I'm under the burden of proof.

THE WITNESS: The amount of illegal dollars that are being spent surrounding this, that's assigned to Your Honor more than anything else. Assume I got nothing. Assume I got nothing. Why is so much money being spent? Because it's all to paint a certain picture of me. And that's what they've been doing.

So, yes, if you look at number eight, the Range Rover 2010 or 2011 that I bought my son in Albany.

THE COURT: That was one line.

THE WITNESS: Yeah. There's actually -- I have paper. I gave it to the receiver. If you asked Chassen, he

THE COURT: Right. Yeah. I saw that in there.

THE WITNESS: I don't know where I found it. I found it and I provided that.

THE COURT: Okay.

THE WITNESS: And the 2001, so I had another vehicle that came to 1640 Motors and they wanted to buy a vehicle that was mine, that was registered in my name. I sold it to them. And as part of the transaction, they gave me the 2001 white Range Rover. I don't know if I ever changed the title over or not.

THE COURT: I don't think I saw anything in here about it.

THE WITNESS: Yeah. I don't, you know, I don't know.

THE COURT: I don't think there was any documents.

THE WITNESS: Again, this person's around. I know where he lives. And again, it was like $1,000 when I got it and then I blew up the engine, not on purpose.

THE COURT: Right.

THE WITNESS: So it's just, you know, again, is it really worth the energy. I don't know.

THE COURT: Well, that's really up to you, Mr. Simpson, because I can't -- you know, I'll -- I hear you, but --

THE WITNESS: There's a larger picture issue, though, that I can see you bring up. And again --

THE COURT: I appreciate that you continue to bring it up. But my problem is that my job right now for this particular motion that you all decided to file yourselves, that decided that you were going to go forward with, is put a list together of properties so that you would get it back.

THE WITNESS: No, we filed a motion that said something much different than that, but it was narrowed down to that. And there's also this motion to dismiss. Another motion tied to the receiver's actions, which are all related. Because economically, no, it's not worth spending $20,000, $30,000, $40,000, $50,000 on legal, the Court's time and everything else for things here that --

THE COURT: Well, my time is free.

THE WITNESS: Well, it's valuable.

THE COURT: Virtually.

THE WITNESS: It's things here that just, it's just, this is a larger picture problem that it's just not you, but it's, there's a theme, burn any dollar that ever comes to me. And if the Court doesn't want to see it, the Court doesn't want to see it, but that's what we're dealing with here. So (indiscernible) --

THE COURT: Okay. That doesn't help --

THE WITNESS: It makes no logical sense for anybody because that property is millions of dollars of my hard-earned money that's in there that is --

enough but that's all I have and I have you have a height you have to prove by majority.

So where it's contested, clearly there's a problem, and where there's just so much of it, my having to get comfortable and determine that you bought all this stuff in your own name for this business, like all of it, that's -- you're seeking. And that's really what I'm trying to understand myself. That's why I'm asking you a lot of questions because I really am trying to understand what you did.

THE WITNESS: (Indiscernible) questions, I think we struggle continually because if anyone looks at this stuff because of how we got here, how any of this could ever happen because nowhere in this world would anyone think to spend this much legal time -- I ran a billion-dollar business, Your Honor, with 15 properties in three states --

THE COURT: I hear you.

THE WITNESS: -- five -- six states with six different operating companies with the head of HR making $4 million a year. You name it. Chassen got way overpaid. This was a tail wagging the dog.

And now here we are because those folks needed to burn me at something. This is the only reason we're spending this much time. Why does Mr. Schwartz care so much? His legal bill has going to be higher. Why does Mr. Bunin care so much?

There's no good agenda here other than burn Jeff Simpson. Right?

THE COURT: Okay. Well, respectfully, Mr. --

THE WITNESS: But they haven't provided proof to you that it's not mine, have they? What proof have they provided to you? I haven't seen any.

THE COURT: Well, there's some issues about some of the car titles. That's not true.

THE WITNESS: Which one specifically? Because I have yet to see --

THE COURT: It was in the affidavits from Mr. Huebscher. You'd have to take a look at them, but they were the declaration --

THE WITNESS: Mr. Huebscher -- it's very interesting you say that. If you like, we can go to the tape, because there's some pretty interesting information there about things. He actually has reframed the New York State motion 30 where he says he had to return a vehicle that he gave to Chassen --

THE COURT: Mr. Simpson --

THE WITNESS: He gave it to Chassen off the site. So why are we not talking about the fact that stuff was taken, stolen?

THE COURT: Mr. Simpson.

THE WITNESS: I know. It's not the motion in front of you. I get it.

THE COURT: It's not the motion in front of me, number one; and I understand. And number two --

THE WITNESS: I don't know why I waste my energy on this stuff. I just move on with life. This is all a waste of time. It just frankly is. The amount of legal we keep spending. Hundreds and hundreds of thousands to prove the fact I'm an honest person, honest business person, and all because these people will do anything to burn me to the ground. You saw what they did on the on the legal bill from Mr. Ostrow. You saw the amount of opposition over simple legal engagements. You see what they did with insurance. If the theme isn't there, I don't know what to say anymore, but I can't keep spending my own 20, 30, 40 hours a week trying to convince the court of a bad two years of a judge that was vindictive about everything.

If you look at how we got to receivership, two of the four properties had contracts for sale with numbers that I had higher than what the receiver did, by hundreds. Why Judge Cohen did what he did, nobody'll talk about it. No one wants to insult the man, but he's wrong.

But anyway, it is what it is. I'm not going to waste my energy on it. Frankly, Your Honor, if there was a way to surrender, I just would, because it's just ungodly. There's no one you've probably met in your career who had the success I had that got burned to the ground for doing nothing wrong.