**Hearing Date: October 29, 2026, at 10:00 a.m.**
**Objection Deadline: October 22, 2026**

**BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP**
299 Park Avenue, 16th Floor
New York, New York 10171
Telephone: 212-888-3033
Facsimile: 212-888-0255
Alec P. Ostrow
aostrow@beckerglynn.com

*Counsel to Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JEFFREY SOLOMON SIMPSON,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-10359 (LGB) |

**DEBTOR'S OBJECTION TO MOTION OF WATERMILL CAPITAL HOLDINGS, LLC FOR RELIEF FROM THE AUTOMATIC STAY**

Jeffrey Solomon Simpson, the debtor and debtor in possession herein (the "Debtor"), by his counsel, as and for his objection (the "Objection") to the motion (the "Motion") of Watermill Capital Holdings, LLC ("Watermill") for an order, pursuant to 11 U.S.C. §§ 105(a), 362(d)(1),granting Watermill relief from the automatic stay, respectfully sets forth and represents:

1. As the party seeking relief, Watermill must make an initial showing of cause. "Once the moving party establishes a *prima facie* case for 'cause,' the burden shifts to the debtor to disprove its existence." *In re Project Orange Assocs, LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010). "If the movant fails to make an initial showing of cause, however, the court

should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Id.* (quoting *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990)).

2. Watermill's sole basis for relief is that it lacks adequate protection. Watermill's sole argument in paragraphs 13 through 15 of the Motion is that mortgage debt of $2,402,877.43 is due, the Debtor has not filed a chapter 11 plan, and the Debtor cannot provide Watermill with adequate protection. This is insufficient for a *prima facie* case for cause for stay relief.

3. Adequate protection is essentially that which protects against the diminution of value during the pendency of the bankruptcy case. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988); *Off. Comm. of Unsecured Creditors v. UMB Bank, N.A. (In re Residential Capital, LLC)*, 501 B.R. 549, 589 (Bankr. S.D.N.Y. 2013). The Motion makes no effort show how the value of the underlying property has declined since the filing of the Debtor's petition. Watermill's District Worksheet, Exhibit C to the Motion, does not show a decline in value of either property from February 19, 2026. Consequently, the Debtor is not required to make any showing to defeat this aspect of the Joint Motion. *Project Orange*, 432 B.R. at 103.

4. Although the Debtor is not required to make any showing, it is relevant to point out that based on Watermill's own figures, the value of the underlying property of $2.5 million exceeds the $2,402,877.43 of associated debt. That provides Watermill with an equity cushion of nearly $100,000. A sufficient equity cushion is well-recognized as establishing adequate protection. *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th Cir. 1984); *In re Moche*, 677 B.R. 592, 613 (Bankr. S.D.N.Y. 2026); *In re Schuessler*, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008). As to the value of the underlying property, Watermill's District Worksheet

states that it is based on a broker price opinion.[1] A broker price option "is a much less rigorous estimate of a property's market value than is an appraisal." *Fried v. JP Morgan Chase & Co.,* 850 F.3d 590, 594 (3d Cir. 2017). Courts have rejected the use of broker price opinions in contested valuations. *Kasbee v. Huntington Nat'l Bank (In re Kasbee)*, 466 B.R. 719, 726 (Bankr. W.D. Pa. 2010); *Thomas v. Countrywide Home Loans, Inc. (In re Thomas)*, 344 B.R. 386, 393 (Bankr. W.D. Pa. 2006). The value provided by the broker price option already exceeds the amount of the debt by almost $100,000. Using Watermill's value, and a 24% annual interest rate, which is 2% monthly interest rate, applied to a principal debt of $1.5 million, the monthly interest rate is $30,000, which provides at least three months of cushion above the broker price opinion value. A slightly different broker price opinion would produce a value much greater than the debt.

5. The Receiver for the owner of the underlying property has stated to this Court that he is in negotiations to sell such property. The Debtor has not been informed of the status of such negotiations. To the extent that Watermill is involved in such negotiations, Watermill should be required to inform the Court and the Debtor of such status. The parties should be involved in a cooperative effort to maximize the value of the underlying real property.

[The remainder of this page is intentionally left blank.]

[1] A broker price opinion has been described as "a useful starting point if you're considering listing your home. It helps to think of a BPO as a ballpark figure that you can update with an appraisal at some point." James Chen, "Broker Price Opinion Explained: Definition and Real Estate Application," (updated March 25, 2026), available at https://www.investopedia.com/terms/b/broker_price_opinion.asp (last visited October 18, 2026). Moreover, "It's hard to determine how accurate a BPO is since they're so subjective and BPOs vary widely. If you'd looking for the most accurate valuation for your home, you'll probably want to pay for an appraisal." *Id.*

WHEREFORE, the Debtor respectfully requests that relief requested by the Motion be denied in all respects and that the Court the Debtor grant such other and further relief as is just.

Dated: New York, New York
October 22, 2026

BECKER, GLYNN, MUFFLY,
CHASSIN & HOSINSKI LLP

By: _/s/ Alec P. Ostrow_____

Alec P. Ostrow
299 Park Avenue
New York, New York 10171
(212) 888-3033
aostrow@beckerglynn.com

*Counsel for Debtor and Debtor in Possession*



4900-0978-8634 v.1