# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - -x
In the Matter of:
JEFFREY SOLOMON SIMPSON, Lead Case No.
Debtor 26-10359-lgb
- - - - - - - - - - - - - - - - - - - - -x
SIMPSON,
Plaintiff, Adv. Proc. No.
v. 26-01013-lgb
HUEBSCHER,
Defendant.
- - - - - - - - - - - - - - - - - - - - -x
GREAT AMERICAN INSURANCE COMPANY,
Plaintiff, Adv. Proc. No.
v. 26-01015-lgb
ARCH REAL ESTATE HOLDINGS,
Defendant.
- - - - - - - - - - - - - - - - - - - - -x
HUEBSCHER,
Plaintiff, Adv. Proc. No.
v. 26-01045-lgb
SIMPSON,
Defendant.

\- - - - - - - - - - - - - - - - - - - - -x
608941 NJ INC.,
Plaintiff, Adv. Proc. No.
v. 26-01046-lgb
SIMPSON,
Defendant.
\- - - - - - - - - - - - - - - - - - - - -x
SIMPSON,
Plaintiff, Adv. Proc. No.
v. 26-01079-lgb
GREAT AMERICAN INSURANCE COMPANY et al,
Defendants.
\- - - - - - - - - - - - - - - - - - - - -x
SIMPSON,
Plaintiff, Adv. Proc. No.
v. 26-01097-lgb
ARCH REAL ESTATE HOLDINGS LLC et al,
Defendants.

Adv. Proc. No.
26-01013-lgb
\- - - - - - - - - - - - - - - - - - - - -x

United States Bankruptcy Court
One Bowling Green
New York, New York

October 26, 2026
10:26 AM

B E F O R E:
HON. LISA G. BECKERMAN
U.S. BANKRUPTCY JUDGE
ECRO: ELECTRONIC RECORDING

Order to Show Cause Scheduling Hearings To Discuss Scheduling The Motion of Becker, Glynn, Muffly, Chassin & Hosinski LLP to Withdraw As Counsel And On Preliminary Relief Pending The Heraing

Order to Show Cause Scheduling Hearings To Discuss Scheduling The Motion of Becker, Glynn, Muffly, Chassin & Hosinski LLP to Withdraw As Counsel And On Preliminary Relief Pending The Heraing

Order to Show Cause Re: Scheduling Hearings To Discuss Scheduling The Motion of Becker, Glynn, Muffly, Chassin & Hosinski LLP to Withdraw As Counsel And On Preliminary Relief Pending The Heraing

Order to Show Cause Re: Scheduling Hearings To Discuss Scheduling The Motion of Becker, Glynn, Muffly, Chassin & Hosinski LLP to Withdraw As Counsel And On Preliminary Relief Pending The Heraing

Order to Show Cause Re: Scheduling Hearings To Discuss Scheduling The Motion of Becker, Glynn, Muffly, Chassin & Hosinski LLP to Withdraw As Counsel And On Preliminary Relief Pending The Heraing

Order to Show Cause Re: Scheduling Hearings To Discuss Scheduling The Motion of Becker, Glynn, Muffly, Chassin & Hosinski LLP to Withdraw As Counsel And On Preliminary Relief Pending The Heraing

Order to Show Cause Re: Scheduling Hearings To Discuss Scheduling The Motion of Becker, Glynn, Muffly, Chassin & Hosinski LLP to Withdraw As Counsel And On Preliminary Relief Pending The Heraing

Notice of Hearing on Case Closing Without a Discharge with hearing to be held on 10/26/2026 at 10:00 AM at Videoconference (ZoomGov)

Motion to Dismiss Adversary Proceeding

Transcribed by: Michael Drake
eScribers, LLC
7227 North 16th Street, Suite #207
Phoenix, AZ 85020
(800) 257-0885
operations@escribers.net

A P P E A R A N C E S (All present by video or telephone):

BECKER, GLYNN, MUFFLY, CHASSIN & HOSKINSKI LLP
Attorneys for Debtors
299 Park Avenue
New York, NY 10171

BY: ALEC P. OSTROW, ESQ.

FARRELL FRITZ, P.C.
Attorneys for Eric Huebscher
622 3rd Avenue
New York, NY 10017

BY: MARTIN G. BUNIN, ESQ.

UNITED STATES DEPARTMENT OF JUSTICE
Attorneys for Office of the United States Trustee
One Bowling Green
Room 534
New York, NY 10004

BY: DANIEL R. RUDEWICZ, ESQ.

OLSHAN FROME WOLOSKY LLP

Attorneys for Arch Real Estate Holdings LLC

1325 Avenue of the Americas

New York, NY 10019

BY: JONATHAN T. KOEVARY, ESQ.

RYAN A. PARTELOW, ESQ.

KAUFMAN BORGEEST & RYAN LLP

Attorneys for Great American Insurance Company

200 Summit Lake Drive

1st Floor

Valhalla, NY 10595

BY: JOSHUA A. DILENA, ESQ.

SCHWARTZ LAW PLLC
Attorneys for Jared Chassen
150 Broadway
Room 701
New York, NY 10038

BY: ALLEN SCHWARTZ, ESQ.

BINDER & SCHWARTZ LLP
Attorneys for 608941 NJ, Inc.
140 East 45th Street
Suite 26B
New York, NY 10017

BY: LINDSAY BUSH, ESQ.

ADAM LEITMAN BAILEY, P.C.
Attorneys for Adam Leitman Bailey, P.C.
One Battery Park Plaza
18th Floor
New York, NY 10004

BY: MELISSA BETH LEVINE, ESQ.

OFFIT KURMAN, ATTORNEYS AT LAW
Attorneys for Offit Kurman, Attorneys at Law
590 Madison Avenue
6th Floor
New York, NY 10022

BY: JULIE LEVINE, ESQ.

MARGOLIN, WEINREB & NIERER, LLP
Attorneys for Watermill Capital Holdings, LLC
575 Underhill Boulevard
Suite 224
Syosset, NY 11791

BY: ANDREW GOLDBERG, ESQ.
ALAN H. WEINREB, ESQ.

ALSO PRESENT:
ERIC. HUEBSCHER, Receiver
JARED. CHASSEN
JIM. FERGUSON

P R O C E E D I N G S

THE COURT: Okay. In Re Jeffrey Solomon Simpson, Case Number 26-10359. Jeffrey Solomon Simpson versus Eric Huebscher and Jared Chassen, adversary proceeding 26-01013. Great American Insurance Company against Arch Real Estate, Estate Holdings, Jeffrey Simpson, Jared Chassen, Wiggin and Dana, Griffin LLP, and Offit Kurman, P.A., adversary proceeding 26-01015. Huebscher v. Simpson, adversary proceeding 26-01045. 608941 NJ, Inc. v. Jeffrey Solomon Simpson, adversary proceeding 26-01046. And Jeffrey Solomon Simpson against great American Insurance Company, Arch Real Estate Holdings, Jared Chassen, Wiggin and Dana LLP, Griffin LLP, Offit Kurman, P.A., and John Does 1 through 10, adversary proceeding 26-01079.

May I have appearances, please?

MR. OSTROW: Good morning, Your Honor. Alec Ostrow, retained counsel for Jeffrey Solomon Simpson in all these matters.

MR. BUNIN: Good morning, Your Honor. Marty Bunin from Farrell Fritz for Eric Huebscher as receiver. And I would like to introduce to the Court Giselle Rodas of Farrell Fritz, who's a first-year associate awaiting admission, who is helping me and the firm with the 26-01013 Simpson v. Huebscher adversary proceeding.

THE COURT: And also 26-1045?

MR. BUNIN: Yes, Your Honor.

THE COURT: Huebscher v. Simpson? Okay. Good morning. Welcome.

MR. HUEBSCHER: Good morning, Your Honor. Eric Huebscher, the receiver.

THE COURT: Good morning.

MR. RUDEWICZ: Good morning, Your Honor. Daniel Rudewicz on behalf of the United States Trustee.

THE COURT: Good morning, Mr. Rudewicz.

MR. KOEVARY: Good morning, Your Honor. Jonathan Koevary, Olshan Frome Wolosky, for Arch Real Estate Holdings LLC. I believe on the line is my colleague, Ryan Paretlow. Arch Real Estate Holdings is defendants in two of the adversary proceedings. One is Simpson v. Arch Real Estate Holdings, LLC, et al, 26-01097. And the other one Simpson v. Great American, which I believe is 26-01079.

THE COURT: Thank you. Good morning.

MR. DILENA: Good morning, Your Honor. Josh DiLena for Great American Insurance Company, defendant in adversary proceeding 26-01079.

THE COURT: Good morning.

MR. SCHWARTZ: Good morning. Good morning, Your Honor. Allen Schwartz on behalf of Jared Chassen. Mr. Chassen is a defendant in the Simpson v. Huebscher case, 26-01013, and also a defendant in the Simpson v. Great American Insurance

case, 26-01079.

THE COURT: Good morning.

MS. BUSH: Good morning, Your Honor. Lindsay Bush from Binder & Schwartz on behalf of 608941 NJ, Inc. in the main bankruptcy case as well as the adversary proceeding, 26-01046.

MS. LEVINE: Good morning, Your Honor. Julie Levine for Offit Kurman, defendant in two adversary proceedings for Simpson v. Great American Insurance Company, 26-01079, and Great American v. Arch Real Estate, 26-01015.

THE COURT: Mr. Simpson, I see you there.

MR. SIMPSON: Sorry. I've tried a couple of times. Good morning, Your Honor.

THE COURT: Good morning, Mr. Simpson.

Okay. All right. Mr. Ostrow, this was your motion. So my understanding from your motion was that you were seeking a couple things. One was a scheduling of your motion to withdraw as counsel. Second, a stay in all of the various proceedings that were pending, pending that ruling on that motion and probably perhaps for some other time. Don't know from you. And then obviously the issue about I guess other pending matters and how we're going to handle them.

So my first question for you and actually for Mr. Simpson as well is, is there going to be any opposition to your motion seeking to withdraw as counsel from Mr. Simpson? I guess, Mr. Simpson, my question is for you.

MR. SIMPSON: Sorry, Your Honor. I did send a letter to the Court I believe on Friday afternoon. I don't know that I gave a crystal clear answer. I'm still trying to evaluate the situation. I think it's obviously overwhelming beyond of where we are. And if the attorney can't do what is necessary, there's a breakdown. And that's been my concern. I've raised it for several months now. So I don't really know what the solution is, frankly, Your Honor. I was hoping to hear what --

THE COURT: It's not a solution question, Mr. Simpson, unfortunately. It's a question about whether or not you're going to oppose the request to withdraw his your counsel. That's really up to you. You're going to have to decide. I'm going to schedule a hearing. And you're going to have to either put in an objection yourself, which I will allow you to do even under these circumstances, of course, or you're not. That's a simple -- if the answer is you don't know, that's okay. That's an answer.

MR. SIMPSON: I think I said to you in the letter that I don't think there's an opportunity --

THE COURT: I'm asking you the question on the record, Mr. Simpson.

MR. SIMPSON: Okay. Well, I --

THE COURT: Yes or no or --

MR. SIMPSON: I'm not sure.

THE COURT: -- I don't know?

MR. SIMPSON: I'm not sure. I don't know.

THE COURT: Okay. Fine.

MR. SIMPSON: I don't know.

THE COURT: Fine. That's fine. I don't know is a perfectly acceptable answer, Mr. Simpson, okay? I understand that. All right.

So I then need to schedule the hearing for your motion, Mr. Ostrow. And based on my schedule, I think it's going to have to be -- and the fact that I don't know if it'll be undisputed under the circumstances, I think it's going to have to be scheduled for the morning of November 13th. That's pretty much what I have. That's two weeks from now. And obviously, proper notice has to be given of the hearing. And parties have to have an opportunity to object. So that seems like the time that I could do it. So you can go ahead and serve your notice accordingly for that time and that date.

MR. OSTROW: I'm sorry, Your Honor. Did you say November 13?

THE COURT: In the morning, Yes, at 10 a.m.

MR. OSTROW: At 10. On Zoom?

THE COURT: Yes. That would seem to make sense to me. It's not evidentiary generally unless the parties tell me that they're going to -- in fairness, unless the parties tell me that we're going to need to go in camera to discuss things, in which case it's going to need to be in person. So I don't

know. I'm going to schedule it on Zoom. But I'm just telling you, if somebody tells me that they have to tell me stuff in camera, it's going to possibly have to be here because that's the only way to do it. So I go off the record because I'm not going off the record on Zoom. That doesn't work very well. All right. So that's what we're going to do with that.

Okay. Mr. Simpson, I guess -- I'm sorry. For the parties who are here who are involved in adversary proceeding 26-01013, so that is a fully briefed motion to dismiss. I have two. They were fully briefed by all the parties. I'm just going to rule on the papers. I'm not going to have argument. That means that it's not going to get delayed necessarily. I don't see the need. I can rule based on papers. Everybody was fully briefed. They had their chance to reply. Everything was fully -- and it's obviously a lot of legal issues. So I think that just makes sense for me to cancel the hearing as part of what I'm doing and just rule on the papers. Anybody have an objection to that?

MR. SCHWARTZ: No, Your Honor. Not for Mr. Chassen and --

MR. BUNIN: The receiver -- this is Marty Bunin from Farrell Fritz for the receiver. The receiver has no objection.

THE COURT: Okay. Mr. Ostrow?

MR. OSTROW: Well, I would defer to Mr. Simpson.

MR. SIMPSON: Your Honor, I only have -- I guess

objection might be the wrong word. But I did share with the Court the reply that we discussed about perjury of Mr. Chassen. And I think it's very much relevant to that motion. I also -- I attempted to share via the pro se tool the discovery documents, which are very large, so they may not have hit the docket yet. I did ask the clerk's office for help to get those updated.

THE COURT: Okay. Mr. Simpson, respectfully --

MR. SIMPSON: Just making sure you're aware of the --

THE COURT: I am. I am.

MR. SIMPSON: -- the issue.

THE COURT: I am aware of it.

MR. SIMPSON: Okay.

THE COURT: It came up this morning. But Mr. Simpson, respectfully, this is an issue about motion to dismiss based on what's in a complaint. I either dismiss it because there's a count or there's not. There's no evidence. This is literally just failure to state a relief for cause. Granted, it's all issues or issues about whether I have Rooker-Feldman issues or other things that were all alleged in these papers. They're fully briefed. This is not an evidentiary issue. It's literally I'm limited to what you pled in your complaint and the attachments that were there. That's it.

So there's no reason that I need to deal with the perjury issue in the context of this. That doesn't mean there

isn't perjury, Mr. Simpson. That's a whole different story. But it is not related to a motion to dismiss in an adversary proceeding. That's what I'm explaining to you.

MR. SIMPSON: That there's criminality involved --

THE COURT: Doesn't matter.

MR. SIMPSON: -- in the specific issue. It doesn't matter. Okay.

THE COURT: Doesn't matter because that's not what you --

MR. SIMPSON: Okay.

THE COURT: -- alleged. You alleged that there was a -- either a repudiation of an agreement, or you allege that there was a rescission of the agreement that should be made. That's exactly what was pled as a count in the complaint. This is not a criminal matter. I don't have criminal jurisdiction. We've discussed this --

MR. SIMPSON: Okay. I understand that.

THE COURT: -- many times. I don't --

MR. SIMPSON: I understand that. I understand that.

THE COURT: All I can do is now you've provided me with some information. I promised you I would look at it when you did. I will. But that is not the issue of what's pled in a complaint and account.

MR. SIMPSON: Well, it was provided -- it was provided to my attorney weeks ago. And if he refused to it, so be it.

THE COURT: It doesn't matter for -- my point to you is --

MR. SIMPSON: It is what it is.

THE COURT: My point --

MR. SIMPSON: You'll make your decision, Your Honor. You're going to make your decision. You control the situation. You're the boss. So whatever it is, it is. We'll deal with it. I have no choice here. So I get it.

THE COURT: Okay.

MR. SIMPSON: Let's move on. There's no objection.

THE COURT: Okay. Fine. Okay. Great. Okay.

So now we have the rest of the motions. And I'm going to describe that of the proceedings other than the preliminary injunction TRO, which we're going to need to have a discussion about and more in-depth.

So looking at everything else, I have a motion to lift stay, which I guess I think is going to have to also be stayed. I don't see an exclusivity motion stayed. I don't see how the motion to convert or dismiss thing is going to have to be heard in the next two weeks or even four weeks if I grant the motion. I'll get back to that in a second.

I don't think that there's an issue about the pre-trial conference, because it's probably out of the date that I'm going to set something. If there's anything else that's going on that I'm missing in that adversary proceeding,

we'll talk about that.

In the motion to dismiss the complaint, I guess in the various forums for the adversary proceeding for the insurance, I also don't see an issue with that. First of all, the hearing wasn't supposed to be to the 12th, the earliest one, but I don't see why that can't be kicked to December. Because I think what the right answer is here is that I'm going to have to rule on this motion. And then obviously, Mr. Simpson now knows he may lose his counsel. So he's got some period of time from now on to go see if he can find somebody else if he can't work something out with Mr. Ostrow and I actually let Mr. Ostrow go. He knows. He's on notice now that that's happening so -- possibly.

So I'm going to end up adjourning everything to December, that's really the answer, other than the TRO which we're going to have to -- and the preliminary injunction, which we're going to have to discuss in a second. And I don't really see any urgency with respect to any of these other matters that that's going to be a problem.

And I guess I'll just ask the parties if there's any reason why putting off everything till December is going to make any difference here in those proceedings.

MR. BUNIN: Your Honor, Marty Bunin for Eric Huebscher, as trustee -- as receiver.

With respect to adversary proceeding 26-01013 and the

role of the receiver generally, the receiver would like to make sure that in the event that --

THE COURT: No. I'm going to rule on your matter, Mr. Bunin. That's what I just said in that. I'm going to --

MR. BUNIN: No, no. Actually understood, Your Honor. I'm raising a different point. The receiver would like to be able, if he has a sale ready to go forward for 1640 Montauk Highway, the receiver would like to be able to come to Your Honor with a motion pursuant to your prior lift stay order to get permission to go forward with such a sale before the state court.

THE COURT: Okay. And Mr. Bunin --

MR. BUNIN: After all, Your Honor, in Mr. Ostrow's complaint, that's what he wishes to happen, a sale above the mortgage debt. And if that is a realistic possibility, the receiver would like to move forward with it before this Court.

THE COURT: Well, certainly it also solves the issue on the lift stay motion as well, which I didn't know yet what your position or Mr. Chassen's counsel would be on that. So I understand because both of you are affected by that as well, given that you're in charge and Mr. Chassen's -- Mr. Schwartz's client, Mr. Chassen, is also a guarantor. So I understand that.

Mr. Bunin, I don't have an issue with that. I don't -- my perspective is, I don't know if you've finished

your sale of property on the personal property or removed it all in connection with that. So that's my only question about that. Because if that's finished and the proceeds are supposed to go to Mr. Simpson for anything you sold, then you can do whatever -- then there's not a concern about my having property of the estate that's sitting on that property. That's really my only concern about that property right now. So I don't know where that stands, Mr. Bunin.

MR. BUNIN: Your Honor, the sale of personal property and assets of Rever Motors has not gone forward. And I would ask Mr. Huebscher, the receiver, to speak to the Court on that point.

THE COURT: Okay.

MR. HUEBSCHER: Good morning, Your Honor. Eric Heubscher, the receiver.

Mr. Simpson had a number of opportunities to remove his personal property. And there was some question after the last two periods, approximately six and seven hours that Mr. Simpson was on the property, as to what he actually removed. We asked him for an accounting of those -- of that property. He has yet to provide it.

The good news is that we have a buyer that's sort of in -- that we're in fairly advanced discussions with that would purchase the property with the remaining property that's on premises. So we would not necessarily need to go through with

the auction. And we're waiting to hear what the -- you know, how that advances. There's -- there's a couple of moving parts that we're working on. But we're still waiting on Mr. Simpson to provide status reports.

I've looked at thirteen hours of video that we had taken. I'm trying to correlate what Mr. Simpson removed from the property to the photos that he identified in his declaration. I'm having difficulty doing that. Mr. Simpson, I think, believes that there's one or two items that are still left on the property. But again, he hasn't really articulated that in any sort of level of specificity. So that's -- that's where we are.

THE COURT: All right. Mr. Huebscher, it seems to me that if the person buys the property and there's still property that's Mr. Simpson's on the property, then they're going to have to allocate whatever the value is to that because obviously I provided that he has to be paid the amount subject to certain costs for that.

If you're questioning whether there's still property of his on the premises, I don't know what to tell you there. If there's an issue later on from the sale that may be something is his, somebody will have to dispute it. Mr. Simpson will have to make a claim that when the sale happens, if it happens, that some of his property was sold. Because I don't know what else to say to you about that.

MR. HUEBSCHER: Understood, Your Honor.

The other thing, just to point out, the IRS has a lien on -- on the business --

THE COURT: Yeah.

MR. HUEBSCHER: -- for- -- at this point, I suspect north of 400,000 dollars with interest and penalties. I just recently received a notice that sales tax was not paid for the business operations while Mr. Simpson was -- was in charge. I think it was over 30,000 dollars, along with -- with other judgments.

So even if there were items that were left on the property that were Mr. Simpson's, that -- that money -- we're going to need to deal with the IRS and others at that time. And, you know, we --

THE COURT: All right. Well, Mr. Huebscher --

MR. HUEBSCHER: -- (indiscernible).

THE COURT: -- my order was clear that if it was Mr. Simpson's property, then it belongs to Mr. Simpson's estate. And proceeds have to be provided to Mr. Simpson's estate, Mr. Huebscher. So I'm just telling you this from the perspective of the buyer, because if the buyer is coming on to pay cash for this property, whatever it is, I don't know what it is, I'm just saying, then some portion of that is going to have to be allocated. If there's still property of Mr. Simpson's on the property that I awarded in my order, then that'll have to be --

and wasn't removed then that'll have to be -- if it's sold -- it will have to be, and as part of a whole group of things, it'll be sold -- there will have to be some kind of allocation towards it that is then provided to him.

If you have -- if anybody has claims for failure to pay sales taxes that then are in Mr. Simpson's estate, either they were timely asserted by the IRS or the state -- more likely the state or the city, I guess the State here, state of New York, then they're either there or they're not, Mr. Huebscher. I --

MR. HUEBSCHER: I understood.

THE COURT: -- can't say anything about that.

MR. HUEBSCHER: Understood, Your Honor.

THE COURT: Okay. All right. Well, thank you.

Mr. Bunin, to answer your question, fine as long as my issues are dealt with that I just raised. I hear you.

MR. BUNIN: Understood, Your Honor. Thank you.

THE COURT: Okay.

MR. SIMPSON: Excuse me. If I may, Your Honor.

THE COURT: Well, there will be a motion filed, Mr. Simpson. This is not --

MR. SIMPSON: Well -- well, I mean, I hope so because everybody just does whatever they want here. Although I hate Judge Joel Cohen to death, okay, I hate the man, his orders do say what they say. And Your Honor points to his orders. His

orders talk about getting consents from the major partner of the -- of the entity before he does anything. So the fact is --

THE COURT: Well, that's a problem as to whether or not Mr. Bunin is complying with Mr. -- with Judge Cohen's order and what he's doing -- not Mr. Bunin. Mr. Huebscher. Sorry, Mr. Bunin. And whether that's happening or not. And that's an issue for -- again, for Judge Cohen because Judge Cohen is the party who appointed the receiver. And Judge Cohen delineated what the receiver is supposed to do. And if there's issues with what the receiver is doing or not doing, that's an issue for Judge Cohen.

MR. SIMPSON: We both know that's not really a thing. We both know that Judge Cohen -- he literally -- I -- I planted objections in writing to forty-five people two weeks ago. And he -- then he wrote an order two days later saying after careful deliberations, there have been no objections. He ignores me as if I don't exist.

THE COURT: Okay. Well --

MR. SIMPSON: There's an issue with him, and that is a problem. You've said it yourself.

THE COURT: Again, I --

MR. SIMPSON: He's not going to do anything because everything he's done has a problem.

THE COURT: Okay. Well --

MR. SIMPSON: And we'll talk about that in every one of your instances and everyone's adversary proceedings --

THE COURT: Mr. Simpson --

MR. SIMPSON: -- including the insurance matter.

So -- and -- and just following up to your question about timing and other matters, right, the insurance matter is an issue. And it's been an issue for a very long time. And that is a contingent factor for me, for counsel, for my wife's counsel, for entities' counsel, et cetera, because it does cover anybody and everything related to Jeffrey Simpson, as they've stated in the past they've done in the past. So pushing that off is a bad idea, if you ask me, that it is an issue I've raised to you over a year ago now under YJ Simco, when there was discussion about dismissal. I begged and pled for the insurance matter to be dealt with.

So it was brought here. We were told under this court that it needs to be under bankruptcy terms, and it needs to be a turnover action. Turnover action has been presented. These folks asked for more time. They don't deserve more time because for all the time they've taken. But here nor there, the process is there. Time was granted.

So if Your Honor is going to make a decision on it, great. If Your Honor is not going to make a decision, okay. But understanding that I am the one -- there's twenty-five people on this call, aren't there, right? Twenty-five people.

I'm the guy being victimized by almost every one of them --

THE COURT: Okay. Mr. Simpson --

MR. SIMPSON: -- in some way or another.

THE COURT: -- I'm sorry. Mr. --

MR. SIMPSON: The insurance is the way to handle the issue.

THE COURT: Respectfully, you are still represented by counsel. I asked you questions. You're going to answer --

MR. SIMPSON: He won't deal with it. I've asked him.

THE COURT: Mr. Simpson --

MR. SIMPSON: And then what?

THE COURT: -- I'm sorry, again, you're going to -- then you'll have to deal with it yourself. That's the answer.

But meanwhile, the reason that I'm adjourning it, which I could just not do, is that, A, I won't have determined whether your counsel is going to be dismissed or not by the time I have the first hearing that's scheduled on the matter, which is the 12th. And that's just because of my schedule. I have like, I don't know, two separate two-day, fully evidentiary hearing scheduled in front of me in November. And major matters and my calendar isn't great. So the first time I have to put this in for the withdrawal of your counsel is on the 13th.

Until then, you still have counsel. I could make him argue on the 12th, but given the fact that you don't know if

you're going to be opposing his position, so you don't know if you're going to be trying to do this yourself or finding other counsel -- and I'm giving you time to find other counsel. I can't do it otherwise. Otherwise, Mr. Ostrow, I could compel him to argue, despite your irreconcilable differences. But I don't think that's a very good idea for you. I don't see why that would be helpful.

So you may disagree with what I'm doing, but I'm sorry. I have to live with myself and when I give people a reasonable amount of time to do things.

MR. SIMPSON: It's logic. It's not reasonable amounts of time is logic. You know how many lawyers I've talked to? Twenty, thirty, forty, fifty. They all have concerns of how I will pay. And they don't have confidence that the Court is going to do anything related to the insurance matter because it's out there for two years.

So the answer is sure, you could do things for your schedule and that is fine. I have no issue there. But I'm asked about a situation where I don't believe counsel is doing what's necessary. But then I'm asked to make decisions about it. But it's a circular loop because I'm entitled to indemnification. I'm entitled to insurance. Your Honor said yourself the insurance company acknowledged -- your own words, they acknowledged that they gave benefits to me by funding 800,000 dollars. And they've been sitting fallow for two years

because of the other people here that have antagonized them.

THE COURT: Okay.

MR. SIMPSON: So do what you wish with it. But asking me to seek other counsel is a circular loop until I --

THE COURT: No, I --

MR. SIMPSON: -- know if I have --

THE COURT: Well, you --

MR. SIMPSON: -- until I know if I have funds available.

THE COURT: All right. Well, there's only so much time though, Mr. Simpson, that we can delay things. So this is a --

MR. SIMPSON: I don't want to delay anything. The insurance issue, it's very clear what it is or what it's not. So he can argue it or not. He can argue it. I don't -- I actually offer it to him. If he wants to make a claim, let him do it. He has every right to, right? So if he wants to argue the insurance matter, so be it. It needs a decision. And for me to go talk to lawyers, I can give you a long list if you'd like, I'd rather not do it publicly, of all the lawyers I've talked to to try to help.

THE COURT: I don't -- again, Mr. Simpson --

MR. SIMPSON: Okay. But you're asking me -- unfortunately, I've been burned by almost everybody here. My life has been ruined. And you're asking me to make decisions

about what Mr. Ostrow did or didn't do --

THE COURT: Okay. Mr. Simpson --

MR. SIMPSON: -- without the benefit of what I am entitled to by the law and the contract. And its by law.

THE COURT: Mr. Simpson --

MR. SIMPSON: DFS is the law.

THE COURT: -- unfortunately, your irreparable relationship with Mr. Ostrow either has deteriorated to the point you can work as counsel or not. And you'll either oppose it or you won't. And we have to move on, Mr. Simpson. Sorry. Okay. So that's what I'm going to do with that. All right.

Now, with respect to the TRO and the preliminary injunction, this is a tougher matter. I have spent an incredible amount of time cogitating about this and looking up sections of the Federal Rules of Civil Procedure and thinking about it.

It's a difficult situation. Mr. Ostrow, if I were going to allow this hearing to go forward, which I'm really obligated to do, I have a lot of issues I have to still deal with on Thursday. One is Mr. Simpson didn't show up for his deposition. And if one takes a look at what the remedies are for that, they're pretty broad. I was surprised to remind myself what they all say. They say that I can dismiss the entire matter. That's one. I can strike pleadings. I can fine the person. I can adjourn the matter until they show up

for their deposition. I can do a lot of things according to the -- according to the Federal Rules of Civil Procedure.

On the other hand, as Mr. Koevary has noted to me, which is correct, my job is to go ahead and have a hearing as soon as practically possible under the circumstances. And because of my surgery, as I've noted myself, the hearing didn't happen on the timely basis that it should have happened in because of my situation. It couldn't.

Now that it can, I have a hearing scheduled. And I need to go forward. So my options are either you're going to handle this whole hearing with your not knowing whether your client's going to oppose or not your motion and it's going to go forward, or I'm going to have to turn to my remedies and consider what I can do there because of his failure to show up at the deposition. And that doesn't make me happy. I don't think it's the right result. But it's what the Federal Rules of Civil Procedure tell me I'm allowed to do, X or Y pretty much under these circumstances.

And it has to be an evidentiary hearing. Trust me, I looked at that. I thought maybe I should just rule on the papers. That might be the fairest thing. But I can't, so that's not possible, not for a preliminary injunction. It didn't surprise me. That was my understanding. But I went back and looked at everything possible. So that's where I am.

What say you, Mr. Ostrow?

MR. OSTROW: Your Honor, I think that it puts me in an untenable position to have to go forward with an evidentiary hearing with respect to a client who doesn't think I'm doing the right thing, with a client who says I'm unprepared, I'm a coward. And we really don't -- we really don't see eye to eye on anything in connection with this. And obviously, there's a question about whether he will be permitted to testify in light of --

THE COURT: Or I'll strike all the evidence that you put in or I just dismiss the whole thing because I do have the right to vacate the TRO based on what he did. Honestly, I've looked at it.

MR. OSTROW: No. Look.

THE COURT: I do.

MR. OSTROW: I understand that, Your Honor. It seems to me it puts me in an untenable position. I don't see how I could possibly go forward and represent him under the circumstances. I think that he can -- he should be allowed to represent himself, to proceed and make whatever arguments he thinks are appropriate under the circumstances.

But I do think, Your Honor, that we probably need a ruling quickly because there are other witnesses. There are witnesses who are coming voluntarily. There are witnesses who are under subpoena. And if there's not going to be -- if Mr. Simpson is not going to be allowed to present his case because

he didn't attend his deposition, I imagine that has a profound impact on the ability to make a case for the plaintiff. And I think that --

THE COURT: that's true.

MR. OSTROW: -- I think that the -- I think that the parties and the witnesses should know whether there's going to be an actual hearing or not.

Now, it is certainly possible -- because I think Mr. Koevary mentioned that if you dissolve the TRO, then you could -- he could present a motion for a preliminary injunction at a later time on an ordinary schedule, in which case he might reconsider showing up for his deposition. And then there may be the ability to put on a case.

But again, I don't want to -- I don't want to compromise his situation. I don't want to do anything that is detrimental to what he wants to do. I just don't see how I could possibly go forward with it.

THE COURT: You answered my question. That was my question. All right. No, not you, Mr. Simpson, now. Sorry,

Mr. Koevary. So Mr. Koevary, I've certainly given this a lot of thought myself too. Honestly, I'm sure my husband could vouch for that one. Thankfully, he's a retired lawyer, so my cogitation probably doesn't bother him as much as others but -- after thirty-whatever years of living with me.

But nevertheless, I've thought about this. I've

thought about that too. And here's my problem with that, just vacating the TRO, which I have thought about and just putting the preliminary injunction hearing off for some number of months time or whatever it is because if there's no TRO, it's not harming your situation.

I have two things that bother me about the papers. And I realize that they're not what's pled in the motion by the plaintiff in this matter, by the debtor. But the problem is there are things that I know because I was the judge in YJ Simco. And I have a judicial record of things that I have to take notice of.

And so where I'm having some trouble is I have a dispute between Mr. Simpson's position and your client's position about who owns the entity that owns their home in the Hamptons. And Mr. Simpson's schedules provide that he owns fifty percent of it, and his wife owns fifty percent of it. And obviously, as was an issue in YJ Simco, there's another argument that it's actually all owned by YJ Simco, which is then owned fifty percent by Mr. Simpson and Ms. Simpson.

And in the context of the YJ Simco bankruptcy proceeding, which you're aware of, there was testimony not only from the Trustee, and he'd had some help from outside real estate services, about what the value of that property might be and the equity in it over and above debt that was on the property. There was also the position of I think -- even I

believe even people on your side of the table thought there was some equity potentially there. So my recollection, again, without going back and looking at my whole record yet, was that it was a million -- basically a million dollars, maybe even more in equity in the property.

And so I have a really hard time, having read the documents that were presented with the motion, which is really the agreement between the parties regarding -- I'll just use this phrase, but Arch Real Estate Holdings LLC, about whether or not and how there was liability for costs that's passed on to those entities. And there's different arguments that the parties have made. They've made -- one side, Mr. Ostrow as counsel, for example, in that case -- and that was attached to the papers, so I'm just going by what was in the papers -- made the argument that there wasn't -- in some circumstances, the parties weren't affiliates. Mr. Simpson and elsewhere in the documents made the arguments, again, that there was a indemnification provision.

And the problem that I have is that if it turns out that this entity isn't liable, granting a default judgment and -- a default, which might lead to a default judgment, is impairing the equity of the debtor's estate potentially, assuming it's the debtor that owns half of it. And I don't know how -- knowing that there's real equity because there was a whole bunch of parties who looked at this property who have

no ax to grind here, like the Trustee, for example, who's a total independent third party, who asked me to put a stay in place because there was potentially value there.

So I don't know how I could just ignore that. And that's what gets me to feeling like, okay, I don't feel really comfortable myself that I'm vacating a TRO with this and allowing somebody to assert something where I don't have any real -- there's a dispute about how the contract should be read. I don't have any real determination that there was actually any cost incurred by this entity that they actually owed to Arch directly other than through this affiliate argument or something. And then I'm paring value that's available to all the parties in the entire estate of the debtor, like, all their creditors, including, for example, other clients related to yours, potentially. So I have a problem with that. That makes me concerned about vacating the TRO in its entirety.

I also have concerns about what I'm doing with respect only to the default judgment portion of the YJ Simco part also. And that's because the debtor owns fifty percent of YJ Simco also on his schedules. And if you're right that the house was actually -- I'm going to apologize, but I'm actually going to have to take a break, like I mentioned before right now. So my apologies.

My apologies. Unfortunately, I have to keep my phone on

because of the plumber.

So I have a concern about that too, because if it turns out that the house is owned by YJ Simco and there's equity there, am I just allowing a default judgment there again? Is that going to impair not only Mr. Simpson's half of that value that's available for all the parties? Is that appropriate, without my having some better understanding or determination on the complaint? So I have concerns about that.

I don't have concerns myself, I'm sure this won't make anybody happy, about the rest of it going forward, meaning that everything else that's sought in connection with that occurring. Where my issue lies is the fact that I know there's value here. And it either belongs to YJ Simco, or it belongs to -- so half of YJ Simco's value, or it belongs to the debtor, half of it. And that's what my concern is about a default.

And I'm not sure what the urgency is about needing a default for that. And I really don't think I've heard that. I understand why the urgency -- you have an argument about how it's better for YJ Simco to go through with the avoidable actions or with parties that don't relate to the debtor who aren't actually the debtor itself. I understand that. But that's where I am.

So I'm trying to figure out, Mr. Koevary, what I can do about this because I don't think myself as a -- that I can sleep very easily without -- in vacating this TRO in its

entirety for that reason, that's where I have concerns, because I really don't -- at the end of the day, there has to be a determination to me of the reading of that contract. And until there's actually a determination of the reading of that contract and whether or not -- and where that should take place is a whole different issue. But what whenever that happens, I'm not sure I understand why that isn't damaging to the debtor. So that's where I have a concern myself.

Forgetting for a moment all the issues about the debtor's reorganization process or anything like that. I'm just literally talking about, is this going to impinge on the actual estate property? That's what I'm focused on. If I let this happen, is this eroding value of the actual estate? And that concerns me.

MR. KOEVARY: Okay, Your Honor. So I appreciate that. I appreciate where you're coming from. I mean, let me begin that just going back to what Your Honor said earlier, we agree with Your Honor that there is a lot of potential sanctions available. And we are planning on seeking a -- filing a sanctions motion that includes preclusion and striking and all of those -- and all those points.

When I was -- I would still say as to those two, and I understand you're looking at what was said at the other hearing, it is the debtor's burden to get a preliminary injunction. And I just don't think the debtor has shown any of

those merits. And they have to show all of them.

If Your Honor is inclined -- I got I feel like I got burned for this a month ago when I said that and the way the hearing was going, the conference was going -- that when I said and had a big conversation about how after Mr. Ostrow asked for a full-blown evidentiary hearing, and after ring-fencing these two entities, I thought very confidently -- and specifically on the record, YJ Simco and Watermill, and the hearing seeming like it was going to go only of extending the stay as to those -- or enjoining as to those entities. And I think the record is pretty clear there.

And then to see the response that was filed last week, the objection to our motion to reconsider or --

THE COURT: Vacate.

MR. KOEVARY: And seeing that it came back and saying, well, no, I consented to what we view as an indefinite TRO because the TRO doesn't stop October 29th, the TRO is for all intents and --

THE COURT: No, I'm not -- I understand.

MR. KOEVARY: Right.

THE COURT: I'm not taking the position --

MR. KOEVARY: So --

THE COURT: -- that you consented to an indefinite TRO, Mr. Koevary. I think you consented to -- I think I imposed a TRO to allow us --

MR. KOEVARY: Right.

THE COURT: -- to have -- in fairness to you, to allow us to have a hearing on the evidence and -- with respect to this and -- because it's necessary for the preliminary injunction.

But the problem I'm having is, right now, I'm trying to figure out does it make sense to have a hearing where Mr. Simpson has to represent himself, where you're going to tell me to strike all testimony, where I'm going to have to sanction him, because I will have to. There's just no option. I mean, the code is pretty clear about it, the rules. And that's just how it is. There's got to be some sanction that I'm going to have to impose, some combination.

And one of the things is I could just dismiss the whole thing, like, from start to finish. That is permitted. But that seems extreme to me. What I -- especially because his counsel can't -- or I guess doesn't feel they can represent him. So I don't feel that that's the right thing to do.

What I feel the right thing to do right now, honestly, is to be able to continue the TRO with respect to -- or with respect to those two entities but only with respect to, again, the dollar amount in dispute, not with respect to the rest of the action in the complaint. In other words, I wouldn't be precluding proceeding on the rest of it, just that, with respect to those two entities.

And that seems to me the right result here because -- and then there will be a preliminary injunction hearing somewhere down the line. And it would give Mr. Simpson the chance to be deposed and the chance to put on evidence at that point, et cetera, although everything will be going forward with respect to all the parties other than -- in my world, sorry, YJ Simco and Watermill but -- which is not what the debtor wants, but it's not -- it's what seems appropriate to me, because otherwise I either have to strike the whole thing, which I could potentially, or we have to go forward with this hearing.

MR. KOEVARY: So, Your Honor, what I would say is -- and I think this is pretty consistent with what Your Honor is indicating. I just want to be very clear, which I thought I was last time, not just for Your Honor, but for the record and anybody else. So to the extent Your Honor is dissolving the TRO except for the damages portion as to --

THE COURT: No, not --

MR. KOEVARY: -- YJ Simco --

THE COURT: The default -- you're taking a default judgment against those parties.

MR. KOEVARY: A default judgment. I thought you said -- okay. So --

THE COURT: No. Because that's my concern, because that's going to lead to a damages hearing. And there's been

no -- again, the problem is I don't -- in fairness, there's no determination who owns this that property, right? There just isn't. There's a dispute. And it wasn't decided in the last proceeding because it didn't have to be because that case got dismissed.

The Trustee didn't want to fight with Mr. Simpson about whether that belonged to YJ Simco or whether it belonged to him. His point was that even if -- the Trustee's -- again, even if it was YJ Simco's and not Mr. Simpson and his wife's directly, then it wouldn't matter, because at the end of the day, the equity would go through, if there was equity. There was no certainty that your -- that there were creditors or who the creditors were and whether those claims were allowed, even though there had been assertions of claims, and that therefore that was not a certainty.

So he didn't -- I don't know to this day -- there hasn't been a determination whether the property is owned by YJ Simco or whether it's actually owned by Mr. Simpson and Ms. Simpson, meaning the Watermill LLC's interests. So I don't know the answer to that. But what I do know is that there is a risk of that. And what I do know is, at least as of the time of the dismissal of the case -- and certainly at the time, I just determined to put the stay in place in that case before the dismissal of the foreclosure action.

There was evidence of a significant equity cushion.

And that's what caused the Court, me, to extend the stay. It's why the Trustee asked me to extend the stay, because the Trustee felt that there might be value there. And that value might belong to YJ Simco. And it might belong to Mr. and Ms. Simpson. But we don't know.

And so the issue is I don't see how I can erode a debtor's estate when I have, no disrespect to Mr. Simpson, somewhere between twenty-eight and thirty-one creditors. But whatever, some number allegedly. But even if it's half of that, there's still a lot of other people here who aren't sitting here in front of me today who that might be value that's available to them. Potentially, it's part of his estate. And I don't know the answer to that.

So I am uncomfortable with allowing any default judgments to be taken against entities where -- an entity where I know either one entity or the other entity owns the interest in this property, and I have evidence, not my surmising -- I have a whole -- I have a whole bunch of evidence from my prior case that's on the record that I'm allowed to take judicial notice of that tells me that there's equity here and not insubstantial, even if it's right that Mr. Simpson was entitled to half of it, it's 500,000 dollars or something like that, more at the time. If it's YJ Simco that owns that equity, a hundred -- a million of it, then maybe that could be half of it, depending on if they are creditors of YJ Simco or not. And

I just don't think that's a default situation. That's not appropriate, given Mr. Simpson's proceeding is pending here still, at least at the moment.

MR. KOEVARY: Okay. I appreciate that, Your Honor. So what I would say and amend what I just said slightly, which is that if Your Honor is today or tomorrow expunging the TRO other than as to pursuing claims against YJ Simco and the entity -- the Water Mill entity, 266 Water Mill LLC, to a preliminary injunction motion that's going to be heard, I'd like to try to pick a date certain instead of just until the motion is determined and then the burden be on the debtor or the Court sua sponte or whatever is to extend it or something, rather than simply having the burden on -- the way the language is now, which is just until the motion is determined, I thought was unfair to us.

THE COURT: I understand.

MR. KOEVARY: And if there's some flexibility and discussion, if there's going to be a new lawyer on whatever the calendaring is, but it will be reasonably prompt in the context of Mr. Simpson hiring new counsel, that is something we can get on board with. And also, we would ask certainly preserve all of this to preserve our right to file a motion for sanctions on these points, because I understand there's going to be an evidentiary hearing. But we certainly intend to preserve our rights on that point. So I want that to be clear for the

record too. I'm like, that's fine to schedule the hearing, but we still want the opportunity when the time comes. It doesn't have to be a rush, it doesn't sound like, to argue for sanctions, including preclusion and striking and all of the -- and monetary sanctions on all of the above or whatever else is available as a matter of law. So --

THE COURT: That's enough, Mr. Koevary. I think I'm going to have to --

MR. KOEVARY: Okay.

THE COURT: -- go to Mr. Simpson right now.

All right. Mr. Simpson?

MR. SIMPSON: So first of all, the deposition process is no surprise to anybody. I made it very clear to this Court, to Mr. Ostrow, refused. Excuse me. Mr. Ostrow, the moment he's not willing to do what's necessary for me in a very contentious situation that's ruined my livelihood -- and by the way, Mr. Koevary has yet to present a position of how he's even here. And we went through this analysis. I made it crystal clear to the parties involved that -- Your Honor had a conversation with Mr. Ostrow in the afternoon that day last week where I was not included. I made it clear to Mr. Ostrow I had to be included. He let me know fifteen minutes in advance. And frankly, Your Honor, you, I guess, didn't realize or maybe you don't know or care, but Judge Cohen even gave a definitive ruling to say that the joint defense agreement is not

considered privileged information. There's an order on that. We fought for it for two years. These people have been collusive against me.

So the fact we're even considering this is -- it's -- people want to use the word flabbergasting. It's flabbergasting. Mr. Koevary has no right to be here in the first place. And to say what he's saying, I'm more than happy to give --

THE COURT: Mr. Simpson, that --

MR. SIMPSON: I'm sorry. I was ready to give a deposition.

THE COURT: Mr. Simpson, that doesn't matter.

MR. SIMPSON: I offered to give deposition.

THE COURT: You've got a choice, evidentiary hearing going forward on Thursday. You do it --

MR. SIMPSON: Do it. Let's do it. Sure.

THE COURT: -- by yourself. And you're subject to --

MR. SIMPSON: I'll do it. No problem.

THE COURT: Mr. --

MR. SIMPSON: Do you want to hear about the witnesses? I'll do myself. Do you want to hear about the witnesses? Do you want what they responded?

THE COURT: No. Mr. Simpson --

MR. SIMPSON: Do you want to hear what the responses are to Your Honor? Do you want to hear?

THE COURT: I don't -- no, I don't really need to. Mr. Simpson.

MR. SIMPSON: No, you do need to.

THE COURT: No, I don't.

MR. SIMPSON: How can you have a hearing --

THE COURT: I need to explain --

MR. SIMPSON: -- where the witnesses won't come?

THE COURT: That's exactly right. They may not come. And furthermore, your testimony might get stricken because of sanction issues because --

MR. SIMPSON: Sanction issues?

THE COURT: -- you didn't show up for your --

MR. SIMPSON: I told you very clearly in advance what the issues were. It is your job as a judiciary officer to deal with it. Kevin Wiener has no right to say that he is simply (indiscernible) and nothing else. He doesn't have the right to do that.

THE COURT: All right. Mr. Simpson, again --

MR. SIMPSON: Why can't you read the record? It's there. Read Judge Cohen orders. It's there.

THE COURT: Mr. Simpson, I have --

MR. SIMPSON: There's ten orders that say all these things.

THE COURT: -- spent a lot of time reading Things.

MR. SIMPSON: But you're ignoring. You're simply

ignoring it --

THE COURT: All right. Mr. Simpson --

MR. SIMPSON: -- and just penalizing me --

THE COURT: -- again ---

MR. SIMPSON: -- for nothing.

THE COURT: -- I'm not penalizing you.

MR. SIMPSON: Yes, you are. You're not giving me --

THE COURT: My choices are --

MR. SIMPSON: -- my due process whatsoever.

THE COURT: -- I strike your entire case in front of me because you didn't comply with your obligations --

MR. SIMPSON: I had an obligation? He had an obligation to actually tell the truth. He didn't tell the truth. He hid from it. Three years. Three years. Why can't you see it? Are you blind? Three years with these people doing to me. How many times have they been deposed in three years? Have you read what I said to you? Zero. I'm the only one who's been deposed. I've been attacked, attacked, and attacked. Why can't you see it? Are you blind?

THE COURT: Mr. Simpson --

MR. SIMPSON: So of course I'm not going to be attacked again.

THE COURT: -- I don't get to --

MR. SIMPSON: It's not right to me. It's not right. And if you don't see it --

THE COURT: Fine.

MR. SIMPSON: Please recuse yourself right now. And I'll make the motion for recusal if I need to. If you can't see what's happening to me, what they have done to me, how there's twenty-five people here to destroy my livelihood for being honest and they did fraud, they did immense fraud -- why can't you see the light? This is the moment to fix it. This is the moment to present it.

So no, I'm not going to be deposed when it's not a fair situation. He did not answer the questions. He wouldn't even authenticate the joint defense agreement, which he held hostage for three years. Do you want me to have a heart attack? Enough already. Do what you're supposed to (indiscernible). So if you don't want to do it, tell me now. We start the process. And I ask for a recusal of Your Honor going forward. I make the claims to the Second Circuit Court of Appeals, who have already made an incident report to, and I will continue to.

This is ungodly. This is not America. There's no chance for me. You love their lawyers. Their lawyer -- Koevary has no right to be here. Read the damn documents. He has no ability to sue my wife. Zero. They stole from me in the middle of the day. Why can't you see it? Cohen said it was illegal. You're blind to it.

And the witnesses need to come to show what's

happened. They say they won't come. One of them told Mr. Ostrow 250,000 dollars. For 250,000 dollars, Mr. Lehrfield will come. Are you kidding? That's the reason he should come, for 250,000 dollars? Michelle Miller is hiding. Chassen, he didn't even respond to subpoena. Chassen is here today. He didn't respond to a subpoena. Why? He's scared to death of what will come out.

They've been hiding for three years tens of millions of dollars because of what they've done. And now you're eroding the chance for it because I said --

THE COURT: I am not --

MR. SIMPSON: -- I'm standing up for a deposition. I'm not going to be attacked by villains and goons who've attacked me on multiple occasions.

THE COURT: It's your motion. Mr. Simpson --

MR. SIMPSON: You watch --

THE COURT: Mr. Simpson --

MR. SIMPSON: You watch that scumbag Schwartz --

THE COURT: -- your motion --

MR. SIMPSON: -- attack me. You watched him do it. And guess what happens? He's irrelevant because he didn't make any freaking claims. He's irrelevant. Chassen is a criminal. You know it, and I know it. So it's time to do some judicial.

So you want to have the motion Thursday?

THE COURT: I have (indiscernible) judicial --

MR. SIMPSON: I'll represent myself. And I will rip them new assholes in front of yo and use every damn document of every place they did criminality. And you will see it. And if you don't want to see it, recuse yourself. Do it now. Enough. I should not be ruined like this. This is crazy. And the lawyer will do his job because he wants to play nice with you in the sandbox? No. There's the truth that matters. It's the truth that matters. What happened here matters. It all matters. And you just allow it in front of you for a year and a half. And it's just motion, motion, motion, motion. Wake up. See it.

So yes. I am thrilled to present to you Thursday. I'll do it tonight. I'll do it today. Let's bring everybody in, handcuff them to bring them in. Put them on your stand. You ask the questions if you don't want me to. And you'll get the answers. And when you see those answers, you're going to vomit when you see the answers to what these people are going to give, how the Wieners have attacked my family, Michael and Kevin and his father, and what they've done to others. But you just don't want to see it. It's another chance to allow you to just delay, delay, delay.

So do it as you wish. But I'm telling you right now, unless I'm dead, unless they kill me, I'm not surrendering to this bullshit. It's bullshit. I am not going to be attacked by Jonathan Koever who works for me by the documents. He isn't

my lawyer for the documents. They indemnified me in advance. It's crystal clear, they didn't pay anything related to what they're is supposed to pay. They don't honor any damn New York State court order about anything. And you allow this to happen. And I gave you specific notice about it. I wrote you in advance and said this stuff must be handled. I'll still put it on the damn record. And you'd have the nerve to sanctioning me? Are you out of your mind? Let's ask Kevin Wiener the questions right now, right now. Let's do it. You don't want to do it.

Please recuse yourself on grounds of being prejudicial. And I'll make the motion. No problem. I'm tired of this crap for a year and a half now. A year and a half it's play this game. There's no more games. There's no more money. Let's get to the judicial truth. Let's get to it. Eighty percent of the people here know the truth. Actually, all know the truth. They're hiding from it. They hire guys like Koevary. They hire people like Lindsay Bush to lie and lie and lie. And you allow it.

THE COURT: Okay. Mr. Simpson --

MR. SIMPSON: So do something about it finally, God damn it.

THE COURT: Okay. Mr. Simpson, enough.

MR. SIMPSON: Okay. And no. Enough from you. Either you're going to do something of substance --

THE COURT: You may hang up if you wish.

MR. SIMPSON: -- or I just appeal, and I just ask for recusal.

THE COURT: All right. That's fine.

MR. SIMPSON: I'm tired of this crap. I've heard it for a --

THE COURT: That's fine.

MR. SIMPSON: -- year and a half.

THE COURT: Mr. Simpson --

MR. SIMPSON: Enough already.

THE COURT: -- that's fine. You've made your point.

MR. SIMPSON: Fine. So do what you think is right. And I'll do what I need to do is right. We are in America. We're not a third-world country where people get hung in the middle of a square. Look at what they've done to me and my reputation. And you allowed them to file bankruptcy on your suggestion. I didn't want to file bankruptcy. It was all going to be handled with YJ. You didn't want to deal with it. You didn't want to push the Trustee. You just didn't want to deal with it.

THE COURT: Mr. Simpson --

MR. SIMPSON: Just like (indiscernible) didn't want to deal with it.

THE COURT: -- (indiscernible) --

MR. SIMPSON: Nobody wants to deal with it for three

years.

THE COURT: -- creditors who filed claims against you, even in the --

MR. SIMPSON: What creditors Which ones are real? Which ones? Tell me.

THE COURT: Then go --

MR. SIMPSON: Other than the two --

THE COURT: Then stop shouting at me --

MR. SIMPSON: -- who is real?

THE COURT: -- and start filing objections to claims then. Act like people do in bankruptcy.

MR. SIMPSON: That's Ostrow's job.

THE COURT: I'm going to object to a claim because blah blah blah.

MR. SIMPSON: (indiscernible)? What are we doing for 17,000 hours? You know what we did 17,000 hours? We play games with Eric Huebscher. And I told you this yourself. I told you the witness ten months ago, we're using every dollar I have available for Huebscher with this bullshit, which is another game to attack me. Wait till you read what I sent you, if you actually read it or care, because it will show you the vindictive nature of Chassen and Huesbcher together.

THE COURT: All right. Mr. Simpson, I'm sorry.

MR. SIMPSON: I'm sorry you don't read anything. You are not --

THE COURT: Mr. Simpson, I'm going to have to --

MR. SIMPSON: -- fit for this case.

THE COURT: -- mute you.

MR. SIMPSON: You're not fit for this case. I am asking for your recusal. I'm tired of being prejudiced --

THE COURT: That's fine.

MR. SIMPSON: -- for two years. A year and a half now.

THE COURT: File a motion to --

MR. SIMPSON: You've had every chance to do the right thing here. A year and a half. And I hope the trustees are listening. And I hope they actually do their job, God damn it. For a year and a half, I begged and pled to you a year and a half -- and my wife to be sued by Arch? Arch is me. It's Jeffrey Simpson. Not anymore. Not for three years because they burned it. They burned the damn thing, burned it to flesh. There's nothing there, all to ruin me when Kevin Wiener told everybody he's going to ruin Jeffrey Simpson. It's in writing, God damn it. Read it. What more do you need? No lawyer wants this because they can't believe that this is evidentiary record that's so in my favor, but the judges like you keep dealing against it because they spend more lawyers, and you love their lawyers. You love their lawyers. You're friends with Mr. Bunin, Mr. Koevary. Mr. Koevary doesn't have a chance in hell to do anything here. The documents don't

allow it. So let's let David Heymann come and tell you, if you actually give a damn.

So yeah, let's do Thursday. I'm on board. Let's do it. Let's bring all these people to the table. I want you to compel the witnesses to come, and we do it. Kevin Wiener wants to depose me. Sure. He's threatened me for three years. Let it be a proper deposition. Let his deposition answer the questions, the real questions.

THE COURT: Mr. Simpson, I'm not going to do that. But thank you very much.

MR. SIMPSON: No, of course you won't. Why would you possibly? You go to your rule book, but you forget about everything that's judicial. You forget about everything that's lawful. You forget about the collusion. You forget about the collaboration they have against me. You forget about all of it. You don't care about anything they've done to get us here. You just care about your little rule book for today. You just do. That's it. It's just about today. We don't care about everything that's led up to this. You don't care about no witnesses in three years, they're all scared because Kevin Wiener said I'll do to them what I've done to Jeff Simpson. The same with my investors, hundreds of them. We can bring them all in. And I'm not scared. But I don't believe you'll rule on it. I don't believe no matter what they say, you're going to rule. So we have an issue.

THE COURT: Mr. Simpson, I rule on things --

MR. SIMPSON: We have an issue. And I will seek for recusal.

THE COURT: -- that are actually ripe before me. And respectfully --

MR. SIMPSON: Yes, there is in front of you. They've arrested my family, God damn it.

THE COURT: That isn't a cause --

MR. SIMPSON: They had no right to do that.

THE COURT: -- of action, Mr. Simpson, in the Bankruptcy Code.

MR. SIMPSON: It is part of my freaking papers. Read them.

THE COURT: I've read your papers.

MR. SIMPSON: They've attacked my family. You said you would give us a chance to deal with it. And we started down that path, and Kevin Wiener broke the rule day 1, ten minutes into it. And I specifically said I need to ask the questions. And you said you can't do that, Mr. Simpson. You told me, don't attend, your own words. Don't attend. That's what you said to me. Because trust me, if I attended, you would have heard from us in twenty minutes. But instead I was clear. I said I will not attend because the Court asked me not to. I was very clear with you. I said, I will not do it because you asked me not to out, of respect for you. And they

went the entire day dancing, doing the who knows what to. Then at four o'clock, have some emergency conversation to not include me, give me a chance to speak up. And now you're going to sanction me because of it? Are you crazy?

THE COURT: I'm not sanctioning you because of that. I'm sanctioning you --

MR. SIMPSON: No. You sanctioned me --

THE COURT: -- because you don't show up --

MR. SIMPSON: Why would I --

THE COURT: -- for a deposition.

MR. SIMPSON: -- sit for a deposition?

THE COURT: And I'm --

MR. SIMPSON: If Kevin Wiener --

THE COURT: -- haven't sanctioned you. No one has --

MR. SIMPSON: -- doesn't tell the truth --

THE COURT: -- even asked --

MR. SIMPSON: -- if you don't listen to the facts?

THE COURT: Mr. Simpson, respectfully --

MR. SIMPSON: You didn't listen to the facts.

THE COURT: -- no one has even asked --

MR. SIMPSON: You didn't give me a chance to deal with the facts. You allow him to continue to hide. Do you know what this man has done? Have you read about what he's done? Have you asked anybody what he's done? Get past all the bullshit, and get to the reality. He's a villain. It's so

clear. Ask any of my lenders. Ask any of my investors. I gave you 200 people. Do you want 200 people? Shake your head, but focus on the facts. Focus on common sense, which Ostrow has none of. Focus on what's really happened here. When is the --

THE COURT: Okay. All right. I think we've heard from Mr. Simpson now.

All right. Well, with respect to the preliminary injunction hearing, Mr. Ostrow, I have two options, given Mr. Simpson's turning red in the face and yelling and his behavior. I think that the options are I can continue with the hearing, and you'll have to appear on Thursday, which you've told me you don't want to do. Or I can take action with respect to the TRO and vacate it to the extent I've provided and have another day for the preliminary injunction hearing where Mr. Simpson gets to have his day in court potentially somewhere down the line. Those are really my options, I think, here.

I'm not sure how going forward on Thursday makes a lot of sense, but I could. If people move to compel -- I don't know that you're going to file motions to compel to have these people show up or even that they're going to show up if I enter orders doing it. But I don't know. What is your opinion on that, Mr. Ostrow?

MR. OSTROW: Your Honor, I adhere to my view that I'm in an untenable position. I can't go forward. You just heard

him say I have no common sense and that I don't do the right thing. I don't see how I can go forward with this. If Your Honor wants to hold a hearing, then you should let Mr. Simpson represent himself. I understand if you don't want to do that. But I --

THE COURT: Well, because he's still represented by counsel, Mr. Ostrow. I'm not required to do that. So again, and I have a -- I have a litigant who did not obviously appear for their own deposition. And what would I do? First thing Mr. Koevary will tell me is he'll file a motion to strike all the testimony for sure. And then what's there -- and where's the testimony in favor of it? How is that better for Mr. Simpson?

MR. OSTROW: Your Honor, I understand that. And I don't see how I could in good conscience say that there was a valid reason for Mr. Simpson not to attend his deposition. All I could do is minimize the consequences.

Your Honor, again, I don't know that this makes a lot of sense for -- if Your Honor is going to not let Mr. Simpson testify, and as a result, strike his declarations.

THE COURT: Well, I have no motion for sanctions in front of me, Mr. Ostrow. I'm not deciding something. But what I'm saying is I have a concern about that. And that doesn't seem to make a lot of sense to me. And your suggestion, which was not unreasonable, that gives Mr. Simpson another chance to

actually comply with the rules, and show up for a deposition, and be able to put his case forward at a later date either because he's representing himself or with someone else. Makes more sense to me than having it happen on Friday when people won't show up.

MR. OSTROW: Thursday, but --

THE COURT: Thursday. Yeah. Sorry. Thursday.

MR. OSTROW: But Your Honor, what I think makes sense may be at odds with what Mr. Simpson thinks makes sense. And again, it puts me --

THE COURT: But I don't know that he's going to consent to your withdrawal because he hasn't told me he is. So this is my problem.

MR. OSTROW: Well, whether he consents or not, Your Honor, I --

THE COURT: I understand that I'm going to have -- to have a hearing.

MR. OSTROW: I think you've seen --

THE COURT: Oh, yes.

MR. OSTROW: -- a demonstration of why there are irreconcilable differences whether he consents or not. But, Your Honor, again I am caught in a bind. I don't want to prejudice him, but I think Your Honor has to do what Your Honor thinks is appropriate.

THE COURT: Understood. Okay. Just bear with me a

second. I need to pull up something like my calendar. What's next?

(Pause)

THE COURT: All right. Okay. With respect to all of the other motions where I'm going to enter an order staying things, I guess my question is about dates for that. So I wanted to discuss that first before I go back to what I'm going to do about the TRO. So I think with respect to the stay relief and the exclusivity, I'm going to move it to December the 1st. I already have the motion to convert -- is on for the third. So I think the response date's all right from my perspective because that's more than for the 30 days from -- or approximately 30 days from now. So I don't think there's anything I need to do with respect to that. With respect to the pretrial conference on the 8th, I think that's okay in that adversary proceeding. I think with respect to --

MR. OSTROW: I'm sorry, Your Honor. I don't have -- oh, yes. The receiver's discharge ability complaint. That's on December 8th.

THE COURT: Yeah, well, that's what I was going. I was looking to see what it was just to see if there's anything I needed to stay. I guess that's my question for you on that. I guess that's 2401045. Is there a deadline for something being filed in that?

MR. OSTROW: No, I think there's just a pretrial

conference.

THE COURT: Okay. That's what I thought too. Okay. And then in the adversary proceeding 1046, that's the Oak one. I've got a motion to dismiss the amended complaint. It seems like with the hearing date on the 2nd, I guess they could file their response. That's not unreasonable. I guess I could leave it at that and just leave it on for the 2nd. It would be when the reply would have to be filed, but that would be after my -- pretty much after 30 days from now. So I can't see that being too much of a problem myself. So maybe there's nothing.

MR. OSTROW: Well, the reply date, as agreed by counsel, was November 24.

THE COURT: Okay. Well, that would be -- maybe it's that if the parties are agreeable to it, maybe it's the Monday, which is the 30th, I think, and then the hearing, or I can move the hearing. I don't know what the parties want to do with that.

MS. BUSH: Your Honor, this is Lindsay Bush from Binder & Schwartz on behalf of Oak. We're fine keeping the hearing as is and providing that additional time on the reply.

THE COURT: Okay. Fine. All right. Then I have the 2079. Sorry. Okay. Okay. So the motions to dismiss, I can move them all. I guess I could move them to a date, but the issue is at the debtor's response. So I'm thinking that those are going to have to get moved a little bit, even the one

that's on the 1st because the response is the 9th, which is not happening or the 5th. So if I make the response dates the 30th, then you'd want to file replies, presumably. And so that would put you into December. So how much time would you want for a reply?

MR. KOEVARY: This is Jonathan Koevary. I would respectfully ask, given the lengthy briefing schedule, for two weeks.

THE COURT: Two weeks? That's fine. Okay. Seems reasonable. Okay. So that would take us to, like, the 14th. And then let me see. I guess we'd have -- we'll move the pretrial conference to some other date, but let's just see. Okay. So then that would be when you reply. So then a hearing on the motions to dismiss. All right. Let me go back to my calendar. Sorry. All right. I think I have some other matters on for the 22nd. So how about that for the hearing date?

MR. KOEVARY: Just December 22nd, Your Honor?

THE COURT: Yeah, because there's other things already on that date. I already have a motion to dismiss, it looks like, if our logging is correct. I don't know on what.

MR. KOEVARY: That --

THE COURT: That would be 279, yeah, where we are. Okay. So --

MR. KOEVARY: Yeah.

THE COURT: Yeah --

MR. KOEVARY: Your Honor, that works for us and --

THE COURT: Okay.

MR. KOEVARY: I mean, I hope it works for everybody else. I know we're on different schedules, but I think for a lot of reasons, a lot of the arguments are the same. In addition, we have an abstention argument that we make that others don't. So I think if everybody can move forward on that schedule, all the defendants, I can't speak for them, obviously, it probably makes sense.

THE COURT: Yeah. No, I hear you. I think that would make sense too. So that's, like, November 30th, and December 14th, and then December 22nd. So that's when everyone's motions to dismiss would be heard, December 22nd, in that adversary proceeding. Okay. All right. Okay. That's that. All right. I think then that just takes me back to our preliminary injunction hearing. So really, my options are proceed on Thursday where we are or vacate the TRO as to everybody except YJ Simco and the watermill entity and go forward with the -- and have the -- only with respect to the default for seeking damages, dollar amounts owed under the agreements or proceeding this Thursday as is understanding that there might be a sanctions motion I'd have to rule on. And I don't see how that's in the best interest of Mr. Simpson. I just don't -- I mean, sure, he's going to disagree with me, but

that's all right. I don't see how not having a counsel, my having to strike all his testimony because he didn't show up at the deposition, if I'm asked to do that, is going to be a day in court for him. So at least this gives him an opportunity to have a preliminary injunction hearing if he determines he wants to actually do something about it. And after I've had an opportunity to have a sanctions motion, if there's been one, going to be filed and consider it. And that just seems more reasonable to me here in terms of not just having to strike everything or having a hearing where all of his evidence can't be admitted because of his not showing up at the deposition, which could be the case, certainly your testimony. So I guess now I have to just figure out a date for the preliminary injunction hearing that I'm moving it to. So I guess that's a question in person because that would have to be. Let me get to my scheduling. All right. What's going on with my (indiscernible) here?

(Pause)

THE COURT: Okay. My choices would be December 14th or December 18th. Those would be options. I could also do earlier. Let's see what I could do earlier. The 7th of December, the 9th of December, the 10th of December, the 11th of December, any of those are also okay.

MR. KOEVARY: Your Honor, I would ask for the week of the 14th and the 18th. I'm away the last week of November and

Thanksgiving week.

THE COURT: Fine. All right.

MR. KOEVARY: I appreciate it.

THE COURT: So then the 14th or the 18th. Which?

MR. KOEVARY: I guess I'd ask for the -- I would ask for the 14th, Your Honor.

THE COURT: Fine. Sorry. Okay. So I'm going to enter an order vacating the TRO to the extent we just discussed today, and then I will adjourn the preliminary injunction hearing to that date. And meanwhile, Mr. Simpson can either get counsel, not get counsel, figure out what's going on with Mr. Ostrow, decide if he's going to comply with federal rules or not. I'm sure you'll file sanction motions no doubt between now and then so --

MR. KOEVARY: Okay. I think I'll raise just a few housekeeping questions, Your Honor, if I may? For one thing, I think we're not -- based on Your Honor's ruling, we have a reply due today on our reconsideration motion. I think based on Your Honor's ruling today, we're not going to plan on filing the reply.

THE COURT: I think that makes sense. It's not necessary.

MR. KOEVARY: Okay. Okay. Very good. Thank you. The second thing is, I believe the debtor's reply deadline is today. I don't know how Your Honor wants to handle that.

THE COURT: No, I think I'd have to -- I think I'd have to put that out, Mr. Koevary --

MR. KOEVARY: Right.

THE COURT: -- no doubt.

MR. KOEVARY: Understood.

THE COURT: Yeah.

MR. KOEVARY: But I wanted to raise it.

THE COURT: Yeah, I appreciate that. That certainly wouldn't be happening today, I guess. It seems like -- how about since we've had some other deadlines of the 30th of November, what about that? Is that sufficient?

MR. KOEVARY: For a reply deadline? I think so, yes.

THE COURT: Okay. All right. So I'll adjourn that. Okay.

MR. KOEVARY: I think that was it. There was a third that occurred. Oh, and should we discuss dates now or call chambers for the dates on the sanctions motion? Or should we just circle back on that?

THE COURT: Well, I think it would have to be after we deal with Mr. Ostrow and what's happening with that because I'm not going to -- I don't know if he's going to have counsel or not. So I don't think it'd be appropriate to have it before. I think you can file a motion.

MR. KOEVARY: Okay.

THE COURT: But I think we're not going to schedule it

till after we see what happens on the 12th, Mr. Koevary, because that doesn't seem right.

MR. KOEVARY: No, that's fine, Your Honor. I just wanted to set -- that's fine. So we're planning on doing -- I don't think we're going to be in a rush to file it based on Your Honor's ruling, but we'll intend to file it ahead of the evidentiary hearing.

THE COURT: Okay. Understood. Sorry. My courtroom deputy was sending me something. I was just looking to see what it was.

MR. KOEVARY: Okay.

THE COURT: My apologies. Mr. Simpson?

MR. SIMPSON: I have a question.

THE COURT: You may.

MR. SIMPSON: The question is, do you agree to provide the ability to defend why the other entities are affiliated with the TRO?

THE COURT: Yup. And I'm not doing that because I have to determine what I -- I'm in a hard place, Mr. Simpson, under the statute. I either have to have a hearing where you are not represented by counsel and your counsel won't represent you. I'm going to have to strike all your testimony in all likelihood because of your failure to show up at a deposition. And you have a bunch of people who aren't going to show up either no doubt, no matter what orders I issue. And you're not

going to get your day in court. Is that better than my determining that where I was already, which is that I don't believe any of these entities have anything to do with the debtor beyond the ones that are in your schedules? And so --

MR. SIMPSON: I mean, on the face, you're wrong because two of them have my name on my schedules itself. And my wife is an owner of YJ Simco, which is part of my schedules too.

THE COURT: That's fine.

MR. SIMPSON: So just on the face -- on the face, you're wrong about all of them.

THE COURT: Okay, fine. Then you can have --

MR. SIMPSON: Frankly, I'm involved in every single one of them.

THE COURT: Then that's fine.

MR. SIMPSON: But you're not giving me a chance to present it.

THE COURT: I --

MR. SIMPSON: And you're lifting a TRO without a due process here because today's schedule, as you've told me -- you can only rule on things in front of you. Today's schedule, as you've said, in your own -- your own -- it was a scheduling motion.

THE COURT: I have a motion and a reply in front of me. I can rule on the papers on a TRO, Mr. Simpson, so I'm

able to reconsider and do that, and I have to --

MR. SIMPSON: Then you can reconsider without giving me a chance -- without giving me a chance to deal with the fact that there is a serious problem with what they did with the deposition, too. But you're just going by the technicality of I didn't go, but whatever they did is just -- it's automatically acceptable even though I wrote to you in advance. I wrote to the attorney who won't do what's necessary in advance, and I put it in writing to the Court.

THE COURT: I am not the person that asks questions at a deposition. That is --

MR. SIMPSON: It's not that I'm asking questions. You were asked for a ruling from the bench. You were asked for a ruling the bench on testimony, and it was not presented in a fulsome way. And I made it clear, if there was going to be a conversation that would require a ruling the bench, that I wanted to participate. And I was not -- I was not -- I was notified 15 minutes in advance. 4:00 of that day, I was notified.

THE COURT: Mr. Simpson, an emergency conference happens like that, unfortunately.

MR. SIMPSON: Sure, sure. And if the lawyer doesn't even call me -- the lawyer didn't even call me.

THE COURT: Fine. Then you can add that to your complaints about why he should be relieved as your counsel.

MR. SIMPSON: I understand that, but you're -- but you're literally making a decision today --

THE COURT: I am.

MR. SIMPSON: -- on something that wasn't even positioned for a decision today.

THE COURT: No, Mr. Simpson, it is because my alternative is to have a whole evidentiary hearing where you're not going to get to present any of your rule --

MR. SIMPSON: You have another option too from what I'm hearing. You have another option from what I can tell for your rules. The other option could simply be deal with what was the problem with the deposition of what happened with Kevin Wiener. Deal with me scheduling my deposition, simply being, like, actual being real here in reality and then saying, all right. Who are the witnesses? Let's schedule a date. Who is coming, and who's not? And that'd be a practical approach to a solution here.

THE COURT: Okay. Well, I understand. You can just add that to all your complaints about me. That's fine.

MR. SIMPSON: I will. I mean -- I mean, you want to be practical. You want to come to solutions. That's a solution that doesn't push things out too much.

THE COURT: This is a solution because I have a deadline for a TRO, Mr. Simpson, that I should have had a hearing on, a preliminary injunction. But because of my --

MR. SIMPSON: Sure. You could have a hearing, and those witnesses would come. So how will you give me due process? It is your job to make them come, not mine.

THE COURT: You have time to do that now because --

MR. SIMPSON: Yeah, I have time to do that now. Meanwhile, Judge Cohen (phonetic) enters rulings against my wife for fraud from people that have no right to even consider such a thing. And you've said yourself -- you've said yourself -- and you want to say --

THE COURT: Mr. Simpson, I have --

MR. SIMPSON: I've shown you your own words where you say you're deeply concerned those entities don't have money to hire counsel. Do you want to see the transcript?

THE COURT: And there are alternatives, Mr. Simpson. You just don't --

MR. SIMPSON: Yeah. It costs money to file bankruptcy. You act like it's going to the candy store. It's not so simple.

THE COURT: Mr. Simpson, there's a window down the hall from me.

MR. SIMPSON: Yeah.

THE COURT: And people come up all the time with their papers handwritten and file for bankruptcy proceedings.

MR. SIMPSON: Sure. So my wife, a school teacher, is going to go do that. And then if Jonathan Koevary, and Lindsay

Bush, and ten other lawyers attack her --

THE COURT: Mr. Simpson --

MR. SIMPSON: You people need sanity in their life.

THE COURT: Mr. Simpson --

MR. SIMPSON: You could force mediation, as you've said before, too, but you choose not to do that either. You all said you would get a mediator from the Court. You chose not to do that either, either.

THE COURT: -- anyone's claim. I don't have a contested matter in that way. What am I mediating about?

MR. SIMPSON: The whole damn thing. Look at what they're doing.

THE COURT: Mr. --

MR. SIMPSON: Motion to dismiss. Motions dismissed six months later. For what? For what? Because they don't like what's happening. Spend money on lawyers.

THE COURT: Okay. Mr. Simpson --

MR. SIMPSON: Come on. Oh my gosh. You -- so -- so you don't want to do what's in front of you. But today you're not -- you're do -- you're not going to do what's in front of you. But it hurts me. But -- but anything else you can't do.

THE COURT: That's not true, Mr. --

MR. SIMPSON: You said you can make -- you said -- your own words and I can -- verbatim, you said, I can demand mediation. I've never done it before in my bench time, but I

could do it. I have my powers to do it.

THE COURT: And maybe if I ever get to the point that we have a pretrial conference where everybody's answered and it's time to have a mediation and an adversary proceeding, maybe I will do that, Mr. Simpson, but we're not there.

MR. SIMPSON: Are you blind? Look at the --

THE COURT: You could call an objection tomorrow, Mr. --

MR. SIMPSON: In October of '23 -- go -- August '23. Look at it. It hasn't changed in three years.

THE COURT: No one is stopping you or Mr. Ostrow from filing an objection.

MR. SIMPSON: It's the same. Mr. Ostrow ain't going to do it. He'd rather spend the 600,000-dollar fighting with Marty Bonin over bullshit, and so would you. I told you very clearly, sitting on your witness stand, that we are wasting months of time over nonsense. But you know, it was perfect for Kevin Wiener because he abused the system. He abused it and used months of time and any legal dollars I have to waste it just to ruin my career further. You want to see the text messages? Do you not read them, when Chassen says they're going to attack him like animals unless they do what they say? I mean, why can't you see the light? But anyway, you're not going to see it, apparently. So today you're going to go do something bad against my family and against me, entities that

are part of my estate, which are on my schedules just because you wouldn't listen to what I said last week.

THE COURT: They're not the debtor, and they're not property of the debtor.

MR. SIMPSON: That is dead wrong.

THE COURT: No, they're not.

MR. SIMPSON: Two of those entities you claim I don't even own anymore. You say 55 Park PH. I don't even own it anymore according to you. Those two entities are owned by me and only me. We have it all over the docket.

THE COURT: Mr. Simpson, according --

MR. SIMPSON: It's there. You just don't read it. You say there's all these other entities. What all these other entities are you keep saying then? What are they? I asked you that last week. What other entities are we talking about? There's 1055 Park ST, which obviously is disputed, right? And there is affiliation with me.

THE COURT: You don't own it because you didn't put it on as your --

MR. SIMPSON: I don't own it. That is correct.

THE COURT: Yes, you don't --

MR. SIMPSON: But I have affiliation with it. I have affiliation with -- I have affiliation with (indiscernible) I live there, God damn it. There's all types of law about that.

THE COURT: Not an idiot.

MR. SIMPSON: What's not an idiot?

THE COURT: She can make her own decisions. Your wife.

MR. SIMPSON: 1055 Park, I -- I'm a manager, and I live there. So to say that it's not affiliated with me as a debtor, I lived there for five years. I've run the whole damn building. They're suing it now, too, by the way. Thank you, Your Honor, for that too, more lawsuits, more real deal articles. Thank you. Yes.

THE COURT: Mr. Simpson --

MR. SIMPSON: But you have -- you have someone that you -- you -- you granted action to, a lender who isn't doing anything. So what other entities are you talking about? There is nobody else. Who else is there? You keep saying all these other entities. There is nobody else. I'm affiliated with all of them. And if you actually would listen to the people --

THE COURT: Affiliated doesn't matter. What matters --

MR. SIMPSON: Oh, my goodness.

THE COURT: -- is are they --

MR. SIMPSON: It doesn't matter what someone is a resident in the apartment?

THE COURT: No.

MR. SIMPSON: And -- and not -- my monies paid for the bills for the apartment because of my spouse? Are you kidding?

THE COURT: Mr. Simpson --

MR. SIMPSON: Your husband -- your husband -- and -- and you said he's retired. So if you use your money to help pay your husband's bills, right --

THE COURT: I do all the time, Mr. Simpson.

MR. SIMPSON: There you go. That's what it means to be -- marriage. That's what marriage means.

THE COURT: I know.

MR. SIMPSON: Just to simply say she's unaffiliated to allow these jackasses to attack her in state court, to ruin my marriage, are you crazy? They've already done enough damage to me.

THE COURT: No one is trying to ruin your marriage --

MR. SIMPSON: You already are allowing them to. Have you not seen their vindictive actions? There are laws about that. There are laws about it. It's called fraudulent joinder. There's all types of abusive laws that exist when multiple people do it.

THE COURT: Mr. Simpson --

MR. SIMPSON: I've raised it for three years now.

THE COURT: Action is not before me --

MR. SIMPSON: It is before you.

THE COURT: No, it's not.

MR. SIMPSON: You have a duty. With -- when issues are brought that are illegal in front of you, you have a duty.

And them collusively attacking me is illegal.

THE COURT: Then tax the estate. You're right. But it doesn't --

MR. SIMPSON: They are doing that collusively.

THE COURT: Oh, there they are --

MR. SIMPSON: AREH, Jared Chassen and the Wieners through Oak are all doing it. They've been doing it for three years. That's why you told them early in this case they can't make separate actions. They have to do it together. You've said it yourself.

THE COURT: What I said to you is that they also are not going to recover any money from you because you don't apparently have any.

MR. SIMPSON: Then stop them from attacking me. They're abusing me.

THE COURT: In this proceeding, that's what we have. We have the automatic stay.

MR. SIMPSON: Right, which you lifted.

THE COURT: You have a --

MR. SIMPSON: Which you're lifting -- which you're lifting. You're lifting against the (indiscernible).

THE COURT: I am not lifting it against --

MR. SIMPSON: You are -- you are because I'm affiliated with those entities.

THE COURT: I granted a TRO.

MR. SIMPSON: Right, right. My wife -- my wife --

THE COURT: An automatic stay happens when you file for a bankruptcy. So if tomorrow someone filed for a bankruptcy, they get the automatic stay.

MR. SIMPSON: Okay.

THE COURT: I don't get to just extend it to anybody. This spot is very limited.

MR. SIMPSON: You get the lift relief because I wouldn't attend to an interrogation of me to hurt me and ruin me further.

THE COURT: Mr. Simpson --

MR. SIMPSON: Have you read what else Schwartz tried to do to me? But you know what they did. Why would Jared Chassen not show up? Why would Jared Chassen not show up to an evidentiary hearing, huh? He's here today. Why don't you ask him?

THE COURT: Mr. Simpson, because it's not his evidentiary hearing.

MR. SIMPSON: Yeah, it's the proof that they've attacked -- of me. He was the goon that did it for them. Everybody knows it. What do you want to hear the reality?

THE COURT: What does that have to do with the likelihood of success of your reorganization?

MR. SIMPSON: Everything.

THE COURT: No.

MR. SIMPSON: I can't gain income or make a living because of all the false allegations. It has everything to do with what they've done to hurt me. It's everything what they've done to shove --

THE COURT: Okay. So the Bankruptcy Code --

MR. SIMPSON: -- (indiscernible) down to hurt me. Do you want to see the text messages? Do you want to see the evidence? Because it's there.

THE COURT: Mr. Simpson --

MR. SIMPSON: There's hundreds of pieces of evidence. When are you going to start reading them? This was all malicious and vindictive since day one in '23. When are we going to look at that -- those facts?

THE COURT: Okay. Mr. Simpson, let's just say you were right, hypothetically, that they're the means --

MR. SIMPSON: You would not lift the TRO.

THE COURT: No.

MR. SIMPSON: You would not if I were right, if I -- and then when you see the facts, you will -- you will chalesh, as they say in Yiddish. You probably know what I mean. You will vomit when you see the facts or if you actually read the facts of what they've done to attack me, my wife, my family, my children. I have text messages and emails from them, but you won't look at them.

THE COURT: If people have violated criminal laws,

then that's the criminal system. I don't --

MR. SIMPSON: Right. Who relies on you because we're in the civil court.

THE COURT: No, they do not.

MR. SIMPSON: That's what they told me countless times. Do you want to do a conference call with them? They've told me it is the civil court's job to refer the issues that are not dealing with it without it. I've heard this at city, state, and -- and federal level, all of them.

THE COURT: Okay. And if --

MR. SIMPSON: They've all said it.

THE COURT: -- if this was a bankruptcy crime, you're right. If it's something else, it's a perjury in front of me. You're right. But if it's something else, it's not in the statute that I'm supposed to do it. I did it anyway, Mr. Simpson. I did refer it. I did write the --

MR. SIMPSON: You referred it as they told me to the wrong place. Those are their words.

THE COURT: Mr. Simpson --

MR. SIMPSON: Their words. And you should have sent it to the trustee's office.

THE COURT: No.

MR. SIMPSON: That's what they told me. You want to know who I spoke to?

THE COURT: Only for the bankruptcy crime, Mr.

Simpson. But that's --

MR. SIMPSON: They told me at the U.S. Attorney's Office that the first stop of the train is to send it to the trustees to -- to -- to -- to Ms. Linda (phonetic), I can't remember her last name, to her office. And if she thinks it's necessary, it goes to U.S. Attorney. That's -- they told me the process and procedure. I said, what you did means nothing to them. They asked me for the criminal case number. I said, there isn't any. They said there's nothing to talk about.

THE COURT: Because there's no criminal case here, Mr. Simpson.

MR. SIMPSON: Oh, my goodness.

THE COURT: No --

MR. SIMPSON: Where is -- where is Arch? Where's the hundreds of millions of dollars? It's gone. Where is it, Your Honor?

THE COURT: Mr. Simpson, what I'm saying --

MR. SIMPSON: I didn't take it.

THE COURT: -- to you is the bankruptcy court only has very limited jurisdiction.

MR. SIMPSON: Oh, yeah. Okay.

THE COURT: It comes from the district court. I don't even get any of their own jurisdiction. I've explained this to you. It's very limited by the order of referral from --

MR. SIMPSON: When people are maliciously attacking me

in front of you and you're aware of it, and I've reported, they're malicious against me and my family, it is clear --

THE COURT: How is someone suing you when they think that they're owed money malicious? You may disagree with it.

MR. SIMPSON: How? Have you seen the harassment? Have you seen the harassment?

THE COURT: I read the complaint.

MR. SIMPSON: Have you -- well, Mr. Ostrow is very limited in what he shares with you, right? You've said out loud, if someone is to interfere with how I can make a living, to maybe pay creditors, that would -- would be a problem. Did you not say that?

THE COURT: Mr. Simpson --

MR. SIMPSON: Yeah, you did say that.

THE COURT: -- if someone was precluding you from doing your job as a mechanic because they're coming --

MR. SIMPSON: Oh, God forbid it. Excuse me. A mechanic? I mean, talk about disrespectful. Are you out of your freaking mind talking about disrespect and refer to me as a mechanic. I have two master's degrees and a engineering degree. I have more degrees than you do to call me a mechanic. I built a custom cars that cost 200,000 dollars. I'm not a mechanic.

THE COURT: All right. Well, let's go with that.

MR. SIMPSON: What the hell?

THE COURT: Builder of custom cars.

MR. SIMPSON: What the hell? I was a big real estate leader. You've created this and allows it to continue. And here you are allowing --

THE COURT: Is someone stopping you from building a custom car that's --

MR. SIMPSON: Did -- they have attacked what I could do in my household. They -- the police have told me they know what I'm watching, what I'm doing. Anywhere I go, everybody knows what they're trying to do.

THE COURT: All right.

MR. SIMPSON: They're trying to ruin me. They've said it out loud. We will ruin you. Have you read my -- have you read my aunt's testimony? Have you read my wife's testimony? Have you read --

THE COURT: Yes, I read it.

MR. SIMPSON: -- it?

THE COURT: They're very sad, and that they -- and they're very vindictive. That's what they said.

MR. SIMPSON: Do you want to hear specifics from them?

THE COURT: Mr. Simpson, when --

MR. SIMPSON: You want twenty other people, I'll deliver one hundred, but you'll have to compel them. So when someone who's trying to ruin my ability to reorganized, which they are, because I wouldn't be here if it wasn't for what they

did to me. I would be successful guy I was for twenty-three years.

THE COURT: But you are here now. So we --

MR. SIMPSON: I'm here because of their actions and --

THE COURT: Mr. Simpson, that --

MR. SIMPSON: -- you refuse to do anything about --

THE COURT: -- is (indiscernible) --

MR. SIMPSON: -- it other than sanction me when I speak the truth.

THE COURT: Mr. Simpson, I am not sanctioning you from speaking the --

MR. SIMPSON: Yes, you are. By TROing -- lifting the TRO would allow Judge Cohen -- who was vindictive as hell to me, which you've said yourself there's a problem. By allowing Judge Cohen to take anything back, you are doing something bad to me. You are -- you literally just last week -- again, I made an objection where you get -- lifted a limited stay. I made an objection, and he wrote within a twenty-four hour -- thirty-six-hour period, saying that after careful deliberation there's been no objections.

He literally lied. The man literally lied. It's the forty-four people. And I copied Your Honor on my objection. And he literally said his order --

THE COURT: Mr. Simpson, if you, actually, or your wife, have legal control of any of these entities that are

being sued, or it's another person, you can do what you need to do.

MR. SIMPSON: With a lot of money --

THE COURT: A lot of money.

MR. SIMPSON: -- from lawyers to deal with the same nonsense I'm dealing with here.

THE COURT: Yes.

MR. SIMPSON: It's just another -- it's just going to be another episode.

THE COURT: Not true.

MR. SIMPSON: Another episode.

THE COURT: Otherwise, it will be --

MR. SIMPSON: It's another episode --

THE COURT: -- (indiscernible) --

MR. SIMPSON: -- of Kevin Wiener telling me and everybody else he'll spend any amount of money he has to ruin me. That's what Kevin Wiener said to everybody around. But you don't want to ask those questions because you know, he only has to answer on behalf of ARH. Well, he said it in ARH's office.

But why would Mr. Ostrow ask any real questions? Why would he ask the hard questions? But I-- I said, I want to question him, you told me no. You said I wasn't allowed to. Yet, he could question me, which he --

THE COURT: Mr. Simpson, you can't --

MR. SIMPSON: -- has many times.

THE COURT: -- question a deponent because you have counsel who is doing it. I'm sorry, that's --

MR. SIMPSON: Right. Counsel I said --

THE COURT: -- (indiscernible).

MR. SIMPSON: -- months ago was not sufficient, and you didn't listen then either.

THE COURT: Mr. Simpson, that isn't the point. The way it --

MR. SIMPSON: It is the point.

THE COURT: -- (indiscernible). You could've filed --

MR. SIMPSON: The point is --

THE COURT: -- a motion --

MR. SIMPSON: -- the point. The point is they eliminated my ability to do anything.

THE COURT: I'm not eliminating --

MR. SIMPSON: You just don't understand it. You -- you never will. You could ask a hundred people about me, you could ask the 5,000 my phone about me. You know what to tell you? I'm a leader, and I'm honest, and I've been ruined. Thank you to all this system. And that's just what it is.

So you're -- what you're suggesting is more system, more procedure, more legal battles, more problems for years to come. Instead, we have an opportunity to rip the facts out of that piece of crap Kevin Wiener. If you do it, you'll get the

answers, but you refuse to do it because Koevary, who has no grounds to be anything. Koevary has no ability to do anything. ARH isn't even anything to be.

THE COURT: That's --

MR. SIMPSON: There are restrictions of Judge Cohen that literally say he's not allowed to read my emails. I have emails from Kevin Wiener saying he won't read my emails, but yet they're showing stuff to you that they've stolen and that's acceptable for you to look at. Okay.

THE COURT: Mr. Simpson, I just said there are issues about that contract. I don't know what you think I don't -- or do not do --

MR. SIMPSON: The issues are crystal clear. David Heymann --

THE COURT: So sir --

MR. SIMPSON: By the way, Judge Cohen said that the JJ Arch was in full force and effect, and Chassen did it. A hundred things that were against it.

THE COURT: Okay.

MR. SIMPSON: Wiener pretends to be JJ Arch, but you don't --

THE COURT: I --

MR. SIMPSON: -- care. Nobody cares.

MR. KOEVARY: Your Honor, he's on the call --

MR. SIMPSON: The contract is on --

MR. KOEVARY: Your Honor --

MR. SIMPSON: Shut up, Koevary. Shut --

THE COURT: I understand.

MR. SIMPSON: -- the fuck up. You don't work for anybody here. Shut your fucking mouth. You do not belong here. Prove to me you belong here. Prove it.

THE COURT: I --

MR. SIMPSON: Tell me how. Show me, Jonathan Koevary --

THE COURT: Mister --

MR. SIMPSON: -- what provision allows you here? Show Your Honor, what provision allows you here. Show us what court order allows you here. How are you here? Tell us.

Your Honor, please, let him tell us how he belongs here.

THE COURT: Mr. Simpson --

MR. KOEVARY: Your Honor, I'm not answering, Mr. Simpson --

MR. SIMPSON: No, you're never going to answer --

MR. KOEVERY: -- but I'm sure --

MR. SIMPSON: You can't --

MR. KOEVARY: -- he keeps attacking my client principal --

MR. SIMPSON: -- because there's no good answer for it. Because you're a lying scumbag. Tell us the truth. Do it

on the record. Tell us how are you here? How? How are you here, Jonathan Koevary?

MR. KOEVARY: He keeps talking about client principal --

THE COURT: I --

MR. KOEVARY: -- and I'm going to raise what I raised last week, Your Honor --

MR. SIMPSON: No one's asking.

MR. KOEVARY: -- which is that --

MR. SIMPSON: Tell us now. No, shut your fucking hole. Tell us now, how are you here?

THE COURT: Mister --

MR. SIMPSON: What allows him here? What court order --

THE COURT: Mr. Simpson --

MR. SIMPSON: -- allows you here? What contract allows you here to attack my family? Tell me now.

THE COURT: Mr. Simpson, we're --

MR. SIMPSON: Your Honor, please, demands of him to tell us how he's here.

THE COURT: He filed a notice of appearance --

MR. SIMPSON: Tell him to do it.

THE COURT: -- on behalf of clients, Mr. Simpson.

MR. SIMPSON: How?

THE COURT: Anyhow, --

MR. SIMPSON: How, Your Honor? Under what grounds?

THE COURT: Mr. Simpson, you don't think --

MR. SIMPSON: How?

THE COURT: -- you actually are the person that controls that, and you think --

MR. SIMPSON: Arch is mine. It's on my schedules. He doesn't work for anybody but me.

THE COURT: Well, that's --

MR. SIMPSON: A temporary order from a corrupt judge that limits what he can do. He can't do this.

THE COURT: Mr. Simpson --

MR. SIMPSON: He can't do this. It's not prohibited -- it's prohibited for him to do this. But why don't you listen? I've sent you the Court orders countless times.

THE COURT: Mr. Simpson --

MR. SIMPSON: I'll send them again.

THE COURT: Mr. Simpson, you're not -- again, you aren't the one being sued by the parties. And --

MR. SIMPSON: Oh, my gosh, wake up. Wake up. Where do you think it goes? They circumvented it. Your own words. Do you want me to read to you your transcript, I will?

THE COURT: I --

MR. SIMPSON: Your own words were --

THE COURT: Mr. Simpson --

MR. SIMPSON: this is inappropriate. Your words were inappropriate. They are circumventing other actions that are in front of me, and it's premature. You said those words. You want me to cite it for you?

THE COURT: It is premature.

MR. SIMPSON: Then they should not be doing it.

THE COURT: No.

MR. SIMPSON: Then we should stop it and not do this. Let me bring in the witnesses. Let's get the witnesses in front of you. Let's do this the right way. I will give a deposition. If the Court is understanding of the circumstances -- as I said, I would.

THE COURT: Mr. Simpson, you're going to have time. I (indiscernible) --

MR. SIMPSON: But the moment you lift that TRO, they will be vindictive, and they will cause more destruction.

THE COURT: That (indiscernible) --

MR. SIMPSON: That that's what they do.

THE COURT: -- right, but they are --

MR. SIMPSON: They take every chance they can.

THE COURT: -- (indiscernible) --

MR. SIMPSON: You have options in front of you.

THE COURT: So do you.

MR. SIMPSON: You could give me a week. You could give me a week and a half. You could give me a period of time

to allow this all to occur properly with court direction.

THE COURT: No, this is going to happen the way it is now.

MR. SIMPSON: Yeah, well, you're just -- you're just asking for more hell, and more fire, and more -- more judicial resources being wasted because every time they go do what they do, you're wasting taxpayers dollars because we're doing this for nothing. It's all for them just to burn me for the fraud they did. And you just don't want to accept it. That's what it is.

Cohen knows it, he's hiding. Cohen knows what he did wrong. He doesn't want to accept the reality of what he did wrong. The police told me what he did was wrong. But it's his civil case, they won't deal with it. So you could keep going? Keep going.

THE COURT: Mr. Simpson, I will be happy to just -- the U.S. Trustee's represented here. They've heard everything. I will send the transcript to them, and they'll do what they want to do with it. Again, I don't control them either, they're part of the Justice Department.

MR. SIMPSON: They expect you to -- to --

THE COURT: No, I only have to have --

MR. SIMPSON: From I -- from what they told me --

THE COURT: If it's a bankruptcy crime --

MR. SIMPSON: -- they said you make referrals.

THE COURT: -- yes. But this is not a bankruptcy crime. You're talking about --

MR. SIMPSON: Being vindictive --

THE COURT: -- a lawsuit --

MR. SIMPSON: Being vindictive, and -- and there's laws about this.

THE COURT: (Indiscernible) doesn't do it.

MR. SIMPSON: There are federal laws about --

THE COURT: About (indiscernible) --

MR. SIMPSON: -- vindictively suing people doing it over and over again, frivolously. You think what Schwartz did was acceptable in this Court?

THE COURT: Then you can move --

MR. SIMPSON: All the actions Schwartz did --

THE COURT: -- for dismissal on the grounds of frivolous prosecution.

MR. SIMPSON: And then they could prove a claim.

THE COURT: But that doesn't mean --

MR. SIMPSON: AREH didn't make a proof of claim because there is none. There is none.

THE COURT: Mr. Simpson --

MR. SIMPSON: Schwartz doesn't even really have one, it's all fake. It's the same crap three years ago. It's to ruin my life. That's what this has been about for three years.

THE COURT: Okay. Mr. Simpson --

MR. SIMPSON: And that is something that's criminal, but you just don't want to hear it. It's malicious and it's vindictive.

THE COURT: Mr. Simpson, again, if you -- if that's the defense to their adversary proceeding where they're seeking to not allow you to discharge your debt, that's an objection you can make in connection with that. That's --

MR. SIMPSON: If and when that ever happens, they already have taken --

THE COURT: Well, you can object (indiscernible).

MR. SIMPSON: -- vindictive action to make this case dismissed. They're asking to dismiss the case. What gives them the right to ask for that? But again, you allow it. Just let them keep going.

More burning -- burning more holes in pockets of Mr. Ostrow. You think Mr. Ostrow and I broke up because of this? It's because of fifty motions he has to respond to that, and you allowed one after another, after another. You'd allow every damn motion to happen, no matter what, regardless of how vindictive it is.

You know how much time he's spent on responding to the hundreds of things that have happened here? It's a waste of my time and his. It's all the same crap, but it's just the procedure, procedure, procedure. And you just allow it to keep going.

So yeah, that's the problem here. And they have said very clearly everybody involved. I mean, where's Josh DiLena?

Josh, you're here. Let's talk about your very first letter, your own conclusion on this case were you awarded insurance funds to me. I mean, have you read Josh DiLena's letter from two and a half years ago -- two years ago. He knew the case in November of '23. Crystal clearly of what they were trying to do to me. And yet the insurance funds are not there.

And DFS has said there is a law about it, but it's a civil court, we're not going to do anything. So DFS is where you go when insurance companies don't fund your insurance. But they said because a civil case they won't do anything.

So yes, Your Court, because you are the presiding court here as a civil court are holding up anybody from doing anything in any criminal, anywhere. That's what they've all told me. I can show it to you in writing.

THE COURT: I'm not holding up anything.

MR. SIMPSON: They refuse to do anything while the civil proceedings. That is what they've said. Every one of them.

THE COURT: Mr. Simpson, I mean, some of it you could dismiss yourself tomorrow because you -- if you're -- once your lawyers replaced, or you're in charge, but I mean, some of it you brought, you could dismiss it. It won't be pending in front of me. Then you still have the dismissal of the case in

front of the State court. That's up to you. I mean, again, respectfully, that's not up to me.

MR. SIMPSON: You had months to work through this with me. I've begged you. You asked me to file personal bankruptcy, you suggested it. You literally told me when you --

THE COURT: Because you are owed --

MR. SIMPSON: why Jay should have had the right issues, but the Trustee said there wasn't enough money for them to do the research. That's not a judicial answer. The report was missing half the stuff. You didn't want to hear it because they're your friends. They're friends of the Court. You just didn't want to hear it.

THE COURT: (Indiscernible) friends --

MR. SIMPSON: They told me to my face, of course we see what we did is wrong, but there's no money to deal with it, Jeff. That's not acceptable. That's not what a Trustee's assigned to do.

THE COURT: Mr. Simpson, respectfully, no one here who appears in front of me is my friend. I have no --

MR. SIMPSON: Then why would you accept that answer?

THE COURT: -- personal relationship -- I don't have --

MR. SIMPSON: When they accept to be a Chapter 7 Trustee --

THE COURT: -- (indiscernible) because you're --

MR. SIMPSON: -- if they make money or not, they still have to do their job.

THE COURT: Yeah, they do. That's right. They --

MR. SIMPSON: No they didn't.

THE COURT: I'm doing my job.

MR. SIMPSON: They told me and my counsel they refused to do the job related to the Wieners because it cost too much money. That's what they told me. That wasn't the right answer.

THE COURT: Mr. Simpson --

MR. SIMPSON: They saw the actions. They were cowards like half of everybody else here.

THE COURT: Okay.

MR. SIMPSON: I'm the one's that not.

THE COURT: Well, mister --

MR. SIMPSON: So again, if you don't want to do the job, then I'll ask for recusal because you clearly don't want to do the job. You want to keep burning through my livelihood, wasting hundreds of thousands of dollars and my time to -- to not deal with the issues because you're protecting Judge Cohen. You're protecting the Wieners, and the lawyers.

I don't know what it is, but none of this is legal. None of this is proper. And you've allowed it for a year and a half. So I guess I try to do the best I can, and most likely

it won't work because they all love you. They all love each other. And I'm part of your little club where you guys hold your conferences together. But yeah, I'm a smart guy, screwed because of you all.

And bankruptcy is where it should have been solved. But you don't want to solve it. You want to make excuses every time, and you want to keep giving them relief. Because I stand up for justice and I say, Kevin Wiener is lying.

THE COURT: (Indiscernible) actually work on your restructuring, Mr. Simpson. We still --

MR. SIMPSON: What about how -- what money? Already --

THE COURT: Except you have no money, and all you can do is propose a plan with no money, and you --

MR. SIMPSON: You said the plan, we sent it in.

THE COURT: I'm back to all your --

MR. SIMPSON: We sent--

THE COURT: -- objections --

MR. SIMPSON: -- the damn plan. I can't sell anything, because they'll steal it. If I sell anything, they try to stop it. Do you want to see what I try to sell ARH assets? When I tried to sell ARH assets.

THE COURT: (Indiscernible) --

MR. SIMPSON: I had every right to do it.

THE COURT: Mr. Simpson --

MR. SIMPSON: I had control, I had control of ARH assets.

THE COURT: (Indiscernible) now --

MR. SIMPSON: Do you know what they did? They sent letters.

THE COURT: You have control of two things. That's it.

MR. SIMPSON: Oh, my gosh. Do you know what they did when we said sell ARH assets? Do you want to see -- you want to speak to the lawyer? I had assets for sale with monies that were coming in my direction, you know what they did? They sent letters. Both sent letters threatening through Lindsay and Lesley Thorne (ph.) sent threatening letters to the lawyer that if I sold the assets of ARH, which had nothing to do with them.

THE COURT: Fine.

MR. SIMPSON: (Indiscernible).

THE COURT: It doesn't matter about where we are now. Where we are now is you have to --

MR. SIMPSON: (Indiscernible) what happened for three years.

THE COURT: Where you are now is you have control over two things.

MR. SIMPSON: No, I don't.

THE COURT: That's it. About half --

MR. SIMPSON: Anything that I would try to sell, they

will find a way to grab it.

THE COURT: Fine. That may be right.

MR. SIMPSON: They will try to find a way to sue it.

THE COURT: But --

MR. SIMPSON: They will sue my kid, that's next. If I were dead, it would (indiscernible).

THE COURT: It might be true, Mr. Simpson, but my point to you is --

MR. SIMPSON: No, my point to you is --

THE COURT: -- half your --

MR. SIMPSON: -- you can't see what's in front of you. You're not willing to deal with --

THE COURT: Yes, I see a person who has thirty plus --

MR. SIMPSON: -- what's necessary.

THE COURT: -- about thirty people who filed proofs of claim for --

MR. SIMPSON: Yeah. Yeah, look at how many of those --

THE COURT: Some of them are true.

MR. SIMPSON: -- result of Arch's actions and Oaks's actions.

THE COURT: Some of them are probably true and some of them probably --

MR. SIMPSON: No, all of them are my family members, which I had to take money from for legal bills that got me

nothing thanks to the system. It's all related to them. No one ever sued me in my life until this has happened in '23.

THE COURT: Now you're in reality here. You have --

MR. SIMPSON: I'm in reality? You need to be --

THE COURT: -- (indiscernible) --

MR. SIMPSON: -- in reality too. If you're going to hear this case --

THE COURT: I am in reality.

MR. SIMPSON: -- you need to look at the situation. I'm outnumbered one hundred to one and these people are vindictive, but you just keep giving it. La di da, motion, motion, motion, motion, motion. Instead of giving me a chance and reading what I write to you because I spend the time. How many people have you had like me in your thirty plus year career, non-lawyers, send you the stuff that I send you? Nobody probably, right?

THE COURT: No, I have (indiscernible).

MR. SIMPSON: You probably have never had anybody send you all of the information I've sent to you. Read it. It's very enlightening. It's all there. Even state court actions that actually help me here. But you don't want to read that either.

THE COURT: Mr. Simpson, I have spent a tremendous amount of time reading what you sent.

MR. SIMPSON: You clearly haven't read the right stuff

then, because clearly --

THE COURT: (Indiscernible) your opinion.

MR. SIMPSON: -- if you read it, you would -- you would be appalled to do anything further that's not favorable to me. If you read what they've done to me, if you read the New York State actions, if you read the theft, everything that they've done, you would have zero doubt why we need a trial immediately. I don't even know on which part of this case --

THE COURT: Mr. Simpson, the problem is --

MR. SIMPSON: -- to get everyone involved here to the table --

THE COURT: It's not --

MR. SIMPSON: -- so you can hear what has happened.

THE COURT: Mr. Simpson --

MR. SIMPSON: But every chance you just say no.

THE COURT: Mr. Simpson, I'm not telling you no. I'm telling you I have no legal authority to do something.

MR. SIMPSON: You have legal authority.

THE COURT: I have legal authority --

MR. SIMPSON: On this TRO -- we made a claim on this TRO that they've attacked my family.

THE COURT: Yes.

MR. SIMPSON: They've attacked me vindictively. It's part of the papers.

THE COURT: Yep, that's your -- and you'll have your

day to get a preliminary injunction.

MR. SIMPSON: After you lift -- after you lift the restraining order --

THE COURT: Sir --

MR. SIMPSON: -- so they can go and attack my wife in state court.

THE COURT: That's true.

MR. SIMPSON: And my home.

THE COURT: Well, I don't know about your home.

MR. SIMPSON: I live there. I don't know if I live there?

THE COURT: No, I just mean, I don't know what home we're talking about. Sorry.

MR. SIMPSON: Okay. Well, you know, unfortunately, I'm away from my homes. My -- my wife and son six days a week because I have to work with my hands because anything commercially has to be taken from me, because my reputation has been ruined by these people. Yeah.

So I wish I was with my family six days a week in my home, 55 Park, Unit 4, which Chassen's wife made commissions on. Okay, ask anyone. I'm the president of the board. I bought this apartment at 2021. It's unquestionable I lived there. You think I don't live there, is that what you're saying now? I don't live there.

THE COURT: I'm just saying to you --

MR. SIMPSON: There is bankruptcy protection when you live in an apartment, you live in a home, and people try to attack it. There is something that's there. I don't know the exact rule, but I can find it. But there is something that's there. Joe says there is. He knows. There's definitely a rule.

So 55 Park, Unit 4, to say it's not related, it's not affiliated. I don't even know how you could possibly say such a thing. I'm a guarantee on the loan. I guarantee the loan. How is that not affiliated? Where did the money come from? My wife didn't have it. It came from me.

THE COURT: Mr. Simpson, we already decided all about that in the other prior proceeding.

MR. SIMPSON: No, no, no, no. That other prior proceeding we came to good conclusions. You forget, we came to conclusions 266WMTR has no documentation other than me and my wife, and that is it. And there is no YJ Simco.

You came to that conclusion (indiscernible) --

THE COURT: Then why (indiscernible) --

MR. SIMPSON: -- you seem to have forgotten that. You came to that conclusion.

THE COURT: No, what I mean --

MR. SIMPSON: There is nobody else.

THE COURT: No, what I came to is that there's a dispute because you argued --

MR. SIMPSON: There's no dispute.

THE COURT: (Indiscernible) --

MR. SIMPSON: And they dispute everything. If I say it's green, they say it's yellow. They dispute everything. There's no dispute. Why would they have the right to dispute who owns my home? Why would they? What gives them the authority to --

THE COURT: No, owns --

MR. SIMPSON: -- dispute that?

THE COURT: -- on the adversary procedure?

MR. SIMPSON: What dispute?

THE COURT: (Indiscernible) --

MR. SIMPSON: What gives them the authority to make that -- that decision?

THE COURT: That's an LLC --

MR. SIMPSON: It's frivolous. It's frivolous in nature, you have the right to stop it. It's all frivolous.

THE COURT: Okay.

MR. SIMPSON: It's all to attack me. Ask Jonathan Koevary who he works for and how he got here? Why don't you ask him? Why are you scared?

THE COURT: Mr. Simpson, I told you already --

MR. SIMPSON: Why don't you ask him?

THE COURT: -- he filed a notice of appearance on behalf of --

MR. SIMPSON: So what --

THE COURT: -- (indiscernible) parties and --

MR. SIMPSON: And you know what the --

THE COURT: And if Arch actually hired --

MR. SIMPSON: -- Privilege --

THE COURT: -- by them and their --

MR. SIMPSON: Judge Cohen said it's not a privilege. Why do you think it's a privilege?

THE COURT: It's not a privilege. What I said is that they're representing those parties because they've, as a lawyer, taken the position that they were hired to represent them.

MR. SIMPSON: Right. And -- and if you look at -- if you look at the joint defense agreement, which includes all these parties and Judge Cohen's order, which says it's not privileged information -- even though you seem to think it was last week. I don't know why you think it's privileged when Judge Cohen said it wasn't privileged.

I mean, you listen to everything else he did. Why don't you listen to that? There's an order. Do you want to read it? He says -- he cites case law. You know the one or two times it's actually favorable to me in three years.

THE COURT: Mr. Simpson, again --

MR. SIMPSON: It's -- it's not privileged what they're doing to me jointly and -- and collusively. That is not

privileged. It isn't. And state -- the State law said it isn't. The case law says it isn't.

So when Kevin Wiener did -- what he did last week -- and I wasn't included in that conversation, and no one called me to ask me, right. Mr. Ostrow doesn't know the case, right? Did anybody tell you last week that the joint defense agreement was deemed to be non-privileged? Did anyone tell you that?

THE COURT: No.

MR. SIMPSON: Did anyone show you the New York State court order that says that? Well, maybe you should be thinking about that before you make your decisions, because I --

THE COURT: I don't --

MR. SIMPSON: Because I made it very clear. In the very first instance I made it very clear --

THE COURT: Well, that might be a basis for reopening a deposition, Mr. Simpson, but that would require that you actually complied with --

MR. SIMPSON: I agreed to do a deposition. I put that in writing.

THE COURT: You didn't show up --

MR. SIMPSON: I said I would do a deposition.

THE COURT: (Indiscernible) have another chance.

MR. SIMPSON: I --

THE COURT: (Indiscernible) your lawyer, you --

MR. SIMPSON: You were in surgery--

THE COURT: -- (indiscernible) --

MR. SIMPSON: -- and I made -- I made it -- and I made a record of it and said, I understand that you would not be able to respond. And I understood you had surgery. And I said in my letter that I would make myself available for a deposition after we spoke with the Court. I said that very clearly. I did say that.

So to say, I just didn't show up nilly willy, that's not what happened at all. I wrote to the Court explicitly saying that -- that I don't feel it's appropriate and here's why. And when the judge chimes in that I will do what the judge says. I said that in writing.

THE COURT: Well --

MR. SIMPSON: So to say I didn't appear for a deposition, as if I just ignored it, as I'm being a bad actor, that's just false.

THE COURT: All right. Well, Mr. Simpson --

MR. SIMPSON: (Indiscernible) record says.

THE COURT: When there's a sanctions motion, we'll deal with it, because there isn't at the moment.

MR. SIMPSON: So then why don't you wait to lift the trophy after the sanctions?

THE COURT: I'm not going to do that, Mr. Simpson, because I have to --

MR. SIMPSON: Just do more damage.

THE COURT: That's fine, you may have a viewpoint on that.

MR. SIMPSON: No, it's not a viewpoint, it's factual.

THE COURT: I don't think it's --

MR. SIMPSON: Do you know what Mr. Koevary told Mr. Ostrow just two weeks ago? You know, what he told him. He said to Mr. Ostrow, you're going to have a very busy October. You know what that is? That's a threat. It's another threat.

Do you see the Kevin Wiener emails? Do you want me to send them all to you where he threatens me over and over again? How about when he gets to depose me, he's going to do this to me, he's going to do that to me, do this to me?

What do you think it does to my life each time I get attacked by five or six different people for no good reason?

THE COURT: You should come to the reality of some things, Mr. Simpson.

MR. SIMPSON: What reality should I come to, they've attacked me and ruined me. That I'm dead?

THE COURT: (Indiscernible) --

MR. SIMPSON: Which reality do you want? That I'm dead --

THE COURT: (Indiscernible) --

MR. SIMPSON: or should I -- or should I lie and say I'm a criminal? Should I lie and say I'm a criminal? That's the reality you want? Which reality do you want?

THE COURT: No, what I'm saying to you is the reality is you are where you are, and you need to act --

MR. SIMPSON: They ruined my life --

THE COURT: -- as you were --

MR. SIMPSON: If they would just go away, I can move on.

THE COURT: -- if you want it.

MR. SIMPSON: But they won't go away because there's no money to grab from me, they just want to hurt me. But when people are vindictive, that is a crime. You know it and I know it. So I guess I'll have to just keep calling until someone listens, because no one listens because of this Court. Because the Court that's in charge, that's what they feel. You can talk to the police yourself. You can talk to the DA. Any one of them, they say it's a civil issue, we're not talking. That's it.

So you can keep thinking you're doing right here, but you're not.

THE COURT: Okay. I understand.

MR. SIMPSON: You're not, you're not. I'll reported it to whoever I need to. Thank you. Have a nice day.

THE COURT: Okay, Mr. Simpson. All right.

Okay. Well, obviously Mr. Koevary, and Mr. Ostrow and all the other counsel on the line we have a number of orders that will be entering after today. And I think everybody

understands the schedule and we will move forward.

And Mr. Koevary will enter that order today with respect to the TRO and the adjournment on the hearing.

MR. KOEVARY: Thank you, Your Honor.

THE COURT: Yeah, to that date.

MR. OSTROW: Your Honor, if I may? We have a date for the hearing on my motion to withdraw. We didn't get a date for opposition.

THE COURT: Good point. Yeah, that's a good point. So I think seven days in advance, Mr. Ostrow, would be appropriate.

MR. OSTROW: Okay.

THE COURT: So that would be the 6th of November. And you're going to have to make sure Mr. Simpson's provided with that.

MR. OSTROW: Yes.

THE COURT: That makes sense.

Okay. All right. Is there anything else that we need to discuss today? All right. If not, I wish you all a good rest of day and Court is now adjourned.

MR. KOEVARY: Thank you, Your Honor.

MR. OSTROW: Thank you, Your Honor.

(Whereupon these proceedings were concluded)

C E R T I F I C A T I O N

I, Michael Drake, certify that the foregoing transcript is a true and accurate record of the proceedings.



______________________________________

Michael Drake (CER,CET-513)
AAERT Certified Electronic Transcriber

eScribers
7227 North 16th Street, Suite #207
Phoenix, AZ 85020

Date: October 28, 2026

1
**10Th (1):** 66:23
**11Th (1):** 66:23
**12Th (4):** 19:6, 27:15, 27:22, 69:2
**13Th (2):** 14:12, 27:20
**14Th (6):** 64:11, 65:13, 66:20, 66:26, 67:5, 67:7
**16Th (1):** 114:7
**18Th (3):** 66:21, 66:26, 67:5
**1St (2):** 62:11, 64:2

2
**22Nd (4):** 64:17, 64:19, 65:13, 65:14
**29Th (1):** 39:17
**2Nd (2):** 63:6, 63:8

3
**30Th (4):** 63:16, 64:4, 65:12, 68:11

5
**5Th (1):** 64:3

6
**6Th (1):** 113:14

7
**7Th (1):** 66:22

8
**8Th (2):** 62:16, 62:20

9
**9Th (2):** 64:2, 66:23

A
**AAERT (1):** 114:5
**AREH (2):** 79:6, 95:15
**ARH (7):** 87:18, 89:4, 100:21, 100:22, 101:2, 101:10, 101:15
**AZ (1):** 114:8
**Ability (8):** 33:3, 33:13, 49:23, 62:19, 69:17, 85:24, 88:15, 89:3
**Able (6):** 20:8, 20:9, 40:21, 61:3, 71:2, 110:5
**Above (3):** 20:15, 34:25, 45:6
**Abstention (1):** 65:7
**Abused (2):** 75:18, 75:18
**Abusing (1):** 79:15
**Abusive (1):** 78:17
**Accept (4):** 94:10, 94:13, 98:21, 98:23
**Acceptable (5):** 14:6, 71:8, 89:10, 95:10, 98:17
**According (4):** 31:2, 31:3, 76:10, 76:12
**Accordingly (1):** 14:17
**Account (1):** 17:22
**Accounting (1):** 21:21
**Accurate (1):** 114:3
**Acknowledged (2):** 28:24, 28:25
**Act (3):** 54:9, 73:16, 112:3
**Action (9):** 26:17, 26:17, 40:24, 42:25, 57:10, 59:14, 77:12, 78:21, 96:11
**Actions (11):** 37:21, 78:15, 79:9, 86:4, 93:3, 95:11, 99:13, 102:18, 102:19, 103:18, 104:7
**Actor (1):** 110:15
**Actual (4):** 33:7, 38:12, 38:14, 72:14
**Actually (30):** 12:23, 19:12, 20:6, 21:20, 29:13, 34:19, 36:11, 36:11, 36:23, 36:23, 37:22, 38:5, 42:19, 48:9, 52:17, 54:19, 55:10, 56:3, 57:5, 61:2, 66:7, 77:16, 81:19, 86:19, 92:5, 100:10, 103:19, 108:3, 108:21, 109:16
**Add (2):** 71:24, 72:19
**Addition (1):** 65:7
**Additional (1):** 63:21
**Adhere (1):** 59:25
**Adjourn (3):** 30:23, 67:10, 68:14
**Adjourned (1):** 113:21
**Adjourning (2):** 19:15, 27:11
**Adjournment (1):** 113:4
**Admission (1):** 10:21
**Admitted (1):** 66:12
**Advance (8):** 45:21, 47:11, 52:2, 52:7, 71:8, 71:10, 71:18, 113:11
**Advanced (1):** 21:24
**Advances (1):** 22:3
**Adversary (22):** 10:5, 10:8, 10:8, 10:9, 10:13, 10:23, 11:14, 11:20, 12:6, 12:8, 15:9, 17:3, 18:25, 19:4, 19:26, 26:3, 62:17, 63:4, 65:15, 75:5, 96:6, 107:10
**Affected (1):** 20:21
**Affiliate (1):** 36:12
**Affiliated (7):** 69:17, 77:6, 77:15, 77:17, 79:24, 106:9, 106:11
**Affiliates (1):** 35:17
**Affiliation (4):** 76:17, 76:21, 76:22, 76:22
**Afternoon (2):** 13:3, 45:19
**Again (30):** 22:11, 25:9, 25:22, 27:9, 29:19, 33:14, 35:3, 35:18, 37:5, 40:22, 42:2, 42:9, 47:16, 48:3, 48:17, 60:8, 60:19, 61:11, 61:22, 86:13, 92:15, 92:16, 94:20, 95:9, 96:5, 96:13, 98:2, 99:18, 108:22, 111:11
**Against (16):** 10:6, 10:10, 41:20, 43:16, 44:8, 46:4, 54:3, 55:20, 56:16, 73:7, 75:25, 75:25,

79:21, 79:22, 84:3, 89:17
**Ago (10):** 17:24, 25:16, 26:12, 39:4, 54:16, 88:6, 95:18, 97:7, 97:7, 111:7
**Agree (2):** 38:18, 69:16
**Agreeable (1):** 63:15
**Agreed (2):** 63:12, 109:17
**Agreement (7):** 17:12, 17:13, 35:9, 45:24, 49:12, 108:13, 109:7
**Agreements (1):** 65:22
**Ahead (3):** 14:16, 31:5, 69:7
**Aint (1):** 75:13
**Al (1):** 11:16
**Alec (1):** 10:15
**Allegations (1):** 81:3
**Allege (1):** 17:12
**Alleged (3):** 16:19, 17:11, 17:11
**Allegedly (1):** 43:10
**Allen (1):** 11:24
**Allocate (1):** 22:17
**Allocated (1):** 23:23
**Allocation (1):** 24:4
**Allow (17):** 13:15, 30:16, 39:23, 40:3, 51:10, 51:21, 52:5, 52:20, 56:2, 58:15, 78:10, 86:10, 94:2, 96:7, 96:13, 96:18, 96:24
**Allowed (10):** 31:18, 32:19, 32:26, 42:14, 43:20, 53:15, 87:22, 89:7, 96:18, 99:25
**Allowing (6):** 36:8, 37:5, 43:15, 78:14, 85:5, 86:11
**Allows (7):** 85:4, 90:7, 90:8, 90:9, 91:10, 91:11, 91:12
**Almost (2):** 27:2, 29:21
**Along (1):** 23:9
**Alternative (1):** 72:7
**Alternatives (1):** 73:13
**Although (2):** 24:23, 41:6
**Amend (1):** 44:6
**Amended (1):** 63:5
**America (2):** 49:20, 53:12
**American (7):** 10:6, 10:11, 11:16, 11:20, 11:26, 12:9, 12:10
**Amount (6):** 22:18, 28:11, 30:12, 40:23, 87:15, 103:22
**Amounts (2):** 28:12, 65:21
**Analysis (1):** 45:17
**Animals (1):** 75:22
**Answered (2):** 33:18, 75:4
**Antagonized (1):** 29:2
**Anymore (3):** 55:13, 76:9, 76:10
**Anyones (1):** 74:8
**Apartment (4):** 77:21, 77:24, 105:21, 106:3
**Apologies (3):** 36:25, 36:26, 69:13
**Apologize (1):** 36:23
**Appalled (1):** 104:5
**Apparently (2):** 75:24, 79:13
**Appeal (1):** 53:3
**Appeals (1):** 49:18
**Appear (3):** 59:13, 60:9, 110:14
**Appearance (2):** 91:15, 107:24
**Appearances (1):** 10:14
**Appears (1):** 98:20
**Appointed (1):** 25:10
**Appreciate (5):** 38:16, 38:17, 44:5, 67:4, 68:9
**Approach (1):** 72:16
**Appropriate (8):** 32:21, 37:7, 41:9, 44:3, 61:24, 68:23, 110:11, 113:12
**Approximately (2):** 21:19, 62:14
**Arch (15):** 10:6, 10:11, 11:12, 11:14, 11:15, 12:10, 35:10, 36:12, 55:12, 55:12, 83:13, 89:16, 89:19, 92:7, 108:3
**Archs (1):** 102:18
**Arent (5):** 26:24, 37:22, 43:11, 69:25, 92:17
**Argue (6):** 27:22, 28:6, 29:12, 29:12, 29:14, 45:4
**Argued (1):** 106:25
**Argument (6):** 15:11, 34:19, 35:16, 36:13, 37:19, 65:7
**Arguments (4):** 32:20, 35:12, 35:18, 65:6
**Arhs (1):** 87:18
**Around (1):** 87:16
**Arrested (1):** 57:8
**Articles (1):** 77:10
**Articulated (1):** 22:11
**As (61):** 10:19, 12:6, 12:6, 12:18, 12:24, 12:25, 15:16, 17:14, 19:25, 19:25, 20:19, 20:21, 21:20, 24:3, 24:15, 24:15, 25:5, 25:19, 26:9, 30:7, 31:4, 31:5, 31:6, 31:7, 33:23, 33:23, 34:18, 35:13, 37:25, 38:23, 39:10, 39:11, 39:16, 41:18, 42:22, 44:8, 45:7, 47:12, 51:23, 60:21, 63:12, 63:21, 65:18, 65:22, 70:19, 70:20, 71:25, 74:4, 76:19, 77:6, 81:18, 82:17, 84:17, 84:20, 86:10, 93:13, 97:15, 108:9, 110:15, 110:15, 112:4
**Assert (1):**

36:8
**Asserted (1):** 24:8
**Assertions (1):** 42:15
**Assets (7):** 21:11, 100:22, 100:22, 101:3, 101:10, 101:11, 101:15
**Assholes (1):** 51:3
**Assigned (1):** 98:18
**Associate (1):** 10:21
**Assuming (1):** 35:24
**Attached (1):** 35:14
**Attachments (1):** 16:22
**Attack (11):** 49:14, 50:14, 54:18, 74:2, 75:22, 78:10, 81:20, 91:12, 105:4, 106:4, 107:19
**Attacked (15):** 48:14, 48:14, 48:15, 48:17, 50:12, 50:13, 51:19, 51:25, 57:15, 80:19, 85:7, 104:18, 104:20, 111:15, 111:19
**Attacking (4):** 79:2, 79:14, 83:23, 90:15
**Attempted (1):** 16:5
**Attend (6):** 33:2, 57:20, 57:20, 57:23, 60:17, 80:9
**Attended (1):** 57:21
**Attorney (4):** 13:6, 17:24, 71:9, 83:6
**Attorneys (1):** 83:2
**Auction (1):** 22:2
**August (1):** 75:9
**Aunts (1):** 85:14
**Authenticate (1):** 49:12
**Authority (5):** 104:14, 104:15, 104:16, 107:8, 107:13
**Automatic (3):** 79:17, 80:2, 80:4
**Automatically (1):** 71:8
**Available (8):** 29:6, 36:14, 37:7, 38:20, 43:13, 45:7, 54:17, 110:6
**Avoidable (1):** 37:20
**Awaiting (1):** 10:21
**Awarded (2):** 23:24, 97:5
**Aware (4):** 16:9, 16:11, 34:22, 84:2
**Away (4):** 66:26, 105:14, 112:5, 112:8
**Ax (1):** 36:2

B

**BUNIN (8):** 10:18, 11:2, 15:21, 19:24, 20:6, 20:14, 21:10, 24:17
**BUSH (2):** 12:4, 63:19
**Back (11):** 18:22, 31:25, 35:4, 38:18, 39:15, 62:8, 64:15, 65:16, 68:19, 86:12, 100:17
**Bad (4):** 26:11, 75:25, 86:12, 110:15
**Bankruptcy (20):** 12:6, 26:16, 34:21, 53:15, 53:16, 54:9, 57:11, 73:16, 73:22, 80:3, 80:4, 81:5, 82:12, 82:24, 83:17, 94:24, 95:2, 98:6, 100:6, 106:2
**Based (7):** 14:9, 15:13, 16:14, 32:12, 67:18, 67:19, 69:6
**Basically (1):** 35:5
**Basis (2):** 31:8, 109:14
**Battles (1):** 88:23
**Bear (1):** 61:25
**Begged (3):** 26:13, 55:11, 98:5
**Begin (1):** 38:17
**Behalf (7):** 11:9, 11:24, 12:5, 63:20, 87:18, 91:17, 107:25
**Behavior (1):** 59:11
**Believes (1):** 22:10
**Belong (4):** 43:5, 43:5, 90:4, 90:5
**Belonged (2):** 42:8, 42:8
**Belongs (5):** 23:17, 37:14, 37:14, 37:15, 90:10
**Bench (4):** 71:13, 71:14, 71:16, 74:22
**Benefit (1):** 30:2
**Benefits (1):** 28:25
**Best (2):** 65:24, 99:26
**Better (4):** 37:8, 37:20, 60:13, 70:2
**Beyond (2):** 13:5, 70:5
**Big (2):** 39:6, 85:3
**Bills (3):** 77:24, 78:4, 102:23
**Bind (1):** 61:22
**Binder (2):** 12:5, 63:20
**Bit (1):** 63:26
**Blah (3):** 54:12, 54:12, 54:12
**Blind (4):** 48:11, 48:15, 49:25, 75:7
**Board (3):** 44:22, 56:4, 105:20
**Bonin (1):** 75:15
**Book (2):** 56:13, 56:18
**Boss (1):** 18:8
**Both (4):** 20:21, 25:14, 25:15, 101:13
**Bother (2):** 33:23, 34:7
**Bought (1):** 105:21
**Break (1):** 36:24
**Breakdown (1):** 13:7
**Briefed (4):** 15:9, 15:10, 15:14, 16:20
**Briefing (1):** 64:8
**Bring (5):** 51:14, 51:15, 56:5, 56:23, 93:10
**Broad (1):** 30:20
**Broke (2):** 57:17, 96:16
**Brought (3):** 26:15, 78:25, 97:25
**Builder (1):** 85:2
**Building (2):** 77:8, 85:6
**Built (1):**

84:23
**Bullshit (5):** 51:25, 51:25, 54:17, 58:18, 75:15
**Bunch (3):** 35:26, 43:19, 69:25
**Bunin (12):** 10:18, 15:21, 19:24, 20:5, 20:13, 20:25, 21:9, 24:15, 25:6, 25:7, 25:8, 55:22
**Burden (3):** 38:25, 44:12, 44:14
**Burn (1):** 94:9
**Burned (5):** 29:21, 39:4, 55:14, 55:14, 55:14
**Burning (3):** 96:15, 96:15, 99:20
**Bush (4):** 12:4, 52:19, 63:19, 74:2
**Business (2):** 23:4, 23:8
**Busy (1):** 111:8
**Buyer (3):** 21:23, 23:20, 23:20
**Buys (1):** 22:15

C

**COURT (411):** 10:3, 10:24, 11:3, 11:7, 11:10, 11:18, 11:22, 12:3, 12:11, 12:14, 13:10, 13:21, 13:23, 13:24, 14:3, 14:5, 14:20, 14:22, 15:23, 16:9, 16:9, 16:11, 16:13, 17:6, 17:9, 17:11, 17:17, 17:19, 18:2, 18:5, 18:10, 18:12, 20:4, 20:13, 20:18, 21:14, 22:14, 23:4, 23:15, 23:16, 24:12, 24:14, 24:18, 24:20, 25:5, 25:20, 25:22, 25:25, 26:3, 27:2, 27:3, 27:5, 27:8, 27:9, 29:3, 29:5, 29:5, 29:7, 29:19, 30:2, 30:4, 30:5, 32:10, 32:15, 33:4, 33:18, 39:14, 39:19, 39:21, 39:21, 40:3, 41:19, 41:19, 41:22, 44:17, 45:7, 45:9, 46:9, 46:11, 46:13, 46:16, 46:17, 46:20, 47:2, 47:5, 47:6, 47:7, 47:10, 47:16, 47:19, 47:21, 48:3, 48:3, 48:4, 48:5, 48:6, 48:16, 48:18, 49:2, 50:11, 50:14, 50:14, 50:14, 50:19, 52:21, 52:23, 53:2, 53:5, 53:7, 53:9, 53:10, 53:20, 53:22, 54:3, 54:7, 54:7, 54:8, 54:11, 54:21, 55:2, 55:3, 55:5, 55:8, 56:10, 57:2, 57:5, 57:9, 57:10, 57:14, 58:6, 58:8, 58:10, 58:12, 58:12, 58:12, 58:13, 58:14, 59:7, 60:7, 60:22, 61:8, 61:12, 61:17, 61:19, 61:25, 62:5, 62:21, 63:3, 63:14, 63:22, 64:10, 64:20, 64:24, 65:2, 65:3, 65:11, 66:20, 67:3, 67:5, 67:8, 67:22, 68:2, 68:5, 68:7, 68:9, 68:14, 68:20, 68:26, 69:9, 69:13, 69:15, 69:19, 70:10, 70:13, 70:15, 70:18, 70:23, 71:11, 71:20, 71:24, 72:3, 72:6, 72:18, 72:23, 73:5, 73:10, 73:13, 73:18, 73:21, 74:2, 74:3, 74:8, 74:12, 74:15, 74:19, 75:3, 75:8, 75:11, 76:4, 76:7, 76:12, 76:18, 76:21, 76:24, 77:3, 77:11, 77:17, 77:19, 77:22, 78:2, 78:5, 78:8, 78:13, 78:19, 78:21, 78:23, 79:3, 79:5, 79:11, 79:16, 79:19, 79:22, 79:25, 80:2, 80:6, 80:11, 80:16, 80:21, 80:24, 81:5, 81:8, 81:12, 81:15, 81:23, 82:5, 82:11, 82:12, 82:19, 82:21, 82:24, 83:10, 83:13, 83:16, 83:17, 83:20, 84:4, 84:8, 84:14, 84:16, 84:25, 85:2, 85:6, 85:11, 85:16, 85:18, 85:21, 86:4, 86:4, 86:4, 86:7, 86:19, 87:4, 87:7, 87:10, 87:12, 87:13, 87:23, 88:3, 88:5, 88:8, 88:11, 88:13, 88:16, 89:5, 89:11, 89:15, 89:18, 89:20, 90:2, 90:6, 90:7, 90:12, 91:5, 91:10, 91:11, 91:13, 91:15, 91:17, 91:19, 92:3, 92:5, 92:9, 92:11, 92:15, 92:16, 92:21, 92:21, 93:6, 93:8, 93:14, 93:18, 93:20, 93:22, 93:24, 94:3, 94:17, 94:23, 94:24, 95:2, 95:3, 95:6, 95:7, 95:11, 95:11, 95:14, 95:17, 95:20, 96:5, 96:10, 97:18, 97:22, 98:7, 98:14, 98:19, 98:22, 99:2, 99:5, 99:7, 99:12, 99:15, 99:17, 100:10, 100:14, 100:17, 100:18, 100:23, 100:25, 101:4, 101:7, 101:16, 101:18, 101:22, 101:25, 102:3, 102:5, 102:7, 102:9, 102:12, 102:13, 102:17, 102:20, 103:4, 103:5, 103:6, 103:15, 103:21, 104:3, 104:9, 104:10, 104:11, 104:13, 104:16, 104:19,

104:22, 105:4, 105:6, 105:8, 105:11, 105:24, 106:13, 106:20, 106:23, 106:24, 107:3, 107:9, 107:10, 107:12, 107:15, 107:18, 107:22, 107:24, 108:2, 108:3, 108:5, 108:8, 108:22, 109:9, 109:12, 109:14, 109:19, 109:20, 109:21, 110:2, 110:14, 110:17, 110:19, 110:23, 111:2, 111:5, 111:16, 111:20, 111:22, 112:2, 112:4, 112:7, 112:19, 112:22, 113:6, 113:10, 113:14, 113:18
**Calendar (3):** 27:18, 62:2, 64:16
**Calendaring (1):** 44:20
**Call (8):** 26:24, 68:17, 71:23, 71:23, 75:8, 82:7, 84:22, 89:21
**Called (2):** 78:16, 109:5
**Calling (1):** 112:11
**Came (8):** 16:13, 39:15, 106:12, 106:16, 106:16, 106:19, 106:22, 106:24
**Camera (2):** 14:25, 15:4
**Can (61):** 14:16, 15:13, 17:19, 19:11, 21:5, 29:8, 29:12, 29:12, 29:16, 30:7, 30:21, 30:22, 30:22, 30:23, 31:2, 31:10, 31:15, 32:19, 37:24, 37:25, 40:18, 43:7, 44:21, 47:6, 56:23, 59:12, 59:14, 60:3, 63:16, 63:23, 65:8, 67:11, 68:24, 70:13, 70:20, 70:24, 71:3, 71:24, 72:10, 72:18, 74:20, 74:21, 74:21, 77:3, 84:11, 87:2, 92:10, 93:21, 95:11, 96:8, 96:10, 97:17, 99:26, 100:14, 104:10, 105:4, 106:5, 112:5, 112:13, 112:14, 112:17
**Cancel (1):** 15:16
**Candy (1):** 73:16
**Cant (30):** 13:6, 19:7, 19:11, 24:12, 28:5, 31:22, 40:18, 47:17, 48:10, 48:15, 49:4, 49:8, 49:24, 55:18, 57:19, 59:26, 63:10, 65:9, 66:11, 74:18, 75:23, 79:8, 81:2, 83:4, 87:23, 90:15, 92:10, 92:11, 100:19, 102:10
**Car (1):** 85:7
**Care (7):** 45:23, 54:19, 56:17, 56:18, 56:19, 56:20, 89:20
**Career (2):** 75:20, 103:13
**Careful (2):** 25:18, 86:15
**Cares (1):** 89:20
**Cars (2):** 84:23, 85:2
**Case (34):** 10:3, 11:25, 12:2, 12:6, 14:26, 32:26, 33:3, 33:11, 33:13, 35:14, 42:5, 42:23, 42:24, 43:20, 48:6, 55:2, 55:4, 61:3, 66:13, 79:8, 83:8, 83:10, 94:15, 96:11, 96:12, 97:5, 97:8, 97:13, 97:26, 103:6, 104:9, 108:20, 109:3, 109:6
**Cash (1):** 23:20
**Caught (1):** 61:22
**Cause (3):** 16:17, 57:9, 93:17
**Caused (1):** 43:2
**Certain (2):** 22:19, 44:11
**Certainly (8):** 20:18, 33:8, 33:20, 42:23, 44:22, 44:25, 66:13, 68:9
**Certainty (2):** 42:13, 42:16
**Certified (1):** 114:5
**Certify (1):** 114:2
**Cetera (2):** 26:8, 41:6
**Chalesh (1):** 81:17
**Chambers (1):** 68:18
**Chance (19):** 15:14, 41:5, 41:5, 49:21, 50:11, 51:21, 55:8, 55:23, 57:16, 58:4, 58:14, 60:26, 70:16, 71:4, 71:4, 93:21, 103:10, 104:12, 109:20
**Changed (1):** 75:10
**Chapter (1):** 98:23
**Charge (4):** 20:22, 23:8, 97:24, 112:13
**Chassen (17):** 10:5, 10:7, 10:12, 11:24, 11:24, 15:19, 16:3, 20:23, 50:5, 50:6, 50:16, 54:20, 75:21, 79:6, 80:13, 80:13, 89:16
**Chassens (3):** 20:20, 20:22, 105:19
**Children (1):** 81:21
**Chimes (1):** 110:12
**Choice (2):** 18:9, 46:13
**Choices (2):** 48:5, 66:20
**Choose (1):** 74:5
**Chose (1):** 74:6
**Circle (1):** 68:19
**Circuit (1):** 49:17
**Circular (2):** 28:22, 29:5
**Circumstances (8):** 13:16, 14:11, 31:6, 31:19, 32:19, 32:21, 35:16, 93:13
**Circumvented (1):** 92:19
**Circumventing (1):** 93:3
**Cite (1):** 93:5
**Cites (1):** 108:20

**City (2):** 24:9, 82:9
**Civil (11):** 30:13, 31:3, 31:18, 82:4, 82:8, 94:15, 97:11, 97:13, 97:15, 97:20, 112:15
**Claim (9):** 22:24, 29:13, 54:11, 74:8, 76:8, 95:13, 95:15, 102:14, 104:17
**Claims (8):** 24:6, 42:14, 42:15, 44:8, 49:17, 50:16, 54:3, 54:8
**Clear (19):** 13:4, 23:16, 29:11, 39:12, 40:12, 41:15, 44:26, 45:12, 45:18, 45:20, 52:3, 57:23, 57:24, 59:2, 71:15, 84:3, 89:14, 109:12, 109:13
**Clearly (8):** 47:11, 75:16, 97:3, 97:8, 99:19, 103:23, 104:2, 110:8
**Clerks (1):** 16:7
**Client (5):** 20:23, 32:4, 32:5, 90:15, 91:4
**Clients (4):** 31:13, 34:14, 36:16, 91:17
**Club (1):** 100:3
**Code (3):** 40:12, 57:11, 81:5
**Cogitating (1):** 30:12
**Cogitation (1):** 33:23
**Cohen (19):** 24:24, 25:9, 25:9, 25:10, 25:13, 25:15, 45:23, 47:18, 49:24, 73:7, 86:10, 86:12, 89:6, 89:15, 94:12, 94:12, 99:22, 108:6, 108:17
**Cohens (2):** 25:6, 108:14
**Collaboration (1):** 56:16
**Colleague (1):** 11:13
**Collusion (1):** 56:15
**Collusive (1):** 46:4
**Collusively (3):** 79:2, 79:4, 108:23
**Combination (1):** 40:14
**Comfortable (1):** 36:7
**Coming (6):** 23:20, 32:24, 38:17, 72:16, 84:17, 101:12
**Commercially (1):** 105:16
**Commissions (1):** 105:19
**Common (2):** 59:4, 60:2
**Companies (1):** 97:12
**Company (5):** 10:6, 10:11, 11:20, 12:9, 28:24
**Compel (5):** 28:5, 56:6, 59:20, 59:21, 85:23
**Complaint (11):** 16:15, 16:21, 17:14, 17:22, 19:3, 20:15, 37:9, 40:24, 62:19, 63:5, 84:8
**Complaints (2):** 71:25, 72:19
**Complied (1):** 109:16
**Comply (3):** 48:7, 61:2, 67:13
**Complying (1):** 25:6
**Compromise (1):** 33:15
**Concern (8):** 13:7, 21:6, 21:8, 37:3, 37:16, 38:9, 41:22, 60:24
**Concerned (2):** 36:17, 73:11
**Concerns (6):** 28:14, 36:19, 37:9, 37:10, 38:2, 38:15
**Concluded (1):** 113:24
**Conclusion (3):** 97:5, 106:19, 106:22
**Conclusions (2):** 106:16, 106:17
**Conference (8):** 18:23, 39:5, 62:16, 63:2, 64:13, 71:20, 75:4, 82:7
**Conferences (1):** 100:4
**Confidence (1):** 28:15
**Confidently (1):** 39:8
**Connection (4):** 21:3, 32:7, 37:12, 96:8
**Conscience (1):** 60:16
**Consent (1):** 61:13
**Consented (3):** 39:16, 39:21, 39:22
**Consents (3):** 25:2, 61:15, 61:21
**Consequences (1):** 60:18
**Consider (3):** 31:15, 66:9, 73:8
**Considered (1):** 46:2
**Considering (1):** 46:5
**Consistent (1):** 41:14
**Contentious (1):** 45:15
**Contested (1):** 74:9
**Context (3):** 16:24, 34:21, 44:20
**Contingent (1):** 26:7
**Continue (5):** 40:21, 49:19, 58:15, 59:12, 85:4
**Contract (7):** 30:3, 36:9, 38:4, 38:6, 89:12, 89:22, 91:11
**Control (7):** 18:7, 86:20, 94:20, 101:2, 101:2, 101:7, 101:22
**Controls (1):** 92:6
**Conversation (5):** 39:6, 45:19, 58:3, 71:16, 109:5
**Convert (2):** 18:20, 62:11
**Copied (1):** 86:17
**Correlate (1):** 22:7
**Corrupt (1):** 92:9
**Cost (3):** 36:11, 84:23, 99:9
**Costs (3):** 22:19, 35:11, 73:15
**Couldnt (1):** 31:9
**Couldve (1):** 88:11
**Counsel (35):** 10:16, 12:18, 12:25, 13:12, 19:10, 20:20, 26:7, 26:8,

26:8, 27:6, 27:13, 27:19, 27:21, 28:4, 28:4, 28:20, 29:5, 30:7, 35:14, 40:18, 44:21, 60:8, 63:13, 66:2, 67:12, 67:12, 68:22, 69:22, 69:22, 71:25, 73:12, 88:4, 88:5, 99:8, 112:24
**Count (2):** 16:16, 17:14
**Countless (2):** 82:6, 92:13
**Country (1):** 53:13
**Couple (3):** 12:12, 12:17, 22:3
**Course (4):** 13:16, 48:16, 56:12, 98:15
**Court (43):** 10:20, 13:3, 16:3, 20:12, 20:17, 21:12, 26:15, 28:15, 43:2, 44:13, 45:12, 49:17, 52:5, 57:23, 59:17, 66:5, 70:2, 71:10, 74:6, 78:10, 82:4, 83:17, 83:20, 90:8, 91:10, 92:13, 93:12, 94:2, 95:10, 97:11, 97:14, 97:15, 97:15, 98:2, 98:12, 103:18, 105:5, 109:11, 110:7, 110:10, 112:12, 112:13, 113:21
**Courtroom (1):** 69:9
**Courts (1):** 82:8
**Cover (1):** 26:9
**Coward (1):** 32:6
**Cowards (1):** 99:13
**Crap (5):** 52:14, 53:6, 88:25, 95:18, 96:23
**Crazy (3):** 51:6, 58:5, 78:11
**Created (1):** 85:4
**Creditors (8):** 36:15, 42:13, 42:14, 43:9, 43:26, 54:3, 54:5, 84:12
**Crime (5):** 82:12, 82:24, 94:24, 95:3, 112:10
**Criminal (11):** 17:15, 17:15, 50:16, 81:23, 82:2, 83:8, 83:10, 96:2, 97:16, 111:24, 111:24
**Criminality (2):** 17:5, 51:4
**Crystal (5):** 13:4, 45:17, 52:3, 89:14, 97:8
**Cushion (1):** 42:26
**Custom (3):** 84:23, 85:2, 85:7

D

**DA (1):** 112:14
**DFS (3):** 30:4, 97:10, 97:11
**DILENA (1):** 11:19
**Da (1):** 103:9
**Damage (2):** 78:11, 110:24
**Damages (3):** 41:18, 41:23, 65:21
**Damaging (1):** 38:8
**Damn (15):** 49:22, 51:3, 52:4, 52:8, 52:22, 55:10, 55:14, 55:17, 56:3, 57:8, 74:10, 76:23, 77:7, 96:19, 100:19
**Dana (2):** 10:7, 10:12
**Dancing (1):** 58:2
**Daniel (1):** 11:8
**Date (17):** 14:17, 18:23, 44:11, 61:3, 63:6, 63:12, 63:24, 64:13, 64:18, 64:21, 66:14, 67:11, 72:15, 113:6, 113:7, 113:8, 114:9
**Dates (5):** 62:7, 62:12, 64:3, 68:17, 68:18
**David (2):** 56:2, 89:14
**Day (16):** 38:3, 42:12, 42:17, 45:19, 49:24, 57:17, 58:2, 59:15, 59:17, 66:4, 70:2, 71:18, 81:10, 105:2, 112:21, 113:21
**Days (7):** 25:17, 62:13, 62:14, 63:10, 105:14, 105:18, 113:11
**Dead (5):** 51:24, 76:6, 102:6, 111:19, 111:22
**Deadline (4):** 62:24, 67:25, 68:13, 72:24
**Deadlines (1):** 68:11
**Deal (24):** 16:23, 18:8, 23:13, 27:7, 27:10, 30:17, 47:12, 53:17, 53:19, 53:21, 53:22, 57:16, 58:14, 68:21, 71:4, 72:11, 72:13, 77:9, 87:5, 94:15, 98:16, 99:22, 102:11, 110:20
**Dealing (3):** 55:20, 82:9, 87:6
**Dealt (2):** 24:16, 26:14
**Death (2):** 24:24, 50:7
**Debt (3):** 20:16, 34:25, 96:7
**Debtor (15):** 34:9, 35:24, 36:15, 36:21, 37:15, 37:21, 37:22, 38:9, 38:26, 41:9, 44:12, 70:5, 76:4, 76:5, 77:7
**Debtors (6):** 35:23, 38:10, 38:25, 43:8, 63:25, 67:25
**December (16):** 19:7, 19:16, 19:22, 62:10, 62:20, 64:5, 64:19, 65:12, 65:13, 65:14, 66:20, 66:21, 66:23, 66:23, 66:23, 66:24
**Decide (2):** 13:13, 67:13
**Decided (2):** 42:4, 106:13
**Deciding (1):** 60:23
**Decision (8):** 18:6, 18:7, 26:21, 26:22, 29:15, 72:3, 72:5, 107:14
**Decisions (4):** 28:21, 29:22, 77:3, 109:12
**Declaration (1):** 22:9
**Declarations (1):** 60:21

**Deemed (1):** 109:8
**Deeply (1):** 73:11
**Default (13):** 35:21, 35:22, 35:22, 36:20, 37:5, 37:16, 37:18, 41:19, 41:19, 41:21, 43:15, 44:2, 65:21
**Defend (1):** 69:17
**Defendant (4):** 11:20, 11:25, 11:26, 12:8
**Defendants (2):** 11:14, 65:9
**Defense (5):** 45:24, 49:12, 96:6, 108:13, 109:7
**Defer (1):** 15:24
**Definitely (1):** 106:6
**Definitive (1):** 45:23
**Degree (1):** 84:22
**Degrees (2):** 84:21, 84:22
**Delay (5):** 29:8, 29:10, 51:22, 51:22, 51:22
**Delayed (1):** 15:12
**Deliberation (1):** 86:15
**Deliberations (1):** 25:18
**Delineated (1):** 25:10
**Deliver (1):** 85:23
**Demand (1):** 74:21
**Demands (1):** 91:13
**Demonstration (1):** 61:20
**Department (1):** 94:21
**Depending (1):** 43:26
**Deponent (1):** 88:3
**Depose (2):** 56:7, 111:12
**Deposed (4):** 41:5, 48:12, 48:14, 49:10
**Deposition (29):** 30:19, 31:2, 31:16, 33:2, 33:12, 45:11, 46:10, 46:12, 50:11, 56:8, 56:8, 58:10, 58:11, 60:10, 60:17, 61:2, 66:4, 66:12, 69:24, 71:6, 71:12, 72:12, 72:13, 93:12, 109:15, 109:17, 109:19, 110:7, 110:15
**Deputy (1):** 69:10
**Describe (1):** 18:14
**Deserve (1):** 26:18
**Despite (1):** 28:6
**Destroy (1):** 49:6
**Destruction (1):** 93:17
**Deteriorated (1):** 30:6
**Determination (6):** 36:10, 37:8, 38:4, 38:5, 42:3, 42:18
**Determine (1):** 69:20
**Determined (4):** 27:12, 42:24, 44:12, 44:15
**Determines (1):** 66:6
**Determining (1):** 70:3
**Detrimental (1):** 33:16
**Di (1):** 103:9
**Didnt (39):** 20:19, 30:2, 30:18, 31:7, 31:24, 33:2, 42:5, 42:7, 42:17, 45:22, 47:10, 48:7, 48:9, 50:6, 50:7, 50:15, 52:3, 53:16, 53:17, 53:18, 53:18, 53:20, 58:13, 58:14, 66:3, 71:7, 71:23, 76:18, 83:16, 88:7, 95:15, 98:11, 98:13, 99:6, 106:12, 109:19, 110:9, 110:14, 113:8
**Difference (1):** 19:23
**Differences (2):** 28:6, 61:21
**Different (6):** 17:2, 20:7, 35:12, 38:7, 65:5, 111:15
**Difficult (1):** 30:15
**Difficulty (1):** 22:9
**Dilena (2):** 11:19, 97:3
**Dilenas (1):** 97:6
**Direction (2):** 94:2, 101:12
**Directly (2):** 36:12, 42:11
**Disagree (3):** 28:9, 65:25, 84:5
**Discharge (2):** 62:19, 96:7
**Discovery (1):** 16:5
**Discuss (5):** 14:25, 19:18, 62:8, 68:17, 113:20
**Discussed (3):** 16:3, 17:16, 67:9
**Discussion (3):** 18:15, 26:13, 44:19
**Discussions (1):** 21:24
**Dismiss (18):** 15:9, 16:14, 16:15, 17:3, 18:20, 19:3, 30:21, 32:11, 40:15, 63:5, 63:23, 64:15, 64:21, 65:14, 74:12, 96:12, 97:23, 97:25
**Dismissal (5):** 26:13, 42:23, 42:25, 95:11, 97:26
**Dismissed (4):** 27:13, 42:6, 74:12, 96:12
**Dispute (13):** 22:23, 34:14, 36:9, 40:23, 42:4, 106:25, 107:2, 107:4, 107:5, 107:6, 107:6, 107:9, 107:11
**Disputed (1):** 76:16
**Disrespect (2):** 43:8, 84:20
**Disrespectful (1):** 84:19
**Dissolve (1):** 33:9
**Dissolving (1):** 41:17
**District (1):** 83:20
**Docket (2):** 16:7, 76:11
**Document (1):** 51:3
**Documentation (1):** 106:17
**Documents (7):** 16:6, 35:8, 35:18, 49:22, 51:26, 52:2, 55:23
**Doesnt (31):** 15:6, 16:24, 17:6, 17:7,

17:9, 18:2, 31:16, 32:4, 33:23, 39:17, 40:18, 45:3, 45:4, 46:11, 47:14, 55:22, 58:12, 60:24, 69:3, 71:22, 72:22, 77:17, 77:20, 79:4, 92:8, 94:13, 95:6, 95:14, 95:17, 101:18, 109:6
**Dollar (3):** 40:23, 54:16, 65:21
**Dollars (14):** 23:6, 23:9, 28:26, 35:5, 43:23, 50:3, 50:3, 50:5, 50:10, 75:19, 83:14, 84:23, 94:8, 99:21
**Done (18):** 25:24, 26:10, 49:5, 50:10, 51:20, 53:14, 56:17, 56:22, 58:16, 58:16, 58:17, 74:22, 78:11, 81:4, 81:5, 81:20, 104:6, 104:8
**Dont (163):** 12:20, 13:3, 13:8, 13:17, 13:20, 13:24, 14:2, 14:4, 14:5, 14:10, 14:26, 15:13, 17:15, 17:17, 18:19, 18:19, 18:23, 19:5, 19:7, 19:18, 20:25, 20:26, 20:26, 21:8, 22:21, 22:26, 23:21, 25:19, 26:18, 27:16, 27:22, 28:2, 28:7, 28:7, 28:15, 28:20, 29:10, 29:12, 29:19, 31:16, 32:6, 32:6, 32:17, 33:14, 33:14, 33:15, 33:16, 35:24, 36:5, 36:6, 36:8, 36:10, 37:10, 37:18, 37:21, 37:25, 38:3, 38:26, 40:19, 42:2, 42:17, 42:20, 43:6, 43:7, 43:14, 44:2, 45:23, 47:2, 47:2, 47:5, 48:18, 48:19, 49:15, 51:5, 51:16, 51:21, 52:4, 52:10, 54:22, 55:23, 56:17, 56:19, 56:20, 56:24, 56:25, 57:20, 57:20, 58:8, 58:12, 59:14, 59:20, 59:23, 60:2, 60:3, 60:5, 60:16, 60:19, 61:12, 61:22, 62:14, 62:18, 63:17, 64:22, 65:8, 65:24, 65:25, 66:2, 67:26, 68:22, 68:23, 69:6, 70:3, 73:11, 73:14, 74:8, 74:13, 74:16, 76:8, 76:9, 76:12, 76:18, 76:20, 76:21, 79:12, 80:6, 80:14, 82:2, 83:20, 87:17, 88:17, 89:12, 89:12, 89:20, 90:3, 92:3, 92:13, 94:10, 94:20, 96:3, 97:12, 98:22, 99:18, 99:19, 99:24, 100:7, 101:24, 103:19, 104:9, 105:8, 105:9, 105:11, 105:22, 105:23, 106:4, 106:9, 107:20, 107:23, 108:16, 108:19, 109:12, 110:11, 110:21, 111:5
**Doubt (4):** 67:14, 68:5, 69:26, 104:8
**Down (5):** 41:4, 57:17, 59:17, 73:18, 81:5
**Drake (2):** 114:2, 114:4
**Due (4):** 48:5, 67:19, 70:18, 73:3
**Duty (2):** 78:24, 78:25

E

**Earlier (3):** 38:18, 66:22, 66:22
**Earliest (1):** 19:6
**Early (1):** 79:8
**Easily (1):** 37:26
**Effect (1):** 89:16
**Eighty (1):** 52:16
**Either (22):** 13:15, 16:15, 17:12, 24:7, 24:10, 30:6, 30:7, 31:11, 37:14, 41:10, 43:17, 52:24, 61:3, 67:11, 69:21, 69:26, 74:5, 74:7, 74:7, 88:7, 94:20, 103:20
**Electronic (1):** 114:5
**Eliminated (1):** 88:15
**Eliminating (1):** 88:16
**Else (22):** 18:17, 18:24, 19:11, 22:26, 37:12, 41:17, 45:6, 47:14, 61:4, 65:5, 74:18, 77:14, 77:14, 77:15, 80:11, 82:13, 82:14, 87:15, 99:14, 106:23, 108:18, 113:19
**Elsewhere (1):** 35:17
**Emails (5):** 81:21, 89:7, 89:8, 89:8, 111:10
**Emergency (2):** 58:3, 71:20
**End (3):** 19:15, 38:3, 42:11
**Engineering (1):** 84:21
**Enjoining (1):** 39:11
**Enlightening (1):** 103:18
**Enough (8):** 45:7, 49:14, 51:5, 52:23, 52:24, 53:9, 78:11, 98:9
**Enter (4):** 59:22, 62:6, 67:9, 113:3
**Entering (1):** 112:25
**Enters (1):** 73:7
**Entire (4):** 30:22, 36:14, 48:6, 58:2
**Entirety (2):** 36:18, 38:2
**Entities (20):** 26:8, 35:12, 39:8, 39:11, 40:22, 40:26, 43:16, 69:17, 70:4, 73:11, 75:25, 76:8, 76:10, 76:13, 76:14, 76:15, 77:13, 77:15, 79:24, 86:20
**Entitled (4):** 28:22, 28:23, 30:3, 43:22

**Entity (10):** 25:3, 34:15, 35:21, 36:11, 43:16, 43:17, 43:17, 44:9, 44:9, 65:19
**Episode (3):** 87:9, 87:11, 87:13
**Equity (11):** 34:25, 35:3, 35:6, 35:23, 35:25, 37:4, 42:12, 42:12, 42:26, 43:21, 43:24
**Eric (6):** 10:4, 10:19, 11:5, 19:24, 21:15, 54:15
**Erode (1):** 43:7
**Eroding (2):** 38:14, 50:11
**Escribers (1):** 114:6
**Especially (1):** 40:17
**Estate (22):** 10:6, 10:6, 10:11, 11:12, 11:14, 11:15, 12:10, 21:7, 23:17, 23:18, 24:7, 34:24, 35:10, 35:23, 36:14, 38:13, 38:14, 43:8, 43:14, 76:2, 79:3, 85:3
**Et (3):** 11:16, 26:8, 41:6
**Evaluate (1):** 13:4
**Even (35):** 13:16, 18:21, 23:11, 34:26, 35:2, 35:5, 42:9, 42:10, 42:14, 43:10, 43:22, 45:16, 45:23, 46:5, 49:12, 50:6, 54:4, 58:12, 58:14, 59:22, 63:26, 71:8, 71:23, 71:23, 72:4, 73:8, 76:9, 76:9, 83:21, 89:4, 95:17, 103:18, 104:9, 106:9, 108:15
**Event (1):** 20:3
**Everybody (15):** 15:13, 24:23, 29:21, 51:14, 55:16, 65:4, 65:8, 65:19, 80:20, 85:9, 87:15, 87:16, 97:3, 99:14, 112:25
**Everybodys (1):** 75:4
**Everyone (1):** 104:9
**Everyones (2):** 26:3, 65:13
**Evidence (10):** 16:16, 32:10, 40:4, 41:5, 42:26, 43:18, 43:19, 66:11, 81:7, 81:8
**Evidentiary (13):** 14:23, 16:20, 27:17, 31:20, 32:3, 39:7, 44:25, 46:13, 55:19, 69:8, 72:7, 80:14, 80:17
**Exact (1):** 106:5
**Exactly (2):** 17:14, 47:7
**Example (3):** 35:14, 36:2, 36:15
**Except (3):** 41:18, 65:19, 100:14
**Exclusivity (2):** 18:19, 62:10
**Excuse (3):** 24:19, 45:13, 84:18
**Excuses (1):** 100:7
**Exist (2):** 25:19, 78:17
**Expect (1):** 94:22
**Explain (1):** 47:6
**Explained (1):** 83:21
**Explaining (1):** 17:4
**Explicitly (1):** 110:10
**Expunging (1):** 44:7
**Extend (4):** 43:2, 43:3, 44:13, 80:6
**Extending (1):** 39:10
**Extent (3):** 41:17, 59:15, 67:9
**Extreme (1):** 40:17
**Eye (2):** 32:6, 32:6

F

**Face (5):** 59:11, 70:6, 70:11, 70:11, 98:15
**Fact (6):** 14:10, 25:3, 27:22, 37:13, 46:5, 71:4
**Factor (1):** 26:7
**Facts (9):** 58:12, 58:13, 58:15, 59:4, 81:11, 81:17, 81:19, 81:20, 88:24
**Factual (1):** 111:4
**Failure (4):** 16:17, 24:6, 31:15, 69:24
**Fair (1):** 49:11
**Fairest (1):** 31:22
**Fairly (1):** 21:24
**Fairness (3):** 14:24, 40:3, 42:2
**Fake (1):** 95:18
**Fallow (1):** 28:26
**False (2):** 81:3, 110:16
**Family (10):** 51:19, 57:8, 57:15, 75:25, 81:20, 84:3, 91:12, 102:22, 104:18, 105:18
**Farrell (3):** 10:19, 10:20, 15:22
**Father (1):** 51:20
**Favor (2):** 55:19, 60:13
**Favorable (2):** 104:5, 108:21
**Federal (6):** 30:13, 31:3, 31:17, 67:13, 82:10, 95:7
**Feel (7):** 36:6, 39:3, 40:18, 40:19, 40:20, 110:11, 112:13
**Feeling (1):** 36:6
**Felt (1):** 43:4
**Few (1):** 67:16
**Fifteen (1):** 45:21
**Fifty (6):** 28:14, 34:17, 34:17, 34:20, 36:21, 96:17
**Fight (1):** 42:7
**Fighting (1):** 75:14
**Figure (4):** 37:24, 40:8, 66:14, 67:12
**File (16):** 44:23, 53:15, 53:16, 55:8, 59:21, 60:11, 63:6, 64:4, 67:14, 68:24, 69:6, 69:7, 73:15, 73:22, 80:2, 98:5
**Filed (11):**

24:20, 39:13, 54:3, 62:25, 63:9, 66:9, 80:3, 88:11, 91:15, 102:13, 107:24
**Filing (4):** 38:20, 54:8, 67:20, 75:12
**Finally (1):** 52:21
**Find (5):** 19:11, 28:4, 102:2, 102:4, 106:5
**Finding (1):** 28:3
**Fine (29):** 14:3, 14:5, 14:5, 18:12, 24:15, 28:19, 30:23, 45:2, 49:2, 53:5, 53:7, 53:10, 53:11, 55:5, 63:20, 63:22, 64:10, 67:3, 67:8, 69:4, 69:5, 70:10, 70:13, 70:15, 71:24, 72:19, 101:16, 102:3, 111:2
**Finish (1):** 40:16
**Finished (2):** 20:26, 21:4
**Fire (1):** 94:6
**Firm (1):** 10:22
**First (11):** 12:23, 19:5, 27:14, 27:18, 45:11, 46:8, 60:10, 62:8, 83:3, 97:4, 109:13
**Fit (2):** 55:2, 55:4
**Five (2):** 77:7, 111:15
**Fix (1):** 49:8
**Flabbergasting (2):** 46:6, 46:7
**Flesh (1):** 55:15
**Flexibility (1):** 44:18
**Focus (3):** 59:4, 59:4, 59:5
**Focused (1):** 38:13
**Folks (1):** 26:18
**Following (1):** 26:4
**Forbid (1):** 84:18
**Force (2):** 74:4, 89:16
**Foreclosure (1):** 42:25
**Foregoing (1):** 114:2
**Forget (6):** 56:13, 56:14, 56:15, 56:15, 56:16, 106:16
**Forgetting (1):** 38:10
**Forgotten (1):** 106:21
**Forty (1):** 28:14
**Forums (1):** 19:4
**Forward (22):** 20:8, 20:11, 20:17, 21:11, 30:16, 31:11, 31:14, 32:3, 32:18, 33:17, 37:11, 41:6, 41:11, 46:14, 49:17, 59:19, 59:26, 60:3, 61:3, 65:8, 65:20, 113:2
**Fought (1):** 46:3
**Four (2):** 18:21, 58:3
**Frankly (3):** 13:9, 45:22, 70:13
**Fraud (4):** 49:7, 49:7, 73:8, 94:9
**Fraudulent (1):** 78:16
**Freaking (3):** 50:16, 57:12, 84:20
**Friday (2):** 13:3, 61:5
**Friend (1):** 98:20
**Friends (4):** 55:22, 98:12, 98:12, 98:14
**Fritz (3):** 10:19, 10:20, 15:22
**Frivolous (4):** 95:12, 107:16, 107:16, 107:17
**Frivolously (1):** 95:9
**Frome (1):** 11:12
**Front (21):** 27:17, 43:12, 48:6, 51:3, 51:10, 57:7, 60:23, 70:20, 70:23, 74:16, 74:17, 78:25, 82:13, 84:2, 93:4, 93:11, 93:23, 97:26, 98:2, 98:20, 102:10
**Fuck (1):** 90:3
**Fucking (2):** 90:4, 91:8
**Full (1):** 89:16
**Fully (6):** 15:9, 15:10, 15:14, 15:15, 16:20, 27:16
**Fulsome (1):** 71:15
**Fund (1):** 97:12
**Funding (1):** 28:25
**Funds (3):** 29:5, 97:6, 97:9
**Further (3):** 75:20, 80:10, 104:5
**Furthermore (1):** 47:8

G

**Gain (1):** 81:2
**Game (2):** 52:15, 54:18
**Games (2):** 52:15, 54:15
**Gave (5):** 13:4, 28:25, 45:23, 52:6, 59:3
**Generally (2):** 14:23, 20:2
**Gets (3):** 36:6, 59:16, 111:12
**Giselle (1):** 10:20
**Given (7):** 14:14, 20:22, 27:22, 33:20, 44:3, 59:10, 64:8
**Gives (5):** 60:26, 66:5, 96:12, 107:7, 107:13
**Giving (8):** 28:4, 48:5, 70:16, 71:3, 71:4, 100:8, 103:9, 103:10
**God (6):** 52:21, 55:10, 55:17, 57:8, 76:23, 84:18
**Goes (2):** 83:6, 92:19
**Good (29):** 10:15, 10:18, 11:3, 11:5, 11:7, 11:8, 11:10, 11:11, 11:18, 11:19, 11:22, 11:23, 11:23, 12:3, 12:4, 12:7, 12:13, 12:14, 21:15, 21:23, 28:7, 60:16, 67:24, 90:17, 106:16, 111:15, 113:10, 113:10, 113:20
**Goodness (2):** 77:18, 83:12
**Goon (1):** 80:19
**Goons (1):** 50:12
**Gosh (3):** 74:15, 92:18,

101:9
**Grab (2):** 102:2, 112:9
**Grant (1):** 18:21
**Granted (4):** 16:17, 26:20, 77:12, 79:25
**Granting (1):** 35:21
**Great (10):** 10:5, 10:11, 11:16, 11:20, 11:26, 12:9, 12:10, 18:12, 26:22, 27:18
**Green (1):** 107:5
**Griffin (2):** 10:8, 10:12
**Grind (1):** 36:2
**Grounds (4):** 52:12, 89:3, 92:2, 95:11
**Group (1):** 24:3
**Guarantee (2):** 106:10, 106:10
**Guarantor (1):** 20:23
**Guess (24):** 12:21, 12:26, 15:8, 15:25, 18:18, 19:3, 19:21, 24:9, 40:18, 45:22, 50:15, 62:7, 62:23, 62:24, 63:6, 63:7, 63:24, 64:12, 66:13, 66:15, 67:6, 68:10, 99:26, 112:11
**Guy (3):** 27:2, 86:2, 100:4
**Guys (2):** 52:18, 100:3

H

**HUEBSCHER (7):** 11:5, 21:15, 23:2, 23:5, 23:15, 24:11, 24:13
**Half (22):** 35:24, 37:6, 37:15, 37:16, 43:10, 43:23, 43:25, 51:11, 52:14, 52:14, 53:8, 55:6, 55:9, 55:11, 55:12, 93:26, 97:7, 98:11, 99:14, 99:26, 101:25, 102:9
**Hall (1):** 73:19
**Hamptons (1):** 34:16
**Hand (1):** 31:4
**Handcuff (1):** 51:15
**Handle (4):** 12:22, 27:3, 31:12, 67:26
**Handled (2):** 52:7, 53:17
**Hands (1):** 105:15
**Handwritten (1):** 73:22
**Hang (1):** 53:2
**Happen (7):** 20:15, 31:8, 38:14, 52:6, 61:5, 94:3, 96:19
**Happened (10):** 31:8, 50:2, 51:9, 59:5, 72:12, 96:22, 101:20, 103:3, 104:10, 110:10
**Happening (7):** 19:13, 25:8, 49:5, 64:3, 68:10, 68:21, 74:14
**Happens (8):** 22:24, 22:25, 38:7, 50:15, 69:2, 71:21, 80:2, 96:9
**Happy (4):** 31:16, 37:11, 46:8, 94:17
**Harassment (2):** 84:6, 84:7
**Hard (3):** 35:7, 69:20, 87:21
**Harming (1):** 34:6
**Hasnt (4):** 22:11, 42:18, 61:13, 75:10
**Hate (2):** 24:23, 24:24
**Havent (2):** 58:12, 103:23
**Head (1):** 59:3
**Hear (15):** 13:9, 22:2, 24:16, 46:17, 46:18, 46:20, 46:21, 65:11, 80:20, 85:20, 96:3, 98:11, 98:13, 103:6, 104:10
**Heard (10):** 18:20, 37:18, 44:10, 53:6, 57:22, 59:7, 59:26, 65:14, 82:9, 94:18
**Hearing (55):** 13:14, 14:8, 14:14, 15:16, 19:5, 27:14, 27:17, 30:16, 31:5, 31:7, 31:10, 31:12, 31:20, 32:4, 33:7, 34:4, 38:25, 39:5, 39:7, 39:9, 40:4, 40:8, 41:3, 41:12, 41:23, 44:25, 45:2, 46:13, 47:6, 59:10, 59:12, 59:16, 60:4, 61:18, 63:6, 63:16, 63:17, 63:21, 64:14, 64:17, 65:17, 66:6, 66:11, 66:15, 67:11, 69:8, 69:21, 72:7, 72:10, 72:25, 73:2, 80:14, 80:17, 113:4, 113:8
**Heart (1):** 49:13
**Hed (2):** 34:23, 75:14
**Held (1):** 49:12
**Hell (7):** 55:23, 60:11, 84:26, 85:3, 86:10, 87:15, 94:6
**Help (5):** 16:7, 29:18, 34:23, 78:3, 103:19
**Helpful (1):** 28:8
**Helping (1):** 10:21
**Heres (2):** 34:2, 110:11
**Hes (32):** 19:10, 19:13, 25:7, 25:23, 25:24, 33:22, 45:14, 45:16, 46:8, 50:7, 50:15, 50:16, 55:16, 56:7, 58:16, 58:17, 58:18, 60:7, 61:4, 61:12, 65:25, 67:13, 68:22, 78:3, 80:14, 89:7, 89:21, 91:14, 94:12, 96:21, 111:12, 111:13
**Heubscher (1):** 21:16
**Heymann (2):** 56:2, 89:15
**Hid (1):** 48:10
**Hide (1):** 58:15
**Hiding (4):** 50:5, 50:9, 52:18, 94:12
**Highway (1):** 20:9
**Himself (4):** 32:20, 40:9, 60:5, 61:4
**Hire (3):** 52:18, 52:19, 73:12
**Hired (2):** 108:3, 108:10

**Hiring (1):** 44:21
**Hit (1):** 16:6
**Hold (2):** 60:4, 100:3
**Holding (2):** 97:15, 97:18
**Holdings (6):** 10:7, 10:11, 11:12, 11:14, 11:15, 35:10
**Hole (1):** 91:9
**Holes (1):** 96:15
**Home (7):** 34:15, 105:7, 105:8, 105:11, 105:19, 106:3, 107:7
**Homes (1):** 105:14
**Honest (2):** 49:7, 88:20
**Honestly (3):** 32:12, 33:21, 40:20
**Honor (83):** 10:15, 10:18, 11:2, 11:5, 11:8, 11:11, 11:19, 11:24, 12:4, 12:7, 12:13, 13:2, 13:9, 14:18, 15:19, 15:25, 18:6, 19:24, 20:6, 20:10, 20:14, 21:10, 21:15, 23:2, 24:13, 24:17, 24:19, 24:25, 26:21, 26:22, 28:23, 32:2, 32:16, 32:22, 38:16, 38:18, 38:19, 39:3, 41:13, 41:14, 41:16, 41:17, 44:5, 44:7, 45:18, 45:22, 46:21, 49:16, 52:4, 59:25, 60:4, 60:15, 60:19, 60:20, 61:9, 61:16, 61:22, 61:23, 61:23, 62:18, 63:19, 64:19, 65:3, 66:25, 67:7, 67:17, 67:26, 69:4, 77:9, 83:15, 86:17, 89:21, 90:2, 90:8, 90:10, 90:13, 91:6, 91:13, 92:2, 113:5, 113:7, 113:22, 113:23
**Honors (3):** 67:18, 67:20, 69:7
**Hope (4):** 24:22, 55:9, 55:10, 65:4
**Hoping (1):** 13:9
**Hostage (1):** 49:13
**Hour (1):** 86:15
**Hours (4):** 21:19, 22:6, 54:14, 54:14
**House (2):** 36:22, 37:4
**Household (1):** 85:8
**Housekeeping (1):** 67:17
**Huebscher (16):** 10:4, 10:8, 10:19, 10:22, 11:3, 11:6, 11:25, 19:25, 21:12, 22:14, 23:15, 23:19, 24:11, 25:7, 54:15, 54:17
**Huesbcher (1):** 54:20
**Huh (1):** 80:14
**Hundred (5):** 43:25, 85:23, 88:18, 89:17, 103:8
**Hundreds (5):** 56:23, 81:8, 83:14, 96:22, 99:21
**Hung (1):** 53:13
**Hurt (4):** 80:9, 81:4, 81:5, 112:9
**Hurts (1):** 74:18
**Husband (3):** 33:22, 78:2, 78:2
**Husbands (1):** 78:4
**Hypothetically (1):** 81:13

I

**IRS (3):** 23:3, 23:13, 24:8
**Id (6):** 29:17, 44:10, 65:23, 67:6, 68:2, 68:2
**Idea (2):** 26:11, 28:7
**Identified (1):** 22:8
**Idiot (2):** 76:24, 77:2
**Ignore (1):** 36:5
**Ignored (1):** 110:15
**Ignores (1):** 25:19
**Ignoring (2):** 47:22, 48:2
**Ill (21):** 18:22, 19:21, 32:10, 35:9, 46:16, 46:18, 49:4, 51:2, 51:14, 51:14, 52:7, 52:13, 53:12, 56:22, 67:16, 68:14, 85:22, 92:15, 99:19, 112:11, 112:20
**Illegal (3):** 49:25, 78:25, 79:2
**Im (154):** 13:4, 13:13, 13:21, 13:23, 14:2, 14:18, 15:2, 15:2, 15:5, 15:8, 15:10, 15:11, 15:17, 16:21, 17:4, 18:13, 18:24, 18:25, 19:8, 19:15, 20:4, 20:5, 20:7, 22:7, 22:9, 23:19, 23:21, 27:2, 27:3, 27:9, 27:11, 28:4, 28:9, 28:9, 28:19, 28:21, 28:22, 28:23, 30:9, 30:16, 31:14, 31:18, 32:4, 32:5, 32:5, 33:21, 34:13, 35:15, 36:7, 36:13, 36:19, 36:23, 36:23, 37:10, 37:17, 37:24, 38:8, 38:11, 38:13, 39:19, 39:21, 40:7, 40:7, 40:10, 40:13, 43:20, 45:2, 45:7, 46:8, 46:9, 48:4, 48:13, 48:16, 49:10, 50:11, 50:12, 51:23, 51:24, 51:24, 52:13, 53:6, 54:11, 54:21, 54:22, 55:2, 55:5, 56:4, 56:10, 56:24, 58:6, 58:7, 58:12, 59:19, 59:25, 60:8, 60:23, 60:24, 61:17, 62:6, 62:8, 62:10, 62:18, 63:25, 66:4, 66:15, 66:26, 67:8, 67:14, 68:21, 69:19, 69:20, 69:23, 70:13, 70:24, 71:12, 72:10, 77:5, 77:15, 79:23, 82:15, 83:16, 84:23, 85:9, 85:9, 86:4, 87:6, 88:4, 88:16, 88:20, 88:20, 90:13, 90:15,

91:5, 97:18, 99:7, 99:16, 100:3, 100:4, 100:17, 103:5, 103:8, 104:13, 104:13, 105:14, 105:20, 105:24, 106:10, 110:15, 110:23, 111:19, 111:21, 111:24, 111:24, 112:2
**Imagine (1):** 33:2
**Immediately (1):** 104:9
**Immense (1):** 49:7
**Impact (1):** 33:3
**Impair (1):** 37:6
**Impairing (1):** 35:23
**Impinge (1):** 38:12
**Impose (1):** 40:14
**Imposed (1):** 39:23
**Inappropriate (2):** 93:2, 93:3
**Inc (2):** 10:9, 12:5
**Incident (1):** 49:18
**Inclined (1):** 39:3
**Include (1):** 58:4
**Included (3):** 45:20, 45:21, 109:5
**Includes (2):** 38:21, 108:13
**Including (3):** 26:3, 36:15, 45:5
**Income (1):** 81:2
**Incredible (1):** 30:12
**Incurred (1):** 36:11
**Indefinite (2):** 39:16, 39:21
**Indemnification (2):** 28:23, 35:19
**Indemnified (1):** 52:2
**Independent (1):** 36:3
**Indicating (1):** 41:15
**Indiscernible (43):** 23:15, 47:14, 49:15, 50:19, 53:20, 53:22, 54:13, 66:18, 76:22, 79:21, 81:5, 86:4, 87:13, 88:5, 88:11, 93:15, 93:18, 93:22, 95:6, 95:7, 96:10, 98:14, 99:2, 100:10, 100:23, 101:4, 101:17, 101:20, 102:6, 103:5, 103:15, 104:3, 106:19, 106:20, 107:3, 107:12, 108:2, 109:20, 109:21, 110:2, 110:18, 111:20, 111:22
**Information (4):** 17:20, 46:2, 103:17, 108:15
**Injunction (18):** 18:15, 19:17, 30:11, 31:23, 33:10, 34:4, 38:26, 40:6, 41:3, 44:10, 59:10, 59:16, 65:17, 66:6, 66:15, 67:10, 72:25, 105:2
**Instance (1):** 109:13
**Instances (1):** 26:3
**Instead (4):** 44:11, 57:22, 88:24, 103:10
**Insubstantial (1):** 43:22
**Insurance (19):** 10:6, 10:11, 11:20, 11:26, 12:9, 19:4, 26:3, 26:5, 26:14, 27:3, 28:16, 28:23, 28:24, 29:11, 29:15, 97:6, 97:9, 97:12, 97:12
**Intend (2):** 44:25, 69:7
**Intents (1):** 39:18
**Interest (3):** 23:6, 43:17, 65:24
**Interests (1):** 42:20
**Interfere (1):** 84:11
**Interrogation (1):** 80:9
**Into (2):** 57:18, 64:5
**Introduce (1):** 10:20
**Investors (2):** 56:23, 59:2
**Involved (6):** 15:9, 17:5, 45:18, 70:13, 97:3, 104:9
**Irreconcilable (2):** 28:6, 61:21
**Irrelevant (2):** 50:15, 50:16
**Irreparable (1):** 30:5
**Is (272):** 10:21, 11:13, 11:14, 11:15, 11:17, 11:25, 12:24, 12:24, 12:26, 13:6, 13:9, 13:17, 14:5, 15:9, 15:21, 16:14, 16:16, 16:20, 17:3, 17:15, 17:19, 17:21, 18:3, 18:4, 18:4, 18:8, 18:8, 18:18, 18:20, 19:8, 19:8, 19:22, 20:16, 20:23, 20:26, 21:23, 22:17, 22:23, 23:20, 23:21, 23:21, 23:22, 24:5, 24:21, 25:4, 25:6, 25:9, 25:11, 25:12, 25:20, 26:5, 26:7, 26:11, 26:11, 26:20, 26:21, 26:22, 27:3, 27:12, 27:13, 27:15, 27:19, 28:13, 28:15, 28:18, 28:19, 28:20, 29:5, 29:8, 29:11, 30:4, 30:11, 30:18, 31:5, 31:5, 32:26, 33:8, 33:15, 34:5, 34:9, 34:13, 34:19, 35:8, 35:20, 35:22, 37:4, 37:5, 37:7, 37:13, 37:16, 37:17, 38:7, 38:12, 38:14, 38:19, 38:25, 39:3, 39:12, 39:17, 40:7, 40:12, 40:13, 40:15, 40:16, 40:21, 41:8, 41:13, 41:14, 41:14, 41:17, 42:2, 42:18, 42:21, 42:21, 42:22, 43:7, 44:3, 44:7, 44:7, 44:12, 44:13, 44:15, 44:15, 44:15, 44:20, 44:21, 45:6, 45:12, 45:24, 46:5, 47:12, 47:13, 49:8, 49:9,

49:20, 49:20, 50:5, 50:6, 50:16, 51:6, 52:4, 53:11, 53:12, 54:7, 54:17, 55:12, 55:18, 57:7, 57:12, 59:5, 59:23, 60:11, 60:13, 60:18, 60:20, 60:24, 61:13, 61:14, 61:24, 62:7, 62:11, 62:24, 63:16, 63:19, 63:21, 63:25, 64:2, 64:2, 64:7, 64:22, 65:22, 66:4, 67:25, 67:25, 68:12, 69:16, 70:2, 70:3, 70:8, 70:8, 71:5, 71:7, 71:12, 72:6, 72:7, 72:15, 72:23, 73:4, 73:23, 75:11, 76:6, 76:16, 76:17, 76:20, 77:14, 77:14, 77:15, 77:19, 77:20, 78:13, 78:21, 78:22, 79:2, 79:11, 80:7, 82:8, 83:3, 83:13, 83:13, 83:14, 83:17, 84:3, 84:4, 84:9, 84:11, 85:6, 86:4, 88:4, 88:10, 88:12, 88:14, 88:21, 88:22, 89:22, 91:7, 92:7, 93:2, 93:6, 93:12, 94:3, 94:3, 94:11, 95:2, 95:16, 95:16, 96:2, 96:20, 97:10, 97:11, 97:20, 98:16, 98:20, 99:24, 99:24, 99:25, 100:6, 100:9, 100:15, 101:19, 101:22, 102:8, 102:9, 104:9, 105:22, 106:2, 106:4, 106:5, 106:6, 106:11, 106:18, 106:18, 106:23, 106:24, 108:8, 108:23, 111:9, 112:2, 112:3, 112:10, 113:19, 113:21, 114:2

**Isnt (15):** 17:2, 27:18, 35:21, 38:8, 42:4, 51:26, 57:9, 77:12, 83:9, 88:8, 89:4, 109:2, 109:3, 109:3, 110:20

**Issue (30):** 12:21, 16:10, 16:14, 16:20, 16:24, 17:7, 17:21, 18:23, 19:5, 20:18, 20:25, 22:22, 25:9, 25:12, 25:20, 26:6, 26:6, 26:12, 27:4, 28:19, 29:11, 34:18, 37:13, 38:7, 43:7, 56:26, 57:3, 63:25, 69:26, 112:15

**Issues (17):** 15:15, 16:18, 16:18, 16:18, 24:16, 25:11, 30:17, 38:10, 47:9, 47:9, 47:12, 78:24, 82:8, 89:11, 89:14, 98:9, 99:22

**Itd (1):** 68:23

**Items (2):** 22:10, 23:11

**Itll (2):** 14:10, 24:4

**Ive (32):** 12:12, 13:7, 22:6, 26:12, 27:7, 28:13, 29:17, 29:21, 31:7, 32:12, 33:20, 33:25, 33:25, 37:18, 48:14, 53:6, 56:22, 57:14, 59:15, 63:5, 66:7, 73:10, 74:22, 77:7, 78:20, 82:9, 83:21, 84:2, 88:20, 92:13, 98:5, 103:17

J

**JEFFREY (104):** 10:1, 11:1, 12:1, 13:1, 14:1, 15:1, 16:1, 17:1, 18:1, 19:1, 20:1, 21:1, 22:1, 23:1, 24:1, 25:1, 26:1, 27:1, 28:1, 29:1, 30:1, 31:1, 32:1, 33:1, 34:1, 35:1, 36:1, 37:1, 38:1, 39:1, 40:1, 41:1, 42:1, 43:1, 44:1, 45:1, 46:1, 47:1, 48:1, 49:1, 50:1, 51:1, 52:1, 53:1, 54:1, 55:1, 56:1, 57:1, 58:1, 59:1, 60:1, 61:1, 62:1, 63:1, 64:1, 65:1, 66:1, 67:1, 68:1, 69:1, 70:1, 71:1, 72:1, 73:1, 74:1, 75:1, 76:1, 77:1, 78:1, 79:1, 80:1, 81:1, 82:1, 83:1, 84:1, 85:1, 86:1, 87:1, 88:1, 89:1, 90:1, 91:1, 92:1, 93:1, 94:1, 95:1, 96:1, 97:1, 98:1, 99:1, 100:1, 101:1, 102:1, 103:1, 104:1, 105:1, 106:1, 107:1, 108:1, 109:1, 110:1, 111:1, 112:1, 113:1

**JJ (2):** 89:15, 89:19

**Jackasses (1):** 78:10

**Jared (7):** 10:5, 10:7, 10:12, 11:24, 79:6, 80:12, 80:13

**Jay (1):** 98:8

**Jeff (2):** 56:22, 98:17

**Jeffrey (9):** 10:3, 10:4, 10:7, 10:9, 10:10, 10:16, 26:9, 55:13, 55:16

**Job (13):** 31:5, 47:12, 51:7, 54:10, 55:10, 73:4, 82:8, 84:17, 99:4, 99:7, 99:9, 99:19, 99:20

**Joe (1):** 106:6

**Joel (1):** 24:24

**John (1):** 10:13

**Joinder (1):** 78:17

**Joint (4):** 45:24, 49:12, 108:13, 109:7

**Jointly (1):** 108:23

**Jonathan (7):** 11:11, 51:26, 64:7, 73:24, 90:6, 91:3, 107:19

**Josh (4):** 11:19, 97:3, 97:4, 97:6

**Judge (22):** 24:24, 25:6, 25:9, 25:9, 25:10, 25:13, 25:15, 34:10, 45:23, 47:18, 73:7, 86:10, 86:12, 89:6, 89:15, 92:9, 99:22, 108:6, 108:14, 108:17, 110:12, 110:13
**Judges (1):** 55:19
**Judgment (6):** 35:21, 35:22, 36:20, 37:5, 41:20, 41:21
**Judgments (2):** 23:10, 43:16
**Judicial (8):** 34:11, 43:20, 50:17, 50:19, 52:16, 56:14, 94:6, 98:10
**Judiciary (1):** 47:12
**Julie (1):** 12:7
**Jurisdiction (3):** 17:15, 83:18, 83:21
**Justice (2):** 94:21, 100:9

K

**KOEVARY (40):** 11:11, 38:16, 39:15, 39:20, 39:21, 40:2, 41:13, 41:19, 41:21, 44:5, 44:18, 45:8, 64:7, 64:19, 64:23, 64:26, 65:3, 65:4, 66:25, 67:4, 67:6, 67:16, 67:24, 68:4, 68:6, 68:8, 68:13, 68:16, 68:25, 69:4, 69:12, 89:21, 90:2, 90:13, 90:15, 91:4, 91:5, 91:7, 113:5, 113:22
**KOEVERY (1):** 90:15
**Keep (13):** 36:26, 55:20, 76:14, 77:14, 94:15, 94:16, 96:14, 96:24, 99:20, 100:8, 103:9, 112:11, 112:17
**Keeping (1):** 63:20
**Keeps (2):** 90:15, 91:4
**Kevin (17):** 47:13, 51:20, 52:9, 55:15, 56:6, 56:21, 57:17, 58:12, 72:12, 75:18, 87:14, 87:16, 88:25, 89:8, 100:9, 109:4, 111:10
**Kicked (1):** 19:7
**Kid (1):** 102:5
**Kidding (2):** 50:4, 77:24
**Kill (1):** 51:24
**Kind (1):** 24:4
**Knew (1):** 97:7
**Knowing (2):** 31:12, 35:25
**Knows (8):** 19:10, 19:13, 58:2, 80:20, 85:10, 94:12, 94:12, 106:6
**Koevary (28):** 11:12, 31:4, 33:9, 33:20, 33:20, 37:24, 39:22, 45:7, 45:16, 46:7, 49:22, 52:19, 55:22, 55:22, 60:11, 64:7, 68:3, 69:2, 73:24, 89:2, 89:3, 90:2, 90:7, 91:3, 107:20, 111:6, 112:23, 113:3
**Koever (1):** 51:26
**Kurman (3):** 10:8, 10:12, 12:8

L

**LEVINE (1):** 12:7
**LLC (5):** 11:13, 11:15, 35:10, 44:9, 107:15
**LLP (3):** 10:8, 10:12, 10:12
**La (1):** 103:9
**Language (1):** 44:14
**Large (1):** 16:6
**Last (14):** 21:19, 39:13, 41:16, 42:4, 45:19, 66:26, 76:3, 76:15, 83:5, 86:13, 91:6, 108:16, 109:4, 109:7
**Later (5):** 22:22, 25:17, 33:11, 61:3, 74:13
**Law (9):** 30:3, 30:3, 30:4, 45:7, 76:23, 97:10, 108:20, 109:2, 109:3
**Lawful (1):** 56:15
**Laws (6):** 78:15, 78:16, 78:17, 81:23, 95:5, 95:7
**Lawsuit (1):** 95:3
**Lawsuits (1):** 77:9
**Lawyer (12):** 33:23, 44:19, 49:21, 51:7, 52:2, 55:18, 71:22, 71:23, 101:11, 101:14, 108:10, 109:21
**Lawyers (12):** 28:13, 29:16, 29:17, 49:21, 55:20, 55:21, 55:21, 74:2, 74:14, 87:5, 97:24, 99:23
**Lead (2):** 35:22, 41:23
**Leader (2):** 85:4, 88:20
**Least (3):** 42:22, 44:4, 66:5
**Leave (2):** 63:8, 63:8
**Led (1):** 56:20
**Left (2):** 22:11, 23:11
**Legal (9):** 15:15, 75:19, 86:20, 88:23, 99:24, 102:23, 104:14, 104:15, 104:16
**Lehrfield (1):** 50:3
**Lender (1):** 77:12
**Lenders (1):** 59:2
**Lengthy (1):** 64:8
**Lesley (1):** 101:14
**Lets (19):** 18:11, 46:15, 51:14, 52:9, 52:10, 52:16, 52:16, 56:2, 56:4, 56:4, 56:5, 64:13, 66:22, 72:15, 81:12, 84:25, 93:10, 93:11, 97:4
**Letter (5):** 13:2, 13:19, 97:5, 97:7, 110:6
**Letters (4):** 101:6, 101:13, 101:13, 101:14
**Level (2):** 22:12, 82:10
**Levine (1):** 12:7
**Liability (1):** 35:11
**Liable (1):**

35:21
**Lie (5):** 52:19, 52:19, 52:20, 111:23, 111:24
**Lied (2):** 86:17, 86:17
**Lien (1):** 23:3
**Lies (1):** 37:13
**Life (6):** 29:22, 74:2, 95:19, 103:3, 111:14, 112:4
**Lift (9):** 18:17, 20:10, 20:19, 80:8, 81:14, 93:16, 105:3, 105:3, 110:21
**Lifted (2):** 79:18, 86:14
**Lifting (6):** 70:18, 79:20, 79:21, 79:21, 79:22, 86:9
**Light (3):** 32:8, 49:8, 75:23
**Likelihood (2):** 69:24, 80:22
**Likely (2):** 24:9, 99:26
**Limited (6):** 16:21, 80:7, 83:18, 83:22, 84:10, 86:14
**Limits (1):** 92:10
**Linda (1):** 83:4
**Lindsay (5):** 12:4, 52:19, 63:19, 73:24, 101:13
**Line (4):** 11:13, 41:4, 59:17, 112:24
**List (1):** 29:16
**Listen (8):** 58:12, 58:13, 76:3, 77:16, 88:7, 92:13, 108:18, 108:19
**Listening (1):** 55:10
**Listens (2):** 112:12, 112:12
**Literally (11):** 16:16, 16:21, 25:15, 38:12, 72:3, 86:13, 86:17, 86:17, 86:18, 89:7, 98:6
**Litigant (1):** 60:9
**Little (3):** 56:18, 63:26, 100:3
**Live (9):** 28:10, 76:23, 77:6, 105:9, 105:9, 105:22, 105:23, 106:3, 106:3
**Lived (2):** 77:7, 105:21
**Livelihood (3):** 45:15, 49:6, 99:20
**Living (3):** 33:24, 81:2, 84:11
**Llcs (1):** 42:20
**Loan (2):** 106:10, 106:10
**Logging (1):** 64:22
**Logic (2):** 28:12, 28:13
**Long (3):** 24:15, 26:6, 29:16
**Look (14):** 17:20, 30:19, 32:14, 53:14, 74:10, 75:7, 75:10, 81:11, 81:22, 89:10, 102:15, 103:7, 108:12, 108:13
**Looked (5):** 22:6, 31:21, 31:25, 32:13, 35:26
**Looking (6):** 18:17, 30:12, 35:4, 38:24, 62:22, 69:10
**Looks (1):** 64:21
**Loop (2):** 28:22, 29:5
**Lose (1):** 19:10
**Lot (14):** 15:15, 30:17, 31:2, 33:21, 38:19, 43:11, 47:21, 59:19, 60:19, 60:25, 65:6, 65:6, 87:4, 87:4
**Loud (2):** 84:11, 85:13
**Love (5):** 49:21, 55:21, 55:21, 100:2, 100:2
**Lying (2):** 90:18, 100:9

M

**Main (1):** 12:5
**Major (2):** 25:2, 27:18
**Makes (10):** 15:16, 36:17, 59:19, 60:19, 61:4, 61:9, 61:10, 65:10, 67:22, 113:18
**Making (2):** 16:9, 72:3
**Malicious (4):** 81:10, 84:3, 84:5, 96:3
**Maliciously (1):** 83:23
**Man (3):** 24:24, 58:16, 86:17
**Manager (1):** 77:5
**Many (6):** 17:17, 28:13, 48:12, 88:2, 102:15, 103:12
**Marriage (4):** 78:7, 78:7, 78:11, 78:13
**Marty (4):** 10:18, 15:21, 19:24, 75:15
**Masters (1):** 84:21
**Matter (26):** 17:6, 17:8, 17:9, 17:15, 18:2, 20:4, 26:3, 26:5, 26:14, 27:14, 28:16, 29:15, 30:11, 30:22, 30:23, 34:9, 42:11, 45:7, 46:11, 56:25, 69:26, 74:9, 77:17, 77:20, 96:19, 101:18
**Matters (11):** 10:17, 12:22, 19:19, 26:5, 27:18, 51:8, 51:9, 51:9, 51:10, 64:17, 77:18
**May (16):** 10:14, 16:6, 19:10, 22:22, 24:19, 28:9, 33:12, 47:7, 53:2, 61:10, 67:17, 69:15, 84:5, 102:3, 111:2, 113:7
**Maybe (11):** 31:21, 35:5, 43:25, 45:22, 63:11, 63:14, 63:15, 75:3, 75:6, 84:12, 109:11
**Mean (21):** 16:24, 24:22, 38:17, 40:11, 65:4, 65:25, 70:6, 72:20, 72:20, 75:23, 81:18, 84:19, 95:14, 97:3, 97:6, 97:22, 97:24, 98:2, 105:11, 106:23, 108:18
**Meaning (2):** 37:11, 42:20
**Means (5):** 15:12, 78:6, 78:7, 81:13, 83:7
**Meanwhile (3):** 27:11, 67:11, 73:7
**Mechanic (5):** 84:17,

84:19, 84:21, 84:22, 84:24
**Mediating (1):** 74:9
**Mediation (3):** 74:4, 74:22, 75:5
**Mediator (1):** 74:6
**Members (1):** 102:22
**Mentioned (2):** 33:9, 36:24
**Merits (1):** 39:2
**Messages (3):** 75:21, 81:6, 81:21
**Michael (3):** 51:19, 114:2, 114:4
**Michelle (1):** 50:5
**Middle (2):** 49:24, 53:14
**Might (13):** 16:2, 31:22, 33:11, 34:24, 35:22, 43:4, 43:5, 43:5, 43:12, 47:8, 65:23, 102:7, 109:14
**Mill (2):** 44:9, 44:9
**Miller (1):** 50:5
**Million (3):** 35:5, 35:5, 43:25
**Millions (2):** 50:9, 83:14
**Mind (2):** 52:9, 84:20
**Mine (2):** 73:4, 92:7
**Minimize (1):** 60:18
**Minutes (4):** 45:21, 57:18, 57:22, 71:18
**Missing (2):** 18:25, 98:11
**Mister (3):** 90:7, 91:10, 99:17
**Moment (7):** 38:10, 44:4, 45:13, 49:8, 49:9, 93:16, 110:20
**Monday (1):** 63:15
**Monetary (1):** 45:6
**Money (21):** 23:12, 52:15, 73:11, 73:15, 74:14, 78:3, 79:12, 84:5, 87:4, 87:4, 87:15, 98:9, 98:16, 99:3, 99:10, 100:12, 100:14, 100:15, 102:23, 106:11, 112:9
**Monies (2):** 77:23, 101:11
**Montauk (1):** 20:8
**Month (1):** 39:4
**Months (8):** 13:8, 34:5, 54:16, 74:13, 75:17, 75:19, 88:6, 98:4
**More (29):** 18:16, 24:8, 26:18, 26:18, 35:6, 43:24, 46:8, 52:15, 52:15, 55:17, 55:20, 61:5, 62:13, 66:9, 77:9, 77:9, 84:22, 88:22, 88:23, 88:23, 88:23, 93:17, 94:6, 94:6, 94:6, 94:6, 96:15, 96:15, 110:24
**Morning (22):** 10:15, 10:18, 11:4, 11:5, 11:7, 11:8, 11:10, 11:11, 11:18, 11:19, 11:22, 11:23, 11:23, 12:3, 12:4, 12:7, 12:13, 12:14, 14:12, 14:20, 16:13, 21:15
**Mortgage (1):** 20:16
**Most (1):** 99:26
**Motion (61):** 12:15, 12:16, 12:17, 12:20, 12:25, 14:9, 15:9, 16:4, 16:14, 17:3, 18:17, 18:19, 18:20, 18:21, 19:3, 19:9, 20:10, 20:19, 24:20, 31:13, 33:10, 34:8, 35:8, 38:21, 39:14, 44:10, 44:12, 44:15, 44:23, 49:4, 50:14, 50:14, 50:18, 51:11, 51:11, 51:11, 51:11, 52:13, 55:8, 60:11, 60:22, 62:11, 63:5, 64:21, 65:23, 66:8, 67:19, 68:18, 68:24, 70:22, 70:23, 74:12, 88:13, 96:19, 103:9, 103:10, 103:10, 103:10, 103:10, 110:19, 113:8
**Motions (9):** 18:13, 59:21, 62:6, 63:23, 64:15, 65:14, 67:14, 74:12, 96:17
**Motors (1):** 21:11
**Mouth (1):** 90:4
**Move (13):** 18:11, 20:17, 30:8, 59:20, 62:10, 63:16, 63:24, 63:24, 64:12, 65:8, 95:11, 112:5, 113:2
**Moved (1):** 63:26
**Moving (2):** 22:3, 66:15
**Much (12):** 14:13, 16:4, 29:7, 31:19, 33:23, 56:11, 63:10, 63:11, 64:5, 72:22, 96:21, 99:9
**Multiple (2):** 50:13, 78:18
**Must (1):** 52:7
**Mute (1):** 55:3
**Myself (12):** 28:10, 30:21, 31:7, 33:21, 36:7, 37:10, 37:25, 38:9, 46:18, 51:2, 63:11, 110:6

N

**NJ (2):** 10:9, 12:5
**Name (2):** 70:7, 83:5
**Nature (2):** 54:20, 107:17
**Necessarily (2):** 15:12, 21:26
**Necessary (8):** 13:6, 28:21, 40:5, 45:14, 67:23, 71:9, 83:6, 102:12
**Need (28):** 14:8, 14:25, 14:26, 15:13, 16:23, 18:15, 21:26, 23:13, 31:11, 32:22, 47:2, 47:4, 47:6, 49:4, 49:26, 53:12, 55:17, 57:18, 62:2, 62:15, 74:2, 87:2, 103:5, 103:7, 104:8, 112:3, 112:21, 113:19

**Needed (1):** 62:23
**Needing (1):** 37:17
**Needs (3):** 26:16, 26:16, 29:15
**Nerve (1):** 52:8
**Nevertheless (1):** 33:25
**New (7):** 24:10, 44:19, 44:21, 51:3, 52:4, 104:7, 109:10
**News (1):** 21:23
**Next (3):** 18:21, 62:3, 102:5
**Nice (2):** 51:7, 112:21
**Nilly (1):** 110:9
**Nobody (6):** 53:22, 77:14, 77:15, 89:20, 103:14, 106:23
**None (5):** 59:5, 95:16, 95:16, 99:24, 99:25
**Nonsense (2):** 75:17, 87:6
**Nor (1):** 26:19
**North (2):** 23:6, 114:7
**Noted (2):** 31:4, 31:7
**Notice (9):** 14:14, 14:17, 19:13, 23:7, 34:12, 43:21, 52:6, 91:15, 107:24
**Notified (2):** 71:18, 71:19
**November (9):** 14:12, 14:19, 27:17, 63:13, 65:12, 66:26, 68:12, 97:8, 113:14
**Number (6):** 10:4, 21:17, 34:4, 43:10, 83:8, 112:24

O

**OSTROW (22):** 10:15, 14:18, 14:21, 15:24, 32:2, 32:14, 32:16, 33:5, 59:25, 60:15, 61:7, 61:9, 61:15, 61:19, 61:20, 62:18, 62:26, 63:12, 113:7, 113:13, 113:17, 113:23
**Oak (3):** 63:4, 63:20, 79:7
**Oakss (1):** 102:18
**Object (3):** 14:15, 54:11, 96:10
**Objection (12):** 13:15, 15:18, 15:22, 16:2, 18:11, 39:14, 75:8, 75:12, 86:14, 86:15, 86:17, 96:7
**Objections (5):** 25:16, 25:18, 54:8, 86:16, 100:18
**Obligated (1):** 30:17
**Obligation (2):** 48:8, 48:9
**Obligations (1):** 48:7
**Obviously (12):** 12:21, 13:5, 14:14, 15:15, 19:9, 22:18, 32:7, 34:18, 60:9, 65:10, 76:16, 112:23
**Occasions (1):** 50:13
**Occur (1):** 94:2
**Occurred (1):** 68:17
**Occurring (1):** 37:13
**Oclock (1):** 58:3
**October (4):** 39:17, 75:9, 111:8, 114:9
**Odds (1):** 61:10
**Off (5):** 15:5, 15:6, 19:22, 26:11, 34:4
**Offer (1):** 29:13
**Offered (1):** 46:12
**Office (5):** 16:7, 82:20, 83:3, 83:5, 87:19
**Officer (1):** 47:12
**Offit (3):** 10:8, 10:12, 12:8
**Olshan (1):** 11:12
**Once (1):** 97:23
**One (40):** 11:15, 11:16, 12:17, 19:6, 22:10, 26:2, 26:23, 27:2, 30:18, 30:19, 30:22, 33:22, 35:13, 40:15, 43:17, 48:14, 50:2, 58:12, 58:14, 63:4, 63:26, 66:8, 67:17, 70:14, 75:11, 78:13, 81:10, 85:23, 92:17, 95:17, 96:18, 97:20, 98:19, 103:3, 103:8, 103:8, 108:20, 109:5, 112:12, 112:14
**Ones (5):** 54:5, 54:6, 70:5, 91:6, 99:16
**Only (18):** 15:5, 15:25, 21:3, 21:8, 29:7, 34:22, 36:20, 37:6, 39:10, 40:22, 48:13, 65:20, 70:20, 76:11, 82:24, 83:17, 87:17, 94:23
**Operations (1):** 23:8
**Opinion (2):** 59:23, 104:3
**Opportunities (1):** 21:17
**Opportunity (6):** 13:20, 14:15, 45:3, 66:5, 66:8, 88:24
**Oppose (3):** 13:12, 30:7, 31:13
**Opposing (1):** 28:2
**Opposition (2):** 12:24, 113:9
**Option (4):** 40:11, 72:9, 72:10, 72:11
**Options (7):** 31:11, 59:10, 59:12, 59:18, 65:17, 66:21, 93:23
**Order (19):** 20:10, 23:16, 23:24, 25:6, 25:17, 46:2, 52:5, 62:6, 67:9, 83:22, 86:18, 90:9, 91:11, 92:9, 105:4, 108:14, 108:19, 109:11, 113:3
**Orders (9):** 24:24, 24:25, 25:2, 47:18, 47:19, 59:23, 69:26, 92:13, 112:24
**Ordinary (1):** 33:11
**Ostrow (36):** 10:15, 12:15, 14:9, 15:23, 19:12, 19:13, 28:5, 30:2, 30:6, 30:15, 31:26, 35:13,

39:6, 45:13, 45:13, 45:19, 45:20, 50:3, 59:4, 59:10, 59:24, 60:8, 60:23, 67:13, 68:21, 75:11, 75:13, 84:9, 87:20, 96:16, 96:16, 109:6, 111:7, 111:8, 112:23, 113:11
**Ostrows (2):** 20:14, 54:10
**Others (4):** 23:13, 33:24, 51:20, 65:8
**Otherwise (4):** 28:5, 28:5, 41:10, 87:12
**Out (19):** 18:23, 19:12, 23:3, 28:17, 35:20, 37:4, 37:24, 40:8, 50:8, 52:9, 57:25, 66:14, 67:12, 68:3, 72:22, 84:10, 84:19, 85:13, 88:24
**Outnumbered (1):** 103:8
**Outside (1):** 34:23
**Over (11):** 23:9, 26:12, 34:25, 75:15, 75:17, 76:11, 95:9, 95:9, 101:22, 111:11, 111:11
**Overwhelming (1):** 13:5
**Owed (4):** 36:12, 65:21, 84:5, 98:7
**Own (16):** 28:24, 57:20, 60:10, 70:21, 70:21, 73:10, 74:21, 76:9, 76:9, 76:18, 76:20, 77:3, 83:21, 92:19, 92:21, 97:5
**Owned (6):** 34:19, 34:20, 37:4, 42:18, 42:19, 76:10
**Owner (1):** 70:8
**Owns (11):** 34:15, 34:15, 34:16, 34:17, 35:24, 36:21, 42:3, 43:17, 43:24, 107:7, 107:9

P

**PA (2):** 10:8, 10:13
**PH (1):** 76:9
**Paid (3):** 22:18, 23:7, 77:23
**Papers (13):** 15:11, 15:13, 15:17, 16:19, 31:22, 34:7, 35:15, 35:15, 57:12, 57:14, 70:24, 73:22, 104:21
**Paretlow (1):** 11:13
**Paring (1):** 36:13
**Park (5):** 76:9, 76:16, 77:5, 105:19, 106:8
**Part (11):** 15:16, 24:3, 36:20, 43:13, 57:12, 70:8, 76:2, 94:21, 100:3, 104:9, 104:21
**Participate (1):** 71:17
**Parties (23):** 14:15, 14:23, 14:24, 15:9, 15:10, 19:21, 33:6, 35:9, 35:13, 35:17, 35:26, 36:14, 37:7, 37:21, 41:7, 41:20, 45:18, 63:15, 63:17, 92:17, 108:2, 108:9, 108:14
**Partner (1):** 25:2
**Parts (1):** 22:3
**Party (2):** 25:10, 36:3
**Passed (1):** 35:11
**Past (3):** 26:10, 26:10, 58:17
**Path (1):** 57:17
**Pause (2):** 62:4, 66:19
**Pay (7):** 23:20, 24:7, 28:15, 52:3, 52:4, 78:4, 84:12
**Penalizing (2):** 48:3, 48:4
**Penalties (1):** 23:6
**Pending (5):** 12:19, 12:19, 12:22, 44:3, 97:25
**People (41):** 25:16, 26:24, 26:24, 28:10, 29:2, 35:2, 43:11, 46:3, 46:6, 48:11, 49:6, 51:18, 52:17, 52:19, 53:13, 54:9, 56:5, 59:3, 59:3, 59:20, 59:22, 61:5, 69:25, 73:8, 73:21, 74:2, 77:16, 78:18, 81:23, 83:23, 85:22, 86:17, 88:18, 95:8, 102:13, 103:8, 103:12, 105:17, 106:3, 111:15, 112:10
**Percent (5):** 34:17, 34:17, 34:20, 36:21, 52:17
**Perfect (1):** 75:17
**Perfectly (1):** 14:6
**Perhaps (1):** 12:20
**Period (3):** 19:10, 86:15, 93:26
**Periods (1):** 21:19
**Perjury (4):** 16:3, 16:24, 17:2, 82:13
**Permission (1):** 20:11
**Permitted (2):** 32:8, 40:16
**Person (8):** 14:26, 22:15, 30:23, 66:16, 71:11, 87:2, 92:5, 102:12
**Personal (5):** 21:2, 21:10, 21:18, 98:5, 98:22
**Perspective (3):** 20:26, 23:19, 62:13
**Ph (1):** 101:14
**Phoenix (1):** 114:8
**Phone (2):** 36:26, 88:19
**Phonetic (2):** 73:7, 83:4
**Photos (1):** 22:8
**Phrase (1):** 35:10
**Pick (1):** 44:11
**Piece (1):** 88:25
**Pieces (1):** 81:8
**Place (7):** 36:4, 38:6, 42:24, 46:8, 51:4, 69:20, 82:18
**Plaintiff (2):** 33:3, 34:9
**Plan (4):** 67:20, 100:15, 100:16, 100:19
**Planning (2):** 38:20, 69:5

**Planted (1):** 25:15
**Play (3):** 51:7, 52:15, 54:14
**Pleadings (1):** 30:22
**Please (5):** 10:14, 49:3, 52:12, 90:10, 91:13
**Pled (6):** 16:21, 17:14, 17:21, 26:13, 34:8, 55:11
**Plumber (1):** 37:2
**Plus (2):** 102:12, 103:12
**Pockets (1):** 96:15
**Point (21):** 18:2, 18:5, 20:7, 21:13, 23:3, 23:5, 30:7, 41:6, 42:9, 44:26, 53:10, 75:3, 88:8, 88:10, 88:12, 88:14, 88:14, 102:8, 102:9, 113:10, 113:10
**Points (3):** 24:25, 38:22, 44:24
**Police (3):** 85:8, 94:14, 112:14
**Portion (3):** 23:22, 36:20, 41:18
**Position (11):** 20:20, 28:2, 32:3, 32:17, 34:14, 34:15, 34:26, 39:21, 45:16, 59:26, 108:10
**Positioned (1):** 72:5
**Possibility (1):** 20:16
**Possible (4):** 31:6, 31:23, 31:25, 33:8
**Possibly (6):** 15:4, 19:14, 32:18, 33:17, 56:13, 106:9
**Potential (1):** 38:19
**Potentially (7):** 35:3, 35:23, 36:4, 36:16, 41:11, 43:13, 59:17
**Powers (1):** 75:2
**Practical (2):** 72:16, 72:21
**Practically (1):** 31:6
**Precluding (2):** 40:25, 84:16
**Preclusion (2):** 38:21, 45:5
**Prejudice (1):** 61:23
**Prejudiced (1):** 55:5
**Prejudicial (1):** 52:13
**Preliminary (18):** 18:14, 19:17, 30:10, 31:23, 33:10, 34:4, 38:25, 40:5, 41:3, 44:10, 59:9, 59:16, 65:17, 66:6, 66:14, 67:10, 72:25, 105:2
**Premature (2):** 93:4, 93:6
**Premises (2):** 21:26, 22:21
**Present (7):** 32:26, 33:10, 45:16, 49:9, 51:13, 70:17, 72:8
**Presented (3):** 26:17, 35:8, 71:14
**Preserve (3):** 44:22, 44:23, 44:25
**President (1):** 105:20
**Presiding (1):** 97:14
**Presumably (1):** 64:4
**Pretends (1):** 89:19
**Pretrial (4):** 62:16, 62:26, 64:13, 75:4
**Pretty (7):** 14:13, 30:20, 31:18, 39:12, 40:12, 41:14, 63:10
**Principal (2):** 90:16, 91:5
**Prior (4):** 20:10, 43:19, 106:14, 106:15
**Privilege (4):** 108:4, 108:6, 108:7, 108:8
**Privileged (6):** 46:2, 108:15, 108:16, 108:17, 108:22, 109:2
**Pro (1):** 16:5
**Probably (10):** 12:20, 18:23, 32:22, 33:23, 65:10, 81:18, 102:20, 102:21, 103:14, 103:16
**Problem (20):** 19:20, 25:5, 25:21, 25:24, 34:2, 34:9, 35:20, 36:17, 40:7, 42:2, 46:16, 52:13, 61:14, 63:11, 71:5, 72:12, 84:12, 86:11, 97:2, 104:9
**Problems (1):** 88:23
**Procedure (9):** 30:13, 31:3, 31:18, 83:7, 88:23, 96:24, 96:24, 96:24, 107:10
**Proceed (2):** 32:20, 65:18
**Proceeding (26):** 10:5, 10:8, 10:8, 10:10, 10:13, 10:23, 11:21, 12:6, 15:9, 17:4, 18:25, 19:4, 19:26, 34:22, 40:25, 42:5, 44:3, 62:17, 63:4, 65:15, 65:22, 75:5, 79:16, 96:6, 106:14, 106:16
**Proceedings (10):** 11:15, 12:8, 12:19, 18:14, 19:23, 26:3, 73:22, 97:20, 113:24, 114:3
**Proceeds (2):** 21:4, 23:18
**Process (8):** 26:20, 38:11, 45:11, 48:5, 49:16, 70:19, 73:4, 83:7
**Profound (1):** 33:2
**Prohibited (2):** 92:12, 92:12
**Promised (1):** 17:20
**Prompt (1):** 44:20
**Proof (2):** 80:18, 95:15
**Proofs (1):** 102:13
**Proper (3):** 14:14, 56:8, 99:25
**Properly (1):** 94:2
**Property (32):** 21:2, 21:2, 21:6, 21:7, 21:8, 21:10, 21:18, 21:20, 21:21, 21:25, 21:25, 22:8, 22:11, 22:15, 22:15, 22:16, 22:20, 22:25, 23:12, 23:17, 23:21, 23:23, 23:24,

34:24, 34:26, 35:6, 35:26, 38:13, 42:3, 42:18, 43:18, 76:5
**Propose (1):** 100:15
**Prosecution (1):** 95:12
**Protecting (2):** 99:22, 99:23
**Protection (1):** 106:2
**Prove (3):** 90:5, 90:5, 95:13
**Provide (4):** 21:22, 22:5, 34:16, 69:16
**Provided (8):** 17:19, 17:23, 17:23, 22:18, 23:18, 24:5, 59:15, 113:15
**Providing (1):** 63:21
**Provision (3):** 35:19, 90:7, 90:8
**Publicly (1):** 29:17
**Pull (1):** 62:2
**Purchase (1):** 21:25
**Pursuant (1):** 20:10
**Pursuing (1):** 44:8
**Push (2):** 53:18, 72:22
**Pushing (1):** 26:11
**Put (15):** 13:15, 27:19, 32:11, 33:13, 36:3, 41:5, 42:24, 51:15, 52:7, 61:3, 64:5, 68:3, 71:10, 76:18, 109:17
**Puts (3):** 32:2, 32:17, 61:11
**Putting (2):** 19:22, 34:3

Q

**Quickly (1):** 32:23

R

**RUDEWICZ (1):** 11:8
**Raise (3):** 67:16, 68:8, 91:5
**Raised (5):** 13:7, 24:16, 26:12, 78:20, 91:5
**Raising (1):** 20:7
**Rather (3):** 29:17, 44:14, 75:14
**Re (1):** 10:3
**Read (35):** 35:7, 36:10, 47:17, 47:18, 48:13, 49:22, 54:18, 54:19, 54:22, 55:17, 57:12, 57:14, 58:16, 75:21, 76:12, 80:11, 81:19, 84:8, 85:13, 85:14, 85:14, 85:15, 85:16, 89:7, 89:8, 92:20, 97:6, 103:17, 103:19, 103:23, 104:4, 104:6, 104:6, 104:7, 108:20
**Reading (6):** 38:4, 38:5, 47:21, 81:9, 103:11, 103:22
**Ready (2):** 20:8, 46:9
**Real (18):** 10:6, 10:11, 11:12, 11:14, 11:15, 12:10, 34:23, 35:10, 35:25, 36:9, 36:10, 54:5, 54:7, 56:9, 72:14, 77:9, 85:3, 87:20
**Realistic (1):** 20:16
**Reality (14):** 58:18, 72:14, 80:20, 94:13, 103:4, 103:5, 103:5, 103:6, 111:16, 111:18, 111:21, 111:25, 111:25, 112:2
**Realize (2):** 34:8, 45:22
**Really (20):** 13:8, 13:13, 19:16, 19:18, 21:7, 22:11, 25:14, 30:16, 32:6, 32:6, 35:7, 35:8, 36:6, 37:18, 38:3, 47:2, 59:5, 59:18, 65:17, 95:17
**Reason (7):** 16:23, 19:22, 27:11, 38:2, 50:4, 60:17, 111:15
**Reasonable (4):** 28:11, 28:12, 64:11, 66:10
**Reasonably (1):** 44:20
**Reasons (1):** 65:6
**Received (1):** 23:7
**Receiver (16):** 10:19, 11:6, 15:21, 15:22, 15:22, 19:25, 20:2, 20:2, 20:7, 20:9, 20:17, 21:12, 21:16, 25:10, 25:11, 25:12
**Receivers (1):** 62:19
**Recently (1):** 23:7
**Recollection (1):** 35:3
**Reconsider (4):** 33:12, 39:14, 71:2, 71:3
**Reconsideration (1):** 67:19
**Record (17):** 13:21, 15:5, 15:6, 34:11, 35:4, 39:9, 39:12, 41:16, 43:20, 45:2, 47:17, 52:8, 55:19, 91:2, 110:4, 110:18, 114:3
**Recover (1):** 79:12
**Recusal (6):** 49:4, 49:16, 53:4, 55:5, 57:4, 99:19
**Recuse (3):** 49:3, 51:5, 52:12
**Red (1):** 59:11
**Refer (3):** 82:8, 82:16, 84:20
**Referral (1):** 83:22
**Referrals (1):** 94:25
**Referred (1):** 82:17
**Refuse (3):** 86:4, 89:2, 97:19
**Refused (3):** 17:24, 45:13, 99:8
**Regarding (1):** 35:9
**Regardless (1):** 96:19
**Relate (1):** 37:21
**Related (8):** 17:3, 26:9, 28:16, 36:16, 52:3, 99:9, 103:2, 106:8
**Relationship (2):** 30:6, 98:22
**Relevant (1):** 16:4
**Relief (4):** 16:17, 62:10, 80:8, 100:8
**Relies (1):** 82:3

**Relieved (1):** 71:25
**Remaining (1):** 21:25
**Remedies (2):** 30:19, 31:14
**Remember (1):** 83:5
**Remind (1):** 30:20
**Remove (1):** 21:17
**Removed (4):** 21:2, 21:20, 22:7, 24:2
**Reopening (1):** 109:14
**Reorganization (2):** 38:11, 80:22
**Reorganized (1):** 85:24
**Replaced (1):** 97:24
**Replies (1):** 64:4
**Reply (12):** 15:14, 16:3, 63:9, 63:12, 63:21, 64:6, 64:14, 67:19, 67:21, 67:25, 68:13, 70:23
**Report (2):** 49:18, 98:10
**Reported (2):** 84:2, 112:20
**Reports (1):** 22:5
**Represent (8):** 32:18, 32:20, 40:9, 40:18, 51:2, 60:5, 69:22, 108:10
**Represented (4):** 27:5, 60:7, 69:22, 94:18
**Representing (2):** 61:4, 108:9
**Repudiation (1):** 17:12
**Reputation (2):** 53:15, 105:16
**Request (1):** 13:12
**Require (2):** 71:16, 109:15
**Required (1):** 60:8
**Rescission (1):** 17:13
**Research (1):** 98:10
**Resident (1):** 77:21
**Resources (1):** 94:7
**Respect (22):** 19:19, 19:26, 30:10, 32:4, 36:19, 40:4, 40:21, 40:22, 40:22, 40:23, 40:26, 41:7, 57:25, 59:9, 59:14, 62:5, 62:9, 62:15, 62:15, 62:17, 65:20, 113:4
**Respectfully (8):** 16:9, 16:14, 27:5, 57:6, 58:13, 64:8, 98:3, 98:19
**Respond (4):** 50:6, 50:7, 96:17, 110:5
**Responded (1):** 46:19
**Responding (1):** 96:21
**Response (6):** 39:13, 62:12, 63:7, 63:25, 64:2, 64:3
**Responses (1):** 46:20
**Rest (5):** 18:13, 37:11, 40:23, 40:25, 113:21
**Restraining (1):** 105:4
**Restrictions (1):** 89:6
**Restructuring (1):** 100:11
**Result (4):** 31:17, 41:2, 60:21, 102:18
**Retained (1):** 10:16
**Retired (2):** 33:22, 78:3
**Rever (1):** 21:11
**Right (104):** 12:15, 14:7, 15:7, 19:8, 21:8, 22:14, 23:15, 24:14, 26:5, 26:24, 29:7, 29:14, 29:14, 30:9, 31:17, 32:5, 32:12, 33:19, 36:22, 36:24, 39:20, 40:2, 40:7, 40:19, 40:20, 40:20, 41:2, 42:3, 43:22, 44:23, 45:9, 45:10, 46:7, 47:7, 47:13, 47:14, 47:16, 48:3, 48:18, 48:18, 49:3, 49:22, 51:23, 52:10, 52:10, 53:5, 53:11, 53:12, 54:21, 55:8, 57:9, 59:7, 59:9, 60:2, 62:5, 62:12, 63:22, 64:15, 64:16, 65:15, 65:16, 66:2, 66:17, 67:3, 68:4, 68:14, 69:3, 72:15, 73:8, 76:16, 78:4, 79:3, 79:18, 80:2, 80:2, 81:13, 81:16, 82:3, 82:13, 82:14, 84:10, 84:25, 85:11, 88:5, 93:11, 93:20, 96:13, 98:8, 99:5, 99:10, 100:24, 102:3, 103:14, 103:23, 107:6, 107:17, 108:12, 109:6, 109:6, 110:17, 112:17, 112:22, 113:19, 113:20
**Rights (1):** 44:26
**Rip (2):** 51:2, 88:24
**Ripe (1):** 57:5
**Risk (1):** 42:22
**Rodas (1):** 10:20
**Role (1):** 20:2
**Rudewicz (2):** 11:9, 11:10
**Ruin (11):** 55:15, 55:16, 75:20, 78:10, 78:13, 80:9, 85:12, 85:13, 85:24, 87:15, 95:19
**Ruined (7):** 29:22, 45:15, 51:6, 88:20, 105:17, 111:19, 112:4
**Rule (18):** 15:11, 15:13, 15:17, 19:9, 20:4, 31:21, 56:13, 56:18, 56:25, 56:26, 57:2, 57:17, 65:23, 70:20, 70:24, 72:8, 106:5, 106:7
**Rules (7):** 30:13, 31:3, 31:17, 40:12, 61:2, 67:13, 72:11
**Ruling (9):** 12:19, 32:23, 45:24, 67:18, 67:20, 69:7, 71:13, 71:14, 71:16
**Rulings (1):** 73:7
**Run (1):** 77:7
**Rush (2):** 45:4, 69:6
**Ryan (1):** 11:13

S

**SCHWARTZ (2):** 11:23, 15:19
**SIMPSON (446):** 10:1, 11:1, 12:1, 12:12, 13:1, 13:2, 13:19, 13:23, 13:23, 14:1, 14:2, 14:4, 15:1, 15:25, 16:1, 16:9, 16:10, 16:12, 17:1, 17:5, 17:7, 17:10, 17:16, 17:18, 17:23, 18:1, 18:4, 18:6, 18:11, 19:1, 20:1, 21:1, 22:1, 23:1, 24:1, 24:19, 24:22, 25:1, 25:14, 25:20, 25:23, 26:1, 26:2, 26:3, 27:1, 27:2, 27:3, 27:7, 27:8, 28:1, 28:12, 29:1, 29:4, 29:5, 29:5, 29:10, 29:20, 30:1, 30:2, 30:4, 31:1, 32:1, 33:1, 34:1, 35:1, 36:1, 37:1, 38:1, 39:1, 40:1, 41:1, 42:1, 43:1, 44:1, 45:1, 45:11, 46:1, 46:9, 46:12, 46:15, 46:16, 46:17, 46:20, 47:1, 47:4, 47:6, 47:6, 47:9, 47:11, 47:17, 47:19, 47:22, 48:1, 48:3, 48:3, 48:5, 48:5, 48:8, 48:16, 48:18, 49:1, 49:3, 50:1, 50:11, 50:14, 50:14, 50:14, 51:1, 51:2, 52:1, 52:21, 52:24, 53:1, 53:3, 53:6, 53:8, 53:9, 53:11, 53:20, 53:22, 54:1, 54:5, 54:7, 54:7, 54:10, 54:13, 54:22, 55:1, 55:2, 55:4, 55:6, 55:8, 56:1, 56:12, 57:1, 57:3, 57:7, 57:9, 57:12, 57:15, 58:1, 58:8, 58:9, 58:11, 58:12, 58:12, 58:12, 58:13, 58:14, 59:1, 60:1, 61:1, 62:1, 63:1, 64:1, 65:1, 66:1, 67:1, 68:1, 69:1, 69:14, 69:16, 70:1, 70:6, 70:11, 70:13, 70:16, 70:18, 71:1, 71:3, 71:12, 71:22, 72:1, 72:2, 72:4, 72:9, 72:20, 73:1, 73:2, 73:6, 73:10, 73:15, 73:20, 73:23, 74:1, 74:2, 74:4, 74:10, 74:12, 74:15, 74:20, 75:1, 75:7, 75:9, 75:13, 76:1, 76:6, 76:8, 76:12, 76:20, 76:21, 77:1, 77:2, 77:5, 77:11, 77:18, 77:20, 77:23, 78:1, 78:2, 78:6, 78:9, 78:14, 78:20, 78:22, 78:24, 79:1, 79:4, 79:6, 79:14, 79:18, 79:20, 79:23, 80:1, 80:2, 80:5, 80:8, 80:11, 80:18, 80:23, 81:1, 81:2, 81:5, 81:8, 81:14, 81:16, 82:1, 82:3, 82:6, 82:11, 82:17, 82:19, 82:22, 83:1, 83:2, 83:12, 83:13, 83:16, 83:19, 83:23, 84:1, 84:6, 84:9, 84:15, 84:18, 84:26, 85:1, 85:3, 85:7, 85:12, 85:17, 85:20, 85:22, 86:1, 86:4, 86:4, 86:5, 86:9, 87:1, 87:4, 87:5, 87:8, 87:11, 87:13, 87:14, 88:1, 88:2, 88:5, 88:6, 88:10, 88:12, 88:14, 88:17, 89:1, 89:6, 89:14, 89:15, 89:19, 89:20, 89:22, 90:1, 90:2, 90:3, 90:6, 90:7, 90:14, 90:15, 90:17, 91:1, 91:6, 91:8, 91:10, 91:11, 91:13, 91:16, 91:18, 92:1, 92:2, 92:4, 92:7, 92:9, 92:11, 92:15, 92:18, 92:21, 93:1, 93:2, 93:7, 93:9, 93:16, 93:19, 93:21, 93:23, 93:25, 94:1, 94:5, 94:22, 94:24, 94:25, 95:1, 95:3, 95:4, 95:7, 95:8, 95:11, 95:13, 95:15, 95:17, 96:1, 96:2, 96:9, 96:11, 97:1, 97:19, 98:1, 98:4, 98:8, 98:15, 98:21, 98:23, 99:1, 99:3, 99:6, 99:8, 99:13, 99:16, 99:18, 100:1, 100:12, 100:16, 100:18, 100:19, 100:24, 101:1, 101:2, 101:5, 101:9, 101:17, 101:20, 101:24, 101:26, 102:1, 102:4, 102:5, 102:9, 102:10, 102:12, 102:15, 102:18, 102:22, 103:1, 103:5, 103:5, 103:7, 103:16, 103:23, 104:1, 104:4, 104:9, 104:10, 104:12, 104:15, 104:17, 104:20, 105:1, 105:3, 105:4, 105:7, 105:9, 105:13, 106:1, 106:2, 106:15, 106:21, 106:23, 107:1, 107:2, 107:4, 107:9, 107:11, 107:13, 107:16, 107:19, 107:23, 108:1, 108:2, 108:3, 108:4, 108:6, 108:12, 108:22, 109:1, 109:10, 109:12, 109:17, 109:19, 109:21,

109:22, 110:1, 110:3, 110:14, 110:18, 110:21, 110:24, 111:1, 111:4, 111:6, 111:18, 111:21, 111:23, 112:1, 112:4, 112:5, 112:8, 112:20, 113:1
**SOLOMON (104):** 10:1, 11:1, 12:1, 13:1, 14:1, 15:1, 16:1, 17:1, 18:1, 19:1, 20:1, 21:1, 22:1, 23:1, 24:1, 25:1, 26:1, 27:1, 28:1, 29:1, 30:1, 31:1, 32:1, 33:1, 34:1, 35:1, 36:1, 37:1, 38:1, 39:1, 40:1, 41:1, 42:1, 43:1, 44:1, 45:1, 46:1, 47:1, 48:1, 49:1, 50:1, 51:1, 52:1, 53:1, 54:1, 55:1, 56:1, 57:1, 58:1, 59:1, 60:1, 61:1, 62:1, 63:1, 64:1, 65:1, 66:1, 67:1, 68:1, 69:1, 70:1, 71:1, 72:1, 73:1, 74:1, 75:1, 76:1, 77:1, 78:1, 79:1, 80:1, 81:1, 82:1, 83:1, 84:1, 85:1, 86:1, 87:1, 88:1, 89:1, 90:1, 91:1, 92:1, 93:1, 94:1, 95:1, 96:1, 97:1, 98:1, 99:1, 100:1, 101:1, 102:1, 103:1, 104:1, 105:1, 106:1, 107:1, 108:1, 109:1, 110:1, 111:1, 112:1, 113:1
**ST (1):** 76:16
**Sad (1):** 85:18
**Sale (8):** 20:8, 20:11, 20:15, 21:2, 21:10, 22:22, 22:24, 101:11
**Sales (2):** 23:7, 24:7
**Same (6):** 56:23, 65:6, 75:13, 87:5, 95:18, 96:23
**Sanction (7):** 40:10, 40:13, 47:9, 47:9, 58:5, 67:14, 86:5
**Sanctioned (2):** 58:8, 58:12
**Sanctioning (4):** 52:8, 58:6, 58:7, 86:7
**Sanctions (11):** 38:19, 38:21, 44:23, 45:5, 45:6, 60:22, 65:23, 66:8, 68:18, 110:19, 110:22
**Sandbox (1):** 51:8
**Sanity (1):** 74:2
**Saw (1):** 99:13
**Saying (15):** 23:22, 25:17, 39:15, 46:8, 60:24, 72:14, 76:14, 77:14, 83:16, 86:15, 89:8, 105:23, 105:24, 110:11, 112:2
**Scared (4):** 50:7, 56:21, 56:24, 107:21
**Schedule (15):** 13:14, 14:8, 14:9, 15:2, 27:15, 28:19, 33:11, 45:2, 64:8, 65:9, 68:26, 70:19, 70:20, 72:15, 113:2
**Scheduled (4):** 14:12, 27:14, 27:17, 31:10
**Schedules (8):** 34:16, 36:22, 65:5, 70:5, 70:7, 70:8, 76:2, 92:7
**Scheduling (4):** 12:17, 66:17, 70:21, 72:13
**School (1):** 73:23
**Schwartz (8):** 11:24, 12:5, 50:14, 63:20, 80:11, 95:9, 95:11, 95:17
**Schwartzs (1):** 20:22
**Screwed (1):** 100:4
**Scumbag (2):** 50:14, 90:18
**Se (1):** 16:5
**Second (6):** 12:18, 18:22, 19:18, 49:17, 62:2, 67:25
**Sections (1):** 30:13
**Seeing (1):** 39:15
**Seek (2):** 29:5, 57:3
**Seeking (5):** 12:16, 12:25, 38:20, 65:21, 96:6
**Seem (5):** 14:22, 60:25, 69:3, 106:21, 108:15
**Seeming (1):** 39:9
**Seems (10):** 14:15, 22:14, 32:16, 40:17, 41:2, 41:9, 63:5, 64:10, 66:9, 68:10
**Sell (6):** 100:19, 100:20, 100:21, 100:22, 101:10, 101:26
**Send (8):** 13:2, 83:3, 92:15, 94:19, 103:13, 103:13, 103:16, 111:11
**Sending (1):** 69:10
**Sense (15):** 14:22, 15:16, 40:8, 59:4, 59:20, 60:2, 60:20, 60:25, 61:5, 61:9, 61:10, 65:10, 65:12, 67:22, 113:18
**Sent (10):** 54:18, 82:19, 92:13, 100:16, 101:5, 101:12, 101:13, 101:14, 103:17, 103:22
**Separate (2):** 27:16, 79:9
**Serious (1):** 71:5
**Serve (1):** 14:17
**Services (1):** 34:24
**Set (2):** 18:24, 69:5
**Seven (2):** 21:19, 113:11
**Several (1):** 13:8
**Shake (1):** 59:3
**Share (2):** 16:2, 16:5
**Shares (1):** 84:10
**Shes (1):** 78:9

**Shouting (1):** 54:7
**Shove (1):** 81:5
**Show (24):** 30:18, 30:23, 31:15, 39:2, 47:10, 49:26, 54:19, 58:8, 59:22, 59:22, 61:2, 61:6, 66:3, 69:24, 69:25, 80:13, 80:13, 90:6, 90:7, 90:8, 97:17, 109:10, 109:19, 110:9
**Showing (3):** 33:12, 66:12, 89:9
**Shown (2):** 38:26, 73:10
**Shut (4):** 90:2, 90:2, 90:4, 91:8
**Side (2):** 35:2, 35:13
**Significant (1):** 42:26
**Simco (22):** 26:12, 34:11, 34:18, 34:19, 34:21, 36:20, 36:21, 37:4, 37:14, 37:20, 39:9, 41:8, 41:19, 42:8, 42:19, 43:5, 43:24, 43:26, 44:8, 65:19, 70:8, 106:18
**Simcos (2):** 37:15, 42:10
**Simple (2):** 13:17, 73:17
**Simply (6):** 44:14, 47:13, 47:22, 72:11, 72:13, 78:9
**Simpson (166):** 10:3, 10:4, 10:7, 10:8, 10:9, 10:10, 10:16, 10:22, 11:3, 11:15, 11:16, 11:25, 11:26, 12:9, 12:11, 12:14, 12:24, 12:25, 12:26, 13:10, 13:22, 14:6, 15:8, 15:24, 16:9, 16:13, 17:2, 19:9, 21:5, 21:17, 21:20, 22:4, 22:7, 22:9, 22:24, 23:8, 24:21, 26:3, 26:9, 27:2, 27:8, 29:8, 29:19, 30:2, 30:4, 30:8, 30:18, 32:26, 33:19, 34:20, 34:20, 35:17, 40:9, 41:4, 42:7, 42:10, 42:19, 42:20, 43:6, 43:8, 43:22, 44:21, 45:9, 45:10, 46:9, 46:11, 46:20, 47:3, 47:16, 47:19, 48:3, 48:16, 50:14, 50:14, 52:21, 52:23, 53:9, 53:20, 54:21, 55:2, 55:13, 55:16, 56:10, 56:22, 57:2, 57:10, 57:19, 58:13, 59:8, 59:16, 60:4, 60:14, 60:17, 60:20, 60:26, 61:10, 65:24, 67:11, 69:13, 69:20, 70:24, 71:20, 72:6, 72:24, 73:10, 73:13, 73:18, 74:2, 74:3, 74:15, 75:6, 76:12, 77:11, 78:2, 78:5, 78:19, 80:11, 80:16, 81:8, 81:12, 82:16, 82:19, 83:2, 83:11, 83:16, 84:14, 85:21, 86:4, 86:7, 86:19, 87:23, 88:8, 89:11, 90:12, 90:14, 91:11, 91:13, 91:17, 92:3, 92:11, 92:15, 92:16, 92:21, 93:14, 94:17, 95:17, 95:20, 96:5, 97:22, 98:19, 99:12, 100:11, 100:25, 102:7, 103:21, 104:9, 104:11, 104:13, 106:13, 107:22, 108:22, 109:15, 110:17, 110:23, 111:17, 112:22
**Simpsons (13):** 22:16, 23:12, 23:17, 23:17, 23:18, 23:23, 24:7, 34:14, 34:16, 37:6, 44:3, 59:11, 113:15
**Single (1):** 70:13
**Sit (1):** 58:11
**Sitting (4):** 21:7, 28:26, 43:12, 75:16
**Situation (11):** 13:5, 18:7, 28:20, 30:15, 31:9, 33:15, 34:6, 44:2, 45:15, 49:11, 103:7
**Six (5):** 21:19, 74:13, 105:14, 105:18, 111:15
**Sleep (1):** 37:26
**Slightly (1):** 44:6
**Smart (1):** 100:4
**Sold (5):** 21:5, 22:25, 24:2, 24:4, 101:15
**Solomon (5):** 10:3, 10:4, 10:9, 10:10, 10:16
**Solution (5):** 13:9, 13:10, 72:17, 72:22, 72:23
**Solutions (1):** 72:21
**Solve (1):** 100:7
**Solved (1):** 100:6
**Solves (1):** 20:18
**Somebody (4):** 15:3, 19:11, 22:23, 36:8
**Someone (10):** 61:4, 77:11, 77:20, 80:3, 84:4, 84:11, 84:16, 85:6, 85:24, 112:11
**Somewhere (3):** 41:4, 43:9, 59:17
**Son (1):** 105:14
**Soon (1):** 31:6
**Sorry (22):** 12:12, 13:2, 14:18, 15:8, 25:7, 27:3, 27:9, 28:10, 30:8, 33:19, 41:8, 46:9, 54:21, 54:22, 61:8, 62:18, 63:23, 64:16, 67:8, 69:9, 88:4, 105:12
**Sort (2):** 21:23, 22:12
**Sought (1):** 37:12
**Sound (1):** 45:4
**Speak (5):** 21:12, 58:4, 65:9, 86:6, 101:11
**Speaking (1):** 86:8
**Specific (2):** 17:7, 52:6

**Specifically (2):** 39:8, 57:18
**Specificity (1):** 22:12
**Specifics (1):** 85:20
**Spend (5):** 55:20, 74:14, 75:14, 87:15, 103:11
**Spent (4):** 30:11, 47:21, 96:21, 103:21
**Spoke (2):** 82:23, 110:7
**Sponte (1):** 44:13
**Spot (1):** 80:7
**Spouse (1):** 77:24
**Square (1):** 53:14
**Stand (3):** 51:15, 75:16, 100:8
**Standing (1):** 50:11
**Stands (1):** 21:9
**Start (4):** 40:16, 49:16, 54:8, 81:9
**Started (1):** 57:16
**State (16):** 16:17, 20:11, 24:8, 24:9, 24:9, 24:9, 52:5, 78:10, 82:10, 98:2, 103:18, 104:7, 105:5, 109:2, 109:2, 109:10
**Stated (1):** 26:10
**States (1):** 11:9
**Status (1):** 22:5
**Statute (2):** 69:21, 82:15
**Stay (15):** 12:18, 18:18, 20:10, 20:19, 36:3, 39:10, 42:24, 43:2, 43:3, 62:9, 62:23, 79:17, 80:2, 80:4, 86:14
**Stayed (2):** 18:18, 18:19
**Staying (1):** 62:6
**Steal (1):** 100:20
**Still (18):** 13:4, 22:4, 22:10, 22:15, 22:20, 23:23, 27:5, 27:21, 30:17, 38:23, 43:11, 44:4, 45:3, 52:7, 60:7, 97:26, 99:3, 100:11
**Stole (1):** 49:23
**Stolen (1):** 89:9
**Stop (7):** 39:17, 54:7, 79:14, 83:3, 93:9, 100:21, 107:17
**Stopping (2):** 75:11, 85:6
**Store (1):** 73:16
**Story (1):** 17:2
**Street (1):** 114:7
**Stricken (1):** 47:8
**Strike (10):** 30:22, 32:10, 40:10, 41:10, 48:6, 60:11, 60:21, 66:3, 66:10, 69:23
**Striking (2):** 38:21, 45:5
**Stuff (6):** 15:3, 52:7, 89:9, 98:11, 103:13, 103:23
**Sua (1):** 44:13
**Subject (2):** 22:18, 46:16
**Subpoena (3):** 32:25, 50:6, 50:7
**Substance (1):** 52:25
**Success (1):** 80:22
**Successful (1):** 86:2
**Sue (3):** 49:23, 102:4, 102:5
**Sued (4):** 55:12, 87:2, 92:17, 103:3
**Sufficient (2):** 68:12, 88:6
**Suggested (1):** 98:6
**Suggesting (1):** 88:22
**Suggestion (2):** 53:16, 60:25
**Suing (3):** 77:8, 84:4, 95:8
**Suite (1):** 114:7
**Supposed (6):** 19:6, 21:4, 25:11, 49:14, 52:4, 82:15
**Sure (21):** 13:23, 14:2, 16:9, 20:3, 28:18, 33:21, 37:10, 37:17, 38:8, 46:15, 56:7, 59:19, 60:12, 65:25, 67:14, 71:22, 71:22, 73:2, 73:23, 90:15, 113:15
**Surgery (2):** 31:7, 110:5
**Surmising (1):** 43:18
**Surprise (2):** 31:24, 45:12
**Surprised (1):** 30:20
**Surrendering (1):** 51:24
**Suspect (1):** 23:5
**System (5):** 75:18, 82:2, 88:21, 88:22, 103:2

T

**TRO (33):** 18:15, 19:16, 30:10, 32:12, 33:9, 34:3, 34:5, 36:7, 36:18, 37:26, 39:16, 39:17, 39:17, 39:22, 39:23, 40:21, 41:18, 44:7, 59:14, 62:9, 65:18, 67:9, 69:18, 70:18, 70:24, 72:24, 79:25, 81:14, 86:10, 93:16, 104:17, 104:18, 113:4
**Table (3):** 35:2, 56:5, 104:10
**Talk (9):** 19:2, 25:2, 26:2, 29:16, 83:9, 84:19, 97:4, 112:14, 112:14
**Talked (2):** 28:13, 29:18
**Talking (8):** 38:12, 76:15, 77:13, 84:20, 91:4, 95:3, 105:12, 112:15
**Tax (2):** 23:7, 79:3
**Taxes (1):** 24:7
**Taxpayers (1):** 94:8
**Teacher (1):** 73:23
**Technicality (1):** 71:6
**Telling (6):** 15:2, 23:19, 51:23, 87:14, 104:13, 104:14
**Tells (2):** 15:3, 43:21
**Temporary (1):** 92:9
**Ten (4):** 47:19, 54:16, 57:17, 74:2

**Tens (1):** 50:9
**Terms (2):** 26:16, 66:10
**Testify (2):** 32:8, 60:21
**Testimony (11):** 34:22, 40:10, 47:8, 60:12, 60:13, 66:3, 66:13, 69:23, 71:14, 85:14, 85:14
**Thankfully (1):** 33:22
**Thanks (1):** 103:2
**Thanksgiving (1):** 67:2
**Thatd (1):** 72:16
**Thatll (2):** 23:24, 24:2
**Thats (156):** 13:7, 13:13, 13:17, 13:17, 13:18, 14:5, 14:12, 14:13, 15:4, 15:7, 16:22, 17:2, 17:4, 17:9, 17:14, 18:25, 19:13, 19:16, 19:20, 20:5, 20:15, 21:3, 21:4, 21:7, 21:7, 21:23, 21:25, 22:12, 22:12, 22:16, 25:5, 25:8, 25:8, 25:12, 25:14, 27:10, 27:14, 27:15, 28:7, 30:9, 30:22, 31:23, 31:25, 33:4, 35:11, 36:6, 36:13, 36:21, 37:7, 37:12, 37:16, 37:23, 38:2, 38:9, 38:13, 40:12, 40:19, 41:22, 41:23, 43:2, 43:13, 43:20, 44:2, 44:2, 44:10, 45:2, 45:7, 45:15, 47:7, 50:4, 53:5, 53:7, 53:10, 54:10, 55:5, 55:19, 56:14, 56:14, 56:19, 56:20, 57:20, 62:13, 62:16, 62:19, 62:21, 62:23, 62:24, 63:3, 63:4, 63:7, 64:2, 64:10, 65:12, 65:13, 65:15, 65:24, 66:2, 66:15, 69:4, 69:5, 70:10, 70:15, 72:19, 72:21, 74:19, 78:6, 78:7, 79:8, 79:16, 82:2, 82:6, 82:22, 83:2, 83:6, 85:7, 85:19, 87:16, 88:4, 88:21, 89:5, 89:9, 92:9, 93:19, 94:10, 95:19, 96:2, 96:5, 96:7, 96:8, 97:2, 97:16, 98:2, 98:3, 98:10, 98:17, 98:17, 99:5, 99:10, 101:7, 101:25, 102:5, 104:5, 104:22, 105:6, 106:4, 106:5, 107:15, 110:9, 110:16, 111:2, 111:9, 111:24, 112:13, 112:13, 112:16, 113:10
**Theft (1):** 104:7
**Therefore (1):** 42:15
**Theres (78):** 13:7, 13:20, 16:15, 16:16, 16:16, 16:23, 17:5, 18:11, 18:23, 18:24, 19:21, 21:6, 22:3, 22:3, 22:10, 22:15, 22:20, 22:22, 23:23, 25:11, 25:20, 26:23, 29:7, 32:7, 32:25, 33:6, 34:5, 34:18, 35:12, 35:25, 36:9, 37:4, 37:13, 38:5, 40:11, 40:13, 41:23, 42:2, 42:4, 43:11, 43:21, 44:18, 44:19, 44:24, 46:2, 47:19, 49:6, 49:20, 51:8, 52:15, 52:15, 55:15, 62:14, 62:22, 62:26, 63:11, 64:20, 66:8, 73:18, 76:13, 76:16, 76:23, 78:17, 81:8, 83:9, 83:10, 86:11, 86:16, 90:17, 95:4, 98:16, 106:6, 106:24, 107:2, 107:6, 108:19, 110:19, 112:8
**Theyll (2):** 94:19, 100:20
**Theyre (34):** 14:24, 16:19, 22:16, 24:10, 24:10, 30:20, 34:8, 52:4, 52:18, 56:21, 59:22, 74:11, 75:21, 76:4, 76:4, 76:7, 77:8, 79:15, 81:13, 84:3, 84:5, 84:17, 85:10, 85:12, 85:18, 85:19, 89:9, 94:21, 96:6, 96:12, 98:12, 98:12, 108:9, 108:22
**Theyve (31):** 26:10, 26:10, 26:19, 28:26, 35:13, 50:9, 50:10, 51:20, 53:14, 56:17, 57:7, 57:15, 78:11, 79:7, 80:18, 81:4, 81:5, 81:20, 82:7, 82:11, 85:12, 89:9, 94:18, 97:16, 97:20, 104:6, 104:8, 104:18, 104:20, 108:9, 111:18
**Thinking (4):** 30:13, 63:25, 109:11, 112:17
**Third (3):** 36:3, 62:12, 68:16
**Thirteen (1):** 22:6
**Thirty (4):** 28:14, 102:12, 102:13, 103:12
**Thorne (1):** 101:14
**Though (4):** 29:8, 42:15, 71:8, 108:15
**Thought (11):** 31:21, 33:21, 33:25, 34:2, 34:3, 35:2, 39:8, 41:15, 41:21, 44:15, 63:3
**Thousands (1):** 99:21
**Threat (2):** 111:9, 111:9
**Threatened (1):** 56:7
**Threatening (2):** 101:13, 101:14
**Threatens (1):** 111:11
**Three (17):** 48:10, 48:10, 48:11, 48:12, 49:13, 50:9, 53:22, 55:13, 56:7, 56:21, 75:10, 78:20, 79:7, 95:18, 95:19, 101:20, 108:21
**Thrilled (1):** 51:13
**Thursday**

**(12):** 30:18, 46:14, 50:18, 51:13, 56:4, 59:13, 59:19, 61:7, 61:8, 61:8, 65:18, 65:22
**Till (3):** 19:22, 54:18, 69:2
**Timely (2):** 24:8, 31:8
**Times (7):** 12:12, 17:17, 48:12, 82:7, 88:2, 92:14, 108:21
**Timing (1):** 26:5
**Tired (3):** 52:13, 53:6, 55:5
**Today (19):** 43:12, 44:7, 50:6, 51:14, 56:18, 56:19, 67:10, 67:19, 67:20, 67:26, 68:10, 72:3, 72:5, 74:16, 75:24, 80:14, 112:25, 113:3, 113:20
**Todays (2):** 70:19, 70:20
**Together (3):** 54:20, 79:9, 100:4
**Told (30):** 26:15, 47:11, 50:2, 54:15, 54:16, 55:16, 57:20, 59:13, 61:13, 70:19, 75:15, 79:8, 82:6, 82:8, 82:17, 82:22, 83:2, 83:6, 85:8, 87:22, 94:14, 94:24, 97:17, 98:6, 98:15, 99:8, 99:10, 107:22, 111:6, 111:7
**Tomorrow (4):** 44:7, 75:8, 80:3, 97:23
**Tonight (1):** 51:14
**Tool (1):** 16:5
**Total (1):** 36:3
**Tougher (1):** 30:11
**Towards (1):** 24:5
**Train (1):** 83:3
**Transcriber (1):** 114:5
**Transcript (4):** 73:12, 92:20, 94:19, 114:2
**Tremendous (1):** 103:21
**Trial (1):** 104:8
**Tried (3):** 12:12, 80:11, 100:22
**Troing (1):** 86:9
**Trophy (1):** 110:22
**Trouble (1):** 34:13
**True (8):** 33:4, 74:19, 87:10, 102:7, 102:17, 102:20, 105:6, 114:3
**Trust (2):** 31:20, 57:21
**Trustee (10):** 11:9, 19:25, 34:23, 36:2, 42:7, 43:3, 43:4, 53:18, 98:9, 98:24
**Trustees (6):** 42:9, 55:9, 82:20, 83:4, 94:18, 98:17
**Truth (10):** 48:9, 48:10, 51:8, 51:9, 52:16, 52:17, 52:18, 58:12, 86:6, 90:18
**Try (8):** 29:18, 44:11, 99:26, 100:21, 100:21, 101:26, 102:4, 106:3
**Trying (10):** 13:4, 22:7, 28:3, 37:24, 40:7, 78:13, 85:10, 85:12, 85:24, 97:9
**Turn (1):** 31:14
**Turning (1):** 59:11
**Turnover (2):** 26:17, 26:17
**Turns (2):** 35:20, 37:3
**Twenty (3):** 28:14, 57:22, 85:22
**Two (33):** 11:14, 12:8, 14:13, 15:10, 18:21, 21:19, 22:10, 25:16, 25:17, 27:16, 28:17, 28:26, 34:7, 38:23, 39:8, 40:22, 40:26, 46:3, 54:7, 55:6, 59:10, 64:8, 64:10, 70:7, 76:8, 76:10, 84:21, 97:7, 97:7, 101:7, 101:23, 108:21, 111:7
**Types (2):** 76:23, 78:17

U

**Unaffiliated (1):** 78:9
**Uncomfortable (1):** 43:15
**Under (13):** 13:16, 14:11, 26:12, 26:15, 26:16, 31:6, 31:19, 32:18, 32:21, 32:25, 65:21, 69:21, 92:2
**Understands (1):** 113:2
**Understood (9):** 20:6, 23:2, 24:11, 24:13, 24:17, 61:25, 68:6, 69:9, 110:5
**Undisputed (1):** 14:11
**Unfair (1):** 44:16
**Unfortunately (6):** 13:11, 29:21, 30:5, 36:26, 71:21, 105:13
**Ungodly (1):** 49:20
**Unit (2):** 105:19, 106:8
**United (1):** 11:9
**Unless (5):** 14:23, 14:24, 51:24, 51:24, 75:22
**Unprepared (1):** 32:5
**Unquestionable (1):** 105:21
**Unreasonable (2):** 60:26, 63:7
**Untenable (3):** 32:3, 32:17, 59:26
**Up (40):** 13:13, 16:13, 19:15, 26:4, 30:12, 30:18, 30:23, 31:15, 33:12, 47:10, 50:11, 51:12, 53:2, 56:20, 58:4, 58:8, 59:22, 59:22, 61:2, 61:6, 62:2, 66:3, 66:12, 69:24, 69:25, 73:21, 80:13, 80:13, 90:2, 90:3, 92:18, 92:18, 96:16, 97:15, 97:18, 98:2, 98:3, 100:9, 109:19, 110:9
**Updated (1):** 16:8

**Urgency (3):** 19:19, 37:17, 37:19
**Use (4):** 35:9, 46:6, 51:3, 78:3
**Used (1):** 75:19
**Using (1):** 54:16

V

**Vacate (4):** 32:12, 39:14, 59:15, 65:18
**Vacating (5):** 34:3, 36:7, 36:17, 37:26, 67:9
**Valid (1):** 60:17
**Value (11):** 22:17, 34:24, 36:4, 36:13, 37:6, 37:14, 37:15, 38:14, 43:4, 43:4, 43:12
**Various (2):** 12:18, 19:4
**Verbatim (1):** 74:21
**Versus (1):** 10:4
**Via (1):** 16:5
**Victimized (1):** 27:2
**Video (1):** 22:6
**View (2):** 39:16, 59:25
**Viewpoint (2):** 111:2, 111:4
**Villain (1):** 58:18
**Villains (1):** 50:12
**Vindictive (13):** 54:20, 78:15, 81:10, 85:19, 86:10, 93:17, 95:3, 95:4, 96:4, 96:11, 96:20, 103:9, 112:10
**Vindictively (2):** 95:8, 104:20
**Violated (1):** 81:23
**Voluntarily (1):** 32:24
**Vomit (2):** 51:18, 81:19
**Vouch (1):** 33:22

W

**Wait (2):** 54:18, 110:21
**Waiting (2):** 22:2, 22:4
**Wake (3):** 51:11, 92:18, 92:18
**Wants (11):** 29:13, 29:14, 33:16, 41:9, 51:7, 53:22, 55:18, 56:6, 60:4, 66:6, 67:26
**Wasnt (11):** 19:6, 24:2, 35:16, 42:4, 72:4, 85:25, 87:22, 98:9, 99:10, 108:17, 109:5
**Waste (2):** 75:19, 96:22
**Wasted (1):** 94:7
**Wasting (3):** 75:16, 94:8, 99:21
**Watch (2):** 50:14, 50:14
**Watched (1):** 50:14
**Watching (1):** 85:9
**Water (2):** 44:9, 44:9
**Watermill (4):** 39:9, 41:8, 42:20, 65:19
**Way (15):** 15:5, 27:2, 27:3, 39:4, 44:14, 45:16, 71:15, 74:9, 77:8, 88:9, 89:15, 93:11, 94:3, 102:2, 102:4
**Wed (1):** 64:12
**Week (16):** 39:13, 45:20, 66:25, 66:26, 67:2, 76:3, 76:15, 86:13, 91:6, 93:25, 93:26, 105:14, 105:18, 108:16, 109:4, 109:7
**Weeks (8):** 14:13, 17:24, 18:21, 18:21, 25:16, 64:9, 64:10, 111:7
**Welcome (1):** 11:4
**Werent (1):** 35:17
**Weve (3):** 17:16, 59:7, 68:11
**Whats (20):** 16:15, 17:21, 28:21, 34:8, 45:14, 49:5, 49:26, 59:5, 60:12, 62:2, 66:17, 67:12, 68:21, 71:9, 74:14, 74:16, 74:17, 77:2, 102:10, 102:12
**Whatsoever (1):** 48:5
**Whenever (1):** 38:7
**Wheres (3):** 60:12, 83:13, 97:3
**Whereupon (1):** 113:24
**Whole (14):** 17:2, 24:3, 31:12, 32:11, 35:4, 35:26, 38:7, 40:16, 41:10, 43:19, 43:19, 72:7, 74:10, 77:7
**Whos (5):** 10:21, 36:2, 48:14, 72:16, 85:24
**Whove (1):** 50:12
**Wiener (17):** 47:13, 52:9, 55:15, 56:6, 56:22, 57:17, 58:12, 72:13, 75:18, 87:14, 87:16, 88:25, 89:8, 89:19, 100:9, 109:4, 111:10
**Wieners (4):** 51:19, 79:6, 99:9, 99:23
**Wife (16):** 34:17, 49:23, 55:12, 70:8, 73:8, 73:23, 77:4, 80:2, 80:2, 81:20, 86:20, 105:4, 105:14, 105:19, 106:12, 106:18
**Wifes (3):** 26:7, 42:10, 85:14
**Wiggin (2):** 10:7, 10:12
**Willing (2):** 45:14, 102:11
**Willy (1):** 110:9
**Window (1):** 73:18
**Wish (5):** 29:4, 51:23, 53:2, 105:18, 113:20
**Wishes (1):** 20:15
**Withdraw (4):** 12:18, 12:25, 13:12, 113:8
**Withdrawal (2):** 27:19, 61:13
**Within (1):** 86:15
**Without (8):** 30:2, 35:4, 37:8, 37:26, 70:18, 71:3, 71:4, 82:9

**Witness (2):** 54:16, 75:16
**Witnesses (14):** 32:23, 32:24, 32:24, 33:6, 46:17, 46:18, 47:6, 49:26, 56:6, 56:21, 72:15, 73:3, 93:10, 93:10
**Wolosky (1):** 11:12
**Wont (17):** 27:7, 27:12, 30:8, 37:10, 47:6, 50:2, 56:12, 61:6, 69:22, 71:9, 81:22, 89:8, 94:15, 97:13, 97:25, 100:2, 112:8
**Word (2):** 16:2, 46:6
**Words (11):** 28:24, 40:24, 57:20, 73:10, 74:21, 82:18, 82:19, 92:19, 92:21, 93:2, 93:4
**Work (9):** 15:6, 19:12, 30:7, 90:3, 92:8, 98:4, 100:2, 100:10, 105:15
**Working (1):** 22:4
**Works (4):** 51:26, 65:3, 65:4, 107:20
**World (1):** 41:7
**Wouldnt (7):** 40:24, 42:11, 49:11, 68:10, 76:3, 80:9, 85:25
**Write (2):** 82:16, 103:11
**Writing (6):** 25:16, 55:17, 71:10, 97:17, 109:18, 110:13
**Wrong (9):** 16:2, 70:6, 70:12, 76:6, 82:18, 94:13, 94:14, 94:14, 98:16
**Wrote (6):** 25:17, 52:6, 71:8, 71:9, 86:15, 110:10

Y

**YJ (25):** 26:12, 34:10, 34:18, 34:19, 34:21, 36:20, 36:21, 37:4, 37:14, 37:15, 37:20, 39:9, 41:8, 41:19, 42:8, 42:10, 42:18, 43:5, 43:24, 43:26, 44:8, 53:17, 65:19, 70:8, 106:18
**Year (11):** 26:12, 51:10, 52:14, 52:14, 53:8, 55:6, 55:9, 55:11, 55:11, 99:25, 103:12
**Years (27):** 28:17, 28:26, 33:24, 46:3, 48:10, 48:10, 48:11, 48:13, 49:13, 50:9, 54:2, 55:6, 55:13, 56:7, 56:21, 75:10, 77:7, 78:20, 79:8, 86:3, 88:23, 95:18, 95:19, 97:7, 97:7, 101:21, 108:21
**Yelling (1):** 59:11
**Yellow (1):** 107:5
**Yep (1):** 104:22
**Yiddish (1):** 81:18
**Yo (1):** 51:3
**York (4):** 24:10, 52:4, 104:7, 109:10
**Youd (4):** 29:16, 52:8, 64:4, 96:18
**Youll (10):** 18:6, 27:10, 30:7, 51:16, 56:24, 59:13, 67:14, 85:23, 88:25, 104:22
**Youre (84):** 13:11, 13:13, 13:14, 13:16, 16:9, 18:7, 18:8, 20:22, 22:20, 27:6, 27:9, 28:2, 28:3, 29:20, 29:22, 31:11, 34:22, 36:22, 38:17, 38:24, 40:9, 41:19, 46:16, 47:22, 47:22, 48:5, 49:14, 49:25, 50:10, 51:17, 52:25, 55:4, 55:21, 56:25, 58:4, 59:21, 69:26, 70:6, 70:12, 70:16, 70:18, 71:6, 72:2, 72:3, 72:7, 73:11, 74:16, 74:17, 74:17, 75:23, 75:24, 79:3, 79:20, 79:20, 79:21, 82:12, 82:14, 84:2, 88:22, 88:22, 90:14, 90:18, 92:16, 93:14, 94:5, 94:5, 94:8, 95:3, 97:4, 97:23, 97:24, 99:2, 99:22, 99:23, 102:11, 103:4, 103:5, 105:22, 111:8, 112:17, 112:18, 112:20, 112:20, 113:15
**Youve (18):** 17:19, 20:26, 25:21, 46:13, 53:10, 55:8, 59:13, 61:19, 70:19, 70:21, 73:9, 73:9, 74:4, 79:9, 84:10, 85:4, 86:11, 99:25
**Yup (1):** 69:19

Z

**Zero (3):** 48:13, 49:23, 104:8
**Zoom (3):** 14:21, 15:2, 15:6